Robert S. Niemann, SBN 87973
niemann@khlaw.com
Christopher Van Gundy, SBN 152359
vangundy@khlaw.com
**KELLER AND HECKMAN LLP**
Three Embarcadero Center, Suite 1420
San Francisco, CA 94111
Telephone: 415-948-2831

Attorneys for Defendant CLIF BAR & COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MILAN, SARAH AQUINO and ELIZABETH ARNOLD, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>CLIF BAR & COMPANY,<br><br>Defendant. | Case No. 18-cv-02354-JD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CLIF BAR & COMPANY'S MOTION TO DISMISS THE COMPLAINT**<br><br>[F.R.C.P. 12(b)(1) and 12(b)(6)<br><br>Date: July 5, 2018<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Hon. James Donato |

**TABLE OF CONTENTS**

I. STATEMENT OF ISSUES/INTRODUCTION ...................................................................1

II. STATEMENT OF FACTS .................................................................................................3

III. LEGAL STANDARDS .....................................................................................................4

IV. ARGUMENT ....................................................................................................................5

    A. THE COURT LACKS SUBJECT MATTER JURISDICTION DUE TO PREEMPTION AND FAILURE TO PLEAD ARTICLE III INJURY [RULE 12(b)(1)] ..................................................................................................................5

        1. Plaintiffs' State-Law Claims Are Preempted By The Federal NLEA ...................6

        2. Plaintiffs Have Not Plead "Injury" Sufficiently .....................................................8

    B. ALL CLAIMS FOR RELIEF FAIL AS A MATTER OF LAW [F.R.C.P. 12(b)(6)] .....11

        1. Plaintiffs' "Excessive Added Sugar" Allegations Are Implausible.....................11

        2. Plaintiffs' Breach Of Warranty Claims Fail As A Matter Of Law. ....................12

        3. Plaintiffs Have Not Pled Their California Law Claims For Relief Sounding In Fraud With Sufficient Specificity....................................................................13

V. CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page**

*Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943 (N.D. Cal. 2014) ......................................... 12

*Allen v. Wright*, 468 U.S. 737, 757 (1984) ............................................................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................................. 5

*Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) .............................................................................. 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................... 5

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ............................................................................. 14

*Bobo v. Optimum Nutrition, Inc.*, 2015 U.S. Dist. LEXIS 187233
  (S.D. Cal. Sept. 11, 2015) ..................................................................................................................... 12

*Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371 (S.D.N.Y. 2014) ....................................................... 7

*Boysen v. Walgreen Co.*, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. Jul. 19, 2017) ............................... 10

*Callaghan v. BMW of North America, LLC*, 2014 U.S. Dist. LEXIS 164290
  (N.D. Cal. Nov. 21, 2014) ...................................................................................................................... 6

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................. 7

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ................................................................................... 6

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ................................................................. 11

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) ............................................. 16

*Estrada v. Johnson & Johnson,* 2015 U.S. Dist. LEXIS 39581 (E.D. Cal. Mar. 26, 2015) ..................... 16

*Estrada v. Johnson & Johnson,* 2017 U.S. Dist. LEXIS 109455 (D.N.J. July 14, 2017) ........................ 11

*Fayer v. Vaughn*, 649 F.3d 1061 (9th Cir. 2011) ....................................................................................... 6

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996) ............................................................... 12

*Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................... 6

*Harris v. R.J. Reynolds Vapor Co.*, 2016 U.S. Dist. LEXIS 152780
  (N.D. Cal. Sept. 30, 2016) ...................................................................................................................... 5

*Kane v. Chobani, Inc.,* 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013) .................................. 5

*Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120 (N.D. Cal. 2014) ......................................................... 6, 14

*Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. App'x 257 (3rd Cir. 2010) .................................................. 12

*Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310 (Cal. 2011) ................................................................ 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................................... 6

**Case No.** 18-cv-02354-JD                          ii
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Maxwell v. Unilever United States, Inc.*, 2018 U.S. Dist. LEXIS 54222
   (N.D. Cal. Mar. 29, 2018) ......................................................................................................12

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) .......................................................................5

*Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104 (D.D.C. 2006) ......................................................7

*Myers-Armstrong v. Actavis Totowa, LLC*, 2009 U.S. Dist. LEXIS 38112
   (N.D. Cal. Apr. 22, 2009) ......................................................................................................12

*Otto v. Abbott Laboratories, Inc.*, 2013 U.S. Dist. LEXIS 53287 (C.D. Cal. Mar. 15, 2013) ...............13

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1978) ...........................................................................6

*Peviani v. Hostess*, 750 F. Supp. 2d 1111 (C.D. Cal. 2010) ..............................................................7

*Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571 (E.D.N.Y. 2013) ..............................................................14

*Saul v. United States*, 928 F.2d 829 (9th Cir. 1991) .........................................................................5

*Stearns v. Select Comfort Retail Corp.*, 2009 U.S. Dist. LEXIS 112971
   (N.D. Cal. Dec. 4, 2009) ........................................................................................................14

*Tubbs v. AdvoCare Int'l, LP*, 2017 U.S. Dist. LEXIS 147681 (C.D. Cal. Sept. 12, 2017) ....................13

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ......................................................15

*Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................14

**Statutes**

21 U.S.C. § 301, *et seq.* ......................................................................................................................7

21 U.S.C. § 343 .....................................................................................................................................7

21 U.S.C. § 343-1 .................................................................................................................................7

Cal. Bus. & Prof. Code § 17200, *et seq.* ...................................................................................14, 15

Cal. Bus. & Prof. Code § 17500, *et seq.* ........................................................................................14

Cal. Com. Code § 2313 ......................................................................................................................13

Cal. Com. Code § 2134 ......................................................................................................................13

Civ. Code § 1750 *et seq.* ..................................................................................................................14

N.Y. UCC § 2-313 ...............................................................................................................................13

N.Y. UCC § 2-314 ...............................................................................................................................13

**Regulations**

21 C.F.R. § 100.1 ..................................................................................................................................7

21 C.F.R. § 101.9 ...........................................................................................................................10, 11

Defendant Clif Bar & Company ("Clif Bar") hereby respectfully submits this memorandum of points and authorities in support of its motion to dismiss the Complaint with prejudice.

## I. STATEMENT OF ISSUES/INTRODUCTION

1. Whether the Court should dismiss the Complaint with prejudice due to lack of subject matter jurisdiction because Plaintiffs' claims are subject to express and conflict preemption by federal nutrition standards laws, and because Plaintiffs fail to plead Article III standing with the requisite specificity.

2. Whether the Court should dismiss the Complaint with prejudice for failure to state a claim upon which relief may be granted due to implausibility, failure to plead warranty claims, claims sounding in fraud without the requisite specificity, and failure to plead adequately statutory standing and reliance.

Focusing at great length on irrelevant references to cavemen, ancient India, and scientific studies concerning sugar-sweetened beverages, the Complaint does not address the gravamen of Plaintiffs' claims against Clif Bar energy and nutrition bars until page 41: "Clif employs claims on the labeling and packaging of the high-sugar bars…meant to appeal to consumers interested in healthful foods, but that are deceptive because they are incompatible with the dangers of *excessive* sugar consumption to which the Products contribute" (emphasis supplied). Complaint ("Compl."), ¶ 122. Plaintiffs do not allege, as they cannot, that Clif Bar ever describes its products as "healthy" or "no added sugar," but claim that they perceive use of the terms "wholesome," "nutritious," "[a] blend of carbs, fiber, protein, and fat [to] give kids energy so they can keep Zipping and Zooming along," "nutrition for sustained energy" and the like by Clif Bar to mean the Clif Bar products are "healthful foods."  Plaintiffs also allege that Clif Bar "has a *duty* to disclose information regarding the harmful effects of the *added sugar* in its Products." *Id*. at ¶ 162 (emphasis supplied).

As alleged in the Complaint, the product labeling of the various Clif Bar products challenged makes clear they are energy bars packed with nutrition containing whole grains, fiber, protein (often 10 grams, or 20% of FDA's recommended daily allowance), are mainly certified organic, and are marketed to active adults and children to meet their energy and nutrition needs, all in a delicious bar. Plaintiffs claim they were deceived into buying these "healthy" bars because the products contain added sugars, and that excess added sugars are bad, without plausibly and specifically pleading how the added sugars of the challenged products are "excessive," and with convenient amnesia that the product labeling – with names such as

"Chocolate Almond Fudge" and "Chocolate Chip" – strongly suggests added sugars as an "energy source." Plaintiffs' Complaint fails in its entirety for multiple reasons because it is based on factually unsupported conclusions that Clif Bar products are "high-sugar" (a term not defined by FDA), and on speculative concerns about the long-term health risks of excessive added sugars.

Under Plaintiffs' theory, apparently all that is necessary to establish a claim for relief is to plead that a product contains added sugars – *e.g.,* food products claiming to be nutritious, good sources of protein and fiber – and then claim that the products potentially could "contribute" to *excessive* added sugars in the diet. However, the specific facts Plaintiffs do plead all demonstrate that in fact, by any measure, Clif Bar products do not contain excessive amounts of added sugars given the levels set by FDA.

Plaintiffs' claims are preempted by the Nutrition Labeling and Education Act of 1990 ("NLEA") because they are "not identical to," and conflict with, federal law. Pursuant to the NLEA, the U.S. Food and Drug Administration ("FDA") recently (2016) and comprehensively reviewed the scientific literature and thousands of comments as to the health implications of added sugars consumption, and established a "Daily Value" for added sugars as 10% of total daily caloric intake "*to maintain healthy dietary practices*." Plaintiffs here would use state law in an attempt to require Clif Bar to disclose information "regarding the harmful effects of the added sugars," or to drop its labeling claims supposedly communicating a "healthy" aura, even though the Complaint specifically shows that each Clif Bar product challenged is well below the FDA Daily Value for added sugars. Plaintiffs claim that a lower American Heart Association ("AHA") recommendation of allegedly "5% of calories" should be used to gauge what is "excessive added sugar," but that would obviously be "not identical to," and in conflict with, the federal definition of Daily Value for added sugars based on 10% of total dietary calories, and thus is preempted. In fact, the added sugars in the subject Clif Bar products are below *both* the FDA Daily Value *and* the AHA recommendations.

Further, Plaintiffs have failed to plead a cognizable Article III injury. Clearly, subjective concerns about excessive added sugars consumption over time, based largely on studies of sugar-sweetened beverages, are no substitute for pleading how Clif Bar products caused Plaintiffs to consume excessive added sugars and to suffer concrete injury as a result. Under Plaintiffs' theory, a consumer of a food product containing any added sugars should be able to launch a class action based on fear of innumerable serious diseases by subjectively declaring that the product is "high-sugar," even though the product is

compliant with FDA's Daily Value for added sugars to maintain "healthy dietary practices." Plaintiffs' theory would inappropriately involve the federal courts – with potentially inconsistent rulings – in regulating Clif Bar products otherwise compliant with FDA regulations, based on the assumed contribution of added sugars *from other products* to an individual's daily consumption of added sugars. Not only are such claims preempted and implausible, they are absurd and should be rejected.

## II.  STATEMENT OF FACTS

Clif Bar produces, distributes and markets nutrition or energy bars for active lifestyles, as alleged by Plaintiffs and as claimed on the various product labeling referenced and depicted graphically in the Complaint. *See, e.g.*, Compl., ¶¶ 128, 130, 135, 137, 142, 144, 149, 151, 157, 160. Plaintiffs allege that this marketing is reflected in product claims like "nutrition for sustained energy," "nourishing kids in motion," and "keep kids going and growing." *Id*. Also as Plaintiffs allege, Clif Bar makes product labeling claims such as "wholesome" and "nutritious," in association with non-GMO, "No High Fructose Corn Syrup," and various nutrient content claims (*e.g.*, "9g whole grains/good source of fiber"). *Id*.

Each Plaintiff alleges purchasing a certain quantity of Clif Bar products, including Clif Kid ZBars and Clif Classic bars: Plaintiff Milan purchased Clif Bar products "3-4 times per year" from late 2014 or early 2015 through June or July of 2017 (Compl., ¶ 180); Plaintiff Aquino purchased Clif Bar products "about every other week" from late 2016 through approximately September 2017 (Compl., ¶ 183); and Plaintiff Arnold purchased Clif Bar products "once every two weeks, or once per month" from 2013 through January 2018. Compl., ¶ 186. Plaintiffs do not explicitly allege that they consumed the bars, or that they purchased these bars for children or for any adult other than for themselves. Compl., ¶¶ 180-88.

While Plaintiffs allege to have been seeking products that were "healthy to consume" (Compl., ¶ 189), they purchased Clif Products in flavor varieties that obviously involved added sugars, such as "Iced Oatmeal Cookie," "Chocolate Brownie," and "Chocolate Peanut Butter," and not based on any explicit claims such as "no added sugar," or product claims involving the terms "healthy" or variations thereof. *Id*.; *see* ECF No. 1-1 (describing the flavors of the challenged products); *see also* Compl., ¶¶ 123-68 (no claims of "healthy"). Plaintiffs contend that they were deceived into buying Clif Bar products with the generalized representations "wholesome" and "nutrition for sustained energy," and references to "No High Fructose Corn Syrup," and to nutrients ("blend of carbs, fiber, protein, and fat gives kids energy so they can keep

Zipping and Zooming along"), that were interpreted by Plaintiffs to mean "healthy" when in fact, allegedly, the bars were "high" in or contained "excess" or "added sugar," and that "high" or "excess sugars" supposedly are unhealthy and can cause or expose Plaintiffs to a greater risk of numerous diseases, such as "CHD, stroke, and other morbidity." *See, e.g.*, Compl., ¶¶ 123-168, 180-90.

For each product, Plaintiffs list the total and added sugars in some detail, and in almost all cases the total sugars are identical to the added sugars, or are very nearly so. Compl., ¶¶ 127, 134, 141, 148, 156. While the nearly identical "total sugars" are clearly stated on the packaging, as displayed in the Complaint (¶¶130, 137, 144, 151, 160), Plaintiffs claim that the amount of "added sugars" in the challenged products are "high" or "excessive" with reference to the AHA's "Maximum Recommended Daily Intake ("DI") of Added Sugars." Compl., ¶¶ 126, 133, 140, 147, 155. Plaintiffs allege that the AHA "recommends restricting added sugar to 5% of calories," and they also reference FDA's 10% of total calories as the recommended Daily Value for added sugars. Compl., ¶¶ 110, 113.

### III.  LEGAL STANDARDS

Clif Bar moves for dismissal of the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1), and for Plaintiffs' failure to state a claim upon which relief can be granted, under Rule 12(b)(6). Rule 12(b)(1) requires dismissal of claims for which a plaintiff lacks constitutional standing or which are federally preempted. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (finding that preemption deprives the court of subject matter jurisdiction); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under" Rule 12(b)(1)). Rule 12(b)(6), on the other hand, requires dismissal where a plaintiff fails to state a plausible claim or lacks statutory standing. *See Kane v. Chobani, Inc.,* 2013 U.S. Dist. LEXIS 134385, *13-14 (N.D. Cal. Sept. 19, 2013) ("*Chobani I*"), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiffs in all events must plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Harris v. R.J. Reynolds Vapor Co.*, 2016 U.S. Dist. LEXIS 152780, *3-4 (N.D. Cal. Sept. 30, 2016) (Donato, J.), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Chobani I*, 2013 U.S. Dist. LEXIS 134385, *14, quoting *Iqbal*, 556 U.S.

at 678. Whether a complaint states a plausible claim requires "the reviewing court to draw on its judicial experience and *common sense*." *Iqbal,* 550 U.S. at 679. Indeed, "some threshold of plausibility must be crossed at the outset before a [consumer class action] case should be permitted to go into its inevitably costly and protracted discovery phase." *Callaghan v. BMW of North America, LLC*, 2014 U.S. Dist. LEXIS 164290, *9 (N.D. Cal. Nov. 21, 2014) (Donato, J.), *quoting Twombly*, 550 U.S. at 558.

at 678. Whether a complaint states a plausible claim requires "the reviewing court to draw on its judicial experience and *common sense*." *Iqbal,* 550 U.S. at 679. Indeed, "some threshold of plausibility must be crossed at the outset before a [consumer class action] case should be permitted to go into its inevitably costly and protracted discovery phase." *Callaghan v. BMW of North America, LLC*, 2014 U.S. Dist. LEXIS 164290, *9 (N.D. Cal. Nov. 21, 2014) (Donato, J.), *quoting Twombly*, 550 U.S. at 558.

Although the Court on a motion to dismiss must assume all *facts* pled by a plaintiff as true, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). In addition, a court may consider on a motion to dismiss documents "whose contents are alleged in a complaint or whose contents are essential to a claim and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1061 (N.D. Cal. 2017), *quoting Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1978) (internal quotation marks omitted). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss," and "a plaintiff may plead himself out of court" with facts, including those incorporated into the complaint by reference, "which establish that [the plaintiff] cannot prevail on his . . . claim." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1127 (N.D. Cal. 2014) ("*Chobani II*").

IV. **ARGUMENT**

    A. **THE COURT LACKS SUBJECT MATTER JURISDICTION DUE TO PREEMPTION AND FAILURE TO PLEAD ARTICLE III INJURY [RULE 12(b)(1)]**

A complaint must be dismissed if, "considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory Antitrust Litig. v. Micron Technology, Inc*., 546 F.3d 981, 984-85 (9th Cir. 2008). Federal preemption deprives a court of subject matter jurisdiction when federal law expressly preempts state law, state law conflicts with federal law, or federal law occupies the field. *Chae v. SLM Corp*., 593 F.3d 936, 941 (9th Cir. 2010); *Saul*, 928 F.2d at 843. For Article III standing, Plaintiffs must plead specific and plausible facts to establish "injury in fact," which is "concrete" and "particularized," and not based on conjecture. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

/

### 1. Plaintiffs' State-Law Claims Are Preempted By The Federal NLEA

Express and conflict preemption bar Plaintiffs' claims. In 1990, for example, Congress amended the federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301, *et seq.*, ("FDCA") by passing the NLEA in order to "create uniform national standards regarding the labeling of food." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008). The NLEA contains a broad express preemption provision, which provides in relevant part: "no State … may directly or indirectly establish … any requirement for nutrition labeling of food that *is not identical to* the requirement of section 343(q) of this title . . . . 21 U.S.C. § 343-1(a)(4) (emphasis supplied). The NLEA's preemption provision is very broad, and "reaches beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules," and applies to consumer protection laws, such as the UCL, FAL, and CLRA. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010).

The term "not identical to" means that "the State requirement *directly or indirectly* imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) are not imposed by or contained in the applicable provision … or (ii) *differ from those specifically imposed by or contained in the applicable provision*[.]" 21 C.F.R. § 100.1(c)(4); *Peviani v. Hostess*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010); *see e.g. Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) ("[t]he standard, in other words, is not whether a state law actively undermines federal law. It is whether state law diverges from federal law *at all*) (emphasis supplied). Accordingly, the questions to be addressed when analyzing the FDCA's preemption clause are: "first, whether the duty imposed by the relief which plaintiffs seek is 'a requirement for a food which is the subject of a [covered subsection of Section 343],' and second, whether this duty 'is identical' to the labeling requirements of the FDCA." *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 107 (D.D.C. 2006).

Plaintiffs seek to impose labeling requirements that are expressly preempted by operation of 21 U.S.C. Section 343-1(a)(4), which preempts state laws "not identical to" the food labeling required by 21 U.S.C. Section 343(q). Specifically, 21 U.S.C. Section 343(q)(1)(D) requires the label of a food product to provide: "the total amount of . . . [t]otal fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars . . . contained in each serving size," and such nutrients to be included as "necessary to assist consumer in maintaining *healthy dietary practices* . . . . " 21 U.S.C. § 343(q)(2)(A) and (B).

Consistent with these provisions, on May 27, 2016, FDA published new final regulations amending the labeling requirements in order "to provide updated nutrition information on the label to assist consumers in maintaining *healthy dietary practices*." *See* Ex. A at 33742 (emphasis supplied).

Having comprehensively reviewed the medical literature, FDA specifically addressed the topic of "added sugars" and the concerns raised in the Complaint—namely, the amount of added sugars that may render a product unhealthy in the context of the overall diet, over time. FDA explained:

> The FD&C Act requires that nutrition information on the label be conveyed to the public in a manner which enables the public to readily observe and comprehend such information and to understand its relative significance in the context of the total daily diet. There is evidence that *excess consumption of added sugars is a public health concern*. Healthy dietary patterns characterized, in part, by lower intakes of foods and beverages which contain added sugars are associated with a decreased risk of CVD.

*Id*. at 33811 (emphasis supplied). Nonetheless, FDA acknowledged that some added sugars can in fact be beneficial to health:

> We recognize that *added sugars can be a part of a healthy dietary pattern when not consumed in excess amounts*. The purpose of the added sugars declaration is not to discourage the consumption of the class of foods that contain added sugars, but rather to increase consumer understanding of the quantity of added sugars in foods to enable the consumer to understand the relative significance of the contribution of added sugars *from a serving of a particular food in the context of the total daily diet*. A consumer may or may not elect to reduce the consumption of certain foods with added sugars, based on his or her individual need and dietary choice . . . .

*Id.* at 33760 (emphasis supplied). FDA also determined that added sugars allowances needed to be based on a number of individualized factors: "individuals have varying nutrient and calorie needs, so consumers may need more or less of a particular nutrient based on their specific nutrient needs. As such, *consumers with higher calorie needs can consume more added sugars in their diet relative to individuals with lower calorie needs*." *Id.* at 33840 (emphasis supplied).

Based on these findings, the FDA *explicitly rejected* the suggestion of requiring warning labels or disclaimers on products containing added sugars, as inconsistent with the scientific evidence:

> One comment suggested that we require, or offer an incentive for, a disclaimer about added sugars and sodium. *The disclaimer would explain the health effects on the body and connections to disorders such as diabetes and hypertension*. The comment said that, similar to cigarette packets, *consumers should be warned of the health effects of added sugars*. (Response) *We decline to revise the rule as suggested by the comments. The statements are not consistent with our review of the evidence* (see our response to comments 136 and 137), *and we do not require warning labels or disclaimers for other nutrients on the label. Furthermore, some added sugars can be included as part of a healthy dietary pattern*.

*Id*. at 33829 (emphasis supplied). Under the Final Rule, which became effective in July of 2016, the FDA concluded that the Daily Value for added sugars should be 10% of daily calories. *Id*. at 33829. In doing so, FDA noted that:

> [T]he declaration of added sugars is also reasonably related to the government's interest in *maintaining healthy dietary practices* by providing them with information about added sugars content in a serving of food to construct diets containing more nutrient-dense foods and reduce calorie intake from added sugars by *reducing consumption of added sugars to less than 10 percent of calories*. Survey data show that consumers use the Nutrition Facts label and the percent Daily Value at point-of-purchase and review the nutrient contribution of food (Refs. 21–23) products. Thus, by requiring the added sugars declaration on the Nutrition Facts label, *we will give consumers a tool they need to include added sugars as part of a healthy dietary pattern that avoids excess calories from added sugars* . . . .

*Id*. at 33759 (emphasis supplied). Despite FDA's regulations under the FDCA based on medical literature and thorough review of public comments, Plaintiffs here seek to alter the federal Daily Value for added sugars standard based on unfounded conclusions, contrary to law, that Clif Bar products are not part of a "healthy dietary pattern" even though the products easily meet the added sugars Daily Value recommendation of 10% of an average 2,000 calorie diet, as explained below. Plaintiffs thus seek to impose state-law remedies that are "not identical to," and conflict with, federal law. The Court can and should find all claims for relief in the Complaint preempted and dismiss the Complaint with prejudice.

### 2. Plaintiffs Have Not Plead "Injury" Sufficiently

The Complaint fails entirely because no Plaintiff has suffered an injury sufficient to meet the subject matter jurisdictional requirements of Article III standing. For Article III standing, a plaintiff must plead "specific facts" that plausibly establish: (1) that it "suffered an 'injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court"; and (3) the likelihood "that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61. A plaintiff must allege "sufficient 'factual matter'" that is "plausible on its face"; "conclusory statements" and "legal conclusions" do not suffice. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017), *citing Iqbal*, 556 U.S. at 678.

Plaintiffs do not plead specific facts, as they must, of any cognizable injury. They claim they overpaid for the challenged products due to Clif Bar's supposed deception, but that deception is premised

1    on the notion that Plaintiffs: 1) are at an increased risk of succumbing to a host of dread diseases; 2) *due
2    to consumption of excessive added sugars.* Plaintiffs fail to (and cannot) establish a requisite "'line of
3    causation' between defendants' action and Plaintiffs' alleged harm that is more than 'attenuated.'" *Allen
4    v. Wright*, 468 U.S. 737, 757 (1984); *see also Boysen v. Walgreen Co.*, 2012 U.S. Dist. LEXIS 100528,
5    *22 (N.D. Cal. Jul. 19, 2017) (no "'lost money or property' sufficient to establish injury" where the
6    products were complaint with federal regulation and no claim "that the juices at issue were unfit for their
7    intended use, i.e. consumption"). If Plaintiffs cannot plead specifically how Clif Bar products contain
8    excessive added sugar, then there is no link to studies indicating a possible increased risk of disease, the
9    "healthy" aura product claims were not deceptive, and Plaintiffs suffered no cognizable injury.

10       None of the challenged products come close to containing FDA's recommended Daily Value,
11   which is 50 grams per day of added sugars based on a daily diet of 2,000 calories. This number is calculated
12   by equating each gram of sugars to four calories, as FDA regulations provide for carbohydrates, including
13   sugars, so 50 grams of added sugars is 200 calories or 10% of a 2,000 calorie daily diet. 21 CFR §
14   101.9(c)(1)(i)(c). As plead by Plaintiffs throughout the Complaint, the challenged Clif Bar products range
15   from a low of 6 grams to a high of 22 grams of added sugars, where the Clif Kid ZBar added sugars average
16   approximately 11 grams, and the original Clif Bars around 18 grams. *See e.g.* Compl., ¶¶ 134, 156.

17       In a failed attempt to show excessive added sugars, Plaintiffs rely heavily upon what they describe
18   as the AHA's "Maximum Recommended Daily Intake (DI) of Added Sugars," which Plaintiffs claim is
19   "5% of calories." Compl., ¶ 110. There is no such concept in the documents referenced by Plaintiffs, but
20   the 2009 AHA Scientific Statement does make recommendations to limit added sugars to a range of 4 to
21   7% of total calories, depending on one's age, gender, level of physical activity, and fat and alcohol intake.
22   Ex. B at 1016-1017. That is approximately 25 grams of added sugars in a 2,000 calorie daily diet for an
23   adult assuming 5% of total daily calories is recommended for the individual (25 grams = 100 calories of
24   sugar/2,000 calories = 5%).

25       The "Chocolate Brownie" Kid ZBars cited by Plaintiffs, for example, containing 11 grams of added
26   sugars is just 22% of the Daily Value of 10% of the total daily caloric intake, or put another way, 2.2% of
27   total daily calories (11 grams sugar = 44 calories/2,000 = 2.2%), not even half of the AHA recommendation
28   for adults. Compl., ¶ 127. Even the Clif Bar products with 22 grams of added sugars are still within

1  Plaintiffs' description of the AHA recommended daily level. Plaintiffs' claims about excessive added
2  sugars focus on speculation about the consumption of the products by children, but there is no allegation
3  that any children consumed the challenged products and so such allegations are irrelevant to meet standing
4  requirements. In addition, the FDA Daily Value recommendation is for all individuals, from 4 years to
5  adult. 21 C.F.R. § 101.9.

6  Plaintiffs also resort to a deceptive sleight of hand in their various charts by providing for a column
7  entitled "% Calories From Added Sugar," paralleling the language they use to describe the AHA
8  recommendations, as "5% of calories." The numbers for "% Calories From Added Sugar" are on the order
9  of 34%, for example, as is the case with the "Chocolate Brownie," but only with reference to overall
10 calories *in that particular product* (11 grams added sugar = 44 calories/130 calories = 34%), and not as a
11 percentage of total daily calories, which is the method for calculating both the FDA's recommended Daily
12 Value and the AHA recommendations. The fact that 34% of the calories in a Clif Bar product comes from
13 added sugars does not mean that Plaintiffs consumed excessive added sugars in their total diet, else, by
14 similar reasoning, consuming a serving of "high-sugar" jelly beans would expose one to an increased risk
15 for dementia, diabetes, and the like!

16 Plaintiffs have not alleged specific and plausible facts as to any other type of injury, where, for
17 example, they received the "nutrition for sustained energy," as advertised, including protein, whole grains,
18 and fiber. Plaintiffs' claims that they overpaid for these "unhealthy" products fall flat on the ground of
19 plausibility because the implication is, they would have been willing to take on the supposed risk of
20 increased exposure to serious disease if only the price were less. Plaintiffs' concerns about increased health
21 risks from excessive added sugars are mere conjecture and not cognizable, and are a far cry from the
22 Supreme Court's "requirement that 'threatened injury must be certainly impending to constitute injury in
23 fact.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 (2013) (finding that a mere "speculative
24 chain of possibilities does not establish that injury").

25 Unable to point to any substantive basis for their alleged economic injury, Plaintiffs essentially
26 allege that they paid money for a product that they ***fear may cause*** health consequences, including CHD,
27 stroke, and other morbidity. But mere "[f]ear and apprehension about a possible future physical or medical
28 consequence . . . is not enough to establish an injury in fact." *Estrada v. Johnson & Johnson,* 2017 U.S.

Dist. LEXIS 109455, *17 n.2 (D.N.J. July 14, 2017) ("*Estrada II*"), *citing Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 636 (3d Cir. 1996). Rather, "[a] plaintiff must allege an actual *manifestation* of a defect *that results in some injury or rational fear of future injury* in order to state cognizable claims." *Myers-Armstrong v. Actavis Totowa, LLC*, 2009 U.S. Dist. LEXIS 38112, *12 (N.D. Cal. Apr. 22, 2009); *see also Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. App'x 257, 258-259 (3rd Cir. 2010) (plaintiff claiming deception based on perceived unsafe level of lead in lipstick rejected based on FDA determinations that the levels were safe, and plaintiff suffered no adverse health consequences).

### B.   ALL CLAIMS FOR RELIEF FAIL AS A MATTER OF LAW [F.R.C.P. 12(b)(6)]

#### 1.   Plaintiffs' "Excessive Added Sugar" Allegations Are Implausible

All of Plaintiffs' claims for relief depend on the premise that *any* product with *any* amount of added sugars could be harmful to health, could not be nutritious, and should have to contain a disclosure that it was "harmful" or "detrimental to health." Plaintiffs' claims are implausible in the first instance because, as explained above, the amount of added sugars in the Clif Bar products fall below both the controlling FDA Daily Value for added sugars and the AHA recommendations. *Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943 (N.D. Cal. 2014) (claims dismissed where report relied upon contradicted plaintiffs' allegations). Also, as explained below, Plaintiffs have not identified any other legal obligation that required Defendants "to disclose the risks associated with the products on the product label or advertisements." *Estrada II*, 2017 U.S. Dist. LEXIS 109455, *18.

A reasonable consumer would know that the challenged products contained added sugars, and that the added sugars were part of the promise of "energy." Products with flavors such as "Chocolate Chip," "Chocolate Brownie," Iced Oatmeal Cookie" and "S'mores" suggest added sugars content as a source of energy. *See Maxwell v. Unilever United States, Inc.*, 2018 U.S. Dist. LEXIS 54222, *12, 15 (N.D. Cal. Mar. 29, 2018) (finding that "the TAC [third amended complaint] fails to explain how Plaintiff could have read the words 'phosphoric acid' and 'citric acid' (or otherwise read the Pepsi label) and been lead to believe that Pepsi did not contain artificial flavors"). When viewing the products "as a whole," a reasonable consumer seeking a product for "sustained energy" would know that "energy" equates in part to sugars and other carbohydrates, particularly given that total sugars are disclosed in the nutrition panel. *See Bobo v. Optimum Nutrition, Inc.*, 2015 U.S. Dist. LEXIS 187233, *12 (S.D. Cal. Sept. 11, 2015).

Plaintiffs attempt to distract the Court with a compendium of irrelevant and immaterial scientific reports. None of the source material relied on by Plaintiffs references Clif Bar products specifically, or even similar products, because many of the sources relied upon analyze the effects of added sugars in sugar-sweetened beverages – such as sodas – rather than within solid foods that also contain proteins, fiber, other complex carbohydrates, etc. "Courts have previously found a reliance on studies that did not involve the products at issue to be insufficient in similar cases." *Tubbs v. AdvoCare Int'l, LP*, 2017 U.S. Dist. LEXIS 147681, *20 (C.D. Cal. Sept. 12, 2017); *see also Otto v. Abbott Laboratories, Inc.*, 2013 U.S. Dist. LEXIS 53287 (C.D. Cal. Mar. 15, 2013) (dismissing case involving allegedly deceptive nutrition drink that claimed it could help re-build muscle because plaintiff's scientific reports did not specifically consider the defendant's product or the formulation thereof); *see also* Ex. B at 1015 (the "greater caloric intake ***from fluids than from solid foods***" is what "may be contributing to the increase in overweight and obesity in the US population").

Moreover, as seen in the labels reproduced in the Complaint, the Clif Bar products at issue contain a variety of nutritious ingredients, such as whole grains and protein and fiber, that distinguish them from the products studied in Plaintiffs' sources. As the AHA Statement notes, ingredients, "processing and preparation are key factors in the body's glucose response to food consumption." Ex. B at 1013; *see also id*. at 1012 ("when sugars are added to otherwise nutrient-rich foods . . . the quality of children's and adolescents' diets improves"); *id*. at 1016 ("increased fiber intake to be associated with decreasing energy intake, which translates into weight loss").

### 2. Plaintiffs' Breach Of Warranty Claims Fail As A Matter Of Law.

Plaintiffs also bring claims for breach for express and implied warranties under California law—Cal. Com. Code §§ 2313(1) and 2134, and New York law—N.Y. UCC §§ 2-313 and 2-314. Under California and New York law, an express warranty is an "affirmation of fact or promise made by the seller to the buyer" that constitutes "part of the basis of the bargain." Cal. Com. Code § 2313(1); N.Y. UCC § 2-313. A California claim "must describe the exact terms of the warranty, allege that buyer reasonably relied on those terms, and that the breach of the warranty was the proximate cause of the buyer's injury. A buyer also must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovering the breach." *Stearns v. Select Comfort Retail Corp.*, 2009 U.S. Dist. LEXIS 112971, *21 (N.D.

Cal. Dec. 4, 2009) (internal citations omitted). A New York claim "requires proof that an express warranty existed, was breached, and that plaintiff had relied on that warranty." *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2013).

Whether California or New York law is applicable, Plaintiffs' express warranty claim is based on Clif Bar's alleged breach of a promise to provide "healthy" products. As discussed above, however, no such promise was affirmatively made and no such promise was breached. *See e.g. Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-94 (C.D. Cal. 2013) (dismissing warranty claims based on "all natural flavors" where the phrase "accurately describes the product"). Also as discussed herein, Plaintiffs have failed to show reliance or injury resulting from the purported breach. Because Plaintiffs cannot meet any of the elements of these claims, the claims fail.

Plaintiffs' implied warranty claims require a showing that the product at issue lacks "the most basic degree of fitness of ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009); *Reed*, 839 F. Supp. 2d at 580 ("[f]or goods to be of merchantable quality they need to be reasonably fit for their intended purposes; they need not, however, be perfect"). Plaintiffs have not come close to pleading, as they must, that the Clif Bar products lack the most basic degree of fitness for ordinary use. As discussed above, Plaintiffs have not alleged any actual harm or that the Clif Bar products were not consumable. *See Viggiano*, 944 F. Supp. 2d at 896 (rejecting implied warranty claims where there were no facts "suggesting that the soda is not merchantable or fit for use as a diet soft drink . . . that the beverage was not drinkable, that it was contaminated or contained foreign objects"). In fact, Plaintiffs' pleading shows, and they do not dispute, that Clif Bar products are chock full of important nutrients, including whole grains and protein, as well as vitamins and minerals. Accordingly, Plaintiffs' implied warranty claims fail as well.

### 3. Plaintiffs Have Not Pled Their California Law Claims For Relief Sounding In Fraud With Sufficient Specificity.

Plaintiffs bring claims under several California consumer protection statutes—Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL"), Cal. Bus. & Prof. Code § 17500, *et seq*. (the "FAL"), and Cal. Civ. Code § 1750 *et seq*., including Cal. Civ. Code § 1770(a)(5), (7), (9), and (16) (the "CLRA"). These claims for relief require, *inter alia*, a showing of standing and that a reasonable consumer would have been deceived. *Chobani II*, 973 F. Supp. 2d at 1129. Plaintiffs' claims for relief sound in fraud because they are based upon the same underlying allegations that Clif Bar made "false and misleading claims" and

1  "deceptive omissions" in the labeling of the Clif Bar products, so Plaintiffs must state the circumstances
2  of each of their claims with particularity, including the "who, what, when, where, and how' of the
3  misconduct charged.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also*
4  *Chobani I*, 2013 U.S. Dist. LEXIS 134385, *24 n.4 (finding that the plaintiffs' non-fraud claims were
5  subject to Rule 9(b) because they were premised on the same allegations of false and misleading labeling
6  representations). Because Plaintiffs have not and cannot do so, each of their claims fails.

### a. Plaintiffs Have Not Pled Injury with the Requisite Specificity and Therefore Lack Statutory Standing Under All of the Consumer Protection Statutes

A plaintiff suing under California consumer protection laws "must allege that she relied on the defendant's alleged misrepresentation and that she suffered an economic injury *as a result*." *Chobani I*, 2013 U.S. Dist. LEXIS 134385, *19-20 (emphasis supplied). In fact, a suit under the UCL may only be brought "by a person who has suffered injury in fact *and* has lost money or property *as a result of the unfair competition*." Cal. Bus. & Prof. Code § 17204 (emphasis supplied). For reasons similar to those set forth above regarding Article III standing, Plaintiffs lack statutory standing because they fail to plead harm with the requisite specificity.

While the AHA Statement notes that the effects of sugar consumption are based on a sliding-scale of a number of variables and factors, including the caloric allowance, fat intake, gender, age, and activity level of the consumer (*see, e.g.,* Ex. B at 1016), the Complaint contains no allegations about where Plaintiffs or putative class members fall on the scale. Plaintiffs have not alleged their daily caloric intake, their daily discretionary calorie allowance or fat intake, their activity level, or why they would be particularly susceptible to the health effects of high-calorie/high-energy diets. Nor have Plaintiffs alleged how their consumption of Clif Bar products "3-4 times per year" over the course of three years in the case of one Plaintiff (Compl., ¶ 180) increases their risk of disease.

### b. Plaintiffs Have Not Pled Actual Reliance with the Requisite Specificity

In addition to injury, a plaintiff suing under the "fraudulent" prong of the UCL "must demonstrate that she *actually relied* upon the allegedly fraudulent misrepresentation." *Chobani I*, 2013 U.S. Dist. LEXIS 134385, *19-20. A showing of "actual reliance" requires more "than a mere factual nexus between the business's conduct and the consumer's injury." *Durell*, 183 Cal. App. 4th at 1355. The "actual reliance"

requirement applies equally to "unfair" and "unlawful" UCL claims where, like here, the claims are "based on a fraud theory involving false advertising and misrepresentations to consumers." *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 326 (Cal. 2011).

Plaintiffs have failed to allege their actual reliance on Clif Bar's allegedly fraudulent product claims. Rather, Plaintiffs allege, in the most conclusory of terms, that they "read and relied on" and "believed" Defendant's labeling. Notwithstanding the lack of any specificity, Clif Bar never affirmatively represented that the products were "healthy," and Plaintiffs do not claim that they purchased the Clif Bar products ***because of*** the generalized representations of "nutrition" and "energy" on the labels. Nor are there any allegations about the specific misrepresentations Plaintiffs found material in making their purchasing decisions, or when and how they discovered the alleged falsity of the misrepresentations. *Estrada v. Johnson & Johnson,* 2015 U.S. Dist. LEXIS 39581, *9 (E.D. Cal. Mar. 26, 2015) (finding a lack of standing where the plaintiff failed to "identify any specific statements about safety made by Defendants that she found material to her decision to purchase the Baby Powder"); *Estrada II*, 2017 U.S. Dist. LEXIS 109455, *34 (finding no reliance where "the label does not expressly state that the product is 'safe,' and Plaintiff has not alleged that but for those generalized representations, she would not have purchased Baby Powder").

## V.  CONCLUSION

For the reasons set forth above, respectfully, the Complaint should be dismissed with prejudice.

Dated:  May 31, 2018                                Keller and Heckman LLP

                                                    By: _____
                                                        Christopher Van Gundy
                                                        Attorneys for Defendant
                                                        Clif Bar & Company

4842-3086-3463, v. 1

Case No. 18-cv-02354-JD                          15
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS