**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
***Counsel for Plaintiffs and the Proposed Class***

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MILAN, SARAH AQUINO, and ELIZABETH ARNOLD on behalf of themselves, those similarly situated and the general public,<br><br>        Plaintiffs,<br><br>        v.<br><br>CLIF BAR & COMPANY,<br><br>        Defendant. | Case No: 18-cv-02354-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:        July 5, 2018<br>Time:       10:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:     Hon. James Donato |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

INTRODUCTION .................................................................................................... 2

FACTS ...................................................................................................................... 3

    I.    Scientific Evidence Establishes that Consuming Added Sugar in Excess of 5% of Calories is Unhealthy, as it Greatly Increases Risk of Chronic Diseases ...................................................................................... 3

    II.   Clif Markets and Labels the Products with Claims Intended to Convince Consumers that the Products are Healthy or Beneficial to Health ............................................................................................................ 3

    III.  The Challenged Health and Wellness Claims are Misleading Given the Products' Added Sugar Content and Caused Plaintiffs' Injury ................ 5

ARGUMENT ............................................................................................................ 5

    I.    Plaintiffs Satisfy Rule 9(b)'s Particularity Requirement by Identifying Each Challenged Labeling Claim, with Exemplars, Alleging Reliance on Those Claims, and Economic Injury ................................................... 5

    II.   Plaintiffs' Allegations of Economic Injury Constitute Injury-In-Fact Under Article III .............................................................................................. 9

    III.  Plaintiffs Plausibly Allege the Challenged Health and Wellness Claims are Likely to Deceive the Reasonable Consumer in Light of the Products' Added Sugar .............................................................................. 11

        A.    Based on Extensive Citations to Scientific Evidence, Plaintiffs Plausibly Allege the Amount of Added Sugar in the Clif Products is Unhealthy ............................................................. 12

    IV.  Plaintiffs' Claims are Not Expressly Preempted .................................... 16

A. In Seeking to Invalidate Plaintiffs' Claims, Clif Bears a "Considerable Burden" of Overcoming the Strong Presumption Against Preemption ......................................................16

B. Plaintiffs' Claims are Not Preempted Because they Challenge Voluntary Statements as "Misleading," Which Both Federal and State Laws Prohibit ..................................................17

1. There is no express preemption ................................................19

2. There is no conflict preemption ................................................21

V. Plaintiffs State Claims for Breach of Warranties ................................................22

A. Plaintiffs State Claims for Breach of Express Warranties ..................22

B. Plaintiffs State Claims for Breach of Implied Warranties ..................24

CONCLUSION ..................................................................................................25

ii

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. ConAgra Foods, Inc.*,
   2013 U.S. Dist. LEXIS 125607 (N.D. Cal. Sept. 2, 2013) ..................................24

*Allen v. Hylands, Inc.*,
   2012 U.S. Dist. LEXIS 61606 (C.D. Cal. May 2, 2012) ...................................23

*Ang v. Bimbo Bakeries USA, Inc.*,
   2013 U.S. Dist. LEXIS 138897 (N.D. Cal. Sept. 25, 2013) .................................7

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   2011 U.S. Dist. LEXIS 57348 (N.D. Cal. May 26, 2011) ...............................6, 11

*Atik v. Welch Foods, Inc.*,
   2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sep. 30, 2016)....................................2

*Bates v. Dow Agro., LLC*,
   544 U.S. 431 (2005) .......................................................................................16

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009)..........................................................................25

*Boswell v. Costco Wholesale Corp.*,
   2016 U.S. Dist. LEXIS 73926 (C.D. Cal. June 6, 2016) .............................15, 16

*Boysen v. Walgreen Co.*,
   2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) ................................10

*Brazil v. Dole Food Co.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ..........................................................9, 10

*Bronson v. Johnson & Johnson, Inc.*,
   2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) .................................25

*Bruaner v. MusclePharm Corp.*,
   2015 U.S. Dist. LEXIS 105515 (C.D. Cal. Aug. 11, 2015)..................................6

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ....................................................passim

*Milan et al. v. Clif Bar & Co.*, No. 18-cv-02354-JD
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992) ..................................................................................16

*Dabish v. Brand New Energy, LLC*,
2016 U.S. Dist. LEXIS 167783 (S.D. Cal. Nov. 23, 2016) ...............................8

*Degelmann v. Advanced Med. Optics Inc.*,
659 F.3d 835 (9th Cir. 2011) ......................................................................11

*Ebner v. Fresh*,
838 F.3d 958 (9th Cir. 2016) ......................................................................21

*Fagan  v. Neutrogena Corp.*,
2014 U.S. Dist. LEXIS 2795 (C.D. Cal. Jan. 8, 2014)....................................20

*Faigman v. AT&T Mobility LLC*,
2007 U.S. Dist. LEXIS 52192 (N.D. Cal. July 17, 2007)...............................1, 7

*Fernandez v. Atkins Nutritionals, Inc.*,
2018 U.S. Dist. LEXIS 78607 (S.D. Cal. May 9, 2018)..................................19

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995)..........................................................................12

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995) ....................................................................................20

*Garrison v. Whole Foods Market Grp., Inc.*,
2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014) .................................24

*Graham v. Wells Fargo Bank, N.A.*,
2017 U.S. Dist. LEXIS 3598 (N.D. Cal. Jan. 10, 2017) ....................................5

*Gustavson v. Wrigley Sales Co.*,
961 F. Supp. 2d 1100 (N.D. Cal. 2013)........................................................17

*Hadley v. Kellogg Sales Co.*,
2017 U.S. Dist. LEXIS 128061 (N.D. Cal. Aug. 10, 2017)..................13, 14, 15

*Ham v. Hain Celestial Group, Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) .........................................................24

iv

*Haskell v. Time, Inc.*,
   857 F. Supp. 1392 (E.D. Cal. 1994)........................................................................12

*Hitt v. Ariz. Beverage Co., LLC*,
   2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb. 4, 2009)........................................22

*Hunter v. Nature's Way Prods., LLC*,
   2016 U.S. Dist. LEXIS 107092 (S.D. Cal. Aug. 12, 2016)....................................15

*In re ConAgra Foods*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015)....................................................................22

*In re Farm Raised Salmon Cases*,
   42 Cal. 4th 1077 (2008)........................................................................................16

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011)...........................................................passim

*In re Oreck Corp.*,
   2012 U.S. Dist. LEXIS 172869 (C.D. Cal. Dec. 3, 2012)........................................8

*Jones v. Conagra Foods, Inc.*,
   912 F. Supp. 2d 889 (N.D. Cal. 2012)..................................................................10

*Jones v. Nutiva, Inc.*,
   2016 U.S. Dist. LEXIS 129898 (N.D. Cal. Sep. 22, 2016)....................................23

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)................................................................................6

*Keith v. Buchanan*,
   173 Cal. App. 3d 13 (Ct. App. 1985)....................................................................23

*Krommenhock v. Post Foods, LLC*,
   2018 U.S. Dist. LEXIS 42938 (N.D. Cal. Mar. 15, 2018)....................................23

*Krommenhock v. Post Foods, LLC*,
   255 F. Supp. 3d 938 (N.D. Cal. 2017)............................................................passim

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011)............................................................................................8

*Larsen v. Trader Joe's Co.*,
917 F. Supp. 2d 1019 (N.D. Cal. 2013) ...................................................................18

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........................................................................1, 9

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d. 840 (N.D. Cal. 2012) .................................................................9

*Red v. Kraft Foods, Inc.*,
754 F. Supp. 2d 1137 (C.D. Cal. 2010) ...............................................................17

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015).............................................................................18

*Ries v. Hornell Brewing Co.*,
2011 U.S. Dist. LEXIS 36845 (N.D. Cal. Apr. 4, 2011) ......................................6

*Sciortino v. PepsiCo, Inc.*,
108 F. Supp. 3d 780 (N.D. Cal. 2015) ...........................................................21, 22

*Sierra Club v. Morton*,
405 U.S. 727 (1972)...........................................................................................9

*Stengel v. Medtronic Inc.*,
704 F.3d 1224 (9th Cir. 2013)............................................................................17

*Trazo v. Nestle USA, Inc.*,
2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ...................................19

*Tsan v. Seventh Generation, Inc.*,
2015 U.S. Dist. LEXIS 149042 (N.D. Cal. Nov. 3, 2015) ...................................24

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)............................................................................6

*Vicuña v. Alexia Foods, Inc.*,
2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012) ....................................8

*Von Grabe v. Sprint PCS*,
312 F. Supp. 2d 1285 (S.D. Cal. 2003)................................................................6

vi

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................................11, 12

*Wyeth v. Levine*,
   555 U.S. 555 (2009) .........................................................................................16

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ..........................................................12

*Zeisel v. Diamond Foods, Inc.*,
   2010 U.S. Dist. LEXIS 141941 (N.D. Cal. Sept. 3, 2010) ..............................19

*Zupnik v. Tropicana Prods.*,
   2010 U.S. Dist. LEXIS 142060 (C.D. Cal. Feb. 1, 2010)................................19

**Statutes and Regulations**

21 U.S.C. § 331(a)-(c), (g), (k) ........................................................................15

21 U.S.C. § 343-1(a).....................................................................................16, 17

21 U.S.C. § 393(b)(2)(A) .................................................................................15

21 U.S.C. §§ 301 *et seq.* ..................................................................................15

21 U.S.C. § 343(q) .......................................................................................17, 18

21 C.F.R. § 1.21(a)(1) ......................................................................................19

Cal. Com. Code § 2314(2)(f) ...........................................................................23

Cal. Com. Code § 2313(1)(a)-(b) .....................................................................21

Cal. Health & Safety Code § 109875 ...............................................................16

Cal. Health & Safety Code § 110660 ...............................................................16

N.Y. Agric. & Mkts. Law § 201 ......................................................................16

N.Y. U.C.C§ 2-314(2)(f)..................................................................................23

Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353 (1990)....................................16

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................4, 5, 6

## STATEMENT OF ISSUES TO BE DECIDED

1.     **Rule 9(b) Particularity**: Whether Plaintiffs, by alleging the "who" as Clif, the "what" as the specifically listed challenged misrepresentations, the "when" as the time frame for the class allegations, the "where" as on the challenged Products' packaging, and explaining "how" the challenged statements are misleading, as well as "attaching representative samples [of the challenged packaging] satisf[y] the heightened particularity standard of Rule 9(b)," *Faigman v. AT&T Mobility LLC*, 2007 U.S. Dist. LEXIS 52192, at *14-17 (N.D. Cal. July 17, 2007).

2.     **Article III Injury-in-fact:** Do Plaintiffs plead Article III injury-in-fact by alleging they "read and relied" upon the challenged health and wellness claims and "would not have purchased the Clif Products if they knew that their labeling claims were false and misleading," Compl. ¶ 194, when "spent money that, absent defendants' actions, [a plaintiff] would not have spent," constitutes "a quintessential injury-in-fact," *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

3.     **Plausibility of Plaintiffs' "Excessive Added Sugar" Allegations:** Whether through extensive citations to scientific evidence demonstrating that consuming more than "approximately 5% of calories," from added sugar increases risk of serious diseases and allegations that between 17 and 37% of calories in each Clif Product come from added sugar, "plaintiffs have plausibly alleged that added sugar created health risks such that [Defendant's] 'health' claims were misleading," *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 947 (N.D. Cal. 2017).

4.     **Preemption:** Whether Clif has carried its heavy burden and overcome the presumption against preemption when it asserts FDA regulations concerning the Nutrition Facts box preempt Plaintiffs' claims, but Plaintiffs only challenge voluntary statements outside of the Nutrition Facts Box that violate the identical federal and State prohibitions on labeling that is "false or misleading in any particular," 21 U.S.C. § 343(a)(1), N.Y. Agric. & Mkts. Law § 201, Cal. Health & Safety Code § 110660.

5. **Express Warranty Claims:** Whether Plaintiffs' allegations that Clif's representations, including that the Products are "nutritious," "nourishing," and "wholesome," Compl. ¶ 128, were "part of the basis of the bargain" *id*. ¶ 249, and that "Clif breached its express warranties by selling Products that are harmful to health," *id*. ¶ 250, are sufficient state a breach of express warranty claims where "under New York and California law" a representation "regarding [a Product's] wholesome nature is sufficient to constitute an express warranty,'" *Atik v. Welch Foods, Inc.*, 2016 U.S. Dist. LEXIS 136056, at *44 (E.D.N.Y. Sep. 30, 2016).

6. **Implied Warranty Claims:** Where Clif argues the Products are fit for their ordinary purpose but "Plaintiffs are bringing their claim under a different definition of merchantability, whether the product[s] conform[] with 'the promises or affirmations of fact made on the container or label,'" should the Court "decline[] to dismiss Plaintiff[s'] claim[s] for breach of the implied warranty of merchantability," *In re Ferrero Litig*., 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011).

## **INTRODUCTION**

As the issues stated above aptly demonstrate, Clif provides no salient reason for dismissal. First, Plaintiffs allege in great detail the exact fraudulent conduct *by Clif* that they challenge, thereby providing adequate notice of the misconduct charged, satisfying Rule 9(b). Second, Plaintiffs allege that they suffered Article III injury-in-fact by paying too much for the challenged products. Third, Plaintiffs allege in great detail the harmful effects of consuming excessive added sugar and that high-sugar Products contain excessive added sugar thereby plausibly demonstrating that reasonable consumers could be misled by Clif's health and wellness claims. Fourth, Plaintiffs' claims are not preempted because they challenge only voluntary labeling statements that occur outside of the Nutrition Facts Box that violate the identical federal and State prohibitions on labeling that is misleading in any particular. Finally, Plaintiffs' claims for breach of express and implied warranty track their consumer fraud claims and also survive.

## FACTS

**I.    Scientific Evidence Establishes that Consuming Added Sugar in Excess of 5% of Calories is Unhealthy, as it Greatly Increases Risk of Chronic Diseases**

"[E]xcessive consumption of added sugar . . . is toxic to the human body." Dkt. No. 1, Compl. ¶ 1 (hereafter, "Compl."). Extensive scientific evidence demonstrates that "sugar—any amount above approximately 5% of daily caloric intake—greatly increases the risk of cardiovascular disease, diabetes, liver disease, and a wide variety of other chronic diseases." *Id.*; *see also id.* ¶¶ 14-109 (discussing in detail the body's physiological responses to sugar consumption and the links between those responses and chronic disease).

Five percent is key "[b]ecause the liver has some capacity to process sugar," and 5% of daily calories "appear[s] to be a 'safe' threshold of daily added sugar consumption, small enough not to overload the liver[.]" *Id.* ¶ 31. Above this threshold, risk of chronic diseases greatly increases. For example, scientific evidence shows "those who consumed between 10% - 24.9% of their calories from added sugars had a 30% greater risk of cardiovascular disease (CVD) mortality than those who consumed 5% or less of their calories from added sugar," while "those who consumed 25% or more . . . had an average 275% greater risk of CVD mortality," *id.* ¶ 68; *see also id.* ¶ 69 ("when compared to those who consumed approximately 8% of calories from added sugar, participants who consumed approximately 17% - 21% . . . had a 38% higher risk of CVD mortality, while the relative risk was more than double for those who consumed 21% or more of calories from added sugar").

**II.    Clif Markets and Labels the Products with Claims Intended to Convince Consumers that the Products are Healthy or Beneficial to Health**

"Clif is well aware that consumers prefer healthful foods and are willing to pay more for, and purchase more often, products marketed and labeled as being healthy." *Id.* ¶ 114.

Therefore, Clif employs a health and wellness marketing strategy that "attempts to distinguish its bars from competitors by claiming that 'Clif Bars are different from other bars' because they are 'crafted in a way that is good for people.'" *Id.* ¶ 118. "On its website,

Clif claims to 'believe in creating a healthier . . . food system' and states that '[o]ffering nutritious food is what we do, and like you, we care about what we put in our bodies.'" *Id.* ¶ 116. "Clif also boasts about having a 'dedicated food safety' staff that makes sure 'our products are nutritious.'" *Id.* ¶ 117. "In its attempts to portray its Products as healthful, Clif even created a "CLIF KID NUTRITION PACT," which states: "We believe that nutrition isn't just about what you put in your kids' bodies, *but also what you keep out*. The CLIF Kid Nutrition Pact is our promise to provide delicious snacks made of all the good stuff (*and none of the bad stuff*) active kids need to grow, develop, and thrive." *Id.* ¶ 120 (emphasis added).

As part of its health and wellness marketing strategy, "Clif employs claims on the labeling and packaging of [its] high-sugar bars (identified specifically *id.* ¶¶ 128, 135, 142, 149, 157) meant to appeal to consumers interested in healthful foods . . . ." *Id.* ¶ 122. For example, Clif labels its Clif Kid ZBars "Original" with the claims:

a.    "Nourishing Kids in Motion";

b.    "No High-Fructose Corn Syrup";

c.    "In raising our family, finding nutritious on-the-go snacks for our kids wasn't easy. That's why we created Clif Kid – wholesome, delicious snacks made with organic ingredients to keep kids going, growing, and exploring"; and

d.    "CLIF Kid Zbar['s] blend of carbs, fiber, protein, and fat gives kids energy so they can keep Zipping and Zooming along".

*Id.* ¶ 128. *See also id.* ¶¶ 135, 142, 149, 157 (specifically listing the representations challenged for each challenged Product).

"Clif has had great success using its health and wellness marketing strategy. According to its CEO, 'Clif Bar holds 33 percent of the market share in the health and lifestyle bar category, which is expected to grow to $6.2 billion by 2018.'" *Id.* ¶ 121.

Just as Clif intended, "[t]hese [labeling] claims convey that the [Products] are healthy or are conducive to good health and physical well-being," *id.* ¶¶ 136, 143, 150, 158.

### III. The Challenged Health and Wellness Claims are Misleading Given the Products' Added Sugar Content and Caused Plaintiffs' Injury

But these health and wellness claims "are deceptive because they are incompatible with the dangers of the excessive sugar consumption to which the Products contribute." *Id.* ¶ 122. "Despite the compelling evidence that sugar acts as a chronic liver toxin, detrimentally affecting health, and despite that as much as 37% of the calories in Clif's Kid ZBars and "Classic" Clif Bars (the "Products") come from added sugar, Clif markets these so-called "nutrition" bars with labeling and packaging claims that convey a health and wellness message with the goal of increasing the price and sales of its high-sugar "nutrition" bars. " *Id.* ¶ 2. "[A] single serving of the Original ZBar contains up to 100 percent of the AHA's Maximum Recommended Daily Intake (DI) of Added Sugars for children 4-8 years old and 48 percent for kids up to 18." *Id.* ¶ 126; *see also* ¶¶ 133, 140, 147, and 155 (describing high added-sugar content of other Products).

"Plaintiffs were exposed to, read, and relied upon Defendant's claims upon the Products' labeling and packaging that were intended to appeal to consumers, such as themselves, that are interested in health and nutrition and that convey a misleading health and wellness message or at least a message that the Products will not detriment health." *Id.* ¶ 179. But Plaintiffs were injured because "they did not receive what they paid for when purchasing the high-sugar Clif Products, *id.* ¶ 201, because "the Products were not as healthy as represented," *id.* ¶ 194.

## ARGUMENT

### I. Plaintiffs Satisfy Rule 9(b)'s Particularity Requirement by Identifying Each Challenged Labeling Claim, with Exemplars, Alleging Reliance on Those Claims, and Economic Injury

"Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Graham v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 3598, at *3 (N.D. Cal. Jan. 10, 2017) (quoting Fed. R.

Civ. P. 9(b)) (Donato, J.). "This means that '[a]verments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.'" *Id.* (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003))). In the false advertising class action context, "[t]he 'who' is [the defendant]. The 'what' is the statement [alleged to be misleading] The 'when' is [the time period when the misrepresentation was made which can be] alleged as . . . 'throughout the class period.' The 'where' is on the . . . [challenged products'] package labels. The 'how statements were misleading' is [plaintiff's theory of deception]." *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 U.S. Dist. LEXIS 57348, at *15 (N.D. Cal. May 26, 2011)*. See also Bruaner v. MusclePharm Corp.*, 2015 U.S. Dist. LEXIS 105515, at *31-32 (C.D. Cal. Aug. 11, 2015) (noting "[o]ther courts have reached similar conclusions in UCL, FAL, and CLRA claims sounding in fraud" and collecting cases).

In addition, where the misrepresentations are in printed form, courts recognize the particularity requirement is satisfied by "attaching representative samples of [the misleading] materials," *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1306 n.19 (S.D. Cal. 2003). *See also Ries v. Hornell Brewing Co.*, 2011 U.S. Dist. LEXIS 36845, at *12 (N.D. Cal. Apr. 4, 2011) ("Defendants' motion to dismiss will be denied to the extent that Plaintiffs' claims arise out of the alleged deceptive labeling of the products for which exemplary labels are appended to the complaint.").

Here, Plaintiffs satisfy Rule 9(b)'s particularity requirement by both alleging the who, what, when, where, and how of the misconduct charged, and also by attaching representative samples of the misleading Products' packaging and labeling. Specifically, Plaintiffs allege the who is defendant Clif, Compl. ¶ 13, the what are the Products' labeling claims expressly listed and alleged to be misleading, *id.* ¶ 128, 135, 142, 149, & 157, the when is "during the class period," *id.* ¶ 180, and the where is on the challenged Products' labeling and packaging, *id.* ¶ 2. Finally, Plaintiffs allege how the challenged statements were misleading, explaining that the challenged claims "convey that the [Products] are healthy or are

conducive to good health and physical well-being, which is misleading because that message is incompatible with the dangers of excessive sugar consumption to which the [Products] contribute," *id.* ¶ 129. This alone is sufficient. *See Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1126 (N.D. Cal. 2010)("[P]laintiffs have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used. As such, they have satisfied the requisite 'who, what, when, where, and how' of the misconduct charged."); *Ang v. Bimbo Bakeries USA, Inc.*, 2013 U.S. Dist. LEXIS 138897 at *9 (N.D. Cal. Sept. 25, 2013) ("[P]laintiffs have identified 'the who' as defendant and 'the when' as the timeframe for the class allegations. Plaintiffs have also identified with specificity the precise representations alleged to be illegal, fraudulent, and misleading, as well as the specific products on which that language is found.'").

Not only that, but Plaintiffs included "representative exemplars illustrating the challenged claims" for each challenged Product, Compl. ¶¶ 130, 137, 144, 151, & 160, which also satisfies the particularity requirement. *See Faigman v. AT&T Mobility LLC*, 2007 U.S. Dist. LEXIS 52192, at *14-17 (N.D. Cal. July 17, 2007) ("Because attaching representative samples satisfies the heightened particularity standard of Rule 9(b), plaintiffs' complaint meets the intermediate particularity standard at issue here.").

Nevertheless, Clif argues that "Plaintiffs have not pled their California law claims for relief sounding in fraud with sufficient specificity," Mot. at 13 (header capitalization omitted), specifically challenging Plaintiffs' allegations regarding injury, *id.* 14:7-23, and actual reliance, *id.* 14:24-15:16. But not only do Plaintiffs satisfy Rule 9(b)'s requirements as just described, Clif's arguments fail because they ignore Plaintiffs' key allegations relevant to reliance and injury.

First, Clif argues that Plaintiffs have not pled injury with the requisite specificity and therefore lack statutory standing under California's consumer protection statutes. Mot. at 14:7-23. But Clif's argument, which asserts Plaintiffs inadequately allege details regarding

their diets and any "increases [in] their risk of disease," *id.* at 14:16-23, misses the mark because the alleged injury is *economic* in nature. *See* Compl. ¶ 201 ("Plaintiffs and the Class lost money as a result of Defendant's deceptive claims and practices in that they did not receive what they paid for when purchasing the high-sugar Clif Products."); *id.* ¶¶ 195-197, 202. Thus, Plaintiffs need not allege anything about their dietary needs or habits, or the impact of consuming the Products to state an injury. *See Dabish v. Brand New Energy, LLC*, 2016 U.S. Dist. LEXIS 167783, at *8 (S.D. Cal. Nov. 23, 2016) ("Plaintiff need not allege consumption of the product. Nor, given the allegations, is Plaintiff required to allege that he did not experience any advertised benefits. The allegations do not pertain to allegations of benefits. The allegations pertain to mislabeling the products."). Simply put, details regarding Plaintiffs' diets or experience with the Products are not the "circumstances constituting fraud," Fed. R. Civ. P. 9(b), because "in the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the moment of purchase," *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 334 (2011).

Second, Clif asserts that "Plaintiffs have failed to allege their actual reliance on Clif Bar's allegedly fraudulent product claims," Mot. at 15, but this ignores each Plaintiffs' direct allegations of actual reliance on the claims challenged in this matter: "when deciding to purchase the high-sugar Products [Plaintiffs] read and relied on the following deceptive claims contained on the labeling and packaging of Products," Compl. ¶¶ 181, 184, & 187 (specifically listing each challenged labeling statement each Plaintiff relied upon).

In short, Plaintiffs "clearly specif[y] the core message of the advertising campaign, and . . . this combined with specific examples of the allegedly fraudulent advertising is sufficient to give defendants adequate notice for purposes of 9(b)." *In re Oreck Corp.*, 2012 U.S. Dist. LEXIS 172869, at *42-43 (C.D. Cal. Dec. 3, 2012). *See also Vicuña v. Alexia Foods, Inc.*, 2012 U.S. Dist. LEXIS 59408, at *4 (N.D. Cal. Apr. 27, 2012) ("[T]he gist of the claims sounding in fraud is that plaintiffs were deceived by the designation "All Natural" on the packages . . . they purchased . . . . This is sufficient to put Alexia on notice of the

claims asserted against it.").

## II. Plaintiffs' Allegations of Economic Injury Constitute Injury-In-Fact Under Article III

Clif also challenges Plaintiffs' allegations of injury under Article III, asserting "Plaintiffs do not plead specific facts, as they must, of any cognizable injury." Mot. at 8:27. Clif is wrong.

It is axiomatic that "[o]verpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing," *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d. 840 , 847 (N.D. Cal. 2012). *See also Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (Allegations that plaintiffs "spent money that, absent defendants' actions, they would not have spent," constitute "a quintessential injury-in-fact."); *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing.").

Here each Plaintiff alleges that they "read and relied" upon the challenged health and wellness claims, Compl. ¶¶ 181, 184, 187, that they "would not have purchased the Clif Products if they knew that their labeling claims were false and misleading in that the Products were not as healthy as represented but actually harm health," *id.* ¶ 194. Plaintiffs further allege the challenged products "cost[] more than similar Products without misleading labeling," *id.* ¶ 195, and "Plaintiffs and the Class lost money as a result of Defendant's deceptive claims and practices in that they did not receive what they paid for when purchasing the high-sugar Clif Products," *id.* ¶ 201.

"Notably, several other courts within this district have found similar allegations sufficient for the purposes of alleging 'injury in fact.'" *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 962 (N.D. Cal. 2013) (finding allegations of "economic injury based on the following: (1) purchasing products he would not have otherwise purchased had he known the truth about Defendants' "unlawful labeling practices and actions," and (2) paying an 'unwarranted

premium" due to Defendants' false and misleading labels" sufficient and collecting cases."). *See also Jones v. Conagra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (finding that plaintiffs sufficiently alleged injury, and thus have standing, because they "sufficiently alleged that they paid an 'unwarranted premium' for the allegedly mislabeled products" and "Plaintiffs alleged that had they been aware that the labeling was inaccurate, they would not have purchased Defendant's products.").

Despite admitting that Plaintiffs "claim they overpaid for the challenged products due to Clif Bar's supposed deception," Mot. at 8:27-28, Clif argues that "[i]f Plaintiffs cannot plead specifically how Clif Bar products contain excessive added sugar, then there is no link to studies indicating a possible increased risk of disease, the 'healthy' aura product claims were not deceptive, and Plaintiffs suffered no cognizable injury," *id.* at 9:7-9. But Plaintiffs allege they paid more than they would have absent Clif's false advertising and mislabeling. Thus:

> The injury alleged here is the *purchase* of food products that contain an ingredient that the plaintiffs find objectionable. Had they known [the truth], they insist, they would not have purchased the product. Defendant's health-based harm argument misses the mark, as plaintiffs have adequately alleged an injury directly related to the redress they seek.

*Chacanaca*, 752 F. Supp. 2d at 1125 (emphasis in original) (finding injury in fact based on "the purchase of food products that contain an ingredient the plaintiffs find objectionable" and which they otherwise "would not have purchased").

In support of its argument that Plaintiffs "do[] not satisfy the 'injury in fact' requirement as [they] do[] not allege any physical harm caused by eating the [products]," defendant "cite[s] to *Boysen v. Walgreen Co.*, [2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012)]" "in which Judge Illston dismissed for lack of Article III standing a complaint brought by a purchaser of fruit juice who claimed injury attributable to trace amounts of lead and arsenic." *Brazil*, 935 F. Supp. 2d at 961. But in that case, "Judge Illston dismissed the complaint because '[plaintiff] does not allege that had defendant's juice been differently labeled, he would have

purchased an alternative juice . . . plaintiff only alleges that he purchased and consumed the fruit juices, but that the levels of lead and arsenic in defendant's product were unsatisfactory to him.'" *Id.* In other words, while "defendant argues plaintiffs have categorically failed to plead any health-related ailment or impact from consumption of the [challenged] snacks. Plaintiffs correctly point out that the particular harm for which they seek redress is not health related. Rather, their claims sound in deception, unfairness and false advertising." *Chacanaca*, 752 F. Supp. 2d at 1125.

In reality, Clif's argument, which is premised on the assertion that Plaintiffs have "failed . . . to show excessive added sugars," Mot. at 9:17, is really an argument "that plaintiffs have no actionable claims. However, that is not the same as finding no standing." *Astiana*, 2011 U.S. Dist. LEXIS 57348, at \*13. Further, as explained in detail below, contrary to Clif's assertions, several courts have already held that allegations that products bearing health and wellness claims are deceptive when they contain excessive added sugar are actionable.

Accordingly, because Plaintiffs allege they purchased the challenged products relying on the challenged health and wellness claims and would not have purchased the Products had they known they were not as beneficial as represented, they have shown economic injury-in-fact. *See Degelmann v. Advanced Med. Optics Inc.*, 659 F.3d 835, 839 (9th Cir. 2011) (where "the class representatives, averred that they bought MoisturePlus, relying on the representation that it would disinfect their lenses, and would not have bought it had they known how poorly it actually worked. They have shown injury in fact, economic harm.").

**III.    Plaintiffs Plausibly Allege the Challenged Health and Wellness Claims are Likely to Deceive the Reasonable Consumer in Light of the Products' Added Sugar**

The UCL, FAL, and CLRA "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (alterations omitted). This objective, "reasonable consumer"

test requires only that a plaintiff "show that 'members of the public are likely to be deceived.'" *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation omitted). At the pleading stage, the focus is on whether a plaintiff alleging deceptive advertising might *possibly* show a reasonable consumer is likely to be deceived. *See Williams*, 552 F.3d at 939 (even just "potential deception" defeats a motion to dismiss). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (quoting *Williams*, 552 F.3d at 938). Only where an "alleged misrepresentation, in context, is such that no reasonable consumer could be misled," may the claim be dismissed. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)

**A.  Based on Extensive Citations to Scientific Evidence, Plaintiffs Plausibly Allege the Amount of Added Sugar in the Clif Products is Unhealthy**

Between 17 and 37% of calories in each Clif Product come from added sugar. *See* Compl. ¶¶ 127, 134, 141, 148, 156 (tables listing total amount and percentage of calories from added sugar). Plaintiffs allege that "[a] vast body of reliable scientific evidence establishes that excessive consumption of added sugar—any amount above approximately 5% of daily caloric intake— is toxic to the human body and greatly increases the risk of cardiovascular disease, diabetes, liver disease, and a wide variety of other chronic diseases." *Id.* ¶ 1. In support of this allegation, Plaintiffs cite to *dozens* of peer-reviewed studies and meta- analyses. *See id.* ¶¶ 14-109. For example, scientific evidence shows "those who consumed between 10% - 24.9% of their calories from added sugars had a 30% greater risk of cardiovascular disease (CVD) mortality than those who consumed 5% or less of their calories from added sugar." *Id.* ¶ 68.

Clif challenges the studies relied upon by Plaintiffs on the basis that "[n]one of the source material relied on by Plaintiffs references Clif Bar products specifically," Mot. at 12:2, and that "the Clif Bar products at issue contain a variety of nutritious ingredients . . . that distinguish them from the products studied in Plaintiffs' sources," *id.* at 12:13-15. But

the courts in *Hadley* and *Krommenhock* held—*based on the same studies* and allegations that health and wellness claims on breakfast cereals and bars were misleading—"plaintiffs have plausibly alleged that added sugar created health risks such that [Defendant's] 'health' claims were misleading," *Krommenhock*, 255 F. Supp. 3d at 947 ("relevant studies supporting plaintiffs' theory (at least in part) have been alleged, and determining the full extent of that support is not appropriate on a motion to dismiss"). As Judge Koh explained:

> The Court finds that Plaintiff has adequately alleged that Defendant's products are unhealthy due to excess added sugar for the purposes of the instant motion to dismiss. . . . Plaintiff provides scientific studies that link added sugar to cardiovascular disease, metabolic syndrome, and diabetes. At least one cardiovascular study states that "mortality increased exponentially with increasing [the] usual percentage of calories from added sugar." . . . Moreover, Plaintiff alleges that Defendant's products are composed of 18% to 40% added sugar by calorie or 9 to 16 grams of added sugar per serving. Thus, at the very least, Plaintiff has alleged that eating Defendant's products would require the individual to eat lower sugar foods throughout the rest of the day to maintain a daily percentage of added sugar intake that is below the two thresholds for added sugar mentioned in the instant suit, the 5% AHA recommendation and the FDA's 10% DRV.

*Hadley v. Kellogg Sales Co.*, 2017 U.S. Dist. LEXIS 128061, at *22-23 (N.D. Cal. Aug. 10, 2017) ["*Hadley II*"].

Clif also argues Plaintiffs' excessive added sugar allegations are implausible by misconstruing Plaintiffs' allegations as "depend[ing] on the premise that any product with *any amount of added sugars could be harmful to health*, could not be nutritious, and should have to contain a disclosure that it was 'harmful' or 'detrimental to health,'" Mot. at 11:10-12 (emphasis added). Contrary to this misconstruction, Plaintiffs expressly recognize that "there does appear to be a 'safe' threshold of daily added sugar consumption, small enough not to overload the liver: approximately 5% of calories," Compl. ¶ 31. Moreover, Clif's assertion that "the amount of added sugars in the Clif Bar products fall below both the controlling FDA Daily Value for added sugars and the AHA recommendations," Mot. at 11, fails because Plaintiffs allege each of the Products between 17 and 37% of calories come

from added sugar, *see id.* ¶¶ 127, 134, 141, 148, 156. "Thus, at the very least, Plaintiff[s] ha[ve] alleged that eating Defendant's products would require the individual to eat lower sugar foods throughout the rest of the day to maintain a daily percentage of added sugar intake that is below the two thresholds for added sugar mentioned in the instant suit, the 5% AHA recommendation and the FDA's 10% DRV." *Hadley II*, 2017 U.S. Dist. LEXIS 128061, at *22-23 (citing *In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ("holding that the plaintiff adequately alleged that Nutella was unhealthy because the plaintiff alleged that even though a single serving constituted only 30% to 50% of the DRV for fat it 'creat[ed] the high probability that the child w[ould] therefore exceed his or her recommended daily allowance' of fat.")).

Further, both *Krommenhock* and *Hadley II* rejected that the FDA Daily Value sets a controlling standard. In rejecting the argument that "Plaintiff seeks to enforce the AHA's 5% recommendation for daily added sugar consumption and give it the 'force of law' in place of the FDA's 10% DRV," Judge Koh explained "the Court need not adopt a 5% 'standard' for added sugar to find Plaintiff's allegations to be adequate" because "[w]hile AHA and FDA recommendations may be relevant to the issues in this case, the case is not about whether 5% or 10% of calories from added sugar is a more reasonable threshold for a daily sugar consumption limit, but whether it is misleading for [Defendant] to label foods with the challenged health and wellness claims when 20%-40% of their calories come from added sugar." *Hadley II*, 2017 U.S. Dist. LEXIS 128061, at *25-26. Thus, both the FDA and the AHA provide "relevant evidence, but does not carry the force of law." *Id.*, at *26.

> *The FDA's rulemaking on the 10% DRV did not establish that added sugar in the amounts in Defendant's products was healthy*. In its rulemaking, the FDA stated that "[w]e disagree that the DRV for added sugars should be lower than 10 percent of calories or that there is adequate evidence at this time to set a DRV for percent of calories or that there is adequate evidence at this time to set a DRV for added sugars of less than 5 percent of calories." 81 Fed. Reg. at 33849. *This decision was not necessarily based on the healthiness of consuming less than 10% of one's daily calories as added sugar*. Instead, the

14

FDA stated: "A DRV of 10 percent of total calories provides a value that is <u>more realistic considering</u> <u>current consumption of added sugars</u> in the United States as well added sugars in the food supply." Id. (emphasis added). Thus, the FDA's decision to create a 10% DRV was not necessarily based on healthiness, but was based on realistic goals for American consumer consumption of added sugar. Accordingly, *the FDA's 10% DRV need not be adopted as the definitive threshold for what amount of added sugar in a product is or is not healthy.*

*Id.*, at *26-28 (italicized emphasis added) (record citations omitted). *See also Krommenhock*, 255 F. Supp. 3d at 953-54 ("That plaintiffs rely in part (and not exclusively) on the AHA 5 percent recommendation to provide a plausible scientific basis for their allegations that consuming excess amounts of added sugars creates significant health risks does not mean those claims are preempted because the FDA chose not to set its DRV at 5 percent . . . .").

Next, Clif argues Plaintiffs' claims are implausible because "[a] reasonable consumer would know that the challenged products contained added sugars." Mot. at 11. But Plaintiffs' claims do not depend upon allegations that consumers believed that the Products contained no added sugar. Plaintiffs "are not arguing the label deceived them of the true [added sugar] content; rather, 'they allege [the Product's] labeling claims mislead [sic] them into believing the product was healthy *notwithstanding* its [added sugar] content." *See Boswell v. Costco Wholesale Corp.*, 2016 U.S. Dist. LEXIS 73926, at *23 (C.D. Cal. June 6, 2016) (emphasis in original) (that the product listed saturated fat content did not render claims that product was healthy nonmisleading as a matter of law). *See also Hunter v. Nature's Way Prods., LLC*, 2016 U.S. Dist. LEXIS 107092, at *19 (S.D. Cal. Aug. 12, 2016) ("Representations made on the label of the coconut oil products may be misleading and deceptive even though the representations do not directly contradict the ingredients listed on the label.")

Finally, that the "*total* sugars are disclosed in the nutrition panel," Mot. at 11, does not render Plaintiffs' claims implausible. Plaintiffs allege that the "reasonable consumer is unaware of the extent to which consuming high amounts of added sugar, in any form, adversely affects [health], or what amount of sugar might have such an effect." Compl. ¶ 192. Thus, disclosing the amount of total sugar *does not cure the misleading health and wellness*

*message. See Krommenhock*, 255 F. Supp. 3d at 964 n.32 ("The fact that for some of the products, the sugar content is also shown on the front panel in a banner at the top of the box, may undercut the strength of plaintiffs' claims as to those particular boxes, but it is premature to make that determination at this juncture."); *Boswell*, 2016 U.S. Dist. LEXIS 73926, at *23 (rejecting argument that "Plaintiffs could not have reasonably relied on the label given the disclosure of the saturated fat content" because it is "premised on the notion that disclosure of the saturated fat content on the label necessarily means a reasonable consumer could not have been deceived. The Court disagrees.").

## IV. Plaintiffs' Claims are Not Expressly Preempted

### A. In Seeking to Invalidate Plaintiffs' Claims, Clif Bears a "Considerable Burden" of Overcoming the Strong Presumption Against Preemption

There are two "cornerstones" of preemption jurisprudence:

> First, the purpose of Congress is the ultimate touchstone in every pre-emption case. . . . Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations, citations and alterations omitted). This presumption demands that courts give preemption statutes "narrow reading[s]." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992). Where there are "plausible alternative reading[s]" of an express preemption provision, courts "have a duty to accept the reading that disfavors pre-emption." *Bates v. Dow Agro., LLC*, 544 U.S. 431, 449 (2005).

"[C]onsumer protection laws . . . are within the states' historic police powers and therefore are subject to the presumption against preemption. Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008) ["*Salmon Cases*"] (internal quotations, citation and alterations omitted). Thus, "[t]he

16

presumption against preemption in this case is a strong one," *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013), and Clif "bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law," *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (quotations omitted).

**B.    Plaintiffs' Claims are Not Preempted Because they Challenge Voluntary Statements as "Misleading," Which Both Federal and State Laws Prohibit**

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA"), empowers the FDA to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," *id.* § 393(b)(2)(A). The Act prohibits the distribution and sale of misbranded foods. *Id.* §§ 331(a)-(c), (g), (k). Foods are misbranded when they meet one of the definitions for misbranding under § 343, including where their labels are "***false or misleading in any particular***," *id.* § 343(a)(1) (emphasis added).[1]

While the NLEA, which modified the FDCA, preempts states from imposing "any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" set forth in the statute, 21 U.S.C. § 343-1(a), it also contains a savings clause which states that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343- 1(a)] of the [FDCA]." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (1990), 21 U.S.C. § 343-1 note (1). "Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." *Chacanaca*, 752 F. Supp. 2d at 1118.

---

[1] Food products are also considered misbranded where they make nutrient content or health claims in violation of the Act and its implementing regulations, *id.* § 343(r), however, the challenged claims are neither nutrient content claims nor health claims and Clif does not assert that they are. *See* Mot. at 6-8 (neither mentioning nutrient content claims under 21 C.F.R. § 101.13 nor health claims under 21 C.F.R. § 101.14). *See also Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1142 (C.D. Cal. 2010) ("If Plaintiffs are correct that the phrases 'Made with Real Vegetables' and 'Made with Real Ginger and Molasses' are not implied nutrient claims within the regulatory meaning, and are not subject to the 'disqualifying' nutrient levels set out in C.F.R. §§ 101.13(h)(1), 101.14(a)(4), there would be no obvious argument for express preemption.").

17

> This means that plaintiffs' claims need not fail on preemption grounds *if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments* or do not involve claims or labeling information of the sort described in sections 343(r) and 343(q). . . . [because] then the NLEA's express preemption provision would not in the ordinary circumstance come into play.

*Id.* at 1119 (emphasis added).

Here, Plaintiffs allege that "Clif's deceptive statements violate N.Y. Agric. & Mkts. Law § 201, Cal. Health & Safety Code § 109875 [*et seq.*], *and 21 U.S.C. § 343(a)*, which *all* deem a food product misbranded when its label is 'false or misleading in any particular.'" Compl. ¶ 175 (emphasis added). *See* 21 U.S.C. § 343(a)(1) ("A food shall be deemed to be misbranded—If (1) its labeling is false or misleading in any particular . . . ."); Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."); N.Y. Agric. & Mkts. Law § 201 ("Food shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular."). *See also Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1023 (N.D. Cal. 2013) ("the FDCA and California law contain *identical* prohibitions on false or misleading labeling" (citations omitted)).

Because Plaintiffs' claims seek to enforce the *identical* requirements of the FDCA, California's Sherman Law, and New York's Agriculture and Marketing Law—that "food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular"— they are not preempted, *see Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("The NLEA does not preempt state law-based causes of action that are identical to the federal labeling requirements.").

Finding Plaintiffs' claims preempted would contravene the NLEA's promise that "[t]he only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements on matters that are covered by [21 U.S.C. § 343-1]." 60 Fed. Reg. 57,120, 57,120 (Nov. 13, 1995). "Congress presumably chose to include § 343(a) in the statutory scheme in order to allow FDA to target specific false or misleading labels without having promulgated regulations that address the specific false or misleading

18

aspect of the particular label." *Zupnik v. Tropicana Prods.*, 2010 U.S. Dist. LEXIS 142060 at *6 (C.D. Cal. Feb. 1, 2010). Thus, in *Zeisel v. Diamond Foods, Inc.*, 2010 U.S. Dist. LEXIS 141941 at *7 (N.D. Cal. Sept. 3, 2010), the court held that "claims premised upon allegations that a label is 'false or misleading in any particular' do not fall within the scope of Section 343-1(a)," so that "[b]ased on the plain language of Section 343-1(a) . . . . to the extent [plaintiff's claims] allege [defendant's] labels are false or misleading, they are not expressly preempted by the NLEA," .

Nevertheless, Clif asserts Plaintiffs' claims are preempted. But "[p]reemption is an affirmative defense, not an element of Plaintiffs' claims," and thus Clif "bears the burden of establishing that preemption applies," *Trazo v. Nestle USA, Inc.*, 2013 U.S. Dist. LEXIS, 113534 at *17 (N.D. Cal. Aug. 9, 2013), which it fails to do.

### 1.     There is no express preemption

First, Clif asserts that "Plaintiffs seek to impose labeling requirements that are expressly preempted by operation of 21 U.S.C. Section 343-1(a)(4), which preempts state laws 'not identical to' the food labeling required by 21 U.S.C. Section 343(q)." Mot. at 6. But § 343(q) and the FDA's "new final regulations amending th[ose] labeling requirements," Mot. at 7, only "govern[] the familiar 'nutrition facts' box," *Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 78607, at *11-12 (S.D. Cal. May 9, 2018). Because the claims Plaintiffs challenge all occur *outside of the nutrition facts box*, they are not implicated by section 343(q) and thus cannot be preempt by the provisions of section 343(q). *See Chacanaca*, 752 F. Supp. 2d at 1118 ("plaintiffs' claims need not fail on preemption grounds if . . . [they] do not involve claims or labeling information of the sort described in sections 343(r) and *343(q)*" because "the  NLEA's  express preemption provision would not in the ordinary circumstance come into play." (emphasis added)). *See also Reid*, 780 F.3d at 960 (explaining that regulations and requirements regarding "the familiar 'Nutrition Facts' box" are distinct from the requirements and regulations regarding statements outside the Nutrition Facts box, and thus, for example, "a requirement to state certain facts in the nutrition label

is not a license to make that statement elsewhere on the product").

Second, Clif asserts Plaintiffs' claims require "warning labels or disclaimers on products containing added sugars" and that this is preempted because the "FDA **explicitly rejected**" such requiring such warnings or disclaimers. Mot. at 7:22-23. But Judge Orrick recently rejected this exact argument in a similar "added sugar" case, explaining that

> The FDA's failure to "revise its rule" to adopt the label warnings suggested by a few commentators, however, does not mean that a 'failure to warn' type of claim suggested by plaintiffs is expressly preempted, absent evidence that consideration of this type of affirmative warning was the focus of the FDA's rulemaking. It appears that the FDA's focus was updating the Nutrition Facts Panel to disclose added sugars and include a DRV.

*Krommenhock* 255 F. Supp. 3d at 955.

Again, the proposals the FDA rejected were all linked to the new requirement for an added sugar disclosure *in the Nutrition Facts box*. The FDA noted it has never done this for any nutrient. *See* 81 Fed. Reg. at 33,829. Of course, there are an infinite number of regulations FDA could have enacted, but did not. The absence of a regulation does not have preemptive force. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 286 (1995). Instead, "plaintiff's claims, if proved, 'would simply require Defendant to truthfully state'" material information, "or not sell its products; such relief would not impose a state requirement that is 'different from or in addition to, or that is otherwise not identical with' that of the FDCA." *See Fagan v. Neutrogena Corp.*, 2014 U.S. Dist. LEXIS 2795 at *3 (C.D. Cal. Jan. 8, 2014) (quotation omitted).

Moreover, Plaintiffs do not allege Clif was obligated to warn merely because its bars have excessive sugar levels, but because Clif *affirmatively misrepresented that the Products are healthy or beneficial to health* through labeling statements *outside the Nutrition Facts box* in violation of 21 C.F.R. § 1.21(a)(1).[2] *See Krommenhock*, 255 F. Supp. 3d at 955

---

[2] *See* Compl. ¶ 177 ("Clif's health and wellness statements challenged herein also "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1).").

20

(Plaintiffs "'do not allege Post was obligated to warn merely because its cereals have excessive sugar levels, but because Post affirmatively misrepresented that the cereals are healthy through labeling statements outside the Nutrition Facts Panel.' . . . this type of consumer protection claim is not expressly preempted."). Nothing about the FDA declining to require a particular proposed warning in the Nutrition Facts box preempts Plaintiffs' claims that a duty to warn arose here as a result of Clif's affirmative misrepresentations. *See Ebner v. Fresh*, 838 F.3d 958, 964 (9th Cir. 2016) (rejecting argument that claim was preempted by absence of FDA regulation imposing disclosure requirement on cosmetics manufacturers).

## 2. There is no conflict preemption

Finally, Clif contends Plaintiffs' claims are conflict preempted. Mot. at 8 "[T]here are two types of conflict preemption: (1) impossibility preemption and (2) obstacle preemption." *Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 808 (N.D. Cal. 2015). Clif invokes only the latter. *See* Mot. at 8. "Obstacle preemption arises where 'the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. [ ] What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'" *Sciortino*, 108 F. Supp. 3d at 808 (internal citation and quotation omitted).

Clif's conflict preemption argument asserts "Plaintiffs here seek to alter the federal Daily Value for added sugars standard based on unfounded conclusions, contrary to law, that Clif Bar Products are not part of a 'healthy dietary pattern' even though the products easily meet the added sugars Daily Value recommendation of 10% of an average 2,000 calorie diet, as explained below." Mot. at 8. But the FDA's objective in regulating an added sugar disclosure was "to provide information to assist consumers with food purchases that can reduce their intake of added sugars and enable them to achieve a healthy dietary pattern," "characterized in part by lower amounts of added sugars," which is "strongly associated with a reduced risk of chronic disease." 81 Fed. Reg. at 33,762. Thus, rather than stand as an

obstacle, requiring Clif to disclose additional material information when affirmatively misrepresenting its Products are healthy furthers the objectives of the added sugar rulemaking. The same is true of FDA's setting a DRV for sugar at 10% of calories, rather than 5%. *See* Mot. at 12. That the science shows consuming 5% or more calories from sugar renders Clif's health and wellness claims misleading does not stand as an obstacle to FDA's objective of "reduc[ing] . . . intake of added sugars and enabl[ing] [consumers] to achieve a healthy dietary pattern." Thus, FDA's recent rulemaking "should not lightly be construed to 'sweep away' state laws concerning health and safety, which are matters traditionally subject to state regulation." *See Sciortino*, 108 F. Supp. 3d at 811 (citations omitted).

For these reasons, Judge Orrick rejected this same argument in *Krommenhock*, explaining that plaintiffs "merely seek to hold Post liable for its false and misleading health and wellness claims in light of the products' added sugar; an area that has not been subject to federal rulemaking. These claims are not subject to conflict preemption." 255 F. Supp. 3d at 958.

Accordingly, Plaintiffs' claims challenging voluntary statements outside of the Nutrition Facts box on the basis that they are false or misleading are not preempted. *See Hitt v. Ariz. Beverage Co., LLC*, 2009 U.S. Dist. LEXIS 16871 at *12 (S.D. Cal. Feb. 4, 2009) ("the breadth of the FDCA and FDA's regulatory labeling scheme does not support a finding of express preemption, which requires explicit statutory language preempting Plaintiff's claims").

## V. Plaintiffs State Claims for Breach of Warranties

### A. Plaintiffs State Claims for Breach of Express Warranties

Breach of express warranty requires: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (quotation omitted); Cal. Com. Code § 2313(1)(a)-(b). "The determination as to whether a particular statement is an expression of opinion or an

affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21, 220 Cal. Rptr. 392 (Ct. App. 1985). As such, "[c]ourts liberally construe sellers' affirmations of quality in favor of injured consumers." *Allen v. Hylands, Inc.*, 2012 U.S. Dist. LEXIS 61606, *8 (C.D. Cal. May 2, 2012).

Here Plaintiffs allege "[t]hrough [the] labeling of the high-sugar Products, Clif made affirmations of fact," Compl. ¶ 249 (citing ¶¶ 128, 135, 142, 149, and 157), including that the Products are "nutritious," "nourishing" and "wholesome," *id.* ¶ 128, [t]hese representations were "part of the basis of the bargain," *id.* ¶ 249, and that "Clif breached its express warranties by selling Products that are harmful to health," *id.* ¶ 250.

Courts have repeatedly found that plaintiffs state breach of warranty claims by alleging products are labeled as either "nutritious," "nourishing," or "wholesome," but are actually unhealthy due to certain ingredients such as added sugar, saturated fat, or trans fat. *See Jones v. Nutiva, Inc.*, 2016 U.S. Dist. LEXIS 129898, at *24-25 (N.D. Cal. Sep. 22, 2016) (denying motion to dismiss breach of express warranty claims where plaintiff alleged defendant breached warranties that the coconut oil product was "nourishing," "nutritious," and a "Superfood," because it was actually "inherently unhealthy" due to saturated fat content); *Krommenhock v. Post Foods, LLC*, 2018 U.S. Dist. LEXIS 42938, at *35 (N.D. Cal. Mar. 15, 2018) (plaintiff stated breach of express warranty claims based on labeling claim that products were either "healthy" or "nutritious" when they were actually unhealthy due to excessive sugar content); *In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (allegations that defendant warranted a product to be "a healthy and balanced breakfast" and breached this warranty because the product was not "healthy" nor "nutritious" was sufficient to state breach of warranty claims); *Atik*, 2016 U.S. Dist. LEXIS 136056, at *44 (denying "defendants motion to dismiss Plaintiffs' breach of express warranty claims under New York and California law" finding that defendants' representations "regarding [the Products'] wholesome nature is sufficient to constitute an express warranty.'").

Clif asserts "Plaintiffs' express warranty claim is based on Clif Bar's alleged breach of a promise to provide "healthy" products" but "no such promise was affirmatively made and no such promise was breached." Mot. at 13. But that the challenged claims in paragraphs 128, 135, 142, 149, and 157 convey that the Products are healthy and beneficial to health without using that exact term does not defeat Plaintiffs' breach of warranty claims. *See In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (allegations that defendant warranted a product to be "a healthy and balanced breakfast" and breached this warranty because the product was not a "healthy" nor "nutritious" was sufficient to state breach of warranty claims); *Allen v. ConAgra Foods, Inc.*, 2013 U.S. Dist. LEXIS 125607, at *37-38 (N.D. Cal. Sept. 2, 2013) ("Courts in this district have previously found that plaintiffs stated express warranty claims based on allegedly misleading food labeling."). *See also Allen v. ConAgra Foods, Inc.*, 2013 U.S. Dist. LEXIS 125607, at *37-38 (N.D. Cal. 2013) ("Courts in this district have previously found that plaintiffs stated express warranty claims based on allegedly misleading food labeling.").

Moreover, courts in this district regularly hold that stating a claim under California's consumer protection statutes' reasonable consumer standard is sufficient to state a claim for express warranty. *See Tsan v. Seventh Generation, Inc.*, 2015 U.S. Dist. LEXIS 149042 at *19 (N.D. Cal. Nov. 3, 2015) (finding that because the plaintiffs had satisfied the reasonable consumer standard with respect to their California consumer protection claims, the same "allegations [we]re sufficient to state a claim for breach of express warranty" (citing *Garrison v. Whole Foods Market Grp., Inc.*, 2014 U.S. Dist. LEXIS 75271 at *24 (N.D. Cal. June 2, 2014))). Thus, Clif's motion should be "denied for the same reasons as the consumer protection and misrepresentation-based claims addressed above," *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014).

## B. Plaintiffs State Claims for Breach of Implied Warranties

Clif challenges Plaintiffs' implied warranty allegations, asserting that "Plaintiffs' implied warranty claims require a showing that the product at issue lacks 'the most basic

degree of fitness of ordinary use.'" Mot. at 13 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009)). But this incorrectly assumes that Plaintiffs' implied warranty claims are based on the Products' fitness for their ordinary purpose, when in fact Plaintiffs' implied warranty claims stem from the Products' failure to "conform to promises and affirmations made on the container or label," (Compl. ¶¶ 257, 281). Under both California and New York law (which are both based on the UCC), for a product to be merchantable not only must it be fit for its ordinary purpose, but also "conform to the promise or affirmations of fact made on the container or label" Cal. Com. Code § 2314(2)(f); N.Y. U.C.C§ 2-314(2)(f). Thus, "[a]lthough [defendant] argues that [the product] is fit for its ordinary purpose of consumption, Plaintiffs are bringing their claim under a different definition of merchantability, whether the product conforms with 'the promises or affirmations of fact made on the container or label.'" *In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (Cal. Com. Code § 2314(2)(f)). Because Plaintiffs "bring [their] claim under a different definition of merchantability," the Court should "decline[] to dismiss Plaintiff[s'] claim[s] for breach of the implied warranty of merchantability," *id. See also Bronson v. Johnson & Johnson, Inc.*, 2013 U.S. Dist. LEXIS 54029, at *35 (N.D. Cal. Apr. 16, 2013) ("Where plaintiffs challenge food labels that are not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty claims.").

## CONCLUSION

The Court should deny Clif's motion; but if the Court grants the motion to any extent, Plaintiffs request it be without prejudice and with an opportunity to amend.

Dated: June 14, 2018

Respectfully Submitted,

/s/ Paul K. Joseph

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd., No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Attorneys for Plaintiffs and the Proposed Class***