1  Robert S. Niemann, SBN 87973
   niemann@khlaw.com
2  Christopher Van Gundy, SBN 152359
   vangundy@khlaw.com
3  **KELLER AND HECKMAN LLP**
   Three Embarcadero Center, Suite 1420
4  San Francisco, CA 94111
   Telephone: 415-948-2831
5
6  Attorneys for CLIF BAR & COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MILAN, SARAH AQUINO and ELIZABETH ARNOLD, et al.,<br><br>　　Plaintiffs,<br><br>vs.<br><br>CLIF BAR & COMPANY,<br><br>　　Defendant. | Case No. 18-cv-02354-JD<br><br>**REPLY MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CLIF BAR & COMPANY'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date: July 5, 2018<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Hon. James Donato |

Defendant Clif Bar & Company ("Clif Bar") hereby respectfully submits this reply memorandum of points and authorities in support of its motion to dismiss the Complaint with prejudice.

## I. **INTRODUCTION**

Plaintiffs' claims are nothing short of absurd in that they ask this Court: to overrule the U.S. Food and Drug Administration's ("FDA") determination that consuming up to 10% of total daily calories from added sugar ("DV" or "Daily Value") is consistent with "healthful dietary patterns"; to substitute the American Heart Association's ("AHA") recommendations of no more than 5% of total daily calories in added sugars as a "safe threshold"; and to find Clif Bar nevertheless liable for deception even though the added sugars in its products are below the 5% "safe threshold" merely because consumers may eat *other* products also with added sugars and *may* exceed Plaintiffs' "safe 5% threshold" for added sugars in the total diet. Plaintiffs' allegations all fail because they have not pled, as they must, the *how* of deception and breach of warranty, namely, *how* Clif Bar products supposedly contain unsafe levels of "excessive added sugar" that render the truthful "healthy claims" deceptive or in breach of a particular warranty. For similar reasons, the Complaint is fatally defective because the claims are not plausible where Plaintiffs cannot explain: how Plaintiffs were deceived as to the presence and amount of added sugars where they purchased energy bars with names like "Chocolate Brownie," and where the challenged products in fact contain added sugars at less than Plaintiffs' self-declared "safety threshold" of 5% of total daily calories.

The only thing "excessive" in this case is Plaintiffs' 26-page brief that is overlength by 11 pages per the Court's standing order. Plaintiffs claim the Complaint is sufficiently specific because: they cite to copious studies (typically involving sugar-sweetened beverages not at issue here) that supposedly demonstrate the ill-effects of excessive added sugars; they refer to illustrations of the product labeling that is being challenged; they identify the dates of product purchases, etc. None of this bears on the question of *how* Clif Bar products compliant with Plaintiffs' own suggested safety threshold, and falling well under FDA's Daily Value for added sugars established to "maintain healthful dietary patterns," nevertheless contained *excessive* added sugars that rendered the "healthy claims" deceptive.

The Court can and should dismiss the Complaint for lack of subject matter jurisdiction as well because Plaintiffs have not alleged sufficient injury and because their claims are subject to express and conflict preemption. The fact that Plaintiffs claim they overpaid for the challenged product does not

satisfy standing requirements unless they explain, as they have not, the deception that supposedly resulted in the overpayment. Moreover, to the extent Plaintiffs claim that Clif Bar's "high-sugar" product results in their consuming excessive added sugars due to also eating other products with added sugars, circumstances distinctly within their control, they also lack the requisite injury for standing.

Finally, and perhaps most important, Plaintiffs' claims are subject to express and conflict preemption because they seek a determination from this Court rejecting FDA's determination, based on the available scientific evidence, that consuming added sugars up to 10% of total daily calories is consistent with "healthful dietary patterns." FDA could not challenge Clif Bar's alleged "healthy" claims based on added sugar levels where, as Clif Bar here has demonstrated based on the very allegations of the Complaint, the added sugars in the challenged products are well under the 10% Daily Value, yet that is exactly what Plaintiffs purport to do, contrary to federal law. In promulgating its regulations pursuant to 21 U.S.C. Section 343(q), FDA already considered the arguments now made by Plaintiffs that the 10% Daily Value for added sugar is not "healthy," and that there should warnings in labeling as to the alleged dangers of excessive added sugars, but rejected them, as this Court should as well.

## II. ARGUMENT

### A. ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NOT PLEAD WITH THE REQUISITE SPECIFICITY AND WITH PLAUSIBILITY THE BASIS OF THE ALLEGED DECEPTION – "EXCESSIVE ADDED SUGAR"

The essence of Plaintiffs' state-law deception and breach of warranty claims is that they overpaid for certain Clif Bar products by relying on supposed "healthy claims," when in fact the products allegedly were not "healthy" due to the presence of "*excessive* added sugar." Thus, all of Plaintiffs' claims rise or fall on one essential allegation – that the challenged Clif Bar products contain "excessive added sugar." If Plaintiffs fail to plead the requisite specific facts as to how the added sugar in the products is "excessive," then based on Plaintiffs' own allegations, there can be no deception or breach of warranty. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (specificity required for fraud allegations); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013) (claims dismissed because plaintiffs failed adequately to allege how the warranty was breached).

Plaintiffs confirm this point in their Complaint and in their opposition: "Clif employs claims on the labeling and packaging of the high-sugar bars . . . meant to appeal to consumers interested in healthful

foods, *but that are deceptive because they are incompatible with the dangers of excessive sugar consumption to which the Products contribute.*" Complaint ("Compl."), ¶ 122 (emphasis supplied); "[p]laintiffs allege in great detail the harmful effects of consuming excessive added sugar and that high-sugar Products contain excessive added sugar thereby plausibly demonstrating that reasonable consumers could be misled by Clif's health and wellness claims." Opp. at 1. However, Plaintiffs' allegations of "excessive added sugar" are mere conclusions that the Court is not bound to accept on a motion to dismiss. Plaintiffs' claims fail because there are no specific facts to support their conclusion of "excessive added sugar," and in fact they reference documents (*e.g.*, the AHA Statement) (Van Gundy Decl., Ex. B) that demonstrate the challenged Clif Bar products incontrovertibly do not contain "excessive added sugar."

Plaintiffs could not be more clear that their claims of "excessive added sugar" are based on the AHA "'safe' threshold of daily added sugar consumption, small enough not to overload the liver: approximately 5% of calories." Opp. at 13, *citing* Compl., ¶ 31. However, as pointed out in the moving papers, the challenged products meet this "5% of total daily calories" recommendation for adults based on a 2,000 calorie per day diet. Plaintiffs have no credible explanation as to how Clif Bar products can meet the AHA standard for added sugar touted by them as the limit for healthy claims, as well as FDA's DV for added sugars (up to <10%), and still be considered "excessive" to support their deception claim.

Instead, Plaintiffs without plausible explanation simply aver that Clif Bar products are "high-sugar" because for "each of the Products 17 and 37% of calories come from added sugar . . . . " Opp. at 13. This is highly disingenuous at best, as Clif Bar pointed out in its moving papers, because the percent of added sugars in a *particular product* has nothing to do with how much the product contributes towards the AHA 5% of total daily calories or FDA's 10% of *total daily calories*. Plaintiffs simply have no explanation as to why the added sugar of the challenged products is excessive when the levels of added sugar easily meet both the AHA and FDA levels.

Plaintiffs' claims thus are not plausible and can be dismissed on that basis alone where they claim that the AHA 5% standard should be controlling, but nevertheless claim that Clif Bar's "healthy claims" are deceptive even though the products are compliant even with the AHA added sugars recommendations. This implausibility is also evident in claims of deception based on excessive added

sugars where the product names are strongly evocative of added sugars (*e.g.*, "Iced Gingerbread," "White Chocolate Macadamia Nut"), used in conjunction with label statements geared to active consumers with significant energy needs, commonly met by foods containing substantial levels of sugar and carbohydrates (*e.g.*, "nutrition for sustained energy"). Moreover, the lack of plausibility is highlighted in Plaintiffs' attack on any statement by Clif Bar involving "health," such as Clif Bar's belief "in creating a healthier . . . food system," and "[o]ffering nutritious food is what we do, and like you, we care about what we put in our bodies," all the while they do not deny that Clif Bar products are mainly organic and contain protein, fiber, vitamins, minerals and energy-providing nutrients which are wholesome, nutritious, and good for consumers as formulated. *See* Compl., ¶ 116.

Plaintiffs attempt to remedy these fatal flaws in their pleading by espousing the "contribution theory." Under this theory, even though the added sugars in Clif Bar products are within the daily values established by FDA *and* recommended by AHA, the amount of added sugars is nevertheless somehow excessive because a consumer could voluntarily choose to eat *other* products with added sugars which *could* cause them to exceed the AHA and FDA levels. For support, Plaintiffs cite from one unreported district decision in another "sugar" case, and from one reported district court decision not in this district involving "fat" claims. Opp. at 13, *citing Hadley v. Kellogg Sales Co.,* 2017 U.S. Dist. LEXIS 128061, *22-23 (N.D. Cal. Aug. 10, 2017) (*Hadley II")* ("eating Defendant's products would require the individual to eat lower sugar foods throughout the rest of the day to maintain a daily percentage of added sugar intake that is below the two thresholds for added sugar mentioned in the instant suit, the 5% AHA recommendation and the FDA's 10% DRV") ("DRV" stands for "Daily Reference Value" for certain nutrients like sugars; "DV" refers to DRV and to Reference Daily Intakes for other nutrients).

Respectfully, the reasoning in these decisions is not well-taken. Whether consuming a Clif Bar may cause one to exceed a daily recommended value for consumption of added sugar by eating *other* products by *other* manufacturers is rank speculation, and irrelevant in any event. Clif Bar reasonably cannot be held responsible for the levels of added sugars in other products, or what other food consumers choose to eat, simply because Plaintiffs declare that the challenged products are "high-sugar" (a term that is without legal definition or definition by Plaintiffs).

The illogical consequence of Plaintiffs' contribution theory is that *any* food with *any amount* of

added sugars could be considered to have "excessive" added sugar and thus be "dangerous" because it would contribute to levels that might, depending on the rest of the diet, exceed Plaintiffs' declared "5% safe threshold." Plaintiffs deny this is so, but they do not provide any guidance as to what "contributory levels" would be acceptable to them, simply speculating that Clif Bar products are "high-sugar." Indeed, it is well known that virtually all nutrients subject to nutrition labeling, including protein, dietary fiber, vitamins, and minerals, may result in adverse health effects if consumed at excessive levels as part of the overall diet. Thus, if a product with nutrients which are below FDA-set daily values can be the subject of class action lawsuits based solely on the potential effects of excessive amounts contributed primarily by other products chosen by consumers as part of their overall diets, almost any food nutrient could be a target, which stands reason on its head and could overwhelm the judicial system with baseless cases.

FDA deliberately set the DRV for added sugars at 10% of total daily calories (200 calories for a 2,000 daily calorie diet, or 50 grams of added sugars), *not* 10% of the calories for a particular food, and FDA does not impose a regulatory obligation on a manufacturer to be responsible for other dietary choices consumers may make: "[a]n added sugars declaration allows *consumers* to better compare products and assess whether *a particular product* fits into a healthy diet." Van Gundy Decl., Ex. A at 33812 (emphasis supplied). FDA thus emphasized that the percent DV declaration for a particular food was to enable consumers to take responsibility for their own nutrition and make informed decisions by comparing products: "[t]he percent DV declaration provides that missing piece of information that will allow consumers to more easily compare products and determine the relative contribution that a serving of a food will provide towards their diet." Ex. A at 33839.

Plaintiffs essentially ask the Court, in part, to determine which standard – AHA, FDA or some other standard – applies. Unless the Court finds Plaintiffs' claims preempted by FDA's Daily Value for added sugars, as the Court respectfully should, there would first have to be a mini-trial on the science as to what standard would govern regarding what is considered a "healthy diet" in terms of the amount of daily calories from added sugars. And even if Clif Bar's products fell within the daily value established by the Court, the Court would then have to determine under the "contribution theory" how much added sugar is still too much.

This sort of science by trial also will have to take into account the varying caloric intake needs of

**REPLY MEMORANDUM IN SUPPORT OF CLIF BAR & COMPANY'S MOTION TO DISMISS**

individuals, as the AHA recognized when explaining its 5% level. Ex. B at 1016. The Court, for example, would have to determine a level of added sugar that is appropriate for individuals with high energy needs, as the marketing of Clif Bar products (noted by Plaintiffs) suggests, that is appropriate for diabetics, and that is appropriate for individuals who are less active. And all of this raises serious questions about whether the courts should be involved at all in this determination, particularly where different courts with different judges, attorneys and experts, could reach differing conclusions.

These concerns are all the more heightened when one considers the purpose of the DV established for added sugars. As pointed out in the moving papers, over the course of several years, FDA reviewed a vast amount of studies of the effects of added sugar on health, including the AHA recommendations, and determined, based on the science, that for a given product, a Daily Value of 10% of total daily calories was consistent with a "*healthy dietary pattern*":

> We have considered the underlying scientific evidence in the 2015 GDAC Report and have determined that the evidence supports establishing a DRV of 10 percent of total calories. The DRV for added sugars of 10 percent of calories is based on the amount of added sugars that can be reasonably accommodated within a healthy dietary pattern.

Ex A. at 33811. Plaintiffs would have a jury or judge substitute their judgment as to what constitutes "healthy dietary patterns" for those of FDA.

In support, Plaintiffs cite again to the unreported *Hadley II* decision for language that the DV was not established for reasons of health, but apparently out of political convenience given the amount of added sugars American consumers are already consuming: "[t]hus, the FDA's decision to create a 10% DRV was not necessarily based on healthiness, but was based on realistic goals for American consumer consumption of added sugar. Accordingly, the FDA's 10% DRV need not be adopted as the definitive threshold for what amount of added sugar in a product is or is not healthy." *Hadley II*, 2017 U.S. Dist. LEXIS at 26-28, *citing* Ex. A at 33849. This conclusion is directly contrary to FDA's position reiterated throughout the preamble to the Final Rule, that a level lower than a DRV of 10% of total daily calories was not supported by the science, that a DRV of 10% was supported by the science, and that a DRV of 10% was "consistent with *healthful* dietary patterns."

It is difficult to conceive how a 10% DV "consistent with healthful dietary patterns" was, in the words of the *Hadley II* decision, "not necessarily based on healthiness." The "healthiness" purpose of the

10% DV is made clear from the very page of FDA's preamble to the Final Rule cited by the *Hadley II* Court:

> We disagree that that the DRV for added sugars should be lower than 10 percent of calories or that there is adequate evidence at this time to set a DRV for added sugars of less than 5 percent of calories. While the WHO and other health organizations have recommended that individuals should consume 5 percent or less of total calories from added sugars, those recommendations are not consistent with those of US consensus reports . . . USDA Food Patterns show that it is possible to construct a healthy dietary pattern that includes more than 5 percent of calories from added sugars.

Ex. A at 33849. Neither Plaintiffs nor the *Hadley II* decision cited this or other portions of the Final Rule that made it abundantly clear the 10% DRV was based on science, and that the 10% DRV was consistent with healthy dietary patterns: "[t]he scientific evidence supports Americans limiting their intake of added sugars to no more than 10 percent of calories." Ex. A at 33812.

### B. THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS FAILED TO PLEAD CONCRETE INJURY AND THEIR CLAIMS ARE PREEMPTED

#### 1. Plaintiffs Cannot Plead Concrete Injury If They Cannot Plead Deception

Plaintiffs cannot claim injury by overpayment if, as here, the basis for that overpayment is a deception or breach of warranty that they have not adequately pled. As the Complaint is framed, since Plaintiffs take the position that the AHA recommendations determine whether the added sugar in a product is "excessive," then they must explain *for each of them individually* why the added sugar in the challenged products is excessive based on these variables. The AHA recommendations make clear that an appropriate level of added sugar for each individual will vary depending upon several factors such as gender, age, activity level, and fat intake. Moreover, Plaintiffs' "contribution theory" is insufficient to support a cognizable injury for standing where the theory depends upon thousands of consumers in the putative class making thousands of choices about foods with varying levels of added sugars. *See Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016) (finding no cognizable injury because plaintiffs could control the injury in the form of disclosing otherwise private information).

#### 2. Plaintiffs' Claims Are Subject To Express And Conflict Preemption

Only on page 16 of their Opposition, the first page after the Court's fifteen-page limit, do Plaintiffs seek to explain how they challenge Clif Bar's so-called "*healthy* claims" based on levels of added sugars found by FDA after a comprehensive review of the science to be consistent with "*healthful dietary patterns.*" Under Section 343(q) of the Nutrition Labeling and Education Act, Congress issued

broad authority to the FDA to place on the "*label and labeling*" of food, "nutrition information" such as the amount of nutrients, including "sugars," "if the Secretary determines that such information will assist consumers in maintaining healthy dietary practices." 21 U.S.C. § 343(q)(1). In promulgating the Final Rule "consistent with its authority in section 403(q) [343(q)]," FDA decided to establish not only a declaration of the amount of added sugars, but also a Daily Value of 10%, based on science that indicated this amount for a product was consistent with "healthy dietary patterns." Ex. A at 33745, 33759.

As previously noted, the purpose of the Daily Value of 10% of total calories was to "allow consumers to more easily compare products and determine the relative contribution that a serving of a food will provide towards their diet." Ex. A at 33839. In addition, as noted in the Final Rule, FDA considered and explicitly rejected requests to "require various warning statements on the label related to added sugars to warn consumers of the negative health effects of added sugars." *Id.* Plaintiffs' claims are preempted because they seek to bar Clif Bar from making "healthy claims," and to impose on product labeling affirmative warnings about the supposed dangers of excessive added sugars, contrary to FDA's judgment that the amounts of added sugars at issue here are consistent with "healthful dietary practices."

In their Complaint, Plaintiffs directly challenge the very subject matter of the Final Rule, "the amount and dangers of the added sugars in its products," going so far in these paragraphs to require affirmative disclosure of the supposed dangers. *See* Compl., ¶ 161; Compl. ¶ 162 ("Clif therefore has a duty to disclose information regarding the harmful effects of the added sugar in its Products."). Plaintiffs' claims thus fall squarely under Section 343(q) and therefore are expressly preempted because they challenge disclosures related to the amount and dangers of added sugars. If Clif Bar cannot make disclosures concerning the "healthy" aspect of its products, or must provide a warning for products with added sugars well below the 10% DV as is the case here, then FDA's determination that such products are consistent with "healthful dietary practices" is worthless by operation of Plaintiffs' state-law claims.

Indeed, in promulgating the Final Rule pursuant to Section 343(q), the FDA considered and rejected the very requirements Plaintiffs seek to impose: a 5% threshold for added sugars consumption and requirements to disclose the harmful effects of added sugar, finding that, among other things, "the statements are not consistent with our review of the evidence . . . [and] some added sugars can be included as part of a healthy dietary pattern." Ex. A at 33829. If Plaintiffs are successful, a given product

could be "healthy" (part of a "healthful dietary practice") under federal law, but not under state law, an unmistakable conflict with, and obstruction of, federal law.

Plaintiffs nevertheless contend that Section 343(q) and the Final Rule "only 'govern the familiar nutrition facts box,'" even though nothing in Section 343(q) limits FDA's authority in this regard to a particular area of the "label or labeling." Opp. at 19. The cases Plaintiffs cite in support did not analyze preemption under Section 343(q). *Id.*, *citing Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010); *Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 78607, *15-16 (S.D. Cal. May 9, 2018). Nor does anything in the statutory framework purport to limit FDA's broad authority to regulate labels and labeling under Section 343(q). *Gubala v. CVS Pharm., Inc.*, 2015 U.S. Dist. LEXIS 77509 (N.D. Ill. June 16, 2015) ("[t]o the contrary, labeling specifically encompasses all written matter accompanying a product"). In fact, FDA exercised its grant of authority from Congress and regulated "outside the nutrition box" here by considering and rejecting requests for warnings very similar to the ones Plaintiffs seek here.

Plaintiffs argue that FDA's consideration and rejection of a warning requirement is not dispositive because "the absence of a regulation does not have preemptive force." Opp. at 20. But unlike their cited cases, the FDA did not simply decline to consider the warning issue; to the contrary, it considered and, based on scientific evidence, explicitly rejected a regulation authorizing warnings for added sugars. *See* Opp. at 20, *citing Freightliner Corp. v. Myrick*, 514 U.S. 280, 286-87 (1995) ("the lack of a federal standard stemmed from the decision of a federal court that the agency had not compiled sufficient evidence to justify its regulations"). Here, by contrast, the lack of a requirement to warn about added sugars was an affirmative decision made after careful consideration of scientific evidence by FDA.

Plaintiffs also rely on another one of their cases, *Krommenhock v. Post Foods, LLC,* 255 F. Supp. 3d 938 (N.D. Cal. 2017) to contend that a court "recently rejected this exact argument in a similar 'added sugar' case." Opp. at 20. But the *Krommenhock* court's holding that there was no preemption over "failure to warn" claims was based on the record before it, which apparently did not include "evidence that consideration of this type of affirmative warning was the focus of the FDA's rulemaking." *Krommenhock*, *supra*, 255 F. Supp. 3d at 955. However, the FDA expressly noted that its promulgation of the Final Rule was the "result of significant stakeholder engagement," which included consideration of

**REPLY MEMORANDUM IN SUPPORT OF CLIF BAR & COMPANY'S MOTION TO DISMISS**

"nearly 300,000 comments" in addition to the scientific literature reviewed. Ex. A at 33744. To dismiss the FDA's affirmative consideration and express rejection of warnings is, respectfully, wrong.

Plaintiffs argue that their claims are not preempted by the general "no false or misleading statement" provision of Section 343(a), but that is beside the point. The cases Plaintiffs rely upon explain that Section 343(a) only come into play "if the requirements they seek to impose . . . do not involve claims or labeling information of the sort described in sections 343(r) and 343(q)." Opp. at 18, *citing Chacanaca*, 752 F. Supp. 2d at 1119. As stated above, Plaintiffs' attempt to regulate the Clif Bar products' labels and labeling falls squarely within 343(q) because they challenge "healthy" statements on the label and labeling, and seek to impose warnings, directly contrary to FDA's determination that the amount of added sugars in a Clif Bar product is consistent with "healthful dietary patterns."

Finally, Plaintiffs argue that their claims do not implicate conflict preemption because "requiring Clif to disclose additional information . . . furthers the objectives of the added sugar rulemaking." Opp. at 22. This is completely wrongheaded, because FDA has made abundantly clear that its goal in implementing the 10% DV and the Final Rule was "not to eliminate added sugars or foods high in added sugars from the diet; instead, the message is to limit overall consumption of added sugars in the diet to less than 10 percent of total calorie intake." Ex. A at 33818. Plaintiffs' claims obstruct and conflict with federal law because to prove deception, a judge or jury will have to find on the facts as pled here that the levels of added sugars are not "healthy," that is, not consistent with "healthful dietary patterns," thus thwarting FDA's message in establishing the 10% DV that consumers should not eliminate foods high in added sugars, but limit overall consumption to less than 10 percent of total calorie intake.

## III. CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: June 21, 2018

Keller and Heckman LLP

By: _____
Christopher Van Gundy
Attorneys for Defendant
Clif Bar & Company

4822-8815-6522, v. 1