UNITED STATES DISTRIC COURT
NORTHERN DISTRICT OF CALIFORNIA

RALPH MILAN, SARAH AQUINO, and
ELIZABETH ARNOLD on behalf of
themselves, those similarly situated and the
general public,

                              Plaintiffs,

vs.

CLIF BAR & COMPANY,

                              Defendant.

Case No. 4:18-CV-02354-JD

Declaration

of

**COLIN B. WEIR**

September 17, 2020

MAY REFERENCE MATERIALS DESIGNATED "CONFIDENTIAL" AND

"CONFIDENTIAL ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 7th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I.  QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.    I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to automobiles, food products, household appliances, herbal remedies, health/beauty care products, electronics, and computers.  My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony during the last four years, is attached hereto as Exhibit 1.  This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.

2.    Contained in Exhibit 1 is a list of numerous litigations in which I have participated in the design, execution and/or determination of the economic suitability of conjoint surveys, or have been found by the court to have expertise in conjoint analysis.  These cases include, but are not limited to *Hadley vs. Kellogg; Krommenhock v. Post; Fitzhenry-Russell v. Dr. Pepper; Jones v. Nutiva; Hunter v. Nature's Way; Looper v. FCA; Sanchez-Knutson v. Ford Motor Company; Belfiore v. Procter and Gamble; Kurtz v. Kimberly Clark; In re Scotts EZ Seed Litigation; In re:*



*ConAgra Foods; In re: Arris Cable Modem; Martinelli v. Johnson & Johnson; Hudock v. LG; Koenig v. Vizio; and Banh v. American Honda.*

3.    I received graduate level training in conjoint analysis as part of my MBA.  I take post-graduate, continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software.  In addition, I have more than 10 years of experience using conjoint professionally.

## II. ENGAGEMENT

4.    I provide this declaration in connection with the case filed by Plaintiffs Ralph Milan, Sarah Aquino, and Elizabeth Arnold ("Plaintiffs") in the above-captioned action against Defendant Clif Bar & Company, (hereinafter "Clif" or "Defendant") as it relates to certain Clif Bars and Z-Bars (the "Clif Bars" or the "Products").  I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts and opinions set forth herein.

5.    Plaintiffs allege that Defendant markets these nutrition bars "with the labeling and packaging claims that convey a health and wellness message with the goal of increasing the price and sales of its high-sugar 'nutrition bars.'"[1]  Plaintiffs also allege that the claims are "designed to appeal to health conscious consumers," yet are "deceptive because they are incompatible with the dangers of the excessive sugar consumption" to which the Clif Bars contribute.  Plaintiffs allege that Defendant prominently displays the claim "Nutrition for Sustained Energy" on its Classic Clif Bars, conveying that the bars are "healthy or are conducive to good health and physical well-being, which is misleading because that message is incompatible with the dangers of excessive sugar consumption to which the Classic Bars contribute."  It is also alleged that the Defendant prominently labels the Clif Kid's ZBars with "Nourishing Kids in Motion," "No High-Fructose

---

[1] *See, generally,* Class Action Complaint, filed April 19, 2018 (the "Complaint.")



Corn Syrup," and "nutritious … snack."[2]  Finally, Plaintiffs allege that "Clif regularly and intentionally omits material information regarding the amount and dangers of the added sugars in its products and information regarding the proper usage occasion for the Products."[3]

6.    Plaintiffs allege that the Omissions and Misrepresentations resulted in, among other things, the payment of an inflated price for the Clif Bars at the time and point of purchase by the Class.[4]

7.    Among other things, I have been asked by Counsel for Plaintiffs to determine whether it would be possible to calculate economic damages on a class-wide basis, if any, in this litigation, and if so, to set forth a framework for such a calculation of those damages.  As part of my work on damages, I have been asked to work with Steven Gaskin to help design (from an economic perspective), and to evaluate the economic suitability of a conjoint survey (to be designed, implemented, and analyzed by Gaskin) to measure the price premium for the Clif Bars at the time and point of sale as a result of the Omissions and Misrepresentations.

8.    ETI is being compensated at the rate of $725 per hour for my work on this case. The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

---

[2] The "Nutrition for Sustained Energy," "Nourishing Kids in Motion," "No High Fructose Corn Syrup," and "nutritious … snacks" claims will be referred to as the "Claims" or "Misrepresentations."

[3] Hereinafter referred to as the "Omissions."

[4] The Clif Bar Class (and Clif Bar New York Subclass): All persons in the United States—and for New York Subclass, all persons in New York—who, between April 19, 2014 (or 2015 for the New York Subclass) and the date the Class is notified of certification, purchased Original Clif Bars bearing the phrase "Nutrition for Sustained Energy."

The Clif Kid ZBar Class (and Clif Kid ZBar New York Subclass): All persons in the United States—and for the New York Subclass, all persons in New York—who, between April 19, 2014 (or 2015 for the New York Subclass) and the date the Class is notified of certification, purchased Clif Kid ZBars other than in 24-, 36-, or 42-bar packages.


ECONOMICS AND TECHNOLOGY, INC.

9.   The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report, and in Exhibit 2, attached hereto. In addition, I have relied upon my educational background and more than 17 years of experience.

### III.  FRAMEWORK FOR DAMAGES

10.  As a threshold matter, it is my opinion that it is possible to determine class-wide damages in this case using Defendant's own available business records, third-party records, industry resources, and the conjoint analysis that is to be designed, conducted, and analyzed by Gaskin.

11.  Below, I propose the use of conjoint analysis to calculate any Price Premium Damages (wherein consumers would receive back the difference between the price they paid for the Clif Bars and the value of those Products without the Defendant's Omissions and Misrepresentations).

12.  This methodology can determine the damages across any of the challenged Clif Bars, prescribed time period, and across any specific states or other defined geographic regions, given any of the possible liability scenarios that may arise is this litigation.

### IV.  CALCULATION OF PRICE PREMIUM
### DAMAGES: CONJOINT ANALYSIS

13.  In this litigation, damages for the Class can be measured as the price premium paid for the Clif Bars, if any, solely attributable to the Omissions and Misrepresentations.

14.  Conjoint analysis is a representative survey technique that permits an economist to analyze the value of various product attributes.[5]  Conjoint analysis can be used to determine market valuation/attribute information for a given product or attribute.  Conjoint analysis is

---

[5] Conjoint analysis as a discipline is quite broad, and can be used to facilitate many other sorts of research beyond the specific application that I discuss here.



founded on rigorous statistical and economic principles, and is not required to be used as part of a traditional marketing program.[6]  Indeed, conjoint analysis has been used in litigation contexts to calculate damages for years.[7]

15.  It is well known that conjoint analysis has a long history of use in industry generally, and specifically for pricing.[8]

16.  In a typical conjoint analysis, survey panelists are confronted with various choices of product attributes, prices, and other alternatives, and asked either to rank their preferences, or to choose the most preferred attribute or combination thereof.

17.  Through conjoint analysis, by systematically varying the attributes of the product and observing how respondents react to the resulting product profiles, one can statistically deduce information about the individual attributes.

18.  Statistical methods (including regression analysis) are then applied to the survey responses to calculate attribute value.[9]

---

[6] *See, e.g.*, Sawtooth Software technical papers, available online at http://www.sawtoothsoftware.com/support/technical-papers; *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013) http://www.analysisgroup.com/forums/winter-2013/when-all-natural-may-not-be/ (last accessed August 1, 2016).

[7] *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*; *See, e.g., Khoday v. Symantec Corp.*, 2014 WL 1281600, at *10 (D. Minn. March 13, 2014); *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015); *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014); *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014); *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 2018 WL 3126385 (N.D. Cal. June 26, 2018); *In Re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018); *Hadley v. Kellogg Sales Co.*, 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019); *Krommenhock v. Post Foods, LLC*, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020); *Hudock v. LG Elecs. USA, Inc.*, 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020); *Koenig v. Vizio, Inc.*, Los Angeles Superior Court Case No. BC702266 (L.A. Super. Ct. Aug. 24, 2020); *Banh v. American Honda Motor Co.*, Inc., 2020 WL 4390371 (C.D. Cal. July 28, 2020).

[8] *Getting Started with Conjoint*, Bryan Orme, 2014, at 143 *et seq.*

[9] *See, e.g.*, Getting Started With Conjoint.


ECONOMICS AND
TECHNOLOGY, INC.

19.   Conjoint analysis has a long history of use in industry and is widely accepted and relied upon by enterprises such as Procter & Gamble, Microsoft, General Motors, Ford, and Google.[10]  Conjoint is also widely respected by academics and is a regular part of the curriculum at universities world-wide, such as Duke, Ohio State, Northeastern, University of South Australia, NYU, and University of California.

20.   The use of conjoint analysis in similar applications is too extensive to document exhaustively here.

21.   Conjoint analysis, as a survey tool, does not rely on an existing data set for its analysis because it relies on data generated through the survey process.  Common conjoint analysis software would permit the administration of a representative sample survey, and the analysis of the results therefrom.

22.   No individualized analyses, or Class-Member-specific inquiry is required.  All relevant data needed to complete the conjoint analysis is Class-wide, common evidence.

**Price Premium: The Gaskin Conjoint Survey**

23.   I have been provided with, and have reviewed, the Declaration of Steven Gaskin.[11]  He has worked in the field of market research and marketing science models since 1982.  Mr. Gaskin is an award-winning, published, practitioner of conjoint analysis.  I understand that Mr. Gaskin has been asked to describe and to propose a design for a market research survey and analysis that would assess the price premium for the Clif Bars resulting from the Omissions and Misrepresentations at the time and point of purchase.

---

[10] *Id.*

[11] Declaration of Steven P. Gaskin, September 17, 2020, ("Gaskin Declaration").



24.   The Gaskin Declaration describes how conjoint analysis can be used to determine any price premium value at the point of purchase resulting from the Omissions and Misrepresentations.

25.   I have worked with Mr. Gaskin to develop parts of the survey and analysis.

26.   Gaskin has designed a conjoint analysis that measures the price premium (measured in percentage terms) at the time and point of sale solely attributable to each of the Omissions and Misrepresentations through the use of a Labels attribute[12] and price[13] along with several distractor attributes/levels.  Gaskin's survey design includes a range of market-based price points derived from those observed in the marketplace, and sales data, which I have also reviewed.[14] Gaskin also considered the Complaint, the Clif website, product labels, and exploratory interview when selecting the other attributes and levels for inclusion in the conjoint.[15] Gaskin has also taken into account the fact that the quantity of Clif Bars sold during the class period is a known fact, and is fixed as a matter of history.[16]

27.   Gaskin's Labels attribute draws its levels from the Complaint and discussions with Plaintiffs' Counsel, and from an understanding of Plaintiffs' stated theory of liability.[17]

28.   In addition to these factors that influenced Gaskin's survey design, after the completion of the survey, the results will be calculated using Hierarchical Bayes regression.[18] The use of Hierarchical Bayes regression provides for, among other factors, the ability to estimate better market-level results from a conjoint survey.

---

[12] Gaskin Declaration, at paras 22, 31, 35-37, and 54.

[13] *Id.*

[14] *Id.*, at paras 35.

[15] *Id.*, at para 35.

[16] *Id.*, at para 32.

[17] *Id.,* at para 36.

[18] *Id.*, at paras 23, 26-27, 58.



29.   After reviewing the Gaskin Declaration, the methodology underlying Gaskin's conjoint survey, and the documentary evidence relied upon by Gaskin and incorporated into the survey design, it is my opinion that Gaskin's conjoint survey is properly designed to measure the reduction in economic value of the Clif Bars at the time and point of first sale as a result of the Omissions and Misrepresentations.  The survey is especially economically suitable given Gaskin's use of market based prices, and considerations given as to the fixed quantity of Clif Bars sold that are part of the Class Definition.

**Supply-Side Considerations**

30.   I understand that Mr. Gaskin has considered and accounted for supply-side factors in his conjoint design.[19]

31.   I have also considered supply-side factors in my damages framework.  First, unlike in a Lanham Act or intellectual property litigation where a but-for quantity of sales may need to be determined, in this litigation, the historic number of units sold is a fact (as I have discussed above) and in this litigation, it would be antithetical to the reality of the actual Class purchases to suggest that the quantity supplied be anything other than the actual number of units sold by Defendant and purchased by Class members.

32.   Furthermore, if one were to assume, *arguendo*, that Defendant would not have lowered the price in concert with demand (indicating that Defendant priced above the market clearing price), then the economic outcome would be that many or all of the purchases would not have taken place at all.  As such, the price premia calculated by Mr. Gaskin will be inherently conservative measures.

---

[19] *See, e.g., id.*, at paras 22, 31-32, 35-37, and 54.



33.   I worked closely with Mr. Gaskin to ensure that his survey is appropriately designed to measure the true price premia paid at the point of purchase solely attributable to the Omissions and Misrepresentations.

34.   Mr. Gaskin and I have had several discussions concerning the design of his survey where I provided input based upon economic concepts, and sales and market data.  We have also had several discussions concerning how the results of his survey should be interpreted and applied.

35.   One of the most important and most frequent topics of discussion between Mr. Gaskin and me has dealt with the type of data on actual sales of the Clif Bars in the real-world marketplace. These real-world transactions occurred at prices that *already* reflect the supply-side factors then extant in the marketplace.  I understand that Mr. Gaskin relied upon these historical data in setting the prices used in his conjoint survey.

36.   Another important supply-side factor that I considered was the fact that the quantity of the Products supplied is a known quantity, and fixed as a matter of history.

37.   An additional important supply-side factor that I considered was the fact that the market for Clif Bars was an "ordinary" and "mature" market, subject to competitive pressures that retailers identify as risks to their business.  The market for nutrition bars has been in operation for decades.[20]

38.   Nutrition bars are produced by a number of manufacturers, and sold by myriad retailers.  The market is highly competitive, and subject to ordinary market conditions, such as changes in consumer demand that affect price.

- Kroger:

   **COMPETITIVE ENVIRONMENT**

   The operating environment for the food retailing industry continues to be characterized by intense price competition, aggressive expansion, increasing

---

[20] Clif Bar was formally launched in 1992.



fragmentation of retail and online formats, entry of non-traditional competitors and market consolidation. We have developed a strategic plan that we believe provides a balanced approach that will enable us to meet the wide-ranging needs and expectations of our customers in this challenging economic environment. However, the nature and extent to which our competitors implement various pricing and promotional activities in response to increasing competition, including our execution of our strategic plan, and our response to these competitive actions, can adversely affect our profitability. Our profitability and growth have been, and could continue to be, adversely affected by changes in the overall economic environment that affect consumer spending, including discretionary spending.[21]

- Publix:

***Increased competition and low profit margins could adversely affect the Company.***

The retail food industry in which the Company operates is highly competitive with low profit margins. The Company's competitors include national and regional supermarket chains, independent supermarkets, supercenters, membership warehouse clubs, mass merchandisers, dollar stores, drug stores, specialty food stores, restaurants, convenience stores and online retailers. The Company's ability to attract and retain customers is based primarily on quality of goods and service, price, convenience, product mix and store location.

As a result of the highly competitive environment, traditional supermarkets, including the Company, face business challenges. There has been a trend in recent years for traditional supermarkets to lose market share to nontraditional competitors. The Company's ability to retain its customers depends on its ability to meet the business challenges created by this highly competitive environment. There can be no assurance that the Company will be able to meet these challenges. In addition, the Company believes it will face increased competition in the future from existing and potentially new competitors and its financial condition and results of operations could be impacted by the pricing, purchasing, advertising or promotional decisions made by its competitors as well as competitor format innovation and location additions.[22]

- Safeway:

***Competitive Industry Conditions***

---

[21] The Kroger Co. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.

[22] Publix Super Markets, Inc. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.



We face strong competition from traditional grocery retailers, non-traditional competitors such as supercenters and club stores, as well as from specialty and niche supermarkets, drug stores, dollar stores, convenience stores and restaurants. Increased competition may have an adverse effect on profitability as the result of lower sales, lower gross profits and/or greater operating costs.

Our ability to attract customers is dependent, in large part, upon a combination of location, quality, price, service, selection and condition of assets. In each of these areas, traditional and non-traditional competitors compete with us and may successfully attract our customers to their stores by aggressively matching or exceeding what we offer. In recent years, many of our competitors have increased their presence in our markets. Our responses to competitive pressure, such as additional promotions and increased advertising, could adversely affect our profitability. We cannot guarantee that our actions will succeed in gaining or maintaining market share. Additionally, we cannot predict how our customers will react to the entrance of certain non-traditional competitors into the grocery retailing business.

Because we face intense competition, we need to anticipate and respond to changing consumer demands more effectively than our competitors. We strive to achieve and maintain favorable recognition of our unique private-label brands, effectively market our products to consumers, competitively price our products and maintain and enhance a perception of value for consumers. Finally, we need to source and market our merchandise efficiently and creatively. Failure to accomplish these objectives could impair our ability to compete successfully and adversely affect our growth and profitability.[23]

- SuperValu:

**Competition**

Wholesale and Retail each operate in a highly competitive environment.

Wholesale competes directly with a number of traditional and specialty grocery wholesalers and retailers that maintain or develop self-distribution systems. Supervalu believes it competes in this business on the basis of price, quality, assortment, schedule and reliability of deliveries and services, service fees and distribution facility locations.

Principal competition for Supervalu's Retail segment comes from traditional grocery retailers, including regional and national chains and independent grocery store operators, and non-traditional retailers, such as supercenters,

---

[23] Safeway Inc. 2015 10-K Annual Report filed with the US Securities and Exchange Commission.



membership warehouse clubs, specialty supermarkets, hard discount stores, dollar stores, online retailers, convenience stores, drug stores and restaurants. Supervalu's ability to differentiate itself from its competitors and create an attractive value proposition for its customers is dependent upon a combination of price, quality, customer service, convenience, e-commerce offerings, assortment, in-stock levels, brand perception, store location and conditions, in-store marketing and merchandising and promotional strategies.

Supervalu believes that the success of its Wholesale and Retail segments is dependent upon the ability of its own stores, as well as the stores of wholesale customers it supplies, to compete successfully. Supervalu also competes to attract and maintain licensed and franchised operators to operate stores to which it provides wholesale distribution and services. This competition generally takes the form of alternative investment formats, such as a potential or existing licensee's investment in fast food restaurants, dollar stores, specialty supermarkets, drug stores and other potential investments.

Recent and ongoing consolidation within the grocery industry has resulted in, and is expected to continue to result in, increased competition, including from some competitors that have greater financial, marketing and other resources than Supervalu.[...]

**Supervalu faces intense competition.**

The grocery business is intensely competitive, and the recent and ongoing consolidation within the grocery industry is expected to result in increased competition, including from some competitors that have greater financial, marketing and other resources than Supervalu. The grocery industry is characterized by relatively small operating margins, and as competition in certain areas intensifies and as the industry continues to consolidate, Supervalu's results of operations may be negatively impacted through a loss of sales and reductions in gross margins. See "Business—Competition" for a discussion of the competitive environment.

If Supervalu is unable to appropriately respond to competition and execute on its initiatives to improve the competitive position or profitability of Supervalu, and differentiate Supervalu's offerings, Supervalu's sales, financial condition and results of operations may be adversely affected.[...]

**Competitive Environment**

The United States grocery business is highly competitive and management expects operating results will continue to be impacted by the effects of operating in a highly competitive and price-sensitive marketplace. In fiscal



2017, Supervalu's Retail segment was impacted to a greater degree than anticipated by price competition, competitive store openings and a challenging sales and operating environment. This environment contributed to lower sales from identical retail stores, which impacted gross profit and operating earnings. These factors affecting the Retail segment are expected to impact fiscal 2018 as well.[24]

- Ahold Delhaize (Stop & Shop):

   **Competitive environment and economic conditions (S)**

   Changes to the competitive landscape and a weak macroeconomic climate without appropriate response could threaten Ahold Delhaize's ability to achieve its strategic objectives

   Key risk Drivers

   • Consumer value perception (price, assortment, quality)

   • Changing customer behavior (e.g., online shopping) and competition

   • Lack of distinctiveness

   • Consumer purchasing power under pressure

   • Inflationary forces impacting cost of goods sold

   • Pressure on margin[25]

- Walmart

   ***We face strong competition from other retailers and wholesale club operators (whether through physical retail, digital retail or the integration of both), which could materially adversely affect our financial performance.***

   The retail business is highly competitive. Each of our segments competes for customers, employees, store and club sites, products and services and in other important aspects of its business with many other local, regional, national and global retailers and wholesale club operators, as well as other national and international internet-based retailers and retail intermediaries.

---

[24] SuperValu Inc. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.

[25] Ahold Delhaize Annual Report 2016.



Where necessary, to compete effectively with competitors who price merchandise at points lower than the prices we set under our EDLP philosophy, we will lower our prices on goods for sale. A failure to respond effectively to competitive pressures and changes in the retail markets could materially adversely affect our financial performance.[26]

- Whole Foods

Increased competition may adversely affect our revenues and profitability.

Our competitors include but are not limited to local, regional, national and international supermarkets, natural food stores, warehouse membership clubs, online retailers, small specialty stores, farmers' markets, restaurants, home delivery and meal solution companies. Their businesses compete with us for products, customers and locations. In addition, some are expanding more aggressively in offering a range of natural and organic foods. Some of these competitors may have been in business longer or may have greater financial or marketing resources than we do and may be able to devote greater resources to sourcing, promoting and selling their products. As competition in certain areas intensifies, our operating results may be negatively impacted through a loss of sales, reduction in margin from competitive price changes, and/or greater operating costs such as marketing.[27]

39. The market for Clif Bars is not price regulated. The market for the Products is not restricted.

40. Pricing in the nutrition bar market operates as in an ordinary market: prices are established in the marketplace, and consumers can choose to buy at the prices set in the market or not; there are no insurance intermediaries, co-payments, or other such complexities.

41. In addition to these factors that influenced Dr. Gaskin's survey design, after the completion of the survey, the results will be calculated using Hierarchical Bayes regression.[28] The use of Hierarchical Bayes regression provides for, amongst other factors, the ability to estimate better market-level results from a conjoint survey and market simulator.

---

[26] Wal-mart Stores, Inc., 2016 10-K Annual Report filed with the US Securities and Exchange Commission.

[27] Whole Foods Market, Inc., 10-K Annual Report filed with the US Securities and Exchange Commission, November 17, 2017.

[28] Gaskin Declaration, at paras. 23, 26-27, 58.



42.   The proper use of supply-side factors, individually or in combination, as I have discussed above, permits the Gaskin Survey to estimate a marketplace outcome -- the price premium that prevailed due to Defendant's use of the Misrepresentations and Omissions.

## V.  TOTAL SALES OF THE PRODUCTS

43.   I have been provided with sales data, as described below.

44.   I have been provided with retail sales of the Products from IRI for the period January 2015 through Mid Q3 2020.[29]  This data includes dollar and unit sales measures for the Products both Nationwide and for the states of California and New York.

45.   This data also contains information on the historic, market based prices that consumers actually paid during the class period.

46.   I have summarized the unit and dollar sales of the Products below in Table 1.

---

[29] I understand that Counsel for Plaintiffs intends to obtain updated IRI data if the Class is certified.  I would anticipate supplementing this report should such additional data become available to me.



| Table 1. Estimate of Sales to the Classes | | | |
|---|---|---|---|
| **Class** | **Category** | **Unit Sales** | **Dollar Sales** |
| Nationwide | Original | ████████ | ████████ |
| Nationwide | ZBar | ████████ | ████████ |
| Nationwide | Total | ████████ | ████████ |
| New York Subclass | Original | ████████ | ████████ |
| New York Subclass | ZBar | ████████ | ████████ |
| New York Subclass | Total | ████████ | ████████ |

## VI. CALCULATION OF DAMAGES

47. This litigation calls for the following damages calculations:

- Price Premium Damages -- wherein consumers would receive the difference in the economic value of the Clif Bars, at the time and point of sale, with the Omissions and Misrepresentations, compared to the value of otherwise identical Clif Bars without the Omissions and Misrepresentations.

**Price Premium Damages**

48. After completing all of the work as discussed above, the final calculation of total price premium damages in this litigation will be as follows.

49. Under a damages framework awarding Price Premium Damages, Class-wide economic damages are easily calculated as:



*Average Purchase Price per Clif Bar*

$\times$ *Price Premium %*

$\times$ *Number of Units of Clif Bars Sold*

$=$ *Price Premium Damages*

The Price Premium Damages calculation may be calculated with mathematical equivalency[30] as:

*Total Sales of the Clif Bars*

$\times$ *Price Premium %*

$=$ *Price Premium Damages*

## VII. STATUTORY DAMAGES

50.  In addition to the above damage framework for the Class, I have been advised by Counsel for Plaintiff that several statutory nuances must be considered for New York consumers. I have been advised that New York GBL § 349 provides for statutory damages of $50 per violation. I have been advised that New York GBL § 350 provides for statutory damages of $500 per violation.

51.  Using the available sales records, I have determined that approximately 46,802,222 units of the Products were sold in New York during the relevant period.

52.  Table 2 below sets forth the calculations of Statutory Damages.

---

[30] The total sales of the Clif Bars are of course equal to the product of the average price and the number of units of Clif Bars sold.



| Table 2. | | | |
|---|---|---|---|
| **New York Statutory Damages** | | | |
| **Statute** | **Number of Units** | **Damages per Violation** | **Total Statutory Damages** |
| GBL § 349 | ███████ | $50 | ███████ |
| GBL § 350 | ███████ | $500 | ███████ |
| GBL §§ 349 & 350 | ███████ | $50 + $500 | ███████ |

## VIII.  INDIVIDUAL INQUIRY IS NOT REQUIRED

**Variations in purchase price do not alter the calculation of total, class-wide damages**

53.   Variations in purchase price do not prevent the calculation of class-wide damages. Such variations in price are captured in the sales data used for analysis and price variations are an element of conjoint surveys.  Such variations are also inapposite to the calculation of class-wide damages, because the ultimate method of distribution or allocation of damages to individuals during claims administration or a settlement does not alter the calculation of total, class-wide damages.

54.   Class-wide damages under a price premium model can be calculated from the bottom up as the sum of individual damages (as defendants often assert), or can be calculated from the top down, without individual inquiry, by finding the percentage price premium for the Omissions and Misrepresentations and then multiplying the price premium by the dollars sold (as discussed in detail above).  As outlined above, I propose to use the latter technique, obviating the need for individual inquiry.

55.   Ultimately, no matter the method by which damages are distributed, it does not affect the calculation of, or the total amount of class-wide damages in this litigation.



**Individual interpretation of the Omissions and Misrepresentations is irrelevant to the determination of class-wide damages**

56.   Individual interpretation of the Omissions and Misrepresentations is irrelevant to the determination of class-wide price premium damages here.  Individual interpretations of the Omissions and Misrepresentations does not change the price paid by an individual.

57.   Calculating a price premium does not depend on an individual interpretation of the Omissions and Misrepresentations because there is no middle ground.  If the market price for the Clif Bars was higher as a result of the Omissions and Misrepresentations, then ALL consumers will have paid a higher price than if the truth had been disclosed, regardless of their personal interpretations.

**Individual behavior or use of the Clif Bars is irrelevant to the determination of class-wide damages**

58.   Calculating the price premium does not depend on individual behaviors or uses of the Clif Bars.  As I have discussed at length, if the market price for the Clif Bars was higher as a result of the Omissions and Misrepresentations, then ALL consumers will have paid a higher price than if the truth had been disclosed.

**Individual reasons for purchase do not change the price paid, or price premium experienced by an individual**

59.   Individual reasons for purchase are irrelevant in this case, because a consumer's individual reasons for purchase do not change the price paid by that individual.  Consumers do not negotiate the price of the Clif Bars at retail.  Shelf prices do not adjust themselves for individual consumers.



60.  As I have discussed above, if there is a market-based price premium as a result of the Omissions and Misrepresentations and a consumer buys a Clif Bar, they will experience that price premium regardless of their reasons for purchase, because their individual reasons for purchase do not change the price they will pay.

61.  Even if a consumer bought a Clif Bar with the intention to immediately throw that Clif Bar in the garbage, the consumer has been harmed because he paid more for the Clif than the value he received but for the Omissions and Misrepresentations.

## IX.  RESERVATION OF RIGHTS

62.  My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial.  I therefore reserve the right to amend or modify my testimony.

### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Tisbury, Massachusetts this 17th day of September, 2020.

Colin B. Weir



**Exhibit 1**

**Statement of Qualifications**
**of**

**COLIN B. WEIR**

**Statement of Qualifications**

**COLIN B. WEIR**

Colin B. Weir is Vice President at Economics and Technology, Inc. Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis. Such analysis often involves analysis of databases, call detail records, and other voluminous business records. Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software. Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations. Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels. Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue, Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation, Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University. He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND
TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.


Mr. Weir has submitted the following testimony during the last four years:

**Superior Court of The State of California, County of Orange,** *William Brady, on behalf of himself and all others similarly situated, v. Bayer AG; Bayer Corporation; Bayer Healthcare LLC; and Does 1 through 10, inclusive,* Case No. 0-2016-00839608-CU-MC-CXC, on behalf of Wolf Haldenstein Adler Freeman & Herz LLP, Declaration submitted on September 9, 2020.


**United States District Court, for the Southern District of New York,** *Matthew Chamlin, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC,* Case No. 1:19-cv-03852-AJN-DCF, on behalf of Bursor & Fisher P.A., Declaration submitted on August 14, 2020.


**United States District Court, Northern District of California, San Francisco Division,** *Daniel Zeiger, Individually, and on Behalf of All Others Similarly Situated, v. Wellpet LLC, A Delaware Corporation,* Case No. 3:17-CV-04056-WHO, on behalf of Gustafson Gluek PLLC, Declaration submitted on June 29, 2020.


**United States District Court, Central District of California, Western Division,** *Roberta Bilbrey, Jimmy Banh, Lawrence Goldman, Mark Peoples, Jamal Samaha, George Quinlan, Kara Drath, Gary Hanna, Sarah Gravlin, Caitlin Kremer, Cindy Ortiz, Alexis Chisari, Robert Moss, Michael Brumer, Dave Jahsman, John Bartholomew, Vimal Lawrence, Kayce Kleehamer, Mark Klein, Brian Klein, Charles Denaro, Adam Pryor, Srikarthik Subbarao, Daniel Allan, Paul Gonzales, Eric Faden, Hamilton Hines, And Kristen Gratton, on behalf of themselves and all others similarly situated, v. American Honda Motor Co., Inc., a California Corporation,* Case No.: 2:19-cv-05984 RGK (ASx), on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on April 9, 2020; Reply Declaration submitted on May 18, 2020; Deposition on June 12, 2020; Declaration submitted July 24, 2020.


**United States District Court, Central District of California,** *Will Kaupelis and Frank Ortega, individually and on behalf of all others similarly situated, v. Harbor Freight Tools, Inc.,* Case No. 8:19-cv-1203-JVS-DFM, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 2, 2020; Deposition on May 28, 2020; Reply Declaration submitted on September 8, 2020.


**Superior Court of the State of California, County of Los Angeles,** *Jeffrey Koenig, on behalf of himself and all others similarly situated, v. Vizio, Inc.,* Case No. BC 702266, on behalf of Greg Coleman Law, Declaration submitted February 27, 2020; Deposition on April 30, 2020; Reply Declaration submitted on July 13, 2020.



**United States District Court, Northern District of California, San Francisco Division,** *Kym Pardini and Carrie Wood, on behalf of themselves and all others similarly situated, v. Unilever United States, Inc., a Delaware corporation*, Case No. 3:13-cv-01675-SC, on behalf of the Eureka Law Firm, Declaration submitted on February 21, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *Jennifer Nemet, Norbert Kahlert, Angela Matt Architect, Inc., Eddie Field, Tonya Dreher, Adam Schell, Bryan Sheffield, Darryl Lecours, Gisbel De La Cruz, Derek Winebaugh, Michael Skena, Melissa St. Croix, Andrew Olson, John Kubala, Brendan Daly, Steven Ferdinand, Ken Galluccio, Steven Rawczak, Mark Miller, Sven Hofmann, Thomas Siehl, III, Adam Schell, Bradley Conner, Benjamin Tyler Dunn, Ingrid Salgado, Michael Bowman, and Jon Mosley, on behalf of themselves and all others similarly situated, v. Volkswagen Group of America, Inc., Volkswagen AG, Audi AG, Audi of America, LLC, Robert Bosch Gmbh, Robert Bosch LLC, Richard Dorenkamp, Heinz-Jakob Neusser, Jens Hadler, Bernd Gottweis, Oliver Schmidt, and Jurgen Peter,* Case No. 3:17-cv-04372-CRB, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on February 14, 2020; Reply Declaration submitted on April 30, 2020; Deposition on July 22, 2020.

**United States District Court, Norther District of California, San Francisco Division,** *Vicky Maldonado and Justin Carter, individually and on behalf of themselves and all others similarly situated, v. Apple Inc., Applecare Service Company, Inc., and Apple CSC, Inc.,* Case No. 3:16-cv-04067-WHO, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on February 11, 2020; Deposition on March 12, 2020; Supplemental Declaration submitted on September 14, 2020.

**United States District Court, District of New Jersey,** *Brian Gozdenovich, on behalf of himself and all others similarly situated, v. AARP, Inc., AARP Services Inc., AARP Insurance Plan, Unitedhealth Group, Inc., and Unitedhealthcare Insurance Company,* Case No. 9:18-cv-81258-DMM, on behalf of Bursor & Fisher, P.A., Declaration submitted on January 29, 2020; Declaration submitted on March 26, 2020; Deposition on July 1, 2020; Rebuttal Declaration submitted on July 9, 2020..

**United States District Court, for the Central District of California, Western Division,** *Toya Edwards, on behalf of herself and all others similarly situated, v. Walmart Inc.,* Case No. 1:18-cv-9655, on behalf of Simmons Hanly Conroy LLC, Declaration submitted on December 6, 2019; Deposition on January 9, 2020; Reply Declaration submitted on February 27, 2020.

**United States District Court, District Of Connecticut,** *William Montgomery and Donald Wood Jr., individually and on behalf of all others similarly situated, v. Stanley Black & Decker, Inc., d/b/a Craftsman*, Case No. 3:19-cv-01182-AVC, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 15, 2019.

**United States District Court, Central District of California,** *Paul Stockinger, Elizabeth Stockinger, Basudeb Dey, Gailyn Kennedy, Eliezer Casper, Yvette Alley, and Norman Beil on behalf of themselves and all others similarly situated, v. Toyota Motor Sales, U.S.A., Inc., a California corporation*, Case No.: 17-cv-00035-VAP-KS, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on September 13, 2019; Deposition on October 10, 2019; Reply Declaration submitted on December 12, 2019.

**United States District Court, Southern District of California,** *Patrick McMorrow, Marco Ohlin and Melody DiGregorio, on behalf of themselves, all others similarly situated and the general public, v. Mondelez International, Inc*., Case No. 3:17-cv-02327-BAS-JLB, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on August 30, 2019; Deposition on October 1, 2019; Omnibus Declaration submitted on December 9, 2019; Declaration submitted on May 4, 2020; Omnibus Declaration submitted on August 28, 2020.

**United States District Court for the Eastern District of Wisconsin,** *Scott Weaver, individually and on behalf of a class of similarly situated individuals, v. Champion Petfoods USA, Inc. and Champion Petfoods LP*, Case No. 2:18-cv-01996-JPS, on behalf of Gustafson Gluek PLLC, Declaration submitted on August 13, 2019; Deposition on August 22, 2019.

**United States District Court, Central District of California,** *Collin Shanks, on behalf of himself, all others similarly situated, and the general public, v. Jarrow Formulas Inc., *Case No. 18-cv-9437-PA (AFMx), on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on July 22, 2019; Reply Declaration submitted on August 12, 2019.

**United States District Court, Eastern District Of Michigan, Southern Division,** *Suresh Persad, Daniel G. Wright and Robert S. Drummond, individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 2:17-cv-12599-TGB-MKM, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on June 25, 2019; Declaration submitted on November 26, 2019.

**United States District Court, Southern District of Florida, Fort Lauderdale Division,** *Milita Barbara Dolan, on behalf of herself and all others similarly situated, v. Jetblue Airways Corporation*, CASE NO.: 18-cv-62193-RNS, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on May 23, 2019; Deposition on October 25, 2019.

**United States District Court, Northern District of California,** *Joseph Gregorio, Patrick Quiroz and Adam Cooper individually and on behalf of all others similarly situated, v. The Clorox Company,* Case 4:17-cv-03824-PJH, on behalf of Bursor & Fisher, P.A., Declaration submitted on May 15, 2019; Declaration submitted July 12, 2019; Deposition on July 18, 2019; Reply Declaration submitted on August 21, 2019.

ECONOMICS AND TECHNOLOGY, INC.

**United States District Court, District of Minnesota,** *Hudock, et al., v. LG Electronics U.S.A., Inc., et al.*, Lead Case No. 0:16-CV-01220-JRT-KMM, Relating to All Consolidated Actions, on behalf of Zimmerman Reed, LLP, Declaration submitted on May 10, 2019; Deposition on June 6, 2019.

**United States District Court, Central District of California, Western Division,** *Jennifer Reitman and Carol Shoaff, individually and on behalf of a class of similarly situated individuals, v. Champion Petfoods USA, Inc. and Champion Petfoods LP*, Case: 2:18-cv-01736-DOC-JPR, on behalf of Gustafson Gluek PLLC, Declaration submitted on April 8, 2019, Deposition on April, 26, 2019; Supplemental Declaration submitted on June 20, 2019.

**United States District Court, Central District of California, Western Division,** *Barry Braverman, et al., v. BMW of North America, LLC, et al.*, Case No. 8:16-cv-00966-TJH-SS, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on March 29, 2019; Deposition on May 30, 2019; Reply Declaration submitted on September 16, 2019; Supplemental Declaration submitted on July 6, 2020.

**United States District Court, Southern District of Florida, West Palm Beach Division,** *Judith Marilyn Donoff on behalf of herself and all others similarly situated, v. Delta Air Lines, Inc.*, Case No. 9:18-cv-81258-DMM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on March 26, 2019.

**United States District Court, Western District of Washington,** *Jacob Beaty and Jessica Beaty on, behalf of themselves and all others similarly situated, v. Ford Motor America*, Case No. 3:17-CV-05201-RBL, on behalf of Simmons Hanly Conroy LLC; Declaration submitted on February 22, 2019; Deposition on March 29, 2019; Reply Declaration submitted on July 10, 2019; Deposition on July 30, 2019.

**United States District Court, Southern District of New York,** *Nicholas Parker, on behalf of himself and all others similarly situated, v. United Industries Corporation*, Case No. 1:17-cv-05353, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2019; Declaration submitted March 21, 2019; Declaration submitted on May 3, 2019; Deposition on July 24, 2019.

**United States District Court, Northern District of California,** *Debbie Krommenhock and Stephen Hadley, on behalf of themselves, all others similarly situated, and the general public, v. Post Foods, LLC,* Case No. 3:16-cv-04958-WHO (JSC), on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted January 11, 2019; Deposition on March 1, 2019; Declaration on April 24, 2019; Deposition on May 14, 2019; Supplemental Declaration submitted on June 21, 2019; Omnibus Declaration submitted on August 9, 2019.

ECONOMICS AND TECHNOLOGY, INC.

**United States District Court, Southern District of New York,** *Leona Hunter and Anne Marie Villa, on behalf of themselves and all others similarly situated, v. Time Warner Cable Inc*., Case No. 15-cv-06445-JPO (JLC), on behalf of Bursor & Fisher, P.A. Declaration submitted on November 30, 2018; Deposition on December 21, 2018; Reply Declaration submitted on February 27, 2019.

**United States District Court, Northern District of California,** *Jeremiah Revitch, on Behalf of Himself and all Others Similarly Situated, v. Citibank, N.A*., Case No. 17-cv-06907-JCS, on behalf of Bursor & Fisher, P.A. Declaration submitted on November 27, 2018; Deposition on December 28, 2018; Reply Declaration submitted on February 1, 2019; Deposition on February 26, 2019.

**United States District Court, Central District of California,** *Kaylee Browning and Sarah Basile, on behalf of themselves and all others similarly situated, v. Unilever United States Inc.*, Case No. 8:16-cv-02210, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 22, 2018; Deposition on November 1, 2018; Reply Declaration submitted on November 23, 2018.

**United States District Court, Southern District of New York,** *Lori Canale, individually, and on behalf of all others similarly situated, v. Colgate-Palmolive Co.,* Case No. 7:16-CV-03308-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 19, 2018.

**Superior Court for the State of California, In and for the County of San Francisco,** *Michelle Gyorke-Takatri and Katie Silver on behalf of themselves and all others similarly situated, v. Nestlé USA, Inc. and Gerber Products Company,* Case No. CGC 15-546850, on behalf of Stanley Law Group, Declaration submitted on September 7, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc*., Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Declaration submitted on August 15, 2018; Deposition on October 12, 2018; Reply Declaration on December 21, 2018.

**Superior Court of the State of California, For The County of San Francisco,** *Deanna Gastelum and Heather Bryden individually and on behalf of all other persons similarly situated, v. Frontier California Inc.*, Case No. CGC-11-511467, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration submitted on July 31, 2018, Declaration submitted August 13, 2018.

**United States District Court, For the Southern District of New York,** *Suzanna Bowling, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC*, Case No. 1:17-cv-03982-AJN, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 30, 2018, Deposition on September 6, 2018; Reply Declaration submitted on November 16, 2018.



**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 15, 2018; Deposition on August 28, 2018; Reply Declaration submitted on November 21, 2018; Declaration submitted on February 21, 2020; Reply Declaration submitted April 9, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *In re: Chrysler-Dodge-Jeep EcoDiesel® Marketing, Sales Practices, and Products Liability Litigation Dorun Bali, et al., v. Fiat Chrysler Automobiles N.V., FCA US LLC, Sergio Marchionne, VM Motori S.p.A., VM North America, Inc., Robert Bosch GmbH, Robert Bosch LLC, and Volkmar Denner*, Case No. MDL 2777-EMC, on behalf of Lieff Cabraser Heimann & Bernstein, Declaration submitted on June 6, 2018, Deposition on July 18, 2018, Reply Declaration submitted on September 4, 2018.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted April 30, 2018, Deposition on May 31, 2018; Reply Declaration submitted June 25, 2018; Declaration submitted on September 20, 2018; Deposition on September 28, 2018; Declaration submitted on October 21, 2019; Declaration submitted on July 16, 2020.

**United States District Court, Northern District of Illinois, Eastern Division,** *Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East, Sarah LaVergne, Tony And Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William Ferguson and Cheryl Ferguson, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 1:15-cv-09882-JZL, on behalf of Greg Coleman Law, Declaration submitted April 20, 2018; Reply Declaration submitted on July 13, 2018; Deposition on August 17, 2018.

**United States District Court for the Northern District of California,** *Jackie Fitzhenry-Russell, an individual, on behalf of herself, the general public and those similarly situated v. The Coca Cola Company, and Does 1-50*, Case No. 5:17-CV-00603-EJD, on behalf of Gutride Safier, LLP, Declaration submitted April 16, 2018; Deposition on October 3, 2018.

**United States District Court for the Southern District of New York,** *Josephine James Edwards, individually and on behalf of all others similarly situated, v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT, on behalf of Bursor & Fisher, P.A., Declaration submitted April 16, 2018; Deposition on June 7, 2018.

ECONOMICS AND
TECHNOLOGY, INC.

**United States District Court, Northern District of California,** *Jackie Fitzhenry-Russell, Robin Dale, and Gegham Margaryan, as individuals, on behalf of themselves, the general public and those similarly situated, v. Dr. Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., and Does 1-50,* Case No. 5:17-cv-00564-NC (lead); Case No. 5:17-cv-02341-NC (consolidated); Case No. 5:17-cv-04435-NC (consolidated)*,* on behalf of Gutride Safier, LLP, Declaration submitted April 9, 2018; Deposition on April 19, 2018; Reply Declaration submitted June 6, 2018; Supplemental Declaration submitted on November 19, 2018.

**United States District Court for the Western District of Texas, Austin Division,** *Sylvia Morris, on behalf of herself and all others similarly situated, v. Modernize Inc.*, Case No. 17:-cv-963-SS, on behalf of Bursor & Fisher, P.A., Declaration submitted March 13, 2018; Deposition on June 14, 2018.

**United States District Court, Northern District of California, San Jose Division,** *In re: Arris Cable Modem Consumer Litigation*, Case No. 17-cv-1834-LHK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on March 9, 2018; Reply Declaration submitted April 9, 2018; Deposition on April 11, 2018; Declaration submitted June 13, 2018; Declaration submitted January 31, 2019; Deposition on February 14, 2019; Reply Declaration submitted on March 14, 2019.

**United States District Court, Southern District of New York,** *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR, on behalf of Levi & Korsinsky LLP, Declaration submitted on March 5, 2018; Declaration submitted November 14, 2018; Deposition on November 28, 2018.

**United States District Court, Eastern District of Michigan,** *Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome And Mary Ellen Thome, v. Whirlpool Corporation,* Case No. 16-cv-12409-SJM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted February 12, 2018; Deposition on May 15, 2018; Reply Declaration submitted May 17, 2018.

**United States District Court, Southern District of California,** *Jose Conde, et al., v. Sensa, et al.*, Case No. 14-cv-51 JLS (WVG), on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Declaration submitted February 21, 2019.

**United States District Court, Northern District Of Illinois, Eastern Division,** *Angel Bakov, Julie Herrera, and Kinaya Hewlett, individually and on behalf of all others similarly situated, v.Consolidated World Travel, Inc. d/b/a Holiday Cruise Line, a Florida corporation,* Case No. 15-cv-02980-HDL SEC, on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Deposition on April 25, 2018.



**United States District Court, Northern District of Illinois,** *Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly, Individually and on Behalf of All Others Similarly Situated, v. CVS Pharmacy, Inc., Target Corporation, Walgreen Co., Wal-Mart Stores, Inc., and Fruit of the Earth, Inc.*, Case No. 1:16-cv-06103, on behalf of Greg Coleman Law, Declaration submitted December 22, 2017; Reply Declaration on May 4, 2018.

**United States District Court, Southern District of New York,** *Jaish Markos, individually and on behalf of all others similarly situated, v. Russell Brands, LLC*, Case No. 16-CV-04362(CS), on behalf of The Sultzer Law Group, Declaration submitted on December 1, 2017, Deposition on January 4, 2018.

**United States District Court, Northern District of California,** *Siera Strumlauf, Benjamin Robles, and Brittany Crittenden, individually and on behalf of all others similarly situated, v. Starbucks Corporation,* Case No. 16-CV-01306-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 31, 2017, Deposition on December 13, 2017.

**United States District Court, Southern District of California,** *Sheila Dashnaw, William Meier, and Sherryl Jones, individually, and on behalf of all others similarly situated, v. New Balance Athletics, Inc., a corporation; and DOES 1 through 50, inclusive,* Case No. 3:17-cv-00159-L-JLB, on Behalf of The Wand Law Firm, Declaration submitted on September 8, 2017; Deposition on October 5, 2017; Rebuttal Declaration submitted December 11, 2017.

**United States District Court, Central District of California,** *Veronica Brenner, on behalf of herself and all others similarly situated, v. Procter & Gamble Co.*, Case No. 8:16-1093-JLS-JCG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 5, 2017; Deposition on October 10, 2016.

**United States District Court, Eastern District of California,** *Joann Martinelli, individually and on behalf of all others similarly situated, v. Johnson & Johnson And McNeil Nutritionals, LLC*, Case No. 2:15-cv-01733-MCE-DB, on behalf of Bursor & Fisher, P.A., Declaration submitted August 28, 2017, Deposition on December 20, 2017; Reply Declaration submitted on January 5, 2018.

**United States District Court, Northern District of California, San Francisco Division,** *Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, Individually and on Behalf of All Others Similarly Situated, v. Chipotle Mexican Grill, Inc.*, Case No. 3:16-cv-02200-HSG, on behalf of Kaplan Fox & Kilsheimer LLP, Declaration submitted August 11, 2017; Deposition on September 22, 2017.



**United States District Court, Southern District of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation*, Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017, Deposition on November 29, 2017; Supplemental Declaration submitted on September 23, 2019.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.*, Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017; Declaration submitted on August 15, 2018; Deposition on October 12, 2018.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017, Declaration submitted August 25, 2017, Declaration submitted on October 16, 2017; Declaration submitted on August 10, 2018; Declaration submitted on November 6, 2018; Declaration submitted on November 12, 2018; Deposition on December 11, 2018; Oral Testimony and Cross Examination May 7 - 8, 2019.

**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation,* Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted May 9, 2016; Deposition on August 23, 2017; Reply Declaration submitted January 12, 2018; Reply Declaration submitted March 2, 2018.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company*, Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017; Reply Declaration submitted on October 2, 2017; Reply Declaration submitted on October 6, 2017; Declaration submitted on March 23, 2018.

**United States District Court, Southern District of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.



**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC*, Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017; Deposition on January 10, 2018; Supplemental Declaration submitted January 30, 2018; Declaration submitted on March 2, 2018; Supplemental Declaration submitted on March 30, 2018; Supplemental Declaration submitted on November 26, 2018; Deposition on December 20, 2018.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017; Declaration submitted on September 13, 2019; Deposition on October 16, 2019.

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50*, Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.

**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.*, Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017; Deposition on July 14, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company*, Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation*, Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017, Deposition on August 15, 2017, Rebuttal Declaration on March 20, 2018.

ECONOMICS AND TECHNOLOGY, INC.

**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 26, 2016; Reply Declaration submitted October 14, 2016; Deposition on October 27, 2016; Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.

**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted October 3, 2016; Deposition on November 4, 2016; Declaration submitted on January 5, 2017.

**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Supplemental Declaration submitted January 22, 2018.

**United States District Court, Central District of California, Eastern Division,** *Jeff Looper, Michael Bright, Scott Johnson, individuals on behalf of themselves and all others similarly situated, v. FCA US LLC, f/k/a Chrysler Group LLC, a Delaware limited liability company, and DOES 1-100 inclusive*, Case No. 14-cv-00700-VAP-DTB, on behalf of Gibbs Law Group, LLP; Deposition on September 29, 2016.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Reply Declaration submitted on May 2, 2017; Declaration submitted on October 2, 2017; Reply Declaration submitted on December 14, 2017.

**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.*, Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Responding Declaration submitted July 6, 2018; Rebuttal Declaration submitted on August 10, 2018.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.*, Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Reply Declaration submitted on April 3, 2017.

**United States District Court, Eastern District Of New York,** *Patrick Hughes and Nafisé Nina Hodjat, individually and on behalf of others similarly situated, v. The Ester C Company; NBTY, Inc.; and Naturesmart, LLC*, Case No. 12-cv-00041-JFB-ETB, on behalf of Reese LLP and WhatleyKallas LLP; oral testimony and cross examination on September 20, 2016.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Supplemental Declaration submitted on July 9, 2019; Supplemental Declaration submitted on July 12, 2019; Oral testimony and cross-examination on August 6-8 and 12, 2019.

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of Wolf Popper LLP; Supplemental Declaration submitted on July 9, 2019; Deposition on July 26, 2019; Oral testimony and cross-examination on August 6-8 and 12, 2019.

**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration submitted July 9, 2018; Deposition on March 7, 2019; Reply Declaration submitted on May 22, 2019. Declaration submitted on February 28, 2020.

**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration submitted on March 8, 2019.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration submitted on October 20, 2016.

Mr. Weir has provided expert testimony since 2007, served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.

**Exhibit 2**


**Documents Reviewed**

- Class Action Complaint, filed April 19, 2018

- Declaration of Steven P. Gaskin, September 17, 2020

- Sawtooth Software technical papers, available online at

http://www.sawtoothsoftware.com/support/technical-papers

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013)

http://www.analysisgroup.com/forums/winter-2013/when-all-natural-may-not-be/

- Applying Conjoint Analysis to Legal Disputes: A Case Study, Wind, Yoram, et al.

- Khoday v. Symantec Corp., 2014 WL 1281600, at *10 (D. Minn. March 13, 2014)

- Sanchez-Knutson v. Ford Motor Company, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015)

- In re: Lenovo Adware Litigation, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)

- Guido v. L'Oreal, USA, Inc., 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014)

- Brown v. Hain Celestial Group, Inc., 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

-  Microsoft v. Motorola, Inc., 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012)

- In re Scotts EZ Seed Litig., 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- Dzielak v. Maytag, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017)

- TV Interactive Data Corp. v. Sony Corp., 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013)

- Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017)

- Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc., 2018 WL 3126385 (N.D. Cal. June 26, 2018)

- In Re Arris Cable Modem Consumer Litig., 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018)

- Hadley v. Kellogg Sales Co., 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018)

- Martinelli v. Johnson & Johnson, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019)

- Krommenhock v. Post Foods, LLC, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020)

- Hudock v. LG Elecs. USA, Inc., 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020)

- *Koenig v. Vizio, Inc.*, Los Angeles Superior Court Case No. BC702266 (L.A. Super. Ct. Aug. 24, 2020)

- *Banh v. American Honda Motor Co.*, Inc., 2020 WL 4390371 (C.D. Cal. July 28, 2020)

- *Getting Started with Conjoint*, Bryan Orme, 2014

- IRI Data

- clifbar.com

- larabar.com

- powerbar.com

- kindsnacks.com

- naturespath.com

- annies.com

- target.com

- walmart.com

- amazon.com

- The Kroger Co. 2016 10-K Annual Report

- Publix Super Markets, Inc. 2016 10-K Annual Report

- Safeway Inc. 2015 10-K Annual Report

- SuperValu Inc. 2016 10-K Annual Report

- Ahold Delhaize Annual Report 2016

- Wal-mart Stores, Inc., 2016 10-K Annual Report

- Whole Foods Market, Inc., 10-K Annual Report

- CLIF0003036-37

- CLIF0038775-839

- CLIF0008650-1

- CLIF0004924

- CLIF0002123

- CLIF0005942-4

- CLIF0039469-74

- CLIF0005868-77

- CLIF0005822-28

- CLIF0005841

- CLIF0061378

- CLIF0038908-9

- CLIF0039029-30

- CLIF0002292-389

- CLIF0039031-52