SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
CHRISTOPHER VAN GUNDY, Cal. Bar No. 152359
SASCHA HENRY, Cal. Bar No. 191914
ABBY H. MEYER, Cal. Bar No. 294947
KHIRIN A. BUNKER, Cal. Bar No. 329314
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail        cvangundy@sheppardmullin.com
              shenry@sheppardmullin.com
              ameyer@sheppardmullin.com
              kbunker@sheppardmullin.com

Attorneys for Defendant
CLIF BAR & COMPANY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RALPH MILAN, SARAH AQUINO, and ELIZABETH ARNOLD on behalf of themselves, those similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>CLIF BAR & COMPANY,<br><br>Defendant. | Case No. 18-cv-02354-JD<br><br><u>CLASS ACTION</u><br><br>**CLIF BAR & COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing<br>Date:        December 17, 2020<br>Time:        10:00 a.m.<br>Courtroom:   11, 19th Floor<br>             450 Golden Gate Avenue<br>             San Francisco, CA 94102<br><br>Judge: Hon. James Donato<br><br>Complaint Filed: April 19, 2018<br>Trial Date:  October 4, 2021 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .................................................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED ..................................................... 1

I.      INTRODUCTION................................................................................................. 2

II.     BACKGROUND.................................................................................................... 3

        A.      Clif Bar & Co.:  Built On A Bike .......................................................... 3

        B.      Plaintiffs' Purported Class Action Complaint and Expert Evidence....... 5

        C.      California Plaintiff Ralph Milan................................................................ 7

        D.      New York Plaintiff Elizabeth Arnold ...................................................... 8

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT ................................... 9

IV.     SUMMARY JUDGMENT IS WARRANTED ................................................ 10

        A.      Plaintiffs' Claims Are Preempted.......................................................... 10

        B.      The Undisputed Facts Establish Plaintiffs Were Not Deceived Because the
                "Healthy" Message They Inferred Was Not Misleading to Them ........................ 12

        C.      Plaintiffs' Claims of Implied Deceptive Messaging Fail As a Matter of Law........ 14

                1.      California Law Does Not Permit the Inferential Leaps Made By
                        Plaintiffs......................................................................................... 14

                2.      "Healthy" Has No Objective, Enforceable Definition .............................. 16

        D.      Plaintiffs' Omission-Based Theory Is Not Actionable ......................................... 17

                1.      Plaintiffs Cannot Establish An Unreasonable Safety Hazard.................... 17

                2.      Plaintiffs Cannot Establish a Duty to Disclose Under the *Collins*
                        Test .............................................................................................. 18

                3.      Plaintiffs' New "Usage Occasion" Theory Is Improper............................ 20

        E.      The Facts Are Undisputed That Plaintiffs Lack Standing ................................... 21

        F.      No Evidence Supports The Breach of Warranty Claims ....................................... 22

        G.      The Proposed Warnings Violate The First Amendment......................................... 23

        H.      No Evidence Supports A Claim For Punitive Damages ........................................ 24

V.      CONCLUSION................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>Cases</u>

4
*In re Actimmune Mktg. Litig.*
No. C 08-02376 MHP, 2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Sept. 1, 2010),
5 *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ............................................................................. 21

6 *Ahern v. Apple, Inc.*
411 F. Supp. 3d 541 (N.D. Cal. 2019) ..........................................................................19, 20
7

*Am. Bev. Ass'n v. City & Cty. of San Francisco*
8 916 F.3d 749 (9th Cir. 2019) .........................................................................................23, 24

9 *Am. Meat Inst. v. U.S. Dep't of Agric.*
760 F.3d 18 (D.C. Cir. 2014)................................................................................................ 24
10

11 *Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ......................................................................................................... 9, 10
12

*In re Apple Inc. Device Performance Litig.*
13 386 F. Supp. 3d 1155 (N.D. Cal. 2019) ........................................................................18, 20

14 *Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*
378 F. App'x 652 (9th Cir. 2010) ....................................................................................... 16
15

16 *Axon v. Florida's Natural Growers, Inc.*
813 F. App'x 701 (2d Cir. 2020) ......................................................................................... 14
17

*Becerra v. Dr Pepper/Seven Up, Inc.*
18 945 F.3d 1225 (9th Cir. 2019) ............................................................................................. 14

19 *Birdsong v. Apple, Inc.*
590 F.3d 955 (9th Cir. 2009) ..........................................................................................21, 22
20

21 *Blissard v. FCA US LLC*
No. LA CV18-02765................................................................................................................ 19
22

*Browning v. Unilever U. S., Inc.*
23 No. SACV 16-02210.........................................................................................................18, 22

24 *Celotex Corp. v. Catrett*
477 U.S. 317 (1986) .............................................................................................................. 9
25

26 *Clark v. Perfect Bar, LLC*
816 F. App'x 141 (9th Cir. 2020) ..............................................................................10, 11, 12
27

*In re Clorox Consumer Litig.*
28 894 F. Supp. 2d 1224 (N.D. Cal. 2012) ............................................................................. 23

*Collins v. eMachines, Inc.*
    202 Cal. App. 4th 249 (2011) .........................................................................18, 19

*CTIA-Wireless Ass'n v. City & Cty. of San Francisco*
    494 F. App'x 752 (9th Cir. 2012) ......................................................................... 24

*Durell v. Sharp Healthcare*
    183 Cal.App.4th 1350 (2010) ..................................................................12, 21, 24

*Easyriders Freedom F.I.G.H.T. v. Hannigan*
    92 F.3d 1486 (9th Cir. 1996) ............................................................................... 15

*Edmundson v. P&G*
    537 F. App'x 708 (9th Cir. 2013) ......................................................................... 16

*Golden v. Home Depot U.S.A., Inc.*
    No. 1:18-cv-00033-NONE-JLT, 2020 U.S. Dist. LEXIS 89941
    (E.D. Cal. May 21, 2020) ..................................................................................... 13

*Hadley v. Kellogg Co.*
    Case No. 16-CV-04955-LHK, ECF No. 1 .................................................14, 15, 25

*Hadley v. Kellogg Sales Co.*
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................... 23

*Hadley v. Kellogg Sales Co.*
    No. 16-CV-04955-LHK, 2019 U.S. Dist. LEXIS 136791
    (N.D. Cal. Aug. 13, 2019) .................................................................................... 25

*Hodsdon v. Mars, Inc.*
    891 F.3d 857 (9th Cir. 2018) .............................................................17, 18, 19, 20

*Intel Corp. v. Hamidi*
    30 Cal. 4th 1342 (2003) ....................................................................................... 23

*Johnson v. Hewlett-Packard Co.*
    809 F. Supp. 2d 1114 (N.D. Cal. 2011) ............................................................... 10

*Maeda v. Kennedy Endeavors, Inc.*
    407 F. Supp. 3d 953 (D. Haw. 2019) ................................................................... 16

*Major v. Ocean Spray Cranberries, Inc.*
    No. 5:12-cv-03067-EJD, 2015 U.S. Dist. LEXIS 23542
    (N.D. Cal. Feb. 26, 2015) ..................................................................................... 13

*Maurizio v. Goldsmith*
    230 F.3d 518 (2d Cir. 2000) ..........................................................................13, 21

*New York Times Co. v. Sullivan*
    376 U.S. 254 (1964) ............................................................................................. 23

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*
    210 F.3d 1099 (9th Cir. 2000) ........................................................................ 10

*O'Shea v. Littleton*
    414 U.S. 488 (1974) ..................................................................................22, 23

*Pickern v. Pier 1 Imps. (U.S.), Inc.*
    457 F.3d 963 (9th Cir. 2006) ...................................................................10, 13

*Silver v. BA Sports Nutrition, LLC*
    No. 20-cv-00633-SI, 2020 U.S. Dist. LEXIS 99320 (N.D. Cal. June 4, 2020)........................ 16

*Soremekun v. Thrifty Payless, Inc.*
    509 F.3d 978 (9th Cir. 2007) ........................................................................ 10

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009) (UCL) ........................................................................ 21

*Trishan Air, Inc. v. Fed. Ins. Co.*
    635 F.3d 422 (9th Cir. 2011) ........................................................................ 20

*Truxel v. General Mills Sales, Inc.*
    No. C 16-04957 JSW, 2019 U.S. Dist. LEXIS 144871
    (N.D. Cal. Aug. 13, 2019) ........................................................................... 12

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ........................................................................ 13

*Williams v. Yamaha Motor Co.*
    851 F.3d 1015 (9th Cir. 2017) ...................................................................18, 20

*Wilson v. Frito-Lay N. Am., Inc.*
    260 F. Supp. 3d 1202 (N.D. Cal. 2017) ................................................................ 12

*Yumul v. Smart Balance, Inc.*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010)................................................................ 16

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*
    471 U.S. 626 (1985) .................................................................................... 23

**Statutes**

21 U.S.C.
    § 343-1.................................................................................................... 11
    § 343-1(a)................................................................................................ 12

Cal. Bus. & Prof. Code § 17535 ......................................................................... 21

Cal. Civ. Code §§ 1780(a)(4), 3294(a) .................................................................. 25

UCC § 2-313............................................................................................... 22

1

**Other Authorities**

2   21 C.F.R. § 101.14(a)(4) ................................................................................................ 12

3   58 Fed. Reg. 2478, 2491 (Jan. 6, 1993) Ex. 12 .......................................................... 12

4   79 Fed. Reg. 11880, 11904 (Mar. 3, 2014) Ex. 13 ..................................................... 25

5   81 Fed. Reg. 33742, 33829 (May 27, 2016) Ex. 11 .................................................... 12

6   9th Cir. R. 36-3 .............................................................................................................. 10

7   Fed. R. Civ. P.
        Rule 9(b) ................................................................................................................. 13
8       Rule 56(a) ................................................................................................................. 9
        Rule 56(g) ............................................................................................................... 10
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, on December 17, 2020 at 10:00 a.m., before the Honorable James Donato of the United States District Court for the Northern District of California, San Francisco Division, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Clif Bar & Company ("Clif Bar") will, and hereby does, move this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment or, in the alternative, partial summary judgment.

Clif Bar requests that this Court grant summary judgment (or alternatively, partial summary judgment) as to each and all of Plaintiffs' California claims for violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.), False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 et seq.), and Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq.), breach of express warranty (Cal. Com. Code § 2313(1)) and the breach of the implied warranty of merchantability (Cal. Com. Code § 2314) and New York claims for False Advertising (N.Y. Gen. Bus. L. § 350), Unfair and Deceptive Business Practices (N.Y. Gen. Bus. L. § 349), breach of express warranty (N.Y. CLS UCC § 2-313); breach of the implied warranty of merchantability (N.Y. CLS UCC § 2-314), injunctive relief and punitive damages.

This Motion is based upon this Notice of Motion; the attached Memorandum; the Declaration of Christopher Van Gundy; the Declaration of Gary Erickson; the Declaration of Dr. James Rippe; the Proposed Order filed herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF THE ISSUES TO BE DECIDED

(1) Whether Plaintiffs' claims are preempted by the National Labeling and Education Act, 21 U.S.C. § 343-1 *et seq.*;  (2) Whether Clif Bar is entitled to judgment on Plaintiffs' claims where the undisputed evidence shows that Plaintiffs were not deceived because they admit their consumption of the Clif Bars did not put them at increased risk of disease; therefore, they were not deceived by the message they inferred from the Clif Bars that they were "healthy";  (3) Whether Clif Bar is entitled to judgment on Plaintiffs' claims because the statements on the Clif Bars are truthful, and even if the reasonable consumer were to infer the claims mean "healthy," "healthy"

has no objective definition; (4) Whether Clif Bar has an obligation to include a warning or usage occasion information on the Clif Bars where Plaintiffs have not established an unreasonable safety hazard or a duty to disclose under *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011); (5) Whether Plaintiffs lack standing as they were not deceived in the manner in which they allege deception, and thus, did not lose money or property as a result; (6) Whether Plaintiffs' proposed warnings, if imposed, would violate Clif Bar's First Amendment rights because they are based on facts which are disputed in the scientific community; (7) Whether Plaintiffs' prayer for punitive damages fails as a matter of law because the facts underlying Plaintiffs' claims against Clif Bar are disputed in the scientific community.

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.  INTRODUCTION

Based on admittedly minority science that sugar is "toxic" to the human body, Plaintiffs Ralph Milan and Elizabeth Arnold ("Plaintiffs") ask that this Court set aside the position of the U.S. Food and Drug Administration on sugar, and: 1) determine that excess added sugar is not "healthy" because it puts consumers at risk for coronary heart disease, diabetes, and "other morbidity"; and 2) require warning statements to that effect on the challenged product labels despite product names like "Chocolate Chip," "Carrot Cake" and "Chocolate Brownie." The FDA has already considered whether sugar is a "disqualifying nutrient" for health claims, and has decided the science does not preclude health claims for foods with added sugars *in any amount*. Summary judgment is thus warranted in the first instance because Plaintiffs' attempt to end run around federal food law is preempted, as illustrated in the Ninth Circuit's recent (2020) decision in a companion "sugar" case brought by the same counsel with virtually the same allegations.

Summary judgment is also warranted because the evidence in discovery does not support Plaintiffs' claim as specifically pled throughout the Complaint that they were misled into believing the bars were "healthy" because the "high-sugar" bars in fact put them at increased risk for disease. In their depositions and interrogatory responses, both Plaintiffs disavowed this theory of deception by admitting that consumption of the bars did not put them at "increased risk for disease." Defendant Clif Bar & Company ("Clif Bar") therefore moves for summary judgment on

1  these and other grounds and alternatively, for partial summary judgment as to the warranty claims,

2  injunctive relief for warning statements, and on the punitive damages claims.

3       The Complaint frames the issues for summary judgment, and therefore Plaintiffs must

4  come forward with specific facts to support the theory of deception actually pled in the Complaint.

5  In dozens of paragraphs throughout the Complaint, Plaintiffs specifically claim that they were

6  misled into purchasing, or paying a price premium for, Clif Bar and Clif Kid ZBar products

7  because otherwise truthful "challenged claims" on the labels or packaging, such as "Nutrition for

8  Sustained Energy," falsely *implied* to Plaintiffs that the bars were "healthy," when, in fact, the

9  "high-sugar" bars actually "increased their risk of disease," or were a "detriment to health."

10 Therefore, Plaintiffs claim the implied "healthy" message was misleading as to them not because

11 Clif Bar did not provide nutritional or health benefits, but because consuming the bars "put them

12 at increased risk for disease," or similarly, "did not detriment health."  The deception turns on

13 whether the bars are "healthy," which is defined as "won't detriment health," but here, the bars did

14 not "detriment health" as to Plaintiffs; therefore, they were not deceived.  Because Plaintiffs are

15 bound by the "not healthy" theory of deception pled in the Complaint, Plaintiffs' admission that

16 consumption of the bars did not detriment their health is fatal to their claims of deception and thus

17 requires summary judgment.

18       Finally, the Court can grant partial summary judgment on Plaintiffs' claims for breach of

19 warranty, injunctive relief, and punitive damages.  The warranty claims fail essentially for the

20 same reason as the consumer fraud claims.  Plaintiffs' request for warnings requires the

21 establishment of a special duty between the purported class and Clif Bar, which does not exist.

22 These warnings also are based on disputed scientific theories, and thus run afoul of commercial

23 free speech rights under the First Amendment.  Plaintiffs' punitive damages claim fails for similar

24 reasons, because a theory premised on minority science is insufficient to seek punitive damages as

25 a matter of law.

26 **II.    BACKGROUND**

27     **A.    Clif Bar & Co.:  Built On A Bike**

28 Clif Bar's founder, Gary Erickson, came up with the idea for the original Clif Bar in 1990

during a 175 mile bike ride that Erickson calls his "Epiphany Ride".  During that ride, Erickson became fed up with the then-most popular energy bars because they did not taste good and lacked the nutritional profile and sustained energy he was seeking.  Erickson Decl., ¶¶ 2, 3.  Following the Epiphany Ride, Erickson worked with his mother to develop an energy bar with great taste and texture, that provided "sustained energy," with a balance of carbohydrates, protein, fats and fiber.  *Id.* ¶ 3.  After months of experimenting, the original Clif Bar was born.  *Id.* ¶ 4.

Clif Bars taste great and provide immediate energy in part because of the first listed ingredient, brown rice syrup, a sugar, which contains no fructose (that Plaintiffs' expert, Dr. Lustig, contends is the "troublemaker").  Van Gundy Decl., Ex. 1, Lustig Tr. 58:1-12.  Brown rice syrup binds the ingredients together, and gives the product a pleasing, moist, chewy texture.  Although Clif Bars are ideally suited for moderate to strenuous activity, that is not their sole use as people often need on-the-go energy nutrition in a variety of contexts.

Today, Clif Bar also offers consumers a suite of products designed for different people and different energy need states.  Erickson Decl., ¶ 7.  These include Clif Kid ZBars which were created because Erickson and his wife, Kit, were parents of young children at the time and wanted them to have the same "on-the-go energy" offered to adults with nutritionals designed for kids.  *Id.* ¶¶ 7, 26.  The ZBars contain about half the calories and sugar of Clif Bars, are made with an oat blend as the first ingredient, use tapioca syrup (no fructose) instead of brown rice syrup as the primary source of sugar, and are intended for a broad range of childhood activities.  *Id.* ¶ 26.

Clif Bar does not hide the sugar levels.  Many of its products are named to signal that the bars provide sugar for the energy as promised, such as "Chocolate Brownie," or "Iced Oatmeal Cookie," and the sugar levels are disclosed on the back of the packaging and labels.  *Id.* ¶¶ 12, 16, 17.  Clif Bar has never used the term "healthy" on its products or in its marketing or advertising, but instead thinks of "healthy" in terms of a "healthy planet " (supporting organic farmers) or "healthy lifestyle" (getting out and exercising).  *Id.* ¶¶ 17, 18.  Clif Bar lives by its "Five Aspirations" of doing well by doing good, sustaining its employees, the planet, the community with a variety of charitable events, its business with long-term investments, and its brand by making great tasting bars people want. *Id.* ¶¶ 13, 14.

Case No. 18-cv-02354-JD
CLIF BAR'S MOTION FOR SUMMARY JUDGMENT

B.      **Plaintiffs' Purported Class Action Complaint and Expert Evidence**

Plaintiffs challenge two Clif Bar product lines: the original Clif Bar and Clif Kid ZBars (the "Products").  On Clif Bar's package, Plaintiffs challenge a single claim: "Nutrition for Sustained Energy."  Compl., ¶¶ 180, 186 (Dkt. 1).  On the Clif Kid ZBar packages, Plaintiffs identify eight "challenged claims": (1) "Nourishing Kids in Motion"; (2) "No High-Fructose Corn Syrup"; (3) "In raising our family, finding nutritious on-the-go snacks for our kids wasn't easy. That's why we created Clif Kid – wholesome, delicious snacks made with organic ingredients to keep kids going, growing, and exploring." and (4) "In raising our family, finding nutritious on-the-go snacks for our kids wasn't easy. That's why we created Clif Kid – delicious snacks made with organic ingredients to keep kids going, growing, and exploring" (collectively the "Family Story"); (5) "Clif Kid ZBar Protein['s] balanced blend of protein, whole grains, vitamins, and minerals helps provide nutritional building block for kids' growing bodies . . . . "; (6) "CLIF Kid Zbar['s] blend of carbs, fiber, protein, and fat gives kids energy so they can keep Zipping and Zooming along."; (7) "[A] blend of nutrients for energy to help your kid Zipping and Zooming along"; (8) "CLIF Kid ZBar Fruit + Veggie . . . is crafted with a blend of whole grains, vitamins & minerals, fruit juice concentrates, and vegetable powders to give kids energy so they can keep Zipping and Zooming along."  *Id.* ¶¶ 128, 135, 142, 149, App'x. A (Dkt. 1).

Plaintiffs do not allege that the Products state anywhere on package that they are "healthy." Plaintiffs instead believe that the challenged statements are "claims regarding the health and nutrition qualities of the Products, which are deceptive because they *convey* that the Products are healthy and will not detriment health, despite that the Products contain excessive sugar, which detriments health." *Id.* ¶¶ 181, 187 (emphasis supplied); *see also Id.* ¶¶ 129, 136, 143, 150, 158. The "healthy" message is therefore inferred.

Plaintiffs consistently define their inferred "healthy" message to mean that the Products will not "detriment health" due to added sugar content.  *See e.g.*, *Id.* ¶¶ 179, 190; Van Gundy Decl., Ex. 9, Interrog. 2.  Plaintiffs allege that they were deceived because "[w]hen purchasing Clif [B]ars, Plaintiffs were seeking products that were healthy to consume, that is, whose consumption would not increase *their* risk of CHD, stroke, and other morbidity" (emphasis

1   supplied).  Compl*.* ¶ 189.  Thus, "healthy," as defined by Plaintiffs in their Complaint, means that

2   consuming the challenged products would not put them at increased risk for disease.

3       To support the allegations of their increased risk of disease, Plaintiffs' Complaint cites

4   dozens of studies, over thirty pages, and broadly alleges detrimental health effects related to

5   "excess sugar consumption."  *Id.* ¶¶ 46-109.  Plaintiffs allege that "added sugar in virtually any

6   form—and certainly in the forms used to sweeten the Clif Products—contains toxic fructose, and

7   thus has essentially the same detrimental health effects, with typically only minor differences in

8   the ratio of fructose to glucose in a given form of added sugar."  *Id.* ¶ 168.

9       Plaintiffs' expert, Dr. Robert Lustig, has opined that "[r]egularly or excessively consuming

10  Original Clif Bars ("Clif Bars") and Clif Kid ZBars (ZBars), due to their added sugar content, is

11  not healthy, and the excess added sugar is more detrimental to health than the other substances in

12  the products like whole grains and fiber can be considered beneficial."  Lustig Decl., ¶ 5 (Dkt. 82).

13  Dr. Lustig notes, however, that fructose is the "troublemaker" here and the focus of his efforts are

14  to reduce sugars containing fructose.  Plaintiffs' Expert, Dr. Michael Greger, has opined that a

15  "variety of independent scientific bodies have recommended daily added sugar consumption

16  below 10% of calories, and some below 5% . . .  [a]bove that amount, any added sugar

17  consumption begins having unacceptable adverse metabolic effects, contributing to obesity, type 2

18  diabetes, liver disease, heart disease, and dental caries (cavities)."  Greger Decl., p. 4 (Dkt. 83).

19      Dr. Lustig has also testified that consuming one Clif Bar per week, or even two per week

20  on separate days, would not put consumers at risk for disease.  Van Gundy Decl., Ex. 1, Lustig Tr.

21  191:15-192:4.  Neither of Plaintiffs' medical experts have performed medical tests on, or relied on

22  any research specific to, the Products.  Sugar consumption is not listed as a cause for heart disease,

23  diabetes, or obesity by the CDC and other major professional health organizations dedicated to the

24  study of these conditions.  Rippe Decl., pp. 51, 56, 60.  There is a lack of consensus among

25  authoritative health organizations—including the FDA, World Health Organization (WHO),

26  American Heart Association (AHA) , Institute of Medicine (IOM), the Scientific Advisory

27  Committee on Nutrition, and the European Food Safety Authority (EFSA)—on the proper dietary

28  guidelines for added sugar consumption.  Rippe Decl., pp. 75.  None of these authorities make

1    recommendations based on individual food products.  *Id.*

2         **C.    California Plaintiff Ralph Milan**

3         Plaintiff Ralph Milan purchased Clif Kid ZBars and Clif Bars from 2014 to 2017.  Van

4    Gundy Decl., Ex. 2, Milan Tr. 121:23-25.  He purchased each of the product lines "three to four

5    times a year . . . [a] couple boxes at a time."  *Id.* 122:23-123:4; 123:13-18; *see also* Compl., ¶ 180.

6    He "may have looked at" the nutrition facts when purchasing the Products.  Ex. 2, 156:23-157:2.

7         Milan claims that his decision to purchase Clif Bars was "based on them implying that they

8    were healthy, providing nutrition and they were nourishing."  *Id.* 141:24-142:13.  Specifically, he

9    inferred "healthy" from "Nutrition for Sustained Energy," the image of a cliff hanger [the

10   Climber] and the story on the package.  *Id.* 173:12-14; 174:14-175:6.  He similarly claims to have

11   purchased Clif Kid ZBar products "based on the packaging and its imagery" because "[i]t came

12   across as being healthy."  *Id.* 160:2-16.

13        Milan consumed approximately fifty Clif Bars per year; i.e., less than one per week.  *Id.*

14   125:23-126:1-4.  He "didn't eat any" of the ZBar products but bought them for other family

15   members.  *Id.* 143:8-12.  Milan goes to the gym "at least five days" a week for "[c]ardio and

16   weightlifting."  *Id.* 58:10-19.  He typically eats "a protein and a vegetable" for a meal, limits his

17   consumption of carbohydrates to "two to three" times a week, and "[n]ot very often" will he

18   consume dessert.  *Id.* 51:19-21; 55:17-56:1; 74:6-11.

19        On October 7, 2017, Milan received an email from his current counsel seeking "a volunteer

20   class action plaintiff."  *Id.* 185:19-186:24; Ex. 3.  From what he "can recall," this email was the

21   first time that anyone declared that the sugar content of the Products was "unhealthy."  *Id.* 187:24-

22   188:6.  Milan now believes that the Products are "unhealthy."  *Id.* 164:19-25.  In an effort to

23   understand what Milan meant by "unhealthy," he was asked about the menu items at a restaurant

24   he co-owned.  Milan had no opinion about whether his restaurant's "Wagyu beef dog drenched in

25   ancho chili beer," "Bacon-Wrapped Hot Dogs," "peanut butter and jelly sandwiches,"

26   "cheeseburger," "chorizo burger," "Chocolate chip cookie bar," or "brownie" were "unhealthy."

27   *Id.* 128:24-129:5; 129:10-18; 129:19-130:3; 133:6-14; 135:19-136:3.  When asked why he

28

1  believes that Clif Kid ZBar products are "unhealthy," he answered, "[b]ased on the information I

2  received from my counsel." *Id.* 164:19-25.

3      Milan alleged that he overpaid for the Products because "the Products Plaintiffs and the

4  Class received were not healthy, but rather their consumption causes increased risk of CHD,

5  stroke, and other morbidity." Compl. ¶ 200.  Despite these allegations, Milan confirmed that his

6  personal consumption of the Products did *not* increase his risk for disease.  Van Gundy Decl., Ex.

7  2, Milan Tr. 196:24-197:4 (Q: ". . . you are not alleging, are you, that your consumption of CLIF

8  Bar products . . . increased the risk for any disease, like coronary heart disease or stroke?" A: "No,

9  I'm not."); *see also* Ex. 9, Interrog. 16 (plaintiff "does not contend within this lawsuit that he has

10  suffered any physical injury or increased risk of disease.").  When asked if he had "any intent to

11  purchase CLIF bars in the future" he answered "[n]ot at this time." *Id.* Ex. 2, Milan Tr. 124:3-5.

12      **D.      New York Plaintiff Elizabeth Arnold**

13      Plaintiff Elizabeth Arnold purchased Clif Kid ZBar "Original" and Clif Bars from 2013 to

14  2018.  *Id.* Ex. 4, Arnold Tr. 78:18-22; 105:21-25; Compl., ¶ 186.  She purchased a six-pack of the

15  Products "approximately once every two weeks" or "once per month[.]" Van Gundy Decl., Ex. 4,

16  Arnold Tr. 78:5-8; Compl., ¶ 186.  When purchasing the products, Arnold reviewed the nutrition

17  facts and ingredients lists because "[i]t's important . . . [t]o know what you're going to eat.  If it's

18  a healthy product or not."  Van Gundy Decl., Ex. 4, Arnold Tr. 81:13-82:6; 99:10-100:1.

19      Arnold claims that the "packaging" of the Products made her want to buy them. *Id.* 98:17-

20  24; 99:6-9.  On Clif Bars, she found the statements "Nutrition for Sustained Energy" and "Made

21  with Organic Rolled Oats" to be attractive. *Id.* 146:16-23.  On the "Original" ZBars package, she

22  found attractive "Nourishing Kids in Motion," "No High Fructose Corn Syrup," "USDA organic

23  symbol," "Non-GMO," the "family statement," "the kid being happy, moving along," "10 grams

24  of whole grains," and the "Good Source of Fiber" claims. *Id.* 106:1-19; 107:20-108:9.  Arnold

25  also "noticed that the sugars were 11 grams" on the ZBar package which was attractive to her "at

26  that time." *Id.* 107:2-9.

27      Arnold's daily diet typically consists of a "piece of fruit" and "yogurt" at breakfast with a

28  "cup of tea." *Id.* 52:13-53:2; 54:2-23.  If she has lunch, it is "something small" like "a tuna fish

1   sandwich," "salad," or "granola bar."  *Id.* 52:23-53:2; 54:2-23.  Dinner is a "full meal" like

2   "chicken" or "spaghetti and meatballs or a salad and certain types of vegetables."  *Id.* 53:5-8;

3   54:18-23.  She eats something sweet "[o]nce a month maybe."  *Id.* 57:19-22.

4       At some point, "maybe" around November 2017, Arnold received an unsolicited email

5   from her current counsel seeking plaintiffs for this lawsuit.  *Id.* 115:18-116:15; 119:3-7; *see also*

6   120:15-18.  When asked when her "mind changed" about the Products, she answered "[w]hen I

7   got into contact with my attorney."  *Id.* 114:7-11.  Arnold "[n]ow" believes the Products are

8   "unhealthy.  *Id.* 150:19-151-3.

9       Arnold consumes Stonyfield yogurt "[m]aybe two" times a week including "organic

10  strawberry low fat" and "organic vanilla low fat."  *Id.* 135:4-12, 18:22.  She does not believe that

11  Stonyfield yogurt is "unhealthy" despite that the flavors she consumes exceed the sugars in the

12  ZBar products.  *Id.* 136:5-19; 137:5-15; 138:10-14; Ex. 5.  When asked "why is the Clif Bar Zbar

13  product with 12 grams of sugar [...] unhealthy and the Stonyfield here with more sugars is not

14  unhealthy?" Arnold responded, "I'm not an expert, I don't know."  *Id.* 141:7-14.

15      Arnold alleges that she overpaid for the Products because "their consumption causes

16  increased risk of CHD, stroke, and other morbidity."  Compl., ¶¶ 199-200.  Despite these

17  allegations, Arnold confirmed that her consumption of the Products did *not* increase her risk for

18  disease.  Van Gundy Decl., Ex. 4, Arnold Tr. 153:18-23 (Q: "Okay.  So you're not contending in

19  this case that your consumption and your son's consumption of Clif Bar products caused you or

20  him to be at increased risk of disease; correct?" A: "Correct."); Ex. 9, Interrog. 16.  She also

21  testified that the current packaging's "added sugar" disclosure would not prevent her from buying

22  a Clif Bar.  Ex. 4, Arnold Tr. 165:3-7 (Q: "But as far as you're concerned, the 21 grams of added

23  sugar would not prevent you from buying it now that it's been disclosed; correct?" A: "Correct.").

24  **III.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

25      Summary judgment is appropriate when no genuine dispute as to any material fact exists

26  and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex*

27  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the

28  case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The operative complaint frames

1    the issues for a motion for summary judgment.  *See e.g., Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457

2    F.3d 963, 968-69 (9th Cir. 2006); *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1131-

3    32 (N.D. Cal. 2011).

4         On an issue where the opposing party will bear the burden of proof at trial, the moving

5    party can prevail merely by pointing out that the opposing party lacks evidence to support its case.

6    *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets

7    its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for

8    trial to defeat the motion.  *Id.*  The opposing party's evidence must be more than "merely

9    colorable" and must be "significantly probative."  *Anderson*, 477 U.S. at 249-50.

10        Further, the opposing party must produce admissible evidence that shows a genuine issue

11   of material fact exists for trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d

12   1099, 1102-03 (9th Cir. 2000).  In addition, if "the court does not grant all the relief requested by

13   the motion, it may enter an order stating any material fact – including an item of damages or other

14   relief – that is not genuinely in dispute and treating the fact as established in the case."  Fed. R.

15   Civ. P. 56(g).  For the reasons that follow, summary judgment should be granted, or, in the

16   alternative, partial summary judgment on injunctive relief, warranty, and punitive damages.

17   **IV.    SUMMARY JUDGMENT IS WARRANTED**

18        **A.    Plaintiffs' Claims Are Preempted**

19        Plaintiffs seek nothing less than that this Court determine what foods qualify as "healthy,"

20   and then to substitute its judgment for that of the FDA or USDA and unfairly require warnings on

21   Clif Bar products but not for its competitors, or other "sugary" foods.  Further, Plaintiffs propose

22   that the Court or a jury do so by resolving scientific disputes and decide in favor of a scientific

23   theory that Plaintiffs admit is in the minority.  Fortunately, the doctrine of preemption forecloses

24   this scenario of courts acting as a regulatory authority in individual cases.

25        The Ninth Circuit recently issued a decision that is citable, but per 9th Cir. R. 36-3, is not

26   precedent, in a parallel sugar case, *Clark v. Perfect Bar, LLC*, 816 F. App'x 141 (9th Cir. 2020).

27   There, the Ninth Circuit affirmed dismissal of an almost identical complaint against an energy bar

28   company due to preemption.  This issue goes to the Court's subject matter jurisdiction, so Clif Bar

1   addresses this first.

2       The plaintiffs in *Clark*, represented by Plaintiffs' counsel here, asserted essentially the

3   same claims as those pled against Clif Bar, supported by all of the same studies, science, and

4   theories.  *See* Van Gundy Decl., Ex. 10, (Complaint).  The plaintiffs "alleged that Perfect Bar's

5   packaging led them to believe that the bars were healthy when in fact added sugar rendered the

6   bars unhealthy."  *Clark*,  816 F. App'x at 142.  The "challenged claims" were "20+ Superfoods,"

7   "17G PROTEIN," "THE ORIGINAL REFRIGERATED PROTEIN BAR," and that the creator of

8   the Perfect Bar was a "health food pioneer."  *Id.*

9       The Ninth Circuit found all of plaintiffs' claims preempted and affirmed the dismissal at

10  the pleading stage because the challenged claims were "health claims" subject to the express

11  provisions of the National Labeling and Education Act, 21 U.S.C. § 343-1 ("the NLEA"):

12      Appellants' state law claims predicated on the theory that the bars were mislabeled
        are preempted by the Nutritional Labeling and Education Act (NLEA), the Food,
13      Drug, and Cosmetics Act (FDCA), and accompanying regulations.  *See Hawkins v.
        Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018) ("The [NLEA] amended the
14      [FDCA] to establish uniform food labeling requirements").  The NLEA preempts
        all state law claims that "directly or indirectly establish any requirement for the
15      labeling of food that is not identical to the federal requirements."  *Id.* (citation and
        internal quotation marks omitted).
16
        To the extent Appellants' claims advance the notion that Perfect Bar made an
17      improper health claim due to added sugar levels in the bar, those claims are not
        viable.  *See* 21 C.F.R. § 101.14(a)(1) (defining a health claim as a "claim made on
18      the label or in labeling of a food . . . that expressly or by implication . . .
        characterizes the relationship of any substance to a disease or health-related
19      condition").  However, the NLEA and its applicable regulations are silent on
        whether sugar levels preclude a product from making health claims.  *See* 21 C.F.R.
20      § 101.14(a)(4) (excluding sugar from an enumerated list of nutrient levels that may
        preclude a product from making health claims).
21
        In *Hawkins*, we held that under the NLEA "no state may directly or indirectly
22      establish any requirement for the labeling of food that is not identical to the federal
        requirements."  906 F.3d at 770 (citation and internal quotation marks omitted).
23      **Allowing a claim of misbranding under California law based on misleading
        sugar level content would "indirectly establish" a sugar labeling requirement
24      "that is not identical to the federal requirements," a result foreclosed by our
        precedent**.  *Id.*
25
    *Clark*, 816 F. App'x at 143 (emphasis added).  Plaintiffs here allege that challenged claims such as
26
    "Nutrition for Sustained Energy" (on Clif Bar) and phrases on the packaging of Clif Kid ZBars
27
    like, "Nourishing Kids in Motion"; and "Clif Kid Zbar['s] balanced blend of protein, whole grains,
28
    vitamins, and minerals helps provide nutritional building block for kids' growing bodies . . . . "

misleadingly imply a relationship between the substance of the products—nutrients, carbs, fiber, protein, etc.—and health.  As in *Clark*, Plaintiffs' claim that Clif Bar made an "improper health claim" due to the added sugars in the bars is preempted.

Plaintiffs' attempt to obtain a ruling that sugar is a "danger" as they contend and to obtain damages and a warning flies in the face of FDA's determination on this issue that it would: "not be appropriate to limit health claims on foods on the basis of added sugars . . . . "  Van Gundy Decl., Ex. 12, 58 Fed. Reg. 2478, 2491 (Jan. 6, 1993).  A finding of misbranding by the Court would result in a sugar labeling requirement "not be identical to" NLEA where FDA rejects sugar as a "disqualifying nutrient."  21 CFR § 101.14(a)(4).  FDA previously rejected claims that sugar is harmful and demands to require a sugar warning (like the one Plaintiffs seek), concluding instead that sugar could be beneficial if it prompts one to eat something with beneficial nutrients like yogurt (as with the case of Plaintiff Arnold).  *See* Van Gundy Decl., Ex. 11, 81 Fed. Reg. 33742, 33829 (May 27, 2016) ("we do not require warning labels or disclaimers . . . some added sugars can be included as part of a healthy dietary pattern."); *see also id.* 33818.

Therefore, the state-law equitable remedy Plaintiffs seek—a warning linking added sugar to a variety of diseases—is outrageous and certainly is a labeling requirement "that is not identical to the federal requirements."  *Clark*, 816 F. App'x at 143; Ex. 9, Interrog. No. 19; *see also* Lustig Decl., ¶ 53 (Dkt. 82).  As in the Ninth Circuit's decision in *Clark*, Plaintiffs' claims are therefore preempted.  *See also Truxel v. General Mills Sales, Inc.*, No. C 16-04957 JSW, 2019 U.S. Dist. LEXIS 144871, *12 (N.D. Cal. Aug. 13, 2019) ("Defendant is under no obligation to warn its consumers that certain levels of sugar may be associated with poor health results.  In fact, federal express preemption bars that demand as federal law for the disclosure of sugar content in food imposes no such requirement.  *See* 21 U.S.C. § 343-1(a)").

**B.** **The Undisputed Facts Establish Plaintiffs Were Not Deceived Because the "Healthy" Message They Inferred Was Not Misleading to Them**

To prevail on their California UCL, FAL, and CLRA claims, "Plaintiffs must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance."  *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017).  Similarly, under the New York statutory claims, Plaintiffs must demonstrate that "the

1   defendant's deceptive acts were directed at consumers" and "the plaintiff has been injured as a

2   result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  Here, Plaintiffs' claims all

3   sound in fraud because "the entire complaint . . . alleges a unified course of fraudulent conduct,"

4   so Plaintiffs were required to plead their claims *with specificity*, including the "who, what, when,

5   where and *how*" the challenged representation was false.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

6   1097, 1106, 1108 (9th Cir. 2003); Fed. R. Civ. P. 9(b) (emphasis supplied).

7          Accordingly, Plaintiffs pled in their Complaint a very detailed, specific theory of

8   deception, starting with the allegation that: "Clif employs claims on the labeling and packaging of

9   the high-sugar bars (identified in paragraphs 128, 135, 142, 149, 157) meant to appeal to

10  consumers interested in healthful foods, but that are deceptive because they are incompatible with

11  the dangers of the excessive sugar consumption to which the Products contribute."  Compl., ¶ 122.

12  The referenced portions of the Complaint identify the "challenged claims" that are also set forth in

13  the Appendix to the Complaint, such as "Nutrition for Sustained Energy," which is on the labeling

14  and packaging of the Clif Bar.

15         Repeatedly throughout the Complaint, Plaintiffs specifically alleged exactly how the

16  challenged claims deceived consumers – consumers were led to believe that the Products were

17  "healthy," but they are not healthy because consumption of the bars put Plaintiffs at increased risk

18  for disease or were detrimental to their health.  *See* Compl., ¶¶ 161, 182, 185, 188-190, 194, 200.

19         The allegations of the Complaint could not be clearer as to the exact nature of the

20  deception – a "healthy" message that was untrue because consumption of the bars was detrimental

21  to health – which frames the issues for summary judgment.  *See Pickern*, 457 F.3d at 968-69.

22  Summary judgment is therefore appropriate where, as here, Plaintiffs' testimony "directly

23  contradicts [their] own legal theory."  *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-cv-

24  03067-EJD, 2015 U.S. Dist. LEXIS 23542, at *15 (N.D. Cal. Feb. 26, 2015); *see also Golden v.

25  Home Depot U.S.A., Inc.,* No. 1:18-cv-00033-NONE-JLT, 2020 U.S. Dist. LEXIS 89941, at *13

26  (E.D. Cal. May 21, 2020) (granting summary judgment on failure of reliance element where

27  testimony "contradicts the allegations of [plaintiff's] complaint that Home Depot misled him into

28  buying what it falsely represented to be 'genuine' mahogany").

In unambiguous deposition testimony and interrogatory responses, Plaintiffs have now directly contradicted their theory of deception and affirmed that the Products did not put them at increased risk of disease.  Van Gundy Decl., Ex. 9, Interrog. 16; Ex. 4, Arnold Tr. 153:18-23; Ex. 2, Milan Tr. 196:24-197:4; *see also* Ex. 1, Lustig Tr. 191:15-18 (once a week consumption of Clif Bars does not cause harm).  Plaintiffs are bound by "how" they plead deception – if they can no longer make the factual assertion that consumption of the Products put them at increased risk for disease, then the implied "healthy" message was not false as they alleged in the Complaint, and all of their claims sounding in fraud fail as a matter of law.

**C.**     **Plaintiffs' Claims of Implied Deceptive Messaging Fail As a Matter of Law**

    **1.**     **California Law Does Not Permit the Inferential Leaps Made By Plaintiffs**

Courts recently have begun to reject as a matter of law false advertising liability in situations where, as here, a consumer allegedly *infers* product attributes from truthful advertising. In *Shaeffer v. Califia Farms, LLC*, decided well after the motion to dismiss was denied in this case, the California Court of Appeal affirmed the sustaining of a demurrer where the plaintiff claimed she had been misled by a truthful statement on a juice label ("no added sugar") by inferring that the truthful statement meant that the defendant's juice had less sugar than competitors' juices.  *Shaeffer*, 44 Cal. App. 5th 1125, 1139 (2020).

Holding that such statements are not actionable as a matter of law, the court of appeal explained, in part, that a reasonable consumer is unlikely to make the "inferential leaps" argued by the plaintiff and "we are hesitant to adopt a theory upon which 'almost any advertisement [truthfully] extolling' a product's attributes 'would be fodder for litigation.'"  *Id.*; *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (affirming dismissal of claim that reasonable consumers read the word "diet" and infer a promise "weight loss, healthy weight management, or other health benefits."); *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) ( "natural" does not imply no trace amounts of glyphosate).

Yet, this is precisely what Plaintiffs attempt to do here, challenge otherwise truthful claims by inferring some challenged representation and then defining how that implied representation is somehow misleading.  Unlike the parallel "sugar" cases in *Hadley v. Kellogg Co.* and

1  *Krommenhock v. Post Foods, LLC*, it is undisputed here that Clif Bar does not use the term

2  "healthy."  *See Hadley v. Kellogg Co.*, Case No. 16-CV-04955-LHK, ECF No. 1 (Complaint), ¶

3  119 ("The word 'health' or 'healthy' appears more than 40 times" on the challenged products);

4  *Krommenhock v. Post Foods, LLC*, Case No. 3:16-cv-04958-WHO, ECF No. 1 (Complaint), ¶ 119

5  ("The word 'healthy' appears more than 20 times" on the challenged products).

6          It is equally undisputed that Plaintiffs do not contend that the "challenged claims" on their

7  face are untruthful.  Clif Bars state "Nutrition for Sustained Energy" on the front of pack.  Both

8  Plaintiffs Milan and Arnold testified that the bars provided just that.  *See* Van Gundy Decl., Ex. 2,

9  Milan Tr. 179:14-16 (Q: "You don't contend, do you, that the CLIF bars failed to provide you

10  with nutrition?"  A: "Correct."); 175:7-14 (Q: "And did they [the Clif Bars] provide you with

11  energy?" A: "I believe they did."); *see also* Ex. 4, Arnold Tr. 147:25-148:2 (Q: "And what did you

12  take nutrition for sustained energy to mean?  A: "That it would provide energy."); *Id.* 176:24-

13  177:2 (Q: ". . . you would agree with me this bar provides nutrition; correct?  A: "There is --

14  yes."); *Id.* 178:6-11 (Q: ". . . sugars provide energy for the human body; right? A: "Yes").

15  Plaintiffs similarly do not allege that the claims on the ZBar products are factually false.  In fact,

16  Plaintiff Arnold understood "Nourishing Kids in Motion" to mean that the product gives

17  "nourishment", which she agreed would be supplied by the product. *Id.* 111:11-112:10.

18          Pursuant to the recent authority in *Shaeffer*, the Court can and should grant summary

19  judgment on Plaintiffs' inferred claims of deception where it is undisputed on the facts that the

20  challenged claims are truthful.  Plaintiffs' tortured implied theory of deception requires an

21  inference from claims like "Nutrition For Sustained Energy" that the Products are "healthy," and

22  then another inference that "healthy" means "won't detriment health," and then a finding that, due

23  to their added sugar content, consumption of the bars by individual consumers actually

24  "detriments their health."  Plaintiffs' theory of deception simply requires too many "inferential

25  leaps" not permitted under recent California appellate case authority, which decisions have greater

26  weight than federal pronouncements on state law.  *See Easyriders Freedom F.I.G.H.T. v.*

27  *Hannigan*, 92 F.3d 1486, 1494 n.4 (9th Cir. 1996) ("When interpreting state law . . . [i]n the

28  absence of convincing evidence that the state supreme court would decide differently, 'a federal

1   court is obligated to follow the decisions of the state's intermediate courts.'").

2                    **2.    "Healthy" Has No Objective, Enforceable Definition**

3          Despite Plaintiffs' proffered definition, the inferred "health" claim has no objective,

4   enforceable definition among consumers, and therefore it is not actionable as a matter of law.

5   "Specific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may

6   constitute false advertising, while general, subjective, unverifiable claims are 'mere puffery' that

7   cannot." *Edmundson v. P&G*, 537 F. App'x 708, 709 (9th Cir. 2013); *see also Appliance*

8   *Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010) (affirming

9   grant of summary judgment; claims that a recycling appliance offered a "unique" system with

10  "unprecedented results" were not actionable); *Silver v. BA Sports Nutrition*, *LLC*, No. 20-cv-

11  00633-SI, 2020 U.S. Dist. LEXIS 99320, *12-14 (N.D. Cal. June 4, 2020) (granting motion to

12  dismiss; the claims, "Superior Hydration" and "More Natural Better Hydration" were too vague to

13  be actionable); *Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 971-72 (D. Haw. 2019)

14  (granting motion to dismiss; the word "Hawaiian" along with a single image associated with

15  Hawaii may evoke Hawaii, but is not specific enough to be actionable); *see also Yumul v. Smart*

16  *Balance, Inc.,* 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) (dismissing complaint; "healthiness is

17  difficult, if not impossible, to measure concretely . . . .").

18         The subjective nature of the term "healthy" is demonstrated, for example, by Arnold's

19  testimony that she believes organic yogurt, which she eats multiple times a week, is healthy, even

20  though it has more sugar in a serving than the Clif Kid ZBar which she ate with less frequency.

21  Van Gundy Decl., Ex. 4, Arnold Tr., 96:12-97:12; 133:16-138:14.  That Arnold can view the

22  Products as unhealthy and her yogurt as healthy shows that she is not applying an objective rubric.

23  *See also id.,* Ex. 2, Milan Tr., 128:24-129:5; 129:10-18; 129:19-130:3; 133:6-14; 135:19-136:3

24  (no opinion on whether numerous food products were "unhealthy").

25         This is similarly evident from the work of Brian Sowers, Plaintiffs' consumer research

26  expert.  In analyzing his Nutrition Claim Survey, Sowers revealed that 60.4% of survey

27  respondents shown the Clif Bar label with the "Nutrition for Sustained Energy" claim replaced

28  with a "100% Recycled Materials" claim, reported a belief that the "product is healthy" based on

1    the recycled material statement.  Sowers Decl., ¶¶ 41, 45, 52 (Dkt. 81).  When asked why the

2    "100% Recycled Materials" statement would cause consumers to believe the product is healthy,

3    Sowers claimed survey "noise" because "it's just common sense that no one should look at 100

4    percent recycled materials and say I think that means that the product is healthy."  Van Gundy

5    Decl., Ex. 6, Sowers Tr. 91:14-92:21.  But, notably, Sowers never asked survey respondents what

6    "healthy" meant to them, or defined that term within his survey.  Sowers Decl., ¶¶ 34-50 (Dkt. 81).

7              Plaintiffs' medical experts also confirmed that what is "healthy" and what is "harmful" are

8    subjective from a medical standpoint.  For example, Dr. Lustig testified that whether consumption

9    of fructose is "excessive" or harmful to an individual depends on a host of "mitigating factors" –

10   including overall activity level, genetic conditions, and even where the person lives.  Van Gundy

11   Decl., Ex. 1, Lustig Tr. 113:11-114:25.  When asked "[w]ould you agree that healthy, the term is a

12   relative term?", Dr. Greger answered candidly "I would agree."  *Id.* Ex. 7, Greger Tr. 89:19-22.

13   And, in clarifying his opinions at deposition, Plaintiffs' advertising and marketing expert, Bruce

14   Silverman, offered his own definition of "healthy" to mean "good for you and not bad for you."

15   *Id.,* Ex. 8, Silverman Tr. 68:9-14; 71:18-22; 74:12-75:2.  Such variability amply demonstrates that

16   what is "healthy" is not objective or quantifiable and summary judgment should be granted.

17               **D.      Plaintiffs' Omission-Based Theory Is Not Actionable**

18             Plaintiffs similarly cannot establish an omission-based theory of deception.  "Omissions

19   may be the basis of claims under California consumer protections laws, but 'to be actionable the

20   omission must be [1] contrary to a representation actually made by the defendant, or [2] an

21   omission of a fact the defendant was obliged to disclose.'"  *Hodsdon v. Mars, Inc*., 891 F.3d 857,

22   861 (9th Cir. 2018) (citations omitted).  Here, Plaintiffs' alleged "health" claims were never made

23   by Clif Bar but are instead inferred from truthful statements on the package.  Thus, Plaintiffs'

24   allegations concern the second prong of omission-based claims which require an obligation to

25   disclose.  For the reasons below, Plaintiffs cannot establish a duty to disclose and their omission-

26   based claims are not actionable as a matter of law.

27               **1.      Plaintiffs Cannot Establish An Unreasonable Safety Hazard**

28             A duty to disclose can exist where a plaintiff establishes "(1) the existence of a design

1   defect"; (2) that the alleged defect causes an "unreasonable safety hazard"; and (3) "that the

2   manufacturer knew of the defect at the time a sale was made." *Williams v. Yamaha Motor Co.*,

3   851 F.3d 1015, 1025 (9th Cir. 2017) (internal citations omitted).  To establish an unreasonable

4   safety hazard, Plaintiffs "must describe more than merely 'conjectural and hypothetical' injuries."

5   *Browning v. Unilever U. S., Inc.*, No. SACV 16-02210 AG (KESx), 2018 U.S. Dist. LEXIS

6   213841, at *8 (C.D. Cal. Dec. 17, 2018) *aff'd*, 809 F. App'x 446 (9th Cir. 2020).

7          Here, Plaintiffs lack evidence that the Products pose an unreasonable safety hazard or that

8   consumption of the Products actually harms consumers.  Plaintiffs' allegations, and their

9   supporting expert opinions, are based entirely on research related to the purported risks associated

10  with consumption of excess sugar *generally*.  Compl. ¶¶ 46-109.  Further, both Plaintiffs have

11  affirmatively stated in this litigation that neither they, nor their households, were put at *any*

12  increased risk of detrimental health effects due to consumption of the Products.  Van Gundy Decl.,

13  Ex. 4, Arnold Tr. 153:18-23; Ex. 2, Milan Tr. 196:24-197:4; Ex. 9, Interrog. 16.  Even Plaintiffs'

14  medical experts do not contend that consumption of the Products is *per se* dangerous or

15  detrimental to health; Dr. Lustig testified that one can eat up to two Clif Bars per week, on

16  separate days, with no adverse health risks.  *Id.* Ex. 1, Lustig Tr. 191:15-192:4.  Plaintiffs' once a

17  week consumption fell within Dr. Lustig's "safe" guidelines.

18          **2.    Plaintiffs Cannot Establish a Duty to Disclose Under the *Collins* Test**

19          An duty to disclose can arise when "(1) the omission is material; (2) the defect is central to

20  the product's function; and (3) at least one of the following four [*Collins*] factors is met":

21          [1] the defendant is the plaintiff's fiduciary; [2] the defendant has exclusive
         knowledge of material facts not known or reasonably accessible to the plaintiff; [3]
22       the defendant actively conceals a material fact from the plaintiff; [4] or the
         defendant makes partial representations that are misleading because some other
23       material fact has not been disclosed.

24  *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176 (N.D. Cal. 2019); *see also*

25  *Hodsdon,* 891 F. 3d at 862; *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011).

26          Here Plaintiffs do not allege, and it can hardly be said, that the existence of "excess added

27  sugar" impacts the central function of the Products.  The Products were designed to be eaten by

28  consumers and Plaintiffs ate them.  The presence of "excess" added sugar in the Products does not

1    interfere with that design or render the Products inedible.  *See Ahern v. Apple, Inc.*, 411 F. Supp.

2    3d 541, 567 (N.D. Cal. 2019) (duty to disclose exists only where the defect "renders those

3    products incapable of use by any consumer.").  Nor can Plaintiffs' alleged preferences regarding

4    sugar content be the basis for a "central function" argument.  *Hodsdon*, 891 F.3d at 864 ("the

5    central functionality of the product is not based on subjective preferences about a product").

6         Even assuming *arguendo* that Plaintiffs could meet the central function test, they similarly

7    fail to provide evidence to support the *Collins* factors.  As to the first factor, Plaintiffs do not

8    allege that Clif Bar was acting as a fiduciary and Plaintiffs lack any such evidence.  As to the

9    second factor, the evidence does not reflect that Clif Bar had exclusive knowledge regarding the

10   sugar content of the products—which was undisputedly listed in the nutrition facts panel on all of

11   the Products.  To the extent that Plaintiffs argue that *research* on the potential health effects of

12   added sugar was not known to Plaintiffs, such information also was clearly available to the public.

13   Van Gundy Decl., Ex. 8, Silverman Tr. 252:17-23 (Q: "And are [consumers] aware of the effects

14   of overconsumption of sugar? A: "I think that has been very, very widely -- I think that has

15   become widely known by consumers . . . issues about sugars have been heavily promoted for at

16   least the last 20 years."); Ex. 1, Lustig Tr. 171:1-4 (Q: ". . . between 2013 and present, do you

17   think there's been much media attention to sugar in the diet?" A: "Yes, I do.").

18        As to the third factor, "[a]ctive concealment requires, *inter alia*, that 'the defendant must

19   have *intentionally* concealed or suppressed the fact with the *intent to defraud* the plaintiff.'"

20   *Blissard v. FCA US LLC*, No. LA CV18-02765 JAK (JEMx), 2018 U.S. Dist. LEXIS 201725, at

21   *38 (Nov. 9, 2018) (emphasis supplied) (citation omitted).  Here, there is no evidence of "active

22   concealment" by Clif Bar relating to the sugar content of the Products.  The total and added sugar

23   content is uniformly disclosed on the Nutrition Facts panel on the Products, and the Products'

24   flavors strongly evoke sugar – e.g., Chocolate Chip, Carrot Cake, Chocolate Brownie.  *Id.* Ex. 8,

25   Silverman Tr. 231:15-19 (Q: "So when a consumer reads iced oatmeal cookie, they know there's

26   probably sugar in the product; correct?"  A: "I would think so").  Moreover, according to

27   Plaintiffs' own expert, consumers have been aware of the potential health effects of sugar

28   overconsumption for decades.  *Id.* Silverman Tr. 252:17-23.  Clif Bar has always advertised the

1   Clif Bar as an energy bar.  *See generally* Exhibit 1 to Plaintiffs' Class Cert. Mtn. (Dkt. 77).

2       As to the fourth factor, a duty to disclose may arise where a "defendant makes partial

3   representations that are misleading because some other material fact has not been disclosed."  *In re*

4   *Apple Inc.*, 386 F. Supp. 3d at 1176; *Hodsdon,* 891 F. 3d at 862.  However, effects related to sugar

5   overconsumption are well-known to consumers in the marketplace.  Van Gundy Decl., Ex. 8,

6   Silverman Tr. 252:17-23.  And, as argued, neither Milan nor Arnold contends in this lawsuit that

7   that they, or any members of their households, were put at increased risk of disease.  *See Id.* Ex. 4,

8   Arnold Tr. 153:18-23; Ex. 2, Milan Tr. 196:24-197:4; Ex. 9, Interrog. 16.  Thus, there is no

9   deception as to Plaintiffs.  Absent any probative evidence supporting the allegation that the

10  representations are deceptive as to them, Plaintiffs cannot establish a partial representation claim.

11          ### 3.    **Plaintiffs' New "Usage Occasion" Theory Is Improper**

12      In their Motion for Class Certification (Dkt. 77), Plaintiffs attempt—perhaps to save their

13  claims—to introduce a new theory of omission about the "intended use" of the Products.  This

14  theory is not reflected anywhere in Plaintiffs' Complaint.  *See e.g.,* Compl., ¶¶ 161-162.  At the

15  summary judgment stage, Plaintiffs' Complaint, not subsequent motions, frame the issues and the

16  Court should disregard any such arguments raised in opposition.  *Trishan Air, Inc. v. Fed. Ins. Co.*,

17  635 F.3d 422, 435 (9th Cir. 2011) (party may not defeat summary judgment by raising issues not

18  pled in the operative pleading).

19      But even if the Court were to consider Plaintiffs' novel and ill-defined theory, it would

20  also fail for reasons similar to those above.  Plaintiffs do not aver that the Products conveyed a

21  "partial representation" related to "usage occasions."  Plaintiffs also cannot establish the requisite

22  "unreasonable safety hazard" or central defect test based on their "usage occasions" theory.

23  *Williams*, 851 F.3d at 1025; *Ahern*, 411 F. Supp. 3d at 567.

24      Plaintiffs simply do not allege what harm they suffer if, for instance, they consume a Clif

25  Bar while watching television or during a leisurely stroll around the block.  In fact, Plaintiffs do

26  not contend that consumption of the Products put them at increased risk in *any* occasion.  *See Van*

27  *Gundy* Decl., Ex. 4, Arnold Tr. 153:18-23; Ex. 2, Milan Tr. 196:24-197:4; Ex. 9, Interrog. 16.

28  And, even assuming *arguendo* that the "usage occasions" theory were accurate, omission of such

1    information would not impact the central function of the Products—to be eaten by consumers as

2    food.  Thus, Plaintiffs' should not be permitted to rely on a theory they did not plead in opposing

3    this motion, and, in any event, Plaintiffs "usage occasions" theory fails on summary judgment.

4              **E.     The Facts Are Undisputed That Plaintiffs Lack Standing**

5              The consumer protection statutes (California's CLRA, UCL, FAL and New York's GB)

6    each require that plaintiff establish statutory standing.  To establish standing under the CLRA,

7    FAL, or UCL, a plaintiff must show (1) a misrepresentation by the defendant, (2) their reliance on

8    that misrepresentation, and (3) resulting economic injury.  *See Durell v. Sharp Healthcare*, 183

9    Cal.App.4th 1350, 1367 (2010) (CLRA); Cal. Bus. & Prof. Code § 17535 (FAL); *In re Tobacco II

10   Cases*, 46 Cal.4th 298, 326 (2009) (UCL); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP,

11   2010 U.S. Dist. LEXIS 90480, at *24-25 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th

12   Cir. 2011) (applying reliance requirement to all three UCL prongs).  Similarly, to establish

13   standing under sections 349 and 350 of the GBL, a plaintiff must show a material

14   misrepresentation by the defendant and a resulting injury.  *Maurizio*, 230 F.3d at 521-22.

15             Here, Plaintiffs cannot establish the requisite misrepresentation or economic harm, and

16   therefore lack standing under any of the consumer protection statutes.  As explained in

17   Section(B)(1), *supra*, Plaintiffs allege that they were deceived into inferring that the Products were

18   healthy when in fact the Products' high added sugar content is allegedly detrimental to health.  *See

19   Compl.*, ¶¶ 1, 3, 32-109, 122, 129, 136, 143, 150, 162, 182, 188, 194.  However, during discovery,

20   Plaintiffs both confirmed that their consumption of the Products did not actually increase their risk

21   for disease or otherwise cause them any health detriments.  Van Gundy Decl., Ex. 4, Arnold Tr.

22   153:18-23; Ex. 2, Milan Tr. 196:24-197:4; Ex. 9, Interrog. 16.  The Products are therefore not

23   misleading or deceptive as to Plaintiffs.  Accordingly, even if the inferred "healthy" message was

24   the basis for their purchase, Plaintiffs could not have been deceived or overpaid for the Products

25   because, by Plaintiffs' own definition, the Products were not "unhealthy" as to them.

26             At most, Plaintiffs assert a hypothetical economic injury that some members of the class

27   might suffer because their consumption of the bars might put them at risk for disease.  But the

28   prerequisite for standing requires more.  *See e.g., Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th

1   Cir. 2009) (affirming dismissal for lack of standing on a motion to dismiss); *Browning*, 809 F.

2   App'x at 446-47 (affirming summary judgment where plaintiffs failed to present evidence linking

3   use of the product to actual injury undermines their fraudulent omission theories.").

4        For example, in *Birdsong*, plaintiffs alleged that the iPod was defective because it posed

5   "an unreasonable risk of noise-induced hearing loss to its users." *Birdsong*, 590 F.3d at 956.

6   Despite the allegations of harm, the plaintiffs did "not claim that they suffered or imminently will

7   suffer hearing loss from their iPod use." *Id.* at 960.  Instead, the court found that, "at most, the

8   plaintiffs plead a potential risk of hearing loss . . . to other unidentified iPod users who might

9   choose to use their iPods in an unsafe manner.  The risk of injury the plaintiffs allege is not

10  concrete and particularized *as to themselves*." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S.

11  555, 561, n.1 (1992)).  The court concluded that because "plaintiffs have not shown the requisite

12  injury to themselves," they "therefore lack standing." *Id.* at 961.

13       The evidence here is clear and undisputed: the Products are not unhealthy as to Plaintiffs

14  because their consumption of the bars did not place them at increased risk for disease.  The

15  "healthy" message Plaintiffs inferred was therefore *not* misleading by their own definition.  If this

16  inferred message was not misleading, then Plaintiffs were not deceived and did not pay a price

17  premium.  Without evidence to support their deception, Plaintiffs cannot show that they suffered

18  economic harm and therefore have no standing to assert their claims individually or on behalf of

19  the purported class.  *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974).

20       **F.     No Evidence Supports The Breach of Warranty Claims**

21       Plaintiffs allege that "Clif made affirmations of fact or promises, or descriptions of goods"

22  that were "part of the basis of the bargain," citing Cal. Com. Code § 2313(1).  Compl., ¶ 249; *see*

23  *also* ¶ 273, citing New York's CLS UCC § 2-313.  Plaintiffs further allege that Clif Bar breached

24  the express warranties by selling Products that are harmful to health.  *Id.* ¶¶ 250, 274.

25       As to the implied warranty claims, Plaintiffs allege that they did not receive goods that

26  conformed to the "promises and affirmations made on the container or label of the goods."

27  Compl., ¶ 257.  When an implied warranty claim is based solely on whether the product in dispute

28  conforms to its label, the claim rises and falls with express warranty claims brought for the same

1  product.  *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017).  Plaintiffs'

2  implied warranty claims are based only on the representations on the label.  Compl., ¶¶ 257, 280.

3  Only objective statements are actionable under a breach of express warranty theory.  *In re Clorox*

4  *Consumer Litig*., 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012).

5         Clif Bar did not breach any packaging promises.  The evidence is undisputed that the

6  Products do not contain high-fructose corn syrup and Plaintiffs are not asserting that the Products

7  did not provide nutrients for sustained energy.  Van Gundy Decl., Ex. 2, Milan Tr. 173:15-19,

8  175:7-14; Ex. 4, Arnold Tr. 110:10-114:6; 149:8-16; *see generally* Compl. (no allegations that

9  Products in fact contain high fructose corn syrup or do not provide nutrition and sustained energy).

10        Plaintiffs allege that the challenged claims collectively create a "health halo" warranty that

11  is breached because the sugar content renders the products unhealthy.  However, each Plaintiff

12  confirmed in response to written discovery that the products were not unhealthy as them.  Van

13  Gundy Decl., Ex. 9, Interrog. 16.  Accordingly, Clif Bar is entitled to summary judgment on the

14  warranty claims (4, 5, 8, and 9).  Because Plaintiffs cannot establish breach of warranty claims as

15  to themselves, they cannot bring them on behalf of the class.  *O'Shea*, 414 U.S. at 494-95.

16        **G.**      **The Proposed Warnings Violate The First Amendment**

17        The First Amendment constrains Plaintiffs' request for compelled disclosures.  *New York*

18  *Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964); *accord Intel Corp. v. Hamidi*, 30 Cal. 4th 1342,

19  1364 (2003) ("[T]he use of government power, whether in enforcement of a statute or ordinance

20  *or by an award of damages or an injunction in a private lawsuit*, is state action that must comply

21  with First Amendment limits.").  The undisputed facts demonstrate that, at a minimum, Plaintiffs'

22  proposal to compel Clif Bar to include specific warnings on its product labels would, if adopted,

23  violate Clif Bar's commercial free speech rights.  Compl., ¶¶ 177, 178, 231, 283; Van Gundy

24  Decl., Ex. 9, Interrog. 19; Lustig Decl., ¶ 53 (Dkt. 82); Class Cert. Mtn. at 15-18, 22 (Dkt. 77).

25        The Ninth Circuit specified the framework for evaluating this issue just last year in a very

26  similar case, *Am. Bev. Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019).

27  Sitting en banc, the court rejected the city's attempt to compel beverage manufacturers to provide

28  sugar warnings for their products.  Applying the test in *Zauderer v. Office of Disciplinary Counsel*

1    *of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985), the Ninth Circuit explained that a

2    "compelled disclosure accompanying a product or service" is constitution only if it meets "three

3    criteria:" "[T]he notice is (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly

4    burdensome." *Am. Bev. Ass'n*, 916 F.3d at 756.  A court may consider the three requirements in

5    any order, and it is the burden of the party seeking to compel speech (here, Plaintiffs) to

6    demonstrate satisfaction of these criteria.  *Id.*

7            Plaintiffs cannot meet their burden for the first two criteria which are related: the proposed

8    disclosures are controversial because the facts on which they are based are disputed in the

9    scientific community.  When "[t]here is a debate in the scientific community about the health

10   effects" of a product, it cannot be said that a disclosure forcing an entity to choose a side in the

11   debate is "'purely factual and uncontroversial.'"  *CTIA-Wireless Ass'n v. City & Cty. of San*

12   *Francisco*, 494 F. App'x 752, 753-54 (9th Cir. 2012) (citation omitted); *accord Am. Meat Inst. v.*

13   *U.S. Dep't of Agric.*, 760 F.3d 18, 27 (D.C. Cir. 2014) (There is a controversy when there is a

14   disagreement over "the truth of the facts required to be disclosed.")  Here, Plaintiffs' own expert

15   testified that, while his position was gaining in acceptance, it was nevertheless in the minority,

16   noting that there was a divide between "ivory tower scientists" and clinicians.  Van Gundy Decl.,

17   Ex. 1, Lustig Tr., 153:14-19; 154:15-18; 154:24-155:12; *see also* Rippe Decl., pp. 50, 51, 56, 60,

18   68 (leading health organizations, including the World Health Organization, Centers for Disease

19   Control, the American Heart Association, the American Diabetes Association, The Obesity

20   Society, and the American Liver Foundation do not count sugar as a risk factor or cause of disease

21   as Dr. Lustig contends).  The First Amendment does not permit a court to compel Clif Bar to take

22   a side in that controversy.  The requested disclosures are unjustified and unduly burdensome

23   because such disclosures are not required of the marketplace as a whole and would put Clif Bar at

24   a distinct competitive disadvantage – exactly why an issue like this is better decided by regulators

25   than the courts.  Accordingly, Clif Bar is entitled to partial summary judgment as to Plaintiffs'

26   claims seeking to compel Clif Bar to include the proposed disclosures on its packaging.

27           **H.      No Evidence Supports A Claim For Punitive Damages**

28           Plaintiffs seek punitive damages on their CLRA claim.  Compl., ¶ 246.  The CLRA allows

-24-

1  punitive damages upon "clear and convincing evidence that the defendant has been guilty of

2  oppression, fraud, or malice."  Cal. Civ. Code §§ 1780(a)(4), 3294(a); *see also Butte Fire Cases*,

3  24 Cal. App. 5th 1150, 1158 (2018), *as modified on denial of reh'g* (July 26, 2018), review denied

4  (Oct. 17, 2018) (explaining that the higher burden of proof for punitive damages must be

5  accounted for on summary judgment).  Plaintiffs lack evidence satisfying this high standard.

6         Plaintiffs allege an association between added sugar consumption and a variety of diseases,

7  including diabetes, heart disease, and obesity.  Compl., ¶¶ 25-109.  However, the FDA has taken

8  the contrary position that "inadequate evidence exists to support the direct contribution of added

9  sugars to obesity or heart disease."  Van Gundy Decl., Ex. 13, 79 Fed. Reg. 11880, 11904 (Mar. 3,

10 2014) ("[N]either the 2010 DGA nor the IOM macronutrient report concluded that added sugars

11 consumption from all dietary sources, in itself, increases obesity.  In fact, the 2010 DGA states

12 that added sugars do not contribute to weight gain more than any other source of calories.  The

13 evidence submitted by CSPI supporting the contribution of added sugars to heart disease failed to

14 show a direct association between added sugars consumption and heart disease risk.").

15        Excess energy intake (calories), rather than sugar per se, is responsible for obesity and

16 chronic disease.  Rippe Decl., pp. 76.  Plaintiffs' medical expert, whose opinion underpins

17 Plaintiffs' case theory, has confirmed that his opinion on the "danger" of consuming added sugar

18 to health is not widely accepted in the medical science community.  *Id.*, pp. 51, 56, 60; Van Gundy

19 Decl., Ex. 1, Lustig Tr., 153:14-19; 154:15-18; 154:24-155:12; *see also Hadley v. Kellogg Sales*

20 *Co.*, No. 16-CV-04955-LHK, 2019 U.S. Dist. LEXIS 136791, at *51 (N.D. Cal. Aug. 13, 2019)

21 (citing Dr. Lustig's testimony and granting summary judgment as to punitive damages).  A theory

22 premised on a minority scientific view cannot support a claim for punitive damages.  *Hadley*, *53.

23 **V.**    **CONCLUSION**

24        Based on the foregoing, Clif Bar respectfully requests that the Court grant its request for

25 summary judgment of the Plaintiffs' claims or, in the alternative, partial summary judgment.

26 Dated:  October 29, 2020          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

27                                   By  _____
                                         */s/ Christopher Van Gundy*

28                                        Attorneys for Defendant
                                          CLIF BAR & COMPANY