UNITED STATES DISTRIC COURT
NORTHERN DISTRICT OF CALIFORNIA

RALPH MILAN, SARAH AQUINO, and
ELIZABETH ARNOLD on behalf of
themselves, those similarly situated and the
general public,

                              Plaintiffs,

vs.

CLIF BAR & COMPANY,

                              Defendant.

Case No. 3:18-CV-02354-JD

Reply Declaration

of

**COLIN B. WEIR**

November 27, 2020

MAY REFERENCE MATERIALS DESIGNATED "CONFIDENTIAL" AND
"CONFIDENTIAL ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 7th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I.  QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.   I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to automobiles, food products, household appliances, herbal remedies, health/beauty care products, electronics, and computers.  My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony during the last four years, is attached hereto as Exhibit 1.  This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.

2.   Contained in Exhibit 1 is a list of numerous litigations in which I have participated in the design, execution and/or determination of the economic suitability of conjoint surveys, or have been found by the court to have expertise in conjoint analysis.  These cases include, but are not limited to *Hadley vs. Kellogg; Krommenhock v. Post; Fitzhenry-Russell v. Dr. Pepper; Jones v. Nutiva; Hunter v. Nature's Way; Looper v. FCA; Sanchez-Knutson v. Ford Motor Company; Belfiore v. Procter and Gamble; Kurtz v. Kimberly Clark; In re Scotts EZ Seed Litigation; In re:*



*ConAgra Foods; In re: Arris Cable Modem; Martinelli v. Johnson & Johnson; Hudock v. LG; Koenig v. Vizio;* and *Banh v. American Honda.*

3.    I received graduate level training in conjoint analysis as part of my MBA.  I take post-graduate, continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software.  In addition, I have more than 10 years of experience using conjoint professionally.

## II.  ENGAGEMENT

4.    I provide this declaration in connection with the case filed by Plaintiffs Ralph Milan, Sarah Aquino, and Elizabeth Arnold ("Plaintiffs") in the above-captioned action against Defendant Clif Bar & Company, (hereinafter "Clif" or "Defendant") as it relates to certain Clif Bars and Z-Bars (the "Clif Bars" or the "Products").  I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts and opinions set forth herein.

5.    Plaintiffs allege that Defendant markets these nutrition bars "with the labeling and packaging claims that convey a health and wellness message with the goal of increasing the price and sales of its high-sugar 'nutrition bars.'"[1]  Plaintiffs also allege that the claims are "designed to appeal to health conscious consumers," yet are "deceptive because they are incompatible with the dangers of the excessive sugar consumption" to which the Clif Bars contribute.[2]  Plaintiffs allege that Defendant prominently displays the claim "Nutrition for Sustained Energy" on its Classic Clif Bars, conveying that the bars are "healthy or are conducive to good health and physical well-being, which is misleading because that message is incompatible with the dangers of excessive sugar consumption to which the Classic Bars contribute."[3]  It is also alleged that the Defendant

---

[1] *See, generally,* Class Action Complaint, filed April 19, 2018 (the "Complaint"), at 1.

[2] *Id.*

[3] *Id.*, at 43.



prominently labels the Clif Kid's ZBars with "Nourishing Kids in Motion," "No High-Fructose Corn Syrup," and "nutritious … snack."[4]  Finally, Plaintiffs allege that "Clif regularly and intentionally omits material information regarding the amount and dangers of the added sugars in its products," and information regarding the proper usage occasion for the Products.[5]

6.     Plaintiffs allege that the Omissions and Misrepresentations resulted in, among other things, the payment of an inflated price for the Clif Bars at the time and point of purchase by the Class.[6]

7.     Among other things, I have been asked by Counsel for Plaintiffs to review Defendant's Motion to Exclude ("MTE"), and respond thereto.

8.     ETI is being compensated at the rate of $725 per hour for my work on this case. The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

9.     The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report, and in Exhibit 2, attached hereto. In addition, I have relied upon my educational background and more than 17 years of experience.

---

[4] The "Nutrition for Sustained Energy," "Nourishing Kids in Motion," "No High Fructose Corn Syrup," and "nutritious … snacks" claims will be referred to as the "Claims" or "Misrepresentations." (Complaint, at 43).

[5] Hereinafter referred to as the "Omissions." (Complaint, at 59, 61-62).

[6] The Clif Bar Class (and Clif Bar New York Subclass): All persons in the United States—and for New York Subclass, all persons in New York—who, between April 19, 2014 (or 2015 for the New York Subclass) and the date the Class is notified of certification, purchased Original Clif Bars bearing the phrase "Nutrition for Sustained Energy."

The Clif Kid ZBar Class (and Clif Kid ZBar New York Subclass): All persons in the United States—and for the New York Subclass, all persons in New York—who, between April 19, 2014 (or 2015 for the New York Subclass) and the date the Class is notified of certification, purchased Clif Kid ZBars other than in 24-, 36-, or 42-bar packages.



### III. RESPONSE TO DEFENDANT'S MTE

10.  Defendant's motion is internally inconsistent, often proving the falsity of its own contentions.  Defendant argues on the one hand that "Weir's conjoint survey and analysis addresses only the demand side of the equation,"[7] while simultaneously arguing that the supply side model that I have used in this matter is incorrect ("Weir's static supply analysis is internally inconsistent and unsupported by academic literature or economic theory"[8]).  Similarly, Defendant claims that I have done nothing in this case other than sign off on Gaskin's conjoint ("Weir performed no analysis other than declaring that a Choice Based Conjoint […] were capable of determining the 'market price premia'"[9]), while criticizing my choice of model, but-for world, analysis of supply side factors, and other work.[10]

11.  Defendant cannot have it both ways.  I cannot have failed to analyze the supply side and simultaneously conducted a supply-side analysis that Defendant finds to be erroneous.  Similarly, I cannot have merely blessed a conjoint analysis while simultaneously performing pricing analysis, setting forth a damages framework, analyzing and summarizing voluminous sales data, and constructing a but-for world (which Defendant discusses in detail and also claims is erroneous).

12.  As I discuss in detail below, I did conduct a supply-side analysis and ensured that the conjoint has used very specific supply-side factors that are consistent with the only sensical but-for construction for this case: where everything is the same as in the real world except for Defendant's harmful conduct.

---

[7] MTE, at 4.

[8] *Id*.

[9] *Id*., at 1.

[10] *Id*, passim.



**The proposed conjoint analysis includes all of the necessary supply-side factors to measure a price premium in the unique context of a class action where sales to the class are historic and fixed**

13.   Defendant claims that Gaskin and I failed to control for supply-side factors -- ignoring the sections of our reports where we describe in detail the supply-side factors we incorporated into the conjoint design and analysis.  As I discuss in greater detail below, the claim that there are no supply-side controls in the Gaskin Survey is disingenuous, because the primary dispute arises not from a lack of supply-side controls, but a disagreement over the nature of the supply side that should be used in the but-for analysis.  I will first reiterate the nature of the supply-side controls present in the Gaskin and Weir analyses, and then discuss the but-for world dispute.

14.   I worked closely with Gaskin to ensure that his survey was appropriately designed to measure the true market price premium solely attributable to the challenged Claims.

15.   Gaskin and I had several discussions concerning the design of his survey where I provided input based upon economic concepts, and sales and market data.  We also had several discussions concerning how the ultimate results of his survey would be interpreted and applied.

16.   One of the most important and most frequent topics of discussion between Gaskin and me was the data on actual sales of the Products in the real-world marketplace during the relevant time period. These real-world transactions occurred at prices that *already* reflect the supply-side factors then extant in the marketplace.  I understand that Gaskin relied upon these historical data in setting the prices used in his conjoint survey, and that will be used in his but-for market simulation.  These market prices are reflective of the range of prices at which both the challenged Products and competing products were available during the class period.

17.   There appears to be no dispute that the prices used in the Gaskin survey are reflective of the prices paid by Class members.  (Defendant's expert Choi claims that Gaskin was



not specific as to the details of the survey, but such a claim is patently ridiculous given the detail provided by Gaskin in his opening Declaration).

18.  Gaskin and I also discussed that variability in pricing at the retail level showed that retailers' pricing was responsive to changing market forces.

19.  Another important supply-side factor that Gaskin and I discussed was that, as I explain below, the market for the Products was an "ordinary" market, subject to competitive pressures that both Defendant and retailers identified as risks to their business.

20.  Many major retailers for the Products in this litigation identify a willingness to adjust prices in response to changing economic conditions and consumer preferences.

21.  Finally, we discussed that the supply of Clif Products to the class is fixed as a matter of history.  In other words, the supply that is being modeled by Gaskin and myself is that which already existed during the class period.  There is no other sensible measure of the quantity supplied to the class than what the class actually purchased.

**There is only one sensible but-for construction relevant to this case**

22.  When it comes to a but-for analysis, the economic instructions are quite clear: the but-for world is the same as the real world in **every respect but one**: Defendant's allegedly wrongful conduct.  This premise is spelled out in the Reference Manual on Scientific Evidence.

> The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event. In most cases, the analysis considers the difference between the Plaintiffs' economic position if the harmful event had not occurred and the Plaintiffs' actual economic position.

> In almost all cases, the damages expert proceeds on the hypothesis that the defendant committed the harmful act and that the act was unlawful. [] The characterization of the harmful event begins with a clear statement of what occurred. The characterization also will include a description of the defendant's proper actions in place of its unlawful actions and a statement about the



economic situation absent the wrongdoing, with the defendant's proper actions replacing the unlawful ones (the but-for scenario). Damages measurement then determines the Plaintiffs' hypothetical value in the but-for scenario. Economic damages are the difference between that value and the actual value that the plaintiff achieved.

**<u>Because the but-for scenario differs from what actually happened only with respect to the harmful act</u>**, damages measured in this way isolate the loss of value caused by the harmful act and exclude any change in the Plaintiffs' value arising from other sources.[11]

23.    The Reference Manual makes the steps clear:

- Identify the harmful event;

- Assume that Defendant is liable for the harm;

- Generate a clear statement of what occurred and what should have occurred;

- Analyze a but-for scenario to determine the economic damages;

  o   The but-for world differs from what actually happened only with respect to the harmful act.

24.    In the Weir Declaration, I set forth details of each of these steps. I noted that Defendant allegedly mislabeled its Products (the harmful event). I assumed for purposes of my research that Plaintiffs would prevail on the merits (assume Defendant is liable). I noted specific challenged claims and omissions that Plaintiffs claim are misleading (a clear statement of what occurred) and noted that such statements should not have been made, or material information withheld (a statement of what should have occurred). I then set forth a damages framework to isolate the economic impact of the conduct (analysis of damages) and used a but-for world that was the same as the real world in every respect except the harmful conduct.[12]

---

[11] Reference Manual on Scientific Evidence, at 432. [Emphasis supplied]

[12] Defendant misquotes my deposition transcript in an effort to make it sound like I am analyzing every conceivable reason for a change in price, other than the harmful conduct. The complete quote shows that I am holding everything constant to isolate the impact of Defendant's conduct: "I'm looking at the real-world conditions that existed and formed the basis of setting Clif's prices. And across every impact that may have existed, other than the



ECONOMICS AND
TECHNOLOGY, INC.

25.   Defendant argues that I should have considered myriad factors in the but-for world, including "competitor reactions to the but for price."[13]

26.   While there are potentially endless combinations of such actions and reactions, one thing about this wrong but-for construction is guaranteed: it will not isolate the impact of Defendant's harmful conduct.  A but-for market price that is measured, for example, as a result of the removal of the claims and a massive increase in advertising spending by competitors would be unable to identify the effect due solely to Defendant's misrepresentation.

**Using the supply side factors from the "real" world in the but-for world makes perfect sense, as a change in Defendant's labeling conduct would not change underlying supply-side factors**

27.   I explained in my deposition that the supply side being modeled by Mr. Gaskin and myself in the but-for world is the same as in the real world.

> Supply exists in the but-for world as it did in the real world, as reflected by the myriad prices that consumers paid that were set by the then extant forces of both supply and demand, and in our model we used that information along with a fixed quantity of product that was actually sold to consumers.
>
> We're trying to figure out -- again, just as an example, Clif sells a million units to the class. I'm trying to figure out what is the value of those million bars. I'm not trying to figure out what's that value of 900,000 bars. I'm not trying to figure out the value of, sorry, 1.1 million bars. I'm trying to figure out the value of those exact 1 million bars.[14]

---

challenged labeling and omissions, I am holding those constant as between the real world and the but-for world." Docket Number 118-1, Van Gundy Exhibit 1, Weir Deposition, at 72-73.

[13] MTE, at 6.

[14] Weir Deposition, at 94.



ECONOMICS AND
TECHNOLOGY, INC.

28.   In this manner, supply varies in the but-for world, in the same manner in which it did in the real world.  There are numerous reasons to use the same supply side factors from the real world in the but-for world.

29.   In the but-for world, where we examine the result of a change in Defendant's harmful conduct (e.g., not using a misleading claim on the packaging), one must ask whether the change in conduct would result in any meaningful impact to the underlying supply factors.  The answer is no.  Changing the words on the packaging does not in any way impact the costs of producing Clif bars.

- The price of ingredients used in Clif bars do not change because of the words on the packaging;

- The costs of labor to produce Clif bars do not change because of the words on the packaging;

- The costs to ship or deliver Clif bars to retailers do not change because of the words on the packaging;

- The costs of putting Clif bars onto a retail shelf do not change because of the words on the packaging;

- The costs of scanning a Clif bar through a cash register do not change because of the words on the packaging.

30.   Because the underlying supply conditions would not change based upon the challenged conduct, it is reasonable to use the same supply factors in both the real and but-for worlds -- as Mr. Gaskin and myself have done in this case.

31.   Moreover, Gaskin and I have used a range of prices in the conjoint that reflect market prices both for the challenged Products that make the NSFE Claim, and competitor products that do not make the Claim.  While there is modest variation in such prices vis-à-vis



Clif and competitor bars, the common overlap in the range of such prices indicate common supply conditions both when the Claim is used and when it is not.

**"Willingness to sell" should not be used to set a floor on damages, and is inappropriate because it is a subjective measure, and the Products have *already* been sold**

32.   Defendant argues that my analysis must account for Defendant's so-called "willingness to sell."  They argue that, in the but-for world, Defendant could simply choose to sell or produce fewer units, and that this choice would impact the but-for market price.  For the reasons discussed above, the proper construction of the but-for world eliminates this option.  But relying on "willingness to sell" is economically improper for other reasons.  First, "willingness to sell" is an inherently subjective valuation -- and courts routinely reject subjective measures of value.  Second, it makes little sense to allow Defendant to argue, with nothing more than its say-so, that it would not sell products *that it has already sold to class members.*

33.   Courts routinely reject measures of value that are subjective in nature.  If an individual class member tried to establish damages based on their own personal subjective valuation, the Defendant would likely object.  This is one of the reasons that Gaskin and I have proposed a calculation of market value, which is inherently objective and measurable.  "Willingness to sell" is exactly the same type of subjective measure of value as a consumer's personal perception of value -- just on the other side of the demand and supply equation.  Allowing the Defendant to state its own measure of value would allow any Defendant to say, "we would never have sold any units at a lower price, and therefore there can be no damages."  This would be absurd, and a perversion of economics, allowing any Defendant to simply postulate its way out of owing any damages.  Any of a number of examples can illustrate that a product can have a lower market value than if artificially restricted by "willingness to sell."

34.   Consider a product that claims it can cure joint pain.  The only use of the product is to cure joint pain.  There are no other sources of value of this product.  Now assume that the



product, in fact, did not cure joint pain or ameliorate joint pain in any way.  One does not need to conduct a detailed market simulation to understand that such a product that does not provide any of its stated value is in fact valueless.  In a class action, the damages would be a full refund.  But under Defendant's rubric, damages would necessarily be limited by the producer's willingness to sell.  Imagine that the retail price of the product was $4, and the cost to manufacture the product was $3.50.  If the Producer stated that it would never sell its products for anything less than its costs, this would artificially limit the but-for market price to $3.50 (and thus artificially limit damages to $0.50), even though logic itself allows us to understand that the real value of the product is zero.

35.  Part of the reason that such an absurd outcome could arise in the first place is the illogic of suggesting that willingness-to-sell even be considered at this stage of the game given that, on a historic basis, all of the units of product subject to the analysis *have already been sold*. We are not analyzing a scenario where the class members can undo their transactions.  That does not make any sense.  Class members bought the Challenged Products.  The correct analysis in this case is to measure is the value of those products that they received.  In other words, the scenario is one where Class members bought the Products, and we must ask, how much of the value promised did they not receive?  The answer to that question does not turn on the willingness to sell of the producer.  For these reasons, Defendant's arguments as to using willingness to sell are misguided.

**Even accepting the assertion that the quantity supplied can change in the but-for world, such an analysis would fail to account for the loss in value of these unsold products**

36.  Defendant argues that in the but-for world, the equilibrium price could, and is very likely to occur at a quantity of supply lower than the actual number of units sold to the Class. For all the reasons above, changing the quantity supplied in the but-for world is inappropriate.



But accepting these arguments *arguendo*, such an analysis would fundamentally fail to account for the value (or lack thereof) of such hypothetically unsold units.

37.   Defendant suggests that, if instead of 1-million units being sold in the real world, 800,000 units are sold in the but-for world, the but-for price for the 800,000 units should be applied to all 1-million actual units to determine damages.  But what about the value of those unsold 200,000 units?  When units are not sold, there is no market price available to determine the precise market value of those units.  But we do know one thing about the market value of such unsold units: *the value is lower* than the prevailing market price -- otherwise such units would be sold.

38.   By ignoring the 200,000 units that are unsold, Defendant would vastly overstate the value received for the full 1-million units.  The following illustration demonstrates the implication of Defendant's misstep.

39.   Assume in the real world, boxes of Clif bars sell for $3.50, and that 1-million units were sold to the class.  In Defendant's (wrong) but-for world, 800,000 units are sold at an equilibrium price of $3.25.  According to Defendant, damages would be ($3.50 - $3.25) x 1-million = $250,000.  But assume that the unmeasured value of the unsold 200,000 units was $2.75 on average, the real weighted average market value in the but-for world would be $3.15.  Making this correction, damages would be ($3.50 - $3.15) x 1-million = $350,000.

40.   Defendant cannot simply ignore the decrease in value for vast fractions of the actual units sold to class members.

**The conjoint survey in this case does not measure "willingness to pay"**

41.   Defendant asserts, generally, that Gaskin's conjoint can only measure "willingness to pay" and estimates of "willingness to pay" tend to be unreliable.  This is a red herring, as Gaskin's conjoint study does not measure "willingness to pay."



42.  "Willingness to pay" is the maximum amount an individual would be willing to pay for a good or service.  This is **not** what the conjoint survey was designed to measure.  Gaskin and I propose to measure a marketplace outcome.  I often illustrate the difference between these concepts using the example of Gilligan's Island.

43.  The concept of willingness to pay is akin to asking the rich couple, the Howells, "How much would you be willing to pay to get off the island right now, you never have to see Gilligan again, a nice boat ride home to safety?"  They would probably give an answer like "untold millions."  And that value in and of itself is not particularly useful in determining a market valuation.

44.  If you were to say to the Howells, "There is a boat coming in half an hour and the price of that boat is $5,000, will you purchase that boat ride home?", that begins to tell you something about what will take place in the marketplace.

45.  Now, if you interview the Howells alone, that may not help you establish the market price. But if you interview the Howells and Ginger and Maryanne and the Professor, and ask not only about $5,000 boat rides, but also $4,000 and $6,000 boat rides (other prices available on the market), then suddenly now you understand the market value for a boat ride on Gilligan's Island, which might be less than the Howells would pay, but might be more than Ginger might pay.

46.  And the conjoint exercise works in a similar way.  It is not determining the "willingness to pay" (which is the Howell's untold millions) for any individual or for the market, but it is taking information about the marketplace transactions, and then, through the market simulator, determining whether the market would purchase or not purchase at various price points.  In the aggregate, this simulation results in the calculation of a marketplace price premium measurement.

47.  We know the market prices that consumers have already paid for the Clif Products and the conjoint is determining the likely market price without deceptive marketing of the Claims.



48.   As such, Defendant's criticisms founded on the premise of "willingness to pay" are untethered from the actual analysis that Gaskin and I have proposed, which remains conservative as described in the Weir Declaration.

**Defendant's reliance on *Zakaria v. Gerber* and other similar cases is misplaced**

49.   Defendant cites a number of cases, *Zakaria v. Gerber, In re: NJOY, Saavedra v. Eli Lilly, Apple v. Samsung* and *Schechner v. Whirlpool,*, as authorities in this matter.[15]  It is worth noting that the details of those cases (and the underlying cases cited therein) are easily distinguishable from the current matter.  I am not offering this as a legal opinion.  Instead, as an expert in economics and conjoint studies, I am offering an opinion as to the court's discussion of such studies and the surrounding economic issues.

*Zakaria v. Gerber*

50.   The primary problem in *Zakaria* was that the expert proposing conjoint analysis "failed to show that the methodology employed by [the expert] sufficiently accounted for the actual price of [the Product.]"[16]  In stark contrast, Mr. Gaskin and I repeatedly cite to real world transaction price data, the range of which reflects actual prices paid by Class members.

51.   *Zakaria* cites a case as an example of how a conjoint might correctly calculate a price premium: *In re: Lenovo Adware*.[17]  Of course, the expert designing the conjoint in *Lenovo* was Mr. Gaskin, and he follows the same model here.

---

[15] MTS Gaskin, *passim*.

[16] *Zakaria v. Gerber Prod. Co.*, 2017 WL 9512587, at *20 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018).

[17] *In re: Lenovo Adware Litig.*, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016).

ECONOMICS AND TECHNOLOGY, INC.

> Some of the cases that have accepted the use of conjoint analysis explained that the specific, proposed analysis considered market factors. For this reason, it could reasonably be used to assess the actual value of the mislabeled product in the actual market, rather than in an abstract study environment. For example, *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016), relied on a conjoint analysis model of damages in certifying a class of purchasers of Lenovo laptop computers that allegedly contained faulty software. It distinguished *NJOY* and *Saavedra* because the expert in Lenovo "consulted pricing of the Lenovo models at issue, as well as comparable PC laptops" to ensure that the results would "reflect the market." Id. at *21. The expert also "addressed 'the supply side' of the market, determining that it was not at issue 'because all sales of the laptop models at issue have occurred in the past.'"[18]

*Saavedra*[19]

52.   The *Saavedra* case focused on the determination of a price premium in the prescription drug market.  The *Saavedra* Court reached its conclusions about conjoint analysis as a result of the unique way in which prices are derived in the prescription drug market.  In *Saavedra*, the damages analysis relates to the sale of a prescription drug.  The market for prescription drugs is not an "ordinary" market.  The court found this market is "heavily regulated and restricted" and also "complicated by insurance plans (or their absence's) determinative effect on the price that an individual pays."[20] The court noted that prices in this market are set "by a complex array of contracts between such entities as health plan sponsors, third-party payers, pharmacy benefit managers, retail pharmacy chains, and the drug manufacturer."[21]  In the market for prescription drugs, the court concluded that price cannot serve as a measure of value.

---

[18] *Zakaria v. Gerber Products Co.*, 2017 WL 9512587, at *19 (C.D. Cal. Aug. 9, 2017) *aff'd*, 755 F. App'x 623 (9th Cir. 2018).

[19] *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014).

[20] *Id*. at *5.

[21] *Id*.


ECONOMICS AND
TECHNOLOGY, INC.

53. The court contrasted the prescription drug market with an "ordinary" market where price is a proxy for value.

> In an ordinary market, price is a proxy for value. Thus, the price paid for a good that was misrepresented to have a given characteristic can serve as a proxy for the value of a product with the misstated characteristic. Therefore, applying Dr. Hay's refund ratio to the price paid by consumers in such a market would yield a valid approximation of the value lost due to the misrepresentation. Although the refund ratio determined via [Hay's] conjoint analysis still looks only to the demand side of the equation, applying this ratio to the market price at least tethers it to a functioning market and thus to the product's fair market value.[22]

54. As discussed above, the market in this case is "ordinary."

*In re: NJOY*[23]

55. In *In re: NJOY*, the court drew similar distinctions between the unique circumstances of the market for e-cigarettes and a stable, mature market. The court noted that the damage analysis effectively "requires a stable market where the price of a product is set by a competitive equilibrium."[24] The court found that the proposed damages framework was not appropriate for "an unstable market, where supply and demand would change significantly from the market in which the prices used as inputs were generated" and that the "e-cigarette market is unstable, or at the very least immature."[25] As discussed above below, in contrast to the market at issue in *NJOY*, the market in this case is mature and stable.

---

[22] *Id.*

[23] *In re NJOY, Inc. Consumer Class Litigation II*, 2016 WL 787415, at *5-9 (C.D. Cal. Feb. 2, 2016).

[24] *Id.*, at *8.

[25] *Id.*



*Apple v. Samsung*[26]

56. *Apple v. Samsung* case involved an intellectual property dispute where the companies argued that each other stole sales as a result of intellectual property infringement. The damages analysis thus needed to focus on the transfer of sales from one company to the other in a world but-for the IP infringement. That scenario is wholly different than the damages scenario at issue in this litigation, and does not relate to the calculation of price premium damages.

57. As set forth in the Original Weir Declaration, intellectual property disputes present very different economic issues and measures of damages than in a typical class action. In *Apple v. Samsung*, conjoint analysis was being proposed to determine the additional sales (in dollars or units) gained by the infringer at the expense of the IP holder, or to value the IP. That is a very different use of conjoint than what Mr. Gaskin and I have proposed here.

58. The expert in *Apple* did not propose the use of the supply side factors that Mr. Gaskin and I have. The expert in *Apple* did not use the market simulator as Mr. Gaskin proposes. *Apple* required a measurement of an economic impact vis-à-vis competitors, whereas in this case, the goal is to measure the portion of the price of the Clif Bars solely attributable to the Omissions and Misrepresentations.

59. Defendant does not dispute that it sold Clif Bars to the Class. Those retail sales are fixed as a matter of history, which is to say that the quantity supplied by Defendant is known and a historical fact. As such, there is no need for an additional determination as to how the supply of Clif Bars could have shifted between Clif and a competitor, because Clif is not alleging that it lost sales to another company, or vice versa.

---

[26] *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898, at *12 (N.D. Cal. Mar. 6, 2014).



60.  This analytical framework, along with the inclusion of market-based prices (as discussed by Gaskin and myself), allows for conjoint analysis to determine the overpayment due to Omissions and Misrepresentations.

*Schechner v. Whirlpool*

61.  *Schechner* is similar in its conclusions to *Zakaria*.

62.  The *Schechner* court holds that:

> Conjoint analysis should use "real-world retail pricing and sales data" to calculate the price premium associated with allegedly false marketing.  But "courts have also found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of Comcast—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period."[27]

63.  The court then went on to find that the conjoint model at issue did not adequately control for such supply side factors.  The court found that the conjoint "choice sets reflected arbitrary price points."[28]

64.  In contrast, Mr. Gaskin and I repeatedly cite to real world transaction price data, the range of which reflects actual prices paid by Class members.

---

[27] *Schechner v. Whirlpool Corp*. No. 2:16-cv-12409, 2019 WL 4891192 (E.D. Mich. Aug. 13, 2019), at 15. [citations omitted]

[28] *Id*., at 17.



**Absent from Defendant's citations are myriad cases that agree with Plaintiffs' approach**

65.   It is notable that Defendant seems to ignore that virtually every court to consider this issue has agreed with Plaintiffs' approach, including by approving conjoint analyses proposed or performed by Mr. Gaskin and myself.[29]

**I have clearly done more than simply bless Mr. Gaskin's conjoint analysis**

66.   Defendant argues that I have done no work other than approving Mr. Gaskin's conjoint, and claims that I have done no empirical work.  As above, Defendant's own criticisms of other elements of my work belie these claims.

67.   In addition to my review of the Gaskin conjoint generally, most fundamentally, my expertise is brought to bear in knowing what factors to properly consider in a damages analysis. I have applied my economic (and other) expertise in:

- Analyzing Plaintiffs' theory of liability to determine a proper framework for damages (in this case, benefit of the bargain damages);

    o To determine the proper construction of the but-for world that will be used to estimate damages;

---

[29] *See Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *5-6 (C.D. Cal. Sept. 23, 2020); *Hudock*, 2020 WL 4676285, at *4; *Banh v. Am. Honda Motor Co., Inc.*, 2020 WL 4390371, at *18-19 (C.D. Cal. July 28, 2020); *Johannessohn v. Polaris Indus., Inc.*, 2020 WL 1536416, at *19, *22-23 (D. Minn. Mar. 31, 2020); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 576 (N.D. Cal. 2020); *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 671-73 (N.D. Cal. 2019); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 3006465, at *2-7 (S.D. Cal. July 10, 2019); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *16 (S.D. Cal. Nov. 29, 2018); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 541 (N.D. Cal. 2018); *Brookfield v. Craft Brew Alliance, Inc.*, 2018 WL 4952519, at *18-19 (N.D. Cal. Sept. 25, 2018); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1103-106 (N.D. Cal. 2018); *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 326 F.R.D. 592, 605-606 (N.D. Cal. 2018); *Davidson v. Apple, Inc.*, 2018 WL 2325426, at *22 (N.D. Cal. May 8, 2018); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 969-71 (N.D. Cal. 2018); *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 336 (D.N.H. 2017) *In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016).


ECONOMICS AND TECHNOLOGY, INC.

- o To determine the correct formula for determining damages subject to this framework;

- o To determine the correct inputs to be used in this formula to determine damages in this case;

- Determining the appropriateness of using survey research to determine the market value of the Claim as a percentage of the Product's price;

- Writing computer code to analyze the voluminous available sales data;

- o Using that code to determine a range of prices for the challenged Products for use in the conjoint survey;

- o Using that code to determine a range of prices for products that do not make the challenged Claim for use in the conjoint survey;

- o Using that code to estimate total sales of the challenged Products to the Class;

- Analyzing the nature of the market for the challenged Products:

- o To be able to opine that the market is mature;

- o To be able to opine that the market is "ordinary";

- o To be able to opine that the market is subject to competitive forces;

- o To be able to opine that retailers identify the behavior of consumers to be a risk factor that could influence price in the marketplace;

- Advising Mr. Gaskin as to the nature of the but-for world at issue in this litigation

- o Advised as to the correct use of the market simulator to correctly measure a change in market price that matches with the prescription of the but-for world;

- o Advised as to the appropriate way to incorporate data on the supply side into his analysis, subject to the constraints required by the but-for world in this case.



68.  In order to reach my calculations, I had to comb through voluminous sales figures that, if printed, would comprise nearly 50,000 standard letter-sized pages.  This data spans 175 SKUs of the challenged products (and thousands of other products).  I created several tables to aggregate and summarize this data in accordance with the nuances of the proposed class and subclass definitions.

69.  While the final damages calculation itself involves multiplication that can probably be conducted by the trier of fact, I believe I bring expertise as to the formula used to determine damages, what inputs should be used in that formula, and the determination of the proper values of those inputs (and analyzing and tabulating the necessary data to generate those inputs), as well as an understanding of the marketplace outcomes that surround the use of that formula.  I can help the trier of fact to understand all of these factors and evidence.

## IV.  RESERVATION OF RIGHTS

70.  My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial.  I therefore reserve the right to amend or modify my testimony.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Tisbury, Massachusetts this 27th day of November, 2020.

_____

Colin B. Weir



**Exhibit 1**

**Statement of Qualifications
of**

**COLIN B. WEIR**

# Statement of Qualifications

## COLIN B. WEIR

Colin B. Weir is Vice President at Economics and Technology, Inc.  Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis.  Such analysis often involves analysis of databases, call detail records, and other voluminous business records.  Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software.  Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations.  Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels.  Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue,  Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation,  Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University.  He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND
TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.

Mr. Weir has submitted the following testimony during the last four years:

**United States District Court, Northern District of California,** *Thomas Bailey, on behalf of himself and all others similarly situated, v. Rite Aid Corporation*, Case No. 4:18-cv-06926-YGR, on behalf of Greg Coleman Law, Declaration submitted October 19, 2020.

**United States District Court, Northern District of California,** *Jeremiah Revitch, individually and on behalf of all others similarly situated, v. New Moosejaw, LLC and Navistone, Inc.*, Case No. 3:18-cv-06827-VC, on behalf of Bursor & Fisher P.A., Declaration submitted on September 28, 2020, Deposition on November 20, 2020.

**United States District Court, Southern District of Florida,** *Javier Cardenas, Rodney and Pamela Baker, Michelle Monge, and Kurt Kirton, individually and on behalf of all others similarly situated, v. Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Southeast Toyota Distributors, LLC*, Case No.: 18-cv-22798-CIV-FAM, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on September 17, 2020; Declaration submitted on October 20, 2020; Deposition on November 12, 2020.

**United States District Court, Northern District of California,** *Ralph Milan, Sarah Aquino, and Elizabeth Arnold, on behalf of themselves, those similarly situated and the general public, v. Clif Bar & Company,* Case No. 4:18-CV-02354-JD, on behalf of Law Office of Paul K. Joseph, PC, Declaration submitted on September 17, 2020; Deposition on October 23, 2020.

**Superior Court of The State of California, County of Orange,** *William Brady, on behalf of himself and all others similarly situated, v. Bayer AG; Bayer Corporation; Bayer Healthcare LLC; and Does 1 through 10, inclusive*, Case No. 0-2016-00839608-CU-MC-CXC, on behalf of Wolf Haldenstein Adler Freeman & Herz LLP, Declaration submitted on September 9, 2020.

**United States District Court, for the Southern District of New York,** *Matthew Chamlin, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC*, Case No. 1:19-cv-03852-AJN-DCF, on behalf of Bursor & Fisher P.A., Declaration submitted on August 14, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *Daniel Zeiger, Individually, and on Behalf of All Others Similarly Situated, v. Wellpet LLC, A Delaware Corporation*, Case No. 3:17-CV-04056-WHO, on behalf of Gustafson Gluek PLLC, Declaration submitted on June 29, 2020.



**United States District Court, Central District of California, Western Division,** *Roberta Bilbrey, Jimmy Banh, Lawrence Goldman, Mark Peoples, Jamal Samaha, George Quinlan, Kara Drath, Gary Hanna, Sarah Gravlin, Caitlin Kremer, Cindy Ortiz, Alexis Chisari, Robert Moss, Michael Brumer, Dave Jahsman, John Bartholomew, Vimal Lawrence, Kayce Kleehamer, Mark Klein, Brian Klein, Charles Denaro, Adam Pryor, Srikarthik Subbarao, Daniel Allan, Paul Gonzales, Eric Faden, Hamilton Hines, And Kristen Gratton, on behalf of themselves and all others similarly situated, v. American Honda Motor Co., Inc., a California Corporation*, Case No.: 2:19-cv-05984 RGK (ASx), on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on April 9, 2020; Reply Declaration submitted on May 18, 2020; Deposition on June 12, 2020; Declaration submitted July 24, 2020.

**United States District Court, Central District of California,** *Will Kaupelis and Frank Ortega, individually and on behalf of all others similarly situated, v. Harbor Freight Tools, Inc.*, Case No. 8:19-cv-1203-JVS-DFM, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 2, 2020; Deposition on May 28, 2020; Reply Declaration submitted on September 8, 2020.

**Superior Court of the State of California, County of Los Angeles,** *Jeffrey Koenig, on behalf of himself and all others similarly situated, v. Vizio, Inc.*, Case No. BC 702266, on behalf of Greg Coleman Law, Declaration submitted February 27, 2020; Deposition on April 30, 2020; Reply Declaration submitted on July 13, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *Kym Pardini and Carrie Wood, on behalf of themselves and all others similarly situated, v. Unilever United States, Inc., a Delaware corporation*, Case No. 3:13-cv-01675-SC, on behalf of the Eureka Law Firm, Declaration submitted on February 21, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *Jennifer Nemet, Norbert Kahlert, Angela Matt Architect, Inc., Eddie Field, Tonya Dreher, Adam Schell, Bryan Sheffield, Darryl Lecours, Gisbel De La Cruz, Derek Winebaugh, Michael Skena, Melissa St. Croix, Andrew Olson, John Kubala, Brendan Daly, Steven Ferdinand, Ken Galluccio, Steven Rawczak, Mark Miller, Sven Hofmann, Thomas Siehl, III, Adam Schell, Bradley Conner, Benjamin Tyler Dunn, Ingrid Salgado, Michael Bowman, and Jon Mosley, on behalf of themselves and all others similarly situated, v. Volkswagen Group of America, Inc., Volkswagen AG, Audi AG, Audi of America, LLC, Robert Bosch Gmbh, Robert Bosch LLC, Richard Dorenkamp, Heinz-Jakob Neusser, Jens Hadler, Bernd Gottweis, Oliver Schmidt, and Jurgen Peter,* Case No. 3:17-cv-04372-CRB, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on February 14, 2020; Reply Declaration submitted on April 30, 2020; Deposition on July 22, 2020.

**United States District Court, Norther District of California, San Francisco Division,** *Vicky Maldonado and Justin Carter, individually and on behalf of themselves and all others similarly situated, v. Apple Inc., Applecare Service Company, Inc., and Apple CSC, Inc.,* Case No. 3:16-cv-04067-WHO, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on February 11, 2020; Deposition on March 12, 2020; Supplemental Declaration submitted on September 14, 2020; Deposition on November 17, 2020.



**United States District Court, District of New Jersey,** *Brian Gozdenovich, on behalf of himself and all others similarly situated, v. AARP, Inc., AARP Services Inc., AARP Insurance Plan, Unitedhealth Group, Inc., and Unitedhealthcare Insurance Company,* Case No. 9:18-cv-81258-DMM, on behalf of Bursor & Fisher, P.A., Declaration submitted on January 29, 2020; Declaration submitted on March 26, 2020; Deposition on July 1, 2020; Rebuttal Declaration submitted on July 9, 2020..

**United States District Court, for the Central District of California, Western Division,** *Toya Edwards, on behalf of herself and all others similarly situated, v. Walmart Inc*., Case No. 1:18-cv-9655, on behalf of Simmons Hanly Conroy LLC, Declaration submitted on December 6, 2019; Deposition on January 9, 2020; Reply Declaration submitted on February 27, 2020.

**United States District Court, District Of Connecticut,** *William Montgomery and Donald Wood Jr., individually and on behalf of all others similarly situated, v. Stanley Black & Decker, Inc., d/b/a Craftsman*, Case No. 3:19-cv-01182-AVC, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 15, 2019.

**United States District Court, Central District of California,** *Paul Stockinger, Elizabeth Stockinger, Basudeb Dey, Gailyn Kennedy, Eliezer Casper, Yvette Alley, and Norman Beil on behalf of themselves and all others similarly situated, v. Toyota Motor Sales, U.S.A., Inc., a California corporation*, Case No.: 17-cv-00035-VAP-KS, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on September 13, 2019; Deposition on October 10, 2019; Reply Declaration submitted on December 12, 2019.

**United States District Court, Southern District of California,** *Patrick McMorrow, Marco Ohlin and Melody DiGregorio, on behalf of themselves, all others similarly situated and the general public, v. Mondelez International, Inc*., Case No. 3:17-cv-02327-BAS-JLB, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on August 30, 2019; Deposition on October 1, 2019; Omnibus Declaration submitted on December 9, 2019; Declaration submitted on May 4, 2020; Omnibus Declaration submitted on August 28, 2020.

**United States District Court for the Eastern District of Wisconsin,** *Scott Weaver, individually and on behalf of a class of similarly situated individuals, v. Champion Petfoods USA, Inc. and Champion Petfoods LP*, Case No. 2:18-cv-01996-JPS, on behalf of Gustafson Gluek PLLC, Declaration submitted on August 13, 2019; Deposition on August 22, 2019.

**United States District Court, Central District of California,** *Collin Shanks, on behalf of himself, all others similarly situated, and the general public, v. Jarrow Formulas Inc.*, Case No. 18-cv-9437-PA (AFMx), on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on July 22, 2019; Reply Declaration submitted on August 12, 2019.

ECONOMICS AND
TECHNOLOGY, INC.

**United States District Court, Eastern District Of Michigan, Southern Division,** *Suresh Persad, Daniel G. Wright and Robert S. Drummond, individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 2:17-cv-12599-TGB-MKM, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on June 25, 2019; Declaration submitted on November 26, 2019.

**United States District Court, Southern District of Florida, Fort Lauderdale Division,** *Milita Barbara Dolan, on behalf of herself and all others similarly situated, v. Jetblue Airways Corporation*, CASE NO.: 18-cv-62193-RNS, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on May 23, 2019; Deposition on October 25, 2019.

**United States District Court, Northern District of California,** *Joseph Gregorio, Patrick Quiroz and Adam Cooper individually and on behalf of all others similarly situated, v. The Clorox Company,* Case 4:17-cv-03824-PJH, on behalf of Bursor & Fisher, P.A., Declaration submitted on May 15, 2019; Declaration submitted July 12, 2019; Deposition on July 18, 2019; Reply Declaration submitted on August 21, 2019.

**United States District Court, District of Minnesota,** *Hudock, et al., v. LG Electronics U.S.A., Inc., et al.*, Lead Case No. 0:16-CV-01220-JRT-KMM, Relating to All Consolidated Actions, on behalf of Zimmerman Reed, LLP, Declaration submitted on May 10, 2019; Deposition on June 6, 2019.

**United States District Court, Central District of California, Western Division,** *Jennifer Reitman and Carol Shoaff, individually and on behalf of a class of similarly situated individuals, v. Champion Petfoods USA, Inc. and Champion Petfoods LP*, Case: 2:18-cv-01736-DOC-JPR, on behalf of Gustafson Gluek PLLC, Declaration submitted on April 8, 2019, Deposition on April, 26, 2019; Supplemental Declaration submitted on June 20, 2019.

**United States District Court, Central District of California, Western Division,** *Barry Braverman, et al., v. BMW of North America, LLC, et al.*, Case No. 8:16-cv-00966-TJH-SS, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on March 29, 2019; Deposition on May 30, 2019; Reply Declaration submitted on September 16, 2019; Supplemental Declaration submitted on July 6, 2020.

**United States District Court, Southern District of Florida, West Palm Beach Division,** *Judith Marilyn Donoff on behalf of herself and all others similarly situated, v. Delta Air Lines, Inc.*, Case No. 9:18-cv-81258-DMM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on March 26, 2019.

**United States District Court, Western District of Washington,** *Jacob Beaty and Jessica Beaty on, behalf of themselves and all others similarly situated, v. Ford Motor America*, Case No. 3:17-CV-05201-RBL, on behalf of Simmons Hanly Conroy LLC; Declaration submitted on February 22, 2019; Deposition on March 29, 2019; Reply Declaration submitted on July 10, 2019; Deposition on July 30, 2019.



**United States District Court, Southern District of New York,** *Nicholas Parker, on behalf of himself and all others similarly situated, v. United Industries Corporation*, Case No. 1:17-cv-05353, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2019; Declaration submitted March 21, 2019; Declaration submitted on May 3, 2019; Deposition on July 24, 2019.

**United States District Court, Northern District of California,** *Debbie Krommenhock and Stephen Hadley, on behalf of themselves, all others similarly situated, and the general public, v. Post Foods, LLC,* Case No. 3:16-cv-04958-WHO (JSC), on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted January 11, 2019; Deposition on March 1, 2019; Declaration on April 24, 2019; Deposition on May 14, 2019; Supplemental Declaration submitted on June 21, 2019; Omnibus Declaration submitted on August 9, 2019; Supplemental Declaration submitted on November 16, 2020.

**United States District Court, Southern District of New York,** *Leona Hunter and Anne Marie Villa, on behalf of themselves and all others similarly situated, v. Time Warner Cable Inc.*, Case No. 15-cv-06445-JPO (JLC), on behalf of Bursor & Fisher, P.A. Declaration submitted on November 30, 2018; Deposition on December 21, 2018; Reply Declaration submitted on February 27, 2019.

**United States District Court, Northern District of California,** *Jeremiah Revitch, on Behalf of Himself and all Others Similarly Situated, v. Citibank, N.A.*, Case No. 17-cv-06907-JCS, on behalf of Bursor & Fisher, P.A. Declaration submitted on November 27, 2018; Deposition on December 28, 2018; Reply Declaration submitted on February 1, 2019; Deposition on February 26, 2019.

**United States District Court, Central District of California,** *Kaylee Browning and Sarah Basile, on behalf of themselves and all others similarly situated, v. Unilever United States Inc.*, Case No. 8:16-cv-02210, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 22, 2018; Deposition on November 1, 2018; Reply Declaration submitted on November 23, 2018.

**United States District Court, Southern District of New York,** *Lori Canale, individually, and on behalf of all others similarly situated, v. Colgate-Palmolive Co.,* Case No. 7:16-CV-03308-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 19, 2018.

**Superior Court for the State of California, In and for the County of San Francisco,** *Michelle Gyorke-Takatri and Katie Silver on behalf of themselves and all others similarly situated, v. Nestlé USA, Inc. and Gerber Products Company,* Case No. CGC 15-546850, on behalf of Stanley Law Group, Declaration submitted on September 7, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.*, Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Declaration submitted on August 15, 2018; Deposition on October 12, 2018; Reply Declaration on December 21, 2018.



**Superior Court of the State of California, For The County of San Francisco,** *Deanna Gastelum and Heather Bryden individually and on behalf of all other persons similarly situated, v. Frontier California Inc.*, Case No. CGC-11-511467, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration submitted on July 31, 2018, Declaration submitted August 13, 2018.

**United States District Court, For the Southern District of New York,** *Suzanna Bowling, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC*, Case No. 1:17-cv-03982-AJN, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 30, 2018, Deposition on September 6, 2018; Reply Declaration submitted on November 16, 2018.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 15, 2018; Deposition on August 28, 2018; Reply Declaration submitted on November 21, 2018; Declaration submitted on February 21, 2020; Reply Declaration submitted April 9, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *In re: Chrysler-Dodge-Jeep EcoDiesel® Marketing, Sales Practices, and Products Liability Litigation Dorun Bali, et al., v. Fiat Chrysler Automobiles N.V., FCA US LLC, Sergio Marchionne, VM Motori S.p.A., VM North America, Inc., Robert Bosch GmbH, Robert Bosch LLC, and Volkmar Denner*, Case No. MDL 2777-EMC, on behalf of Lieff Cabraser Heimann & Bernstein, Declaration submitted on June 6, 2018, Deposition on July 18, 2018, Reply Declaration submitted on September 4, 2018.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted April 30, 2018, Deposition on May 31, 2018; Reply Declaration submitted June 25, 2018; Declaration submitted on September 20, 2018; Deposition on September 28, 2018; Declaration submitted on October 21, 2019; Declaration submitted on July 16, 2020.

**United States District Court, Northern District of Illinois, Eastern Division,** *Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East, Sarah LaVergne, Tony And Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William Ferguson and Cheryl Ferguson, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 1:15-cv-09882-JZL, on behalf of Greg Coleman Law, Declaration submitted April 20, 2018; Reply Declaration submitted on July 13, 2018; Deposition on August 17, 2018.

ECONOMICS AND
TECHNOLOGY, INC.

**United States District Court for the Northern District of California,** *Jackie Fitzhenry-Russell, an individual, on behalf of herself, the general public and those similarly situated v. The Coca Cola Company, and Does 1-50,* Case No. 5:17-CV-00603-EJD, on behalf of Gutride Safier, LLP, Declaration submitted April 16, 2018; Deposition on October 3, 2018.

**United States District Court for the Southern District of New York,** *Josephine James Edwards, individually and on behalf of all others similarly situated, v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT, on behalf of Bursor & Fisher, P.A., Declaration submitted April 16, 2018; Deposition on June 7, 2018.

**United States District Court, Northern District of California,** *Jackie Fitzhenry-Russell, Robin Dale, and Gegham Margaryan, as individuals, on behalf of themselves, the general public and those similarly situated, v. Dr. Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., and Does 1-50,* Case No. 5:17-cv-00564-NC (lead); Case No. 5:17-cv-02341-NC (consolidated); Case No. 5:17-cv-04435-NC (consolidated)*,* on behalf of Gutride Safier, LLP, Declaration submitted April 9, 2018; Deposition on April 19, 2018; Reply Declaration submitted June 6, 2018; Supplemental Declaration submitted on November 19, 2018.

**United States District Court for the Western District of Texas, Austin Division,** *Sylvia Morris, on behalf of herself and all others similarly situated, v. Modernize Inc.*, Case No. 17:-cv-963-SS, on behalf of Bursor & Fisher, P.A., Declaration submitted March 13, 2018; Deposition on June 14, 2018.

**United States District Court, Northern District of California, San Jose Division,** *In re: Arris Cable Modem Consumer Litigation*, Case No. 17-cv-1834-LHK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on March 9, 2018; Reply Declaration submitted April 9, 2018; Deposition on April 11, 2018; Declaration submitted June 13, 2018; Declaration submitted January 31, 2019; Deposition on February 14, 2019; Reply Declaration submitted on March 14, 2019.

**United States District Court, Southern District of New York,** *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR, on behalf of Levi & Korsinsky LLP, Declaration submitted on March 5, 2018; Declaration submitted November 14, 2018; Deposition on November 28, 2018.

**United States District Court, Eastern District of Michigan,** *Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome And Mary Ellen Thome, v. Whirlpool Corporation,* Case No. 16-cv-12409-SJM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted February 12, 2018; Deposition on May 15, 2018; Reply Declaration submitted May 17, 2018.

**United States District Court, Southern District of California,** *Jose Conde, et al., v. Sensa, et al.*, Case No. 14-cv-51 JLS (WVG), on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Declaration submitted February 21, 2019.



**United States District Court, Northern District Of Illinois, Eastern Division,** *Angel Bakov, Julie Herrera, and Kinaya Hewlett, individually and on behalf of all others similarly situated, v.Consolidated World Travel, Inc. d/b/a Holiday Cruise Line, a Florida corporation,* Case No. 15-cv-02980-HDL SEC, on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Deposition on April 25, 2018.

**United States District Court, Northern District of Illinois,** *Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly, Individually and on Behalf of All Others Similarly Situated, v. CVS Pharmacy, Inc., Target Corporation, Walgreen Co., Wal-Mart Stores, Inc., and Fruit of the Earth, Inc.,* Case No. 1:16-cv-06103, on behalf of Greg Coleman Law, Declaration submitted December 22, 2017; Reply Declaration on May 4, 2018.

**United States District Court, Southern District of New York,** *Jaish Markos, individually and on behalf of all others similarly situated, v. Russell Brands, LLC,* Case No. 16-CV-04362(CS), on behalf of The Sultzer Law Group, Declaration submitted on December 1, 2017, Deposition on January 4, 2018.

**United States District Court, Northern District of California,** *Siera Strumlauf, Benjamin Robles, and Brittany Crittenden, individually and on behalf of all others similarly situated, v. Starbucks Corporation,* Case No. 16-CV-01306-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 31, 2017, Deposition on December 13, 2017.

**United States District Court, Southern District of California,** *Sheila Dashnaw, William Meier, and Sherryl Jones, individually, and on behalf of all others similarly situated, v. New Balance Athletics, Inc., a corporation; and DOES 1 through 50, inclusive,* Case No. 3:17-cv-00159-L-JLB, on Behalf of The Wand Law Firm, Declaration submitted on September 8, 2017; Deposition on October 5, 2017; Rebuttal Declaration submitted December 11, 2017.

**United States District Court, Central District of California,** *Veronica Brenner, on behalf of herself and all others similarly situated, v. Procter & Gamble Co.,* Case No. 8:16-1093-JLS-JCG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 5, 2017; Deposition on October 10, 2018.

**United States District Court, Eastern District of California,** *Joann Martinelli, individually and on behalf of all others similarly situated, v. Johnson & Johnson And McNeil Nutritionals, LLC,* Case No. 2:15-cv-01733-MCE-DB, on behalf of Bursor & Fisher, P.A., Declaration submitted August 28, 2017, Deposition on December 20, 2017; Reply Declaration submitted on January 5, 2018.



**United States District Court, Northern District of California, San Francisco Division,** *Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, Individually and on Behalf of All Others Similarly Situated, v. Chipotle Mexican Grill, Inc.*, Case No. 3:16-cv-02200-HSG, on behalf of Kaplan Fox & Kilsheimer LLP, Declaration submitted August 11, 2017; Deposition on September 22, 2017.

**United States District Court, Southern District of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation*, Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017, Deposition on November 29, 2017; Supplemental Declaration submitted on September 23, 2019.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.*, Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017; Declaration submitted on August 15, 2018; Deposition on October 12, 2018.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017, Declaration submitted August 25, 2017, Declaration submitted on October 16, 2017; Declaration submitted on August 10, 2018; Declaration submitted on November 6, 2018; Declaration submitted on November 12, 2018; Deposition on December 11, 2018; Oral Testimony and Cross Examination May 7 - 8, 2019.

**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation,* Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Deposition on August 23, 2017; Reply Declaration submitted January 12, 2018; Reply Declaration submitted March 2, 2018.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company,* Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017; Reply Declaration submitted on October 2, 2017; Reply Declaration submitted on October 6, 2017; Declaration submitted on March 23, 2018.



**United States District Court, Southern District of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.

**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC,* Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017; Deposition on January 10, 2018; Supplemental Declaration submitted January 30, 2018; Declaration submitted on March 2, 2018; Supplemental Declaration submitted on March 30, 2018; Supplemental Declaration submitted on November 26, 2018; Deposition on December 20, 2018.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017; Declaration submitted on September 13, 2019; Deposition on October 16, 2019.

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50*, Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.

**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.*, Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017; Deposition on July 14, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company*, Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation*, Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017, Deposition on August 15, 2017, Rebuttal Declaration on March 20, 2018.

12



**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.

**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted on January 5, 2017.

**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Supplemental Declaration submitted January 22, 2018.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Reply Declaration submitted on May 2, 2017; Declaration submitted on October 2, 2017; Reply Declaration submitted on December 14, 2017.

**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.*, Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Responding Declaration submitted July 6, 2018; Rebuttal Declaration submitted on August 10, 2018.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.*, Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Reply Declaration submitted on April 3, 2017.

ECONOMICS AND
TECHNOLOGY, INC.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Supplemental Declaration submitted on July 9, 2019; Supplemental Declaration submitted on July 12, 2019; Oral testimony and cross-examination on August 6-8 and 12, 2019.

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of Wolf Popper LLP; Supplemental Declaration submitted on July 9, 2019; Deposition on July 26, 2019; Oral testimony and cross-examination on August 6-8 and 12, 2019.

**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration submitted July 9, 2018; Deposition on March 7, 2019; Reply Declaration submitted on May 22, 2019. Declaration submitted on February 28, 2020.

**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration submitted on March 8, 2019.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration submitted on October 20, 2016.

Mr. Weir has provided expert testimony since 2007, served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.

ECONOMICS AND TECHNOLOGY, INC.

**Exhibit 2**


**Documents Reviewed**

- Class Action Complaint, filed April 19, 2018

- Declaration of Steven P. Gaskin, September 17, 2020

- Defendant's Motion for Summary Judgment

- Defendant's Motions to Exclude

- Declaration of William S. Choi

- Declaration of Itamar Simonson

- Deposition of William S. Choi

- Sawtooth Software technical papers, available online at

http://www.sawtoothsoftware.com/support/technical-papers

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013)

http://www.analysisgroup.com/forums/winter-2013/when-all-natural-may-not-be/

- Applying Conjoint Analysis to Legal Disputes: A Case Study, Wind, Yoram, et al.

- Khoday v. Symantec Corp., 2014 WL 1281600, at *10 (D. Minn. March 13, 2014)

- Sanchez-Knutson v. Ford Motor Company, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015)

- In re: Lenovo Adware Litigation, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)

- Guido v. L'Oreal, USA, Inc., 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014)

- Brown v. Hain Celestial Group, Inc., 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

- Microsoft v. Motorola, Inc., 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012)

- In re Scotts EZ Seed Litig., 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- Dzielak v. Maytag, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017)

- TV Interactive Data Corp. v. Sony Corp., 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013)

- Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017)

- Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc., 2018 WL 3126385 (N.D. Cal. June 26, 2018)

- In Re Arris Cable Modem Consumer Litig., 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018)

- Hadley v. Kellogg Sales Co., 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018)

- Martinelli v. Johnson & Johnson, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019)

- Krommenhock v. Post Foods, LLC, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020)

- Hudock v. LG Elecs. USA, Inc., 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020)

- *Koenig v. Vizio, Inc.*, Los Angeles Superior Court Case No. BC702266 (L.A. Super. Ct. Aug. 24, 2020)

- *Banh v. American Honda Motor Co*., Inc., 2020 WL 4390371 (C.D. Cal. July 28, 2020)

- *Getting Started with Conjoint*, Bryan Orme, 2014

- IRI Data

- clifbar.com

- larabar.com

- powerbar.com

- kindsnacks.com

- naturespath.com

- annies.com

- target.com

- walmart.com

- amazon.com

- The Kroger Co. 2016 10-K Annual Report

- Publix Super Markets, Inc. 2016 10-K Annual Report

- Safeway Inc. 2015 10-K Annual Report

- SuperValu Inc. 2016 10-K Annual Report

- Ahold Delhaize Annual Report 2016

- Wal-mart Stores, Inc., 2016 10-K Annual Report

- Whole Foods Market, Inc., 10-K Annual Report

- CLIF0003036-37

- CLIF0038775-839

- CLIF0008650-1

- CLIF0004924

- CLIF0002123

- CLIF0005942-4

- CLIF0039469-74

- CLIF0005868-77

- CLIF0005822-28

- CLIF0005841

- CLIF0061378

- CLIF0038908-9

- CLIF0039029-30

- CLIF0002292-389

- CLIF0039031-52