SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
CHRISTOPHER VAN GUNDY, Cal. Bar No. 152359
SASCHA HENRY, Cal. Bar No. 191914
ABBY H. MEYER, Cal. Bar No. 294947
KHIRIN A. BUNKER, Cal. Bar No. 329314
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail        cvangundy@sheppardmullin.com
              shenry@sheppardmullin.com
              ameyer@sheppardmullin.com
              kbunker@sheppardmullin.com

Attorneys for Defendant
CLIF BAR & COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RALPH MILAN, SARAH AQUINO, and ELIZABETH ARNOLD on behalf of themselves, those similarly situated and the general public,<br><br>                    Plaintiffs,<br><br>    v.<br><br>CLIF BAR & COMPANY,<br><br>                    Defendant. | Case No. 18-cv-02354-JD<br><br>CLASS ACTION<br><br>**CLIF BAR & COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINION TESTIMONY OF STEVEN P. GASKIN**<br><br>Hearing<br>Date:            December 17, 2020<br>Time:            10:00 a.m.<br>Courtroom:   11, 19th Floor<br>                   450 Golden Gate Avenue<br>                   San Francisco, CA 94102<br><br>Judge: Hon. James Donato<br><br>Complaint Filed: April 19, 2018<br>Trial Date:  October 4, 2021 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   GASKIN'S CONJOINT ANALYSIS CANNOT RELIABLY DETERMINE
      MARKET PRICE PREMIA BECAUSE IT FAILS TO ACCOUNT FOR SUPPLY-
      SIDE FACTORS THAT AFFECT PRICE IN THE BUT FOR WORLD .......................... 3

III.  GASKIN'S CONJOINT SURVEY CANNOT RELIABLY MEASURE PRICE
      PREMIUM BECAUSE IT VIOLATES WELL-ESTABLISHED PRINCIPLES OF
      CONSUMER SURVEYS ...................................................................................... 8

IV.   CONCLUSION ................................................................................................ 10

SMRH:4850-2536-4179.4

REPLY IN SUPPORT OF MOTION TO EXCLUDE
OPINION TESTIMONY OF STEVEN P. GASKIN

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Apple, Inc. v. Samsung Elecs. Co.*
 2014 U.S. Dist. LEXIS 29721 (N.D. Cal. Mar. 6, 2014) ........................................................ 6

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*
 618 F.3d 1025 (9th Cir. 2010) .................................................................................... 8, 9

*Hadley v. Kellogg Sales Co.*
 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................................................... 5, 6

*In re Dial Complete Mktg. & Sales Practices Litig.*
 320 F.R.D. 326 (D.N.H. 2017) ......................................................................................... 7

*In re General Motors LLC Ignition Switch Litig.*
 407 F. Supp. 3d 212 (S.D.N.Y. 2019) .......................................................................... 6, 7

*In re MyFord Touch Consumer Litig.*
 291 F. Supp. 3d 936 (N.D. Cal. 2018) ........................................................................... 7

*In re NJOY, Inc. Consumer Class Action Litig.*
 120 F. Supp. 3d 1050 (C.D. Cal. 2015) ......................................................................... 6

*In re Novatel Wireless Sec. Litig.*
 2011 WL 5827198 (S.D. Cal. Nov. 17, 2011) ............................................................... 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*
 2020 WL 6688912 (N.D. Cal. Nov. 12, 2020) ...................................................... 3, 4, 5, 9

*Schechner v. Whirlpool Corp.*
 2019 U.S. Dist. LEXIS 171642 (E.D. Mich. Aug. 13, 2019) ....................................... 6

*Zakaria v. Gerber Prods. Co.*
 755 Fed. Appx. 623 (9th Cir. 2018) ............................................................................... 6

Other Authorities

Fed. R. Evid. 702 ................................................................................................................. 1, 6

# I.  **INTRODUCTION**

The question of whether to exclude the opinion testimony of Steven P. Gaskin ("Gaskin") and Colin B. Weir ("Weir") as unreliable ultimately cannot be answered by case law, but rather only by commonly accepted economic theory supporting these experts' proposed methodology for computing a "price premium."  Thus, this is not a matter of "weight of the evidence," as Plaintiffs do not dispute; rather, the question is whether Plaintiffs' proposed methodology for computing a price premium between the "actual world" with the alleged misleading labels, and the "but for world" without such labels, has any basis in commonly accepted economic principles and literature.  Both parties have cited district court decisions accepting or rejecting versions of the Gaskin/Weir methodology, but respectfully, judicial decisions are no substitute for demonstrating, as Plaintiffs must, that the Gaskin/Weir opinion testimony "is the product of reliable principles and methods" in the sense of being recognized in the field of economics.  Fed. R. Evid. 702.

In their opposition, Plaintiffs have failed to cite to any economic treatises, textbooks, articles or principles supporting their unorthodox methodology of using "historical" prices and quantities supplied from the actual world to calculate the market price per bar of the challenged products in the but for world.  Indeed, much of the rebuttal Gaskin and Weir declarations involves recitation of *legal* authorities, and only Gaskin cites to writings by Professor Allenby, which in fact actually support Clif Bar's positions.  (Choi Rebuttal Decl., ¶¶ 13-19[1].)  As Clif Bar's economics expert, Dr. William Choi, explains in his rebuttal declaration, the Gaskin conjoint survey is capable of measuring only consumer demand for the "non-misleading product," but cannot determine the market price in the but for world without consideration of "supply side" factors in that world, such as Clif Bar's and competitors' willingness to supply a certain quantity of "non-misleading" goods.  (Choi Rebuttal Decl., ¶¶ 9; 15-20.)

As Dr. Choi further explains, a true price premium can be determined only by calculating the difference between the equilibrium market price per bar in the but for world, and the

---

[1] Plaintiffs submitted rebuttal responses of both Mr. Gaskin and Mr. Weir.  Given the new information, Clif Bar is submitting a Rebuttal Declaration of William S. Choi ("Choi Rebuttal Decl.").

SMRH:4850-2536-4179.4

Case No. 18-cv-02354-JD
REPLY IN SUPPORT OF MOTION TO EXCLUDE
OPINION TESTIMONY OF STEVEN P. GASKIN

1   equilibrium market price in the actual world.  Those prices are set by the "law of supply and

2   demand," where the equilibrium market price for "ordinary goods," such as Clif Bars, is found at

3   the intersection of the supply and demand curves.  (Choi Rebuttal Decl. ¶¶ 11, 18; Dkt. 111, Choi

4   Rpt. ¶ 22, 24.)  According to the most basic and accepted economic theory, the market price in the

5   actual world is a function of real world demand and supply curves, as reflected in actual prices

6   sold, whereas the but for world requires a separate calculation of consumer demand for non-

7   misleading goods *and* producers' willing to supply a certain quantity of product given that

8   consumer demand.  *Id.*

9       Gaskin's conjoint survey proposes to identify differences in consumers' willingness to pay

10  for misleading and non-misleading goods, so at best it is a (flawed) way of determining consumer

11  demand in the but for world.  The fact that Gaskin proposes to use actual market prices in

12  measuring consumers' willingness to pay for misleading and non-misleading products only means

13  that he could generate potentially more reliable willingness-to-pay estimates, but that is still only

14  demand, and such information says nothing of the supply curve in the but for world that is

15  necessary to determine the equilibrium market price.  (Choi Rebuttal Decl., ¶ 21.)  The actual

16  market prices reflect *only actual* supply conditions, not supply conditions in the but for world.

17      According to basic and well accepted economic principles, Plaintiffs needed to propose a

18  methodology for analyzing supply in the but for world, but they did not despite the existence of

19  well accepted methods for doing so in economics, such as the Bertrand-Nash price competition

20  model described by Nevo (2001).  (Choi Rebuttal Decl., ¶ 20, 22.)  Only after accounting for

21  supply conditions in the but for world can a price premium be determined, which can then be

22  multiplied by the number of historical sales to determine the alleged total price premium.  Waving

23  a wand and declaring that actual prices and actual quantities supplied can capture "supply side"

24  factors in the but for world is simply wishful thinking on Plaintiffs' part with absolutely no

25  support in economic theory.

26      None of the district courts adopting this argument reference any accepted economic

27  principle or treatise to justify such a conclusion.  Moreover, relying on Gaskin and Weir as experts

28  is dubious at best – Gaskin has no degree in economics, and Weir holds an M.B.A. but lacks an

1   even basic understanding of economics principles, such as equilibrium market price, law of

2   supply, and competition models.  (Dkt. 111, Report of William S. Choi ("Choi Rpt."), ¶ 23-24.)

3         Finally, for reasons similar to Judge Breyer's August 12, 2020 decision in *In re*

4   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, rejecting another Gaskin

5   conjoint survey, the Gaskin survey here is methodologically flawed and incapable of generating

6   reliable data for calculating market prices and ultimately a price premium.  The product attributes

7   Gaskin proposes to test not only fail to approximate real world reality by not using product labels,

8   but contain unprecedented warnings as to the dangers of added sugar not found on any food

9   product.  Surveying consumers' reaction to food label statements with vague warnings of dire

10  diseases in addition to the "challenged claims" renders the proposed survey unreliable and

11  Gaskin's testimony excludable, as was the case in *In Re Volkswagen*.

12  **II.**      **GASKIN'S CONJOINT ANALYSIS CANNOT RELIABLY DETERMINE
    MARKET PRICE PREMIA BECAUSE IT FAILS TO ACCOUNT FOR SUPPLY-**

13  **SIDE FACTORS THAT AFFECT PRICE IN THE BUT FOR WORLD**

14        While there is a split in the case law regarding whether historical, actual prices and

15  quantities are adequate to account for supply-side factors in the but for world, the reliability of

16  Gaskin's opinion testimony can only be assessed with reference to economic, not legal,

17  authorities.  *In re Novatel Wireless Sec. Litig.*, 2011 WL 5827198, at *3-4 (S.D. Cal. Nov. 17,

18  2011) ("[I]f the expert's research has not been subjected to peer review, then the expert must

19  explain precisely how he went about reaching his conclusions and point to some objective source

20  – a learned treatise, the policy statement of a professional association, a published article in a

21  reputable scientific journal or the like, to show that he has followed [a reliable methodology]").

22  For example, Plaintiffs all but admit that using historical sales in the but for world means that the

23  supply curve was vertically fixed, where producers supply the same quantity of product at any

24  price, whether that price is one penny or one hundred dollars.  Opposition at 2.  This is an

25  unorthodox proposition for a competitive market unsupported by any economic authority, as Clif

26  Bar pointed out in its moving papers, but Plaintiffs have failed to come forward with any

27  economic treatise or article to support this proposition.

28        Gaskin refers to writings by Professor Allenby in support and offers vague references to "a

-3-

number of well-known peer-reviewed academic publications and books that illustrate the use of

conjoint analysis to calculate willingness-to-pay ('WTP') and combine this WTP with an

accounting of supply-side factors, as Mr. Weir and I do (though in a different context), to calculate

a market price premium."  (Gaskin Rebuttal Response, ¶ 49.)  However, Gaskin only refers

specifically to Professor Allenby's articles, which in fact prescribe examining supply conditions

using competitive pricing models, in direct contrast to the approach taken by Gaskin and Weir.

(Choi Rebuttal Decl., ¶¶ 14-20.)  More specifically, these cited articles do not state or provide any

support for the proposition that one can account for supply-side considerations in the but for world

by looking at actual market prices or holding quantities fixed to actual world levels.  *Id.*

Plaintiffs point to case law in an effort to support the reliability of Gaskin's method, but

recent authority from Judge Breyer excluding Gaskin's very same methodology here refutes that

notion.  In *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2020

WL 6688912 (N.D. Cal. Nov. 12, 2020) ["*Volkswagen*"] (*See* Dkt. 127), this Court found that the

very same conjoint methodology and analysis proposed by Gaskin here failed to adequately

consider supply-side factors to determine a price premium:

> Calculating a premium by comparing (1) the actual price of vehicles sold with [the
> defect] to unwitting consumers, and (2) consumers' willingness-to-pay for vehicles
> with the [defect] (as opposed to the market price of vehicles with the [defect]) is
> comparing apples and oranges.  And presuming that Defendants would have sold
> the same number of cars, at the exact price that consumers would have been willing
> to pay, is not a way to reliably incorporate supply-side considerations.

*Id.* at *7.  Gaskin's proposal here to account for supply-side factors in the but for world with sales

and prices from the actual world is precisely the kind of "apples to oranges" analysis rejected by

Judge Breyer.

Plaintiffs argue that any reliance on *Volkswagen* is misplaced because "the court agreed

conjoint 'could conceivably account for the premium that Plaintiffs paid for low emissions,' 2020

WL 6688912, at *7, but found multiple problems with the survey design itself."  Opposition at 9.

This misleadingly suggests that the Court's holding was dependent on the other survey flaws.

Whether a conjoint survey could account for a price premium under circumstances is not the issue,

the question in *Volkswagen*, as here, was whether Gaskin's proposed conjoint survey and use of

-4-

Case No. 18-cv-02354-JD
REPLY IN SUPPORT OF MOTION TO EXCLUDE
OPINION TESTIMONY OF STEVEN P. GASKIN

historical prices and sales data can reliably calculate a price premium, and, as Clif Bar has demonstrated, reliable economic theory and authorities say "No."

The fact that Court found other methodological flaws with Gaskin's survey and analysis did not detract from the fact that Judge Breyer obviously did not buy Gaskin's novel supply-side theory involving historical data and the but for world: "several aspects of Mr. Gaskin's analysis st[ood] out as flawed even to the untrained eye [and] *[e]ach provide[d] an independent reason to exclude the evidence as unreliable*." *Id.* (emphasis added).  Plaintiffs' attempt to distinguish *Volkswagen* by arguing that the markets for cars and "classic mislabeling claims" are somehow different for purposes of economic analysis is simply more conjecture by Plaintiffs without regard to basic economic theory that that determination of "market price premia" between the but for and actual worlds must consider both demand *and* supply factors relevant to each world.

As Dr. Choi explains, in order to properly estimate a price premium due to the alleged omissions or misrepresentations, it is necessary, from an economics perspective, to measure the difference between actual and but-for equilibrium market prices, where the demand and supply curves intersect.  (Dkt. 111, Choi Rpt. ¶ 22; Choi Rebuttal Decl. ¶ 18.)  To determine a but-for market price, both the demand and supply conditions need to be addressed.  The Gaskin/Weir Choice-Based Conjoint ("CBC") analysis, is exclusively focused on demand and does not, in any way, properly address supply considerations in determining a but-for market price.  (*Id.* § V.A.; *see generally* Choi Rebuttal Decl.)

Plaintiffs' attempt to rely on past opinions approving of the Gaskin/Weir analysis is unavailing because these decisions do not cite to any reliable economic treatise or theory.  In *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018), the court relied on other past opinions that held that keeping the supply side fixed in the but for world and using actual market prices sufficiently accounts for supply-side factors.  324 F. Supp. 3d at 1104-06.  There was no discussion or evidence that this analysis had any support in economics other than that Gaskin and Weir say it was so, and they are hardly authorities in economics.  (Choi Rebuttal Decl., ¶ 10, 13.)  After all of this litigation on a discrete economic issue, Gaskin and Plaintiffs' counsel has had ample time to find even one economic paper that supports the Gaskin methodology, but have

-5-

1    failed to do so, and thus Gaskin's analysis is not "the product of reliable principles and methods"

2    recognized in the field of economics and should be excluded.  Fed. R. Evid. 702.

3          Plaintiffs contend that Clif Bar's reliance on *Zakaria v. Gerber Prods. Co.*, 755 Fed. Appx.

4    623 (9th Cir. 2018) is misplaced because plaintiff's expert in that case used hypothetical prices

5    and thus failed to account for supply-side factors in the way Gaskin and Weir propose to do so

6    here by relying on actual market prices and a fixed quantity.  Plaintiffs erroneously read into the

7    Ninth Circuit's pronouncement that conjoint analyses should "reflect supply-side considerations

8    and marketplace realities that would affect product pricing" to mean their theory as to how to

9    account for supply-side factors.  As explained elsewhere herein, supply-side considerations must

10   be considered based on real economic theory, as Dr. Choi describes, and "marketplace realities"

11   include the application of the laws of supply and demand, where actual market pricing can more

12   reliably re-create consumer demand in the but for world, but cannot substitute for supply-side

13   factors.  (Choi Rebuttal Decl., ¶ 21.)

14         Using actual prices only means that Gaskin can obtain more realistic setting for consumer

15   "willingness-to-pay" estimates, which is still a demand only analysis.  (Choi Rebuttal Decl., ¶

16   21.)  The conclusion is the same when considering *In re NJOY, Inc. Consumer Class Action Litig.*,

17   120 F. Supp. 3d 1050 (C.D. Cal. 2015) and *Apple, Inc. v. Samsung Elecs. Co.*, 2014 U.S. Dist.

18   LEXIS 29721 (N.D. Cal. Mar. 6, 2014).  The fact that the plaintiffs in these cases did not take into

19   consideration actual prices only means the demand side was potentially less realistic, but it does

20   not mean that considering the market prices adequately accounts for supply-side factors needed to

21   determine an equilibrium market price in the but for world.  (Choi Rebuttal Decl., ¶¶  12, 21.)

22   Plaintiffs' attempt to distinguish *Schechner v. Whirlpool Corp.*, 2019 U.S. Dist. LEXIS 171642

23   (E.D. Mich. Aug. 13, 2019) is also not well taken.  The court in *Schechner* found, as Dr. Choi

24   concludes, that Weir's conjoint analysis failed to incorporate supply-side considerations because

25   "historical transactions reflect only historical supply-side factors."  *Id.* at *19.

26         The court in *In re General Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212

27   (S.D.N.Y. 2019) rejected a conjoint analysis for failure to adequately consider supply-side factors,

28   but distinguished the analysis of the *Hadley* line of cases because "that makes sense" for a case

-6-

SMRH:4850-2536-4179.4

REPLY IN SUPPORT OF MOTION TO EXCLUDE
OPINION TESTIMONY OF STEVEN P. GASKIN

that is essentially "simple." *In re General Motors*, 407 Supp. 3d at 238-39.  There is no reference to any economic authority, treatise, textbook or article explaining how using historical data from actual world transactions can substitute for the but for world laws of supply and demand, that is "comparing apples to oranges."  Nor does the court explain how the laws of economics change depending on whether the case is simple or complex.

Plaintiffs also cite with approval district court decisions in *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 336 (D.N.H. 2017) and *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 971 (N.D. Cal. 2018).  In these cases, the courts approved of a price premium methodology based on holding actual prices and quantities supplied constant (applied in the but for world) because "[a]ssuming that fewer consumers were injured in the hypothetical world . . . runs the risk of undercompensating the real-world injured consumers."  *In re MyFord*, 291 F. Supp. at 971.  Again, there is no reference to any accepted economic theory (rejecting, in fact, "traditional economic theory"), and thus no analysis how the proposed methodology could be reliable.

This concern with "under compensation" is seriously flawed because, as Dr. Choi points out in his original report, it is based on conflating two concepts – calculating an equilibrium market price per bar in the but for and actual world, and computing total damages.  (Dkt. 111, Choi Rpt. ¶ 22.) "Traditional economic theory" requires that the laws of supply and demand be applied to determine the equilibrium market price in the but for and actual world, where the difference between the two is the price premium per bar.  This price premium per bar is then multiplied by the actual quantity of "misleading" bars sold to determine the total damages.

There is simply no possibility of undercompensating class members with traditional economic theory that is reliable because the total damages is based on total historical sales.  Indeed, the Gaskin/Weir methodology will inflate any price premium because the vertical supply curve exaggerates the difference between the but for and actual equilibrium market prices.  (Choi Rebuttal Decl., ¶¶ 17-19; Dkt. 111, Choi Rpt. ¶¶ 22, 29.)  Plaintiffs' methodology can never reliably determine a true price premium for this reason alone.  In sum, actual market prices and quantities supplied are relevant for determining the but for world demand curve and total damages,

-7-

1    but not for calculating the supply curve in the but for world as Plaintiffs contend.

2         As Dr. Choi further explains, it was possible for Plaintiffs to draw upon well accepted

3    economic models to construct a supply curve in the but for world, but they did not do so.  (Choi

4    Rebuttal Decl., ¶¶ 14-22.)  Allenby, *et al.* (2014a) demonstrates how conjoint analysis can be used

5    *together with* a Bertrand-Nash price competition model, which is a commonly used model for

6    "ordinary" goods such as Clif Bars, to address supply conditions.  Nevo (2001), cited in the Choi

7    Report, also applies the Bertrand-Nash competition model to breakfast cereals.  A similar

8    approach is taken by Kim and Cotterill (2008) for the processed cheese market in the U.S.  (Choi

9    Rebuttal Decl., ¶ 20.)

10        Together with a properly done model for calculating consumer demand, a market price

11   equilibrium for the but for world can be constructed based on sound economic theory.  The "BLP"

12   model, for example, is well-accepted, and draws upon actual pricing and quantities sold to

13   determine consumer demand.  However, as noted by the above studies, the BLP model by itself is

14   insufficient to determine a market equilibrium price necessary to calculate the ultimate price

15   premium.  (Choi Rebuttal Decl., ¶ 20-21.)

16        Finally, Plaintiffs also argue that Clif Bar "fundamentally rejects the Reference Manual's

17   instruction that 'the but-for scenario [should] differ[] from what actually happened *only* with

18   respect to the harmful act,' Reference Manual at 432 (emphasis added)."  Opposition at 9.  And

19   that is exactly the point.  The "but-for scenario" should include the same analysis of supply and

20   demand and the market equilibrium price as in the actual world.  The cited passage stands for

21   nothing more than the price premium should be isolated to the difference in price attributed solely

22   to the alleged harmful act.

23   **III.    GASKIN'S CONJOINT SURVEY CANNOT RELIABLY MEASURE PRICE
             PREMIUM BECAUSE IT VIOLATES WELL-ESTABLISHED PRINCIPLES OF
24            CONSUMER SURVEYS**

25        As opposed to Gaskin's theory of supply-side factors, Plaintiffs contend that any

26   arguments regarding Gaskin's survey methodology, design, or reliability go to weight of the

27   survey rather than its admissibility.  But the case Plaintiffs cite also explains that a survey must be

28   "conducted according to accepted principles."  *Fortune Dynamic, Inc. v. Victoria's Secret Stores*

1   *Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (internal quotation marks and citations

2   omitted).  Moreover, as previously explained, this Court recently granted a motion to exclude

3   Gaskin and Weir not only because Gaskin's conjoint survey failed to measure supply-side factors,

4   but also because of other independent methodological flaws.  *See Volkswagen*, 2020 WL 6688912,

5   at *7.

6         Even Plaintiffs recognize that the court in *Volkswagen* "found multiple problems with the

7   survey design itself."  Opposition at 9.  Here, as was the case in *Volkswagen*, Gaskin's survey

8   suffers from substantial methodological flaws and is thus unreliable and incapable of deriving any

9   claimed phrase-based "price premium."  (Dkt. 113, Simonson Rpt. ¶ 161.)  As Dr. Itamar

10  Simonson, Clif Bar's expert on consumer surveys, explains, based on writings by Dan McFadden,

11  a Nobel Prize winning economist, a basic requirement of any consumer survey designed to inform

12  one about reality is that the survey reflect the product at issue and marketplace conditions.  (*Id.* ¶

13  127, 128, 147-48.)  Gaskin's survey distorts reality by including a small portion of the package

14  information and prominently displaying an extreme, unrealistic warning.  (*Id.* ¶ 133.)

15        In *Volkswagen*, one independent reason the court rejected Gaskin's survey was that it

16  required respondents to consider certain vague effects beyond the "low emissions" claim being

17  tested, making it "impossible to know" how much these other circumstances could affect

18  responses (*e.g.*, testing reduced NOx emissions but at the expense of fuel mileage hypothetical not

19  at issue in the litigation). 2020 WL 6688912, at *7.  Here, Gaskin used what Dr. Simonson

20  described as "out-of-this-world" warnings, such as "High Added Sugar Content May Cause Type

21  2 Diabetes, Heart Disease, and Liver Disease," and "Warning: Due To High Sugar Content, Only

22  Intended For Use Surrounding Moderate or Strenuous Activity – Not As A Snack."  (Dkt. 113,

23  Simonson Rpt. § K; Dkt. 85, Gaskin Rpt. ¶ 54, p. 24.)  To Dr. Simonson's knowledge, of the

24  thousands of products containing added sugar sold to consumers, not a single one displays the

25  warnings relied upon by Gaskin.  (Dkt. 113, Simonson Rpt. ¶ 169, n. 50.)

26        These made-up warnings use vague, ill-defined terms that are "impossible to know" how

27  they affect consumers' choices as in *Volkswagen*, and thus render the results of consumer testing

28  unreliable.  These terms are also based on false premises regarding consumers' food decision

-9-

making.  As Dr. Simonson explains, a great deal of research has shown that consumers make tradeoffs with regard to food choices, but according to Gaskin's survey, they should avoid making such tradeoffs if, for example, eating a Clif Bar as a lunch replacement is not within the temporal scope of one's exercise as implied by the word "surrounding," or will cause serious disease.  (Dkt. 113, Simonson Rpt. ¶ 135.)  This drastic shift from reality necessarily implicates the reliability of Gaskin's survey because it means that the survey is incapable of determining consumers' actual valuations and willingness-to-pay in the marketplace.  (*Id.* ¶ 133.)

Gaskin's survey not only fails to approximate reality but singles out specific attributes while omitting others, thus artificially inflating the value assigned to those cherry-picked attributes.  (Dkt. 113, Simonson Rpt. ¶ 143, 153.)  Plaintiffs contend that Clif Bar failed to identify important attributes it believes are missing.  Opposition at 14.  This is wrong.  As explained, Gaskin himself admits that he omitted the iconic cliff hanger image and the term "Energy Bar," which are product attributes evocative of activity, not necessarily "healthy" eating.  (Dkt. 117-1, Declaration of Christopher Van Gundy, ¶ 2, Ex. 1, Gaskin Depo. pp. 170:2-21.)

By focusing respondents on a relatively few product attributes involving health or healthy, such as the "health" warning and the "health and wellness" claims, and by not allowing respondents to view the label or the "activity" information not directly related to health, Gaskin necessarily interjected focalism bias into his surveys that make them unreliable and biased.  (*See* Dkt. 113, Simonson Rpt. ¶¶ 131, 143, 153.)  Moreover, in light of the product features/attributes respondents listed in response to Gaskin's survey question regarding qualities the respondents typically look for when purchasing or consuming a nutrition bar, "one would have expected Mr. Gaskin to propose a conjoint study in which respondents choose among options that differ on many of the mentioned attributes."  (*Id.* ¶ 139.)

## IV.   **CONCLUSION**

For the foregoing reasons, Mr. Gaskin's testimony should be excluded.

Dated:  December 4, 2020              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                                        By  _____

                                                                  */s/ Christopher Van Gundy*

                                                        Attorneys for Defendant
                                                        CLIF BAR & COMPANY