UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MILAN, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CLIF BAR & COMPANY,<br><br>　　　　　　Defendant. | Case No.  18-cv-02354-JD<br><br>**ORDER RE CLASS CERTIFICATION AND *DAUBERT* MOTIONS**<br><br>Re: Dkt. Nos. 152, 161, 187, 189, 193 |

In this consumer action against Clif Bar & Company (Clif Bar or Clif) under California and New York state law, named plaintiffs Ralph Milan and Elizabeth Arnold have asked to certify several classes. Dkt. No. 152. Both sides filed *Daubert* motions challenging the other side's expert witness opinions. Dkt. Nos. 161, 187, 189, 193. The parties' familiarity with the record is assumed, and four consumer classes are certified. The *Daubert* motions are denied, or deferred pending further order.

## DISCUSSION

### I.　CLASS CERTIFICATION AND EXPERT WITNESS STEVEN P. GASKIN

Plaintiffs seek to certify four classes under Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> (1) The California Clif Bar class, consisting of "all persons in California who, between April 19, 2014 and the date the class is notified of certification, purchased Original Clif Bars in packaging bearing the phrase 'Nutrition for Sustained Energy'";
>
> (2) The New York Clif Bar class, consisting of "all persons in New York who, between April 19, 2015 and the date the class is notified of certification, purchased Original Clif Bars in packaging bearing the phrase 'Nutrition for Sustained Energy'";
>
> (3) The California Clif Kid ZBar class, consisting of "all persons in California who, between April 19, 2014 and the date the class is notified of certification, purchased Clif Kid ZBars other than in 24-, 36-, or 42-bar packages"; and

United States District Court<br>Northern District of California

1
2
3

> (4) The New York Clif Kid ZBar class, consisting of "all persons in New York who, between April 19, 2015 and the date the class is notified of certification, purchased Clif Kid ZBars other than in 24-, 36-, or 42-bar packages."

Dkt. No. 152 at 1.[1]

4
5
6
7
8
9
10

As these proposed definitions indicate, plaintiffs challenge only one statement made to consumers in the sale of the Clif Bars:  "Nutrition for Sustained Energy." *Id*. at 3.  Plaintiffs challenge three statements for the Kid ZBars:  (i) "Nourishing Kids in Motion"; (ii) "No High-Fructose Corn Syrup"; and (iii) "the 'family story,' namely, 'In raising our family, finding nutritious on-the-go snacks for our kids wasn't easy.  That's why we created Clif Kid -- wholesome, delicious snacks made with organic ingredients to help keep kids going, growing, and exploring.'" *Id*.

11
12
13
14
15
16
17
18
19

For each putative class, plaintiffs say Clif's statements were (i) affirmative misrepresentations in that "certain representations on the Bars' labels, which state expressly or imply that the Bars are healthy, are misleading in light of their high added sugar content"; (ii) partial omissions because, "in light of its statements that the Bars were healthy, Clif was obligated but failed to disclose the health dangers associated with added sugar consumption at the levels present in the Bars, and particularly when eaten outside the Bars' intended use occasion"; or (iii) wholesale omissions in that "independent of any affirmative misrepresentations[,] Clif was obligated but failed to disclose the safety dangers it knows are presented by consuming the Bars outside their intended usage occasion." *Id*. at 2.

20
21
22
23
24
25

For the California classes, plaintiffs allege violations of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200; False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500; and Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750; and breach of express warranty, Cal. Com. Code § 2313(1), and implied warranty of merchantability, Cal. Com. Code § 2314.  For the New York classes, plaintiffs allege claims under the New York General Business Law for unfair and deceptive business practices and false advertising, N.Y. Gen. Bus. L.

26
27
28

[1] As discussed at the motion hearing, the Court finds that it is analytically more appropriate to refer to these as four "classes," even though plaintiffs' briefs referred to these as four proposed "subclasses."  Plaintiffs did not disagree with that approach.

United States District Court
Northern District of California

1    §§ 349-50.  The complaint featured claims under New York law for breach of express warranty

2    and breach of the implied warranty of merchantability, Dkt. No. 1 ¶¶ 272-82, but plaintiffs say

3    they "are not pursuing classwide warranty claims on behalf of the New York Subclasses."  Dkt.

4    No. 152 at 18 n.8.  Consequently, they will not be taken up here.

5          The standards governing class certification are well established.  The overall goal is "to

6    select the metho[d] best suited to adjudication of the controversy fairly and efficiently."  *Amgen*

7    *Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (internal quotations

8    omitted) (modification in original).  Plaintiffs must show that their proposed classes satisfy all four

9    requirements of Rule 23(a), and at least one of the subsections of Rule 23(b).  *Comcast Corp. v.*

10   *Behrend*, 569 U.S. 27, 33 (2013); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th

11   Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).  Plaintiffs have elected to proceed under

12   Rule 23(b)(3).  Plaintiffs, as the parties seeking certification, bear the burden of showing that the

13   requirements of Rule 23 are met for each of their proposed classes.  *Mazza v. Am. Honda Motor*

14   *Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

15         The Court's class certification analysis "must be rigorous and may entail some overlap

16   with the merits of the plaintiff's underlying claim," though the merits questions may be considered

17   to the extent, and only to the extent, that they are "relevant to determining whether the Rule 23

18   prerequisites for class certification are satisfied."  *Amgen*, 568 U.S. at 465-66 (internal quotations

19   and citations omitted).  The class certification procedure is decidedly not an alternative form of

20   summary judgment or an occasion to hold a mini-trial on the merits.  *Alcantar v. Hobart Service*,

21   800 F.3d 1047, 1053 (9th Cir. 2015).  The decision of whether to certify a class is entrusted to the

22   sound discretion of the district court.  *Zinser*, 253 F.3d at 1186.

23         **A.      Numerosity (23(a)(1))**

24         Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is

25   impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs state, with evidentiary support, that "millions

26   of units were sold to each" of their proposed classes.  Dkt. No. 152 at 8; Dkt. No. 157 (Gaskin

27   Decl.) ¶ 66.  Clif Bar does not contest numerosity and the Court finds the requirement is satisfied

28   for each of plaintiffs' proposed classes.

United States District Court
Northern District of California

**B.      Typicality and Adequacy (23(a)(3)-(4))**

Rule 23(a) requires the named plaintiffs to demonstrate that their claims are typical of the putative class, and that they are capable of fairly and adequately protecting the interests of the class.  Fed. R. Civ. P. 23(a)(3)-(4).  The named plaintiffs here say typicality is satisfied because they "challenge[] the same conduct under the same legal theories and allege[] he or she was injured in the same manner," and adequacy is established because "they are *bona fide* purchasers with standing, have no conflicts, are aware of their obligations, and will continue to vigorously prosecute the case" for the classes.  Dkt. No. 152 at 10-11.  Plaintiffs also say they have "retained adequate proposed class counsel." *Id*.

Clif Bar challenges only the typicality showing on the ground that plaintiffs "have not presented any evidence that they were put at risk of disease by personally consuming too much added sugars in the challenged products."  Dkt. No. 162 at 11.  In Clif Bar's view, this means that plaintiffs "have not presented evidence that the Challenged Claims were false to them in the same way that plaintiffs claim they were false to the putative class." *Id*.

This misconstrues plaintiffs' claims.  They allege consumer deception, not personal injury.  Plaintiffs say that they, like all other proposed class members, "would not have purchased the Clif Products if they knew that their labeling claims were false and misleading in that the Products were not as healthy as represented but actually harm health."  Dkt. No. 1 ¶ 194.  This is the same deception and the same injury the classes are said to have suffered.  Typicality and adequacy are established.

**C.      Commonality (23(a)(2)) and Predominance (23(b)(3))**

The commonality requirement under Rule 23(a)(2) is satisfied when "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Because "any competently crafted class complaint literally raises common questions," the Court's task is to look for a common contention "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Alcantar*, 800 F.3d at 1052 (internal quotations and citations omitted).  What matters is the "capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of

United States District Court
Northern District of California

1    the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations

2    omitted) (emphasis in original).  This does not require total uniformity across a class.  "The

3    existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

4    of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*,

5    150 F.3d 1011, 1019 (9th Cir. 1998).  The commonality standard imposed by Rule 23(a)(2) is,

6    however, "rigorous."  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

7           Rule 23(b)(3) sets out the related but nonetheless distinct requirement that the common

8    questions of law or fact predominate over the individual ones.  This inquiry focuses on whether

9    the "common questions present a significant aspect of the case and [if] they can be resolved for all

10   members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal quotations and

11   citation omitted); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  Each

12   element of a claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 468-69, and the

13   "important questions apt to drive the resolution of the litigation are given more weight in the

14   predominance analysis over individualized questions which are of considerably less significance

15   to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

16   Rule 23(b)(3) permits certification when "one or more of the central issues in the action are

17   common to the class and can be said to predominate, . . . even though other important matters will

18   have to be tried separately, such as damages or some affirmative defenses peculiar to some

19   individual class members." *Tyson*, 577 U.S. at 453 (internal quotations omitted).

20          "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a),"

21   *Comcast*, 569 U.S. at 34, and the main concern under subsection (b)(3) is "the balance between

22   individual and common issues."  *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539,

23   560 (9th Cir. 2019) (en banc) (internal quotations omitted).  The Court finds it appropriate to

24   assess commonality and predominance in tandem, with a careful eye toward ensuring that the

25   specific requirements of each are fully satisfied.  *See*, *e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d

26   1108, 1120-21 (9th Cir. 2017).

27

28

1

### 1.    Plaintiffs Have Established Commonality and Predominance for the Four Proposed Classes

Plaintiffs have shown that the main issues in this case are capable of common resolution and that those common issues predominate over any individual questions.  They have made that showing independently for each of the proposed Clif Bar and Clif Kid Zbar classes under California and New York law.

For each class, the main liability question to be answered by the jury at trial is the same: were the challenged statements likely to mislead an objectively reasonable consumer?  This is true for the California UCL, FAL, and CLRA claims.  *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (claims under UCL and CLRA are "governed by the 'reasonable consumer' test"; plaintiffs "must show that members of the public are likely to be deceived") (internal quotations and citations omitted); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) ("To state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived") (cleaned up) (citation omitted).  It is also true for plaintiffs' claims under New York's General Business Law §§ 349 and 350 for unfair and deceptive business practices and false advertising.  *See Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 533 (1995) (inquiry for § 349 claims is "whether a reasonable consumer in plaintiffs' circumstances might have been misled"); *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016) ("Under both sections, the standard is an objective one -- whether the deceptive practice is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'").  The same holds for the California warranty claims.  There will be a common, objective inquiry asking whether the challenged statements created warranties that were breached, and whether the products failed to "conform to the promises or affirmations of fact made on the container or label."  Cal. Com. Code §§ 2313, 2314.

The answers to these inquiries will also be in common.  Because exactly the same representations were made to all class members via product packaging, and Clif made the bars with the same ingredients during the class period, *see* Dkt. No. 152 at 4-5, a classwide proceeding is well suited to "generate common *answers* apt to drive the resolution of the litigation."  *Wal-*

6

1    *Mart*, 564 U.S. at 350 (emphasis in original).  Plaintiffs have also demonstrated that common

2    evidence, such as consumer surveys and Clif Bar's internal documents, will be used to prove

3    falsity, deception, and materiality.  *See* Dkt. No. 152 at 4.

4          As the Supreme Court has stated, "[p]redominance is a test readily met in certain cases

5    alleging consumer . . . fraud."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  In

6    the Court's view, this is one of those cases.  *See also Bradach v. Pharmavite, LLC*, 735 F. App'x.

7    251, 254-55 (9th Cir. 2018) ("CLRA and UCL claims are ideal for class certification because they

8    will not require the court to investigate class members' individual interaction with the product.")

9    (internal quotations omitted).

10                 **2.      Clif's Challenges to Commonality and Predominance Are Unpersuasive**

11         Clif contests commonality and predominance on a number of grounds.  Dkt. No. 162 at 11-

12   21.  Its objections are not well taken.

13         To start, Clif asks "whether there is objective evidence that consumers take the inferential

14   leap from 'Nutrition for Sustained Energy' to healthy at all," but Clif's very framing of the

15   question points to an outcome that favors certification.  Dkt. No. 162 at 14.  The answer will be

16   derived from common, objective evidence in the form of the consumer surveys and the like.  *See*

17   *id*. at 12-14.  Clif nibbles at the contents of this evidence, *see, e.g., id.* at 14-15 ("The evidence

18   shows that very few consumers, if any, inferred 'healthy' from either the Challenged Claims or

19   Clif Bar's packaging as a whole."), but that is a merits argument for trial outside the class

20   certification inquiry at hand.  So too for Clif's suggestion that "consumers generally do not buy

21   the bars because they are healthy."  *Id*. at 17.

22         Questions of materiality and reliance also do not defeat predominance.  As discussed, the

23   UCL, FAL, and CLRA do not demand that plaintiffs prove the class members' individual reliance

24   on the challenged claims; they require only an objective showing that members of the public were

25   likely to have been deceived by Clif's product claims.  To recover actual damages under the

26   CLRA, plaintiffs may rely on common evidence (such as the consumer surveys and Clif's internal

27   documents) to prove that material misrepresentations were made to the entire class, thereby giving

28   rise to an inference of classwide reliance.  *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116,

United States District Court
Northern District of California

7

1   129 (2009); *see also Amgen*, 568 U.S. at 467 ("materiality can be proved through evidence

2   common to the class").  In the same fashion, Sections 349 and 350 of the New York GBL do not

3   "require proof that a consumer actually relied on the misrepresentation." *Hasemann v. Gerber*

4   *Products Co.*, 331 F.R.D. 239, 257-58 (E.D.N.Y. 2019).  And actual reliance need not be shown

5   for plaintiffs' California warranty claims, either.  *See Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.

6   App. 4th 1213, 1227 (2010).

7       Clif says that whether "the energy bars are unhealthy because they 'contribute' to

8   excessive sugar consumption" is an individual issue, "requiring an examination of individual diets,

9   constitutions, overall health and activity level, to name a few."  Dkt. No. 162 at 18.  Not so.  This

10  comment embodies the same analytical error Clif made in the typicality context.  The issue is not

11  whether class members actually developed diseases and ailments from eating the Clif bars.  The

12  issue is whether they bought Clif Bars and Clif ZBars because they reasonably believed, based on

13  the challenged packaging statements, that the bars were healthy, when in fact the bars turned out to

14  be loaded with sugar.  Clif contends that plaintiffs have "failed to demonstrate that a 'healthy'

15  message was false as to anyone." *Id.* at 19.  But a "healthy" message is false as to everyone if it

16  turns out that products that were sold with "healthy" messaging were not good for health.  That is

17  what plaintiffs have alleged here, and they have shown that these are questions that can be

18  answered on a common basis.

19      Clif's suggestion that "there is no common question of fact or law given that not all

20  consumers were exposed to the challenged claims," Dkt. No. 162 at 20-21, is equally unavailing.

21  This is not a case where class members were "exposed to quite disparate information from various

22  representatives of the defendant" and so it is "unreasonable to assume that all class members

23  viewed" the challenged claims. *Mazza*, 666 F.3d at 596 (internal quotations and citations

24  omitted).  In *Mazza*, the various statements at issue were in Honda's product brochures that were

25  available at dealerships; different television commercials, one of which ran for only a week;

26  videos "viewable on kiosks at Acura dealerships"; the "Acura Style magazine, a periodical sent to

27  Acura dealerships, subscribing Acura owners, and interested consumer twice each year"; and

28  various other media. *Id.* at 586-87.

United States District Court
Northern District of California

1    Here, the challenged statements are discrete and few, and they were printed in the exact

2    same language on the outer packaging and/or the individual bar wrapper for each Clif bar

3    purchased by each class member.  Dkt. No. 152 at 3-4.  Clif notes that "Nutrition for Sustained

4    Energy" was "not on the packaging [for original Clif Bars] for a twenty-month portion of the class

5    period," Dkt. No. 162 at 21, but plaintiffs have accommodated that by defining the class to include

6    only consumers who "purchased Original Clif Bars in packaging bearing the phrase 'Nutrition for

7    Sustained Energy.'"  Dkt. No. 152 at 1.  This is perfectly appropriate.  *See Mazza*, 666 F.3d at 596

8    ("In the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant

9    class must be defined in such a way as to include only members who were exposed to advertising

10   that is alleged to be materially misleading.").

### 3.    Clif Bar's *Daubert* Motion for Gaskin Is Denied, and Plaintiffs' Damages Model Is Sufficient Under *Comcast*

12   Under *Comcast*, 569 U.S. at 35, plaintiffs bear the burden of providing a damages model

13   showing that "damages are susceptible of measurement across the entire class for purposes of Rule

14   23(b)(3)."  The damages model "must measure only those damages attributable to" the plaintiffs'

15   theory of liability.  *Id*.  Put more directly, the damages model must reasonably reflect the claims

16   and evidence in the case.

17   Plaintiffs have proffered a "conjoint analysis" that their expert Steven Gaskin will use "to

18   isolate and quantify the market price premium associated with the challenged claims and

19   omissions, which then can be used to calculate the amount of restitution and damages owed" to the

20   classes.  Dkt. No. 152 at 21-23.  Plaintiffs say Gaskin's analysis will "isolate the loss of value

21   caused by the harmful act and exclude any change in the plaintiff's value arising from other

22   sources," by "measuring the market price premia attributable only to the challenged claims and

23   omissions, in three steps."  *Id*. at 22 (emphasis omitted).  First, he will "collect data from his

24   conjoint survey that isolates the value of each challenged claim, which will serve as an input for

25   his market simulation's demand-side function"; second, he will "collect real-world market data,

26   including the market prices of the challenged and competing products during the Class Period and

27   the quantity of the challenged products that were sold during the Class Period, which will serve as

28

United States District Court
Northern District of California

inputs for his supply-side function"; third, Gaskin will "conduct a market simulation, representing the but-for scenario, using the demand and supply data to calculate the market price premia for the challenged statements and omissions." *Id*. The conjoint analysis will be used to "measure actual damages," and plaintiffs will also seek statutory damages under New York law. *Id*. at 23-24.

Clif fired a double-barrel shot at the conjoint analysis in its class certification opposition and in a separately-filed *Daubert* motion to exclude Gaskin's opinions. Dkt. Nos. 162, 161. The *Daubert* motion contends that conjoint analysis is not a well-accepted method, Gaskin's analysis "cannot reliably assess price premia because it fails to account for supply-side factors," and that Gaskin's "fixed supply model has no support in accepted economic theory." Dkt. No. 161.

None of these points are well taken. Under the familiar standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), there is no "definitive checklist or test" used to evaluate the reliability of proposed expert testimony. *Daubert*, 509 U.S. at 593-94. The question for the Court at this stage is to decide whether Gaskin will use a generally accepted method for determining price premia, or whether his approach is "junk science" akin to predicting criminality by feeling the bumps on a person's head. *General Electric Co. v. Joiner*, 522 U.S. 136, 153 n.6 (1997) (Stevens, J., concurring in part). As Clif acknowledges, Gaskin's "modeling is no stranger to litigation; roughly half of the courts looking at this issue approved of his modeling, and half did not." Dkt. No. 161 at 2.

The courts that have accepted the proposed conjoint analysis have reached the better conclusion. In *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018), the court determined that "conjoint analyses can adequately account for supply-side factors -- and can therefore be utilized to estimate price premia without running afoul of *Comcast* -- when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period." Notably, the expert at issue there was Gaskin, and the court "denie[d] Kellogg's motion to exclude Gaskin's expert testimony insofar as it relates to Gaskin's proposed conjoint analysis." *Id*. at 1110. In *McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2021 WL 859137, at *4 (S.D. Cal. Mar. 8, 2021),

1     too, the court declined to exclude a proposed conjoint analysis where the expert's proposed

2     damages model did the two things identified by the *Hadley* court.

3           Gaskin proposes to do the same here.  He will use actual market prices that prevailed

4     during the class period and the actual quantities of products sold during the class period.  *See* Dkt.

5     No. 170 at 2; Dkt. No. 157 (Gaskin Decl.) ¶¶ 60-65.  That resolves Clif's main objection to

6     Gaskin's method and opinions, and Clif's additional objections to Gaskin in its class certification

7     opposition are unpersuasive.  Clif says that his "'survey' creates fake packaging, which is vastly

8     more simplified than the real Clif Bar packaging, and specifically directs consumers to consider

9     large, bolded statements on the packaging, some of which include the Challenged Claims."  Dkt.

10    No. 162 at 22-23.  This may be grist for cross-examination at trial, but it is not a good reason to

11    exclude Gaskin altogether from the case.  Clif's motion to exclude Gaskin's opinion testimony

12    under Rule 702 is denied.  Dkt. No. 161.

13          Consequently, plaintiffs have presented through Gaskin's proposed conjoint analysis an

14    adequate damages model under *Comcast*.  For the statutory damages under New York law, Clif

15    raises the possibility that a jury award might be excessive in proportion to the harm, and result in

16    due process concerns.  Dkt. No. 162 at 23-24.  As an abstract point, that concern cannot be ruled

17    out, *see In re Facebook Biometric Information Privacy Litigation*, --- F. Supp. 3d ---, No. 15-cv-

18    03747-JD, 2021 WL 757025, at *7 (N.D. Cal. Feb. 26, 2021), but the key factor for present

19    purposes is that it is entirely potential rather than real.  What will happen at trial here is not

20    knowable, and the Court may exercise its discretion to reduce an excessive statutory damages

21    award to comport with due process at a later stage of the proceedings.  *See Six (6) Mexican*

22    *Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309-10 (9th Cir. 1990).  A merely theoretical

23    possibility of this issue will not defeat certification.

24          **D.     Superiority (23(b)(3))**

25          The final certification question is whether the ends of justice and efficiency are served by

26    certification.  Rule 23(b)(3) requires a finding that proceeding as a class is superior to other ways

27    of adjudicating the controversy, which in this case would mean individual actions by each putative

28    class member.  There can be no doubt here that a class is the superior method of handling these

United States District Court
Northern District of California

consumer claims.  The bars at issue here cost no more than a few dollars per bar, Dkt. No. 152 at 24, and it is not likely for class members to recover large amounts individually if they prevailed. No reasonable person is likely to pursue these claims on their own, especially given the cost and other resources required to litigate against a company like Clif Bar, which has already retained multiple experts and shown that it is committed to strongly defending this case.  This all "vividly points to the need for class treatment."  *Just Film*, 847 F.3d at 1123.

## II.   REMAINING *DAUBERT* MOTIONS FOR COLIN B. WEIR, DR. ITAMAR SIMONSON, AND DR. WILLIAM S. CHOI

Clif Bar has filed a *Daubert* motion to exclude the expert testimony and report of Colin B. Weir.  Dkt. No. 193.  Plaintiffs have moved to strike portions of the expert testimony and reports of Dr. Itamar Simonson, Dkt. No. 189, and to strike and exclude portions of the testimony of Dr. William S. Choi, Dkt. No. 187.

The Court did not rely on any opinions or materials presented by the witnesses challenged in these motions, and so these Rule 702 and *Daubert* issues need not be resolved for the class certification decision.  The motions are deferred for future resolution, as warranted by developments.

## CONCLUSION

The Court certifies the California Clif Bar class, New York Clif Bar class, California Clif Kid ZBar class, and the New York Clif Kid ZBar class.

Plaintiffs Ralph Milan and Elizabeth Arnold are appointed class representatives, and their counsel, the Law Office of Jack Fitzgerald, PC, and the Law Office of Paul K. Joseph, PC, are appointed class counsel.

Plaintiffs are ordered to submit by October 29, 2021, a proposed plan for dissemination of notice to the classes.  Plaintiffs will meet and confer with Clif Bar at least 10 days in advance of submitting the plan so that the proposal can be submitted on a joint basis, to the fullest extent possible.

A status conference is set for December 9, 2021, at 10:00 a.m. in Courtroom 11, 19th Floor, San Francisco.  The parties are directed to file a joint statement by December 2, 2021, with

1    proposed dates for the final pretrial conference and trial.

2           The parties are further referred to Chief Magistrate Judge Joseph C. Spero for a settlement

3    conference to be held as his schedule permits.

4           **IT IS SO ORDERED.**

5    Dated:  September 27, 2021

6

7    _____

8    JAMES DONATO
     United States District Judge

9