**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RALPH MILAN and ELIZABETH ARNOLD on behalf of themselves, those similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>CLIF BAR & COMPANY,<br><br>Defendant. | Case No: 18-cv-02354-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Judge:           Hon. James Donato<br>Hearing Date:   July 28, 2022, 10:00 a.m.<br>Location:        Courtroom 11, 19th Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ......................................................................................... iii

NOTICE OF MOTION ....................................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES ......................................................1

    I.      INTRODUCTION ...............................................................................1

    II.     BACKGROUND AND CASE HISTORY ...........................................1

        A.    Procedural History ...................................................................1

        B.    Settlement Negotiations ...........................................................2

    III.    THE SETTLEMENT ..........................................................................3

        A.    The Settlement Class ...............................................................3

        B.    Benefits of the Settlement .......................................................3

                1.    Clif will Establish a $10,500,000 Non-Reversionary Settlement Fund ...... 3

                    a.    Class Member Claims ............................................... 3

                    b.    Notice and Other Administrative Costs ..................... 4

                    c.    Attorneys' Fees, Costs, and Class Representatives Service Awards ............................................................... 4

                2.    Clif Will Make Significant Labeling Changes ........................ 5

        C.    The Release ...............................................................................5

        D.    Opting Out ................................................................................6

        E.    Objecting ..................................................................................6

    IV.    TIMELINE ........................................................................................6

i

*Milan et al. v. Clif Bar & Co.*, No. 18-cv-02354-JD
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

V.   ARGUMENT ...............................................................................................7

   A.   The Court Should Certify the Nationwide Settlement Class .....................................7

   B.   The Court Should Approve the Proposed Settlement ...............................................8

       1.   The Settlement is the Product of Serious, Informed, Non-Collusive
            Negotiations ..................................................................................... 8

       2.   The Settlement Does Not Grant Preferential Treatment Improperly .......... 9

       3.   The Settlement Falls Within the Range of Possible Approval ................. 9

            a.   The *Churchill Village* Factors Favor Preliminary Approval ........ 10

            b.   The Monetary Relief is Fair in Relation to Potential Damages .... 12

            c.   The Settlement's Injunctive Relief is Appropriate and
                 Meaningful .................................................................... 13

            d.   The Court will be Empowered to Determine Reasonable Fees,
                 Costs, and Service Awards ................................................ 14

       4.   The Settlement has No Obvious Deficiencies ..................................... 14

   C.   The Court Should Approve the Class Notice and Notice Plan ...............................15

VI.  CONCLUSION ...........................................................................................15

ii

**TABLE OF AUTHORITIES**

**Cases**

*Allen v. Hyland's, Inc.*,
No. 12-cv-1150 DMG (MANx) (C.D. Cal.) ...................................................................... 10

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .................................................................................... 15

*Broomfield v. Craft Brew Alliance, Inc.*,
2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ............................................................ 7

*Broomfield v. Craft Brew Alliance, Inc.*,
2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ................................................................ 7

*Bruno v. Quten Research Inst., LLC*,
2013 WL 990495 (C.D. Cal. Mar. 13, 2013) .............................................................. 13

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ...................................................................................... 8

*Chevron Envt'l. Mgmt. Co. v. BKK Corp.*,
2013 WL 5587363 (E.D. Cal. Oct. 10, 2013) ............................................................ 13

*Churchill Village v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................................................. 9, 10

*Cottle v. Plaid Inc.*,
340 F.R.D. 356 (N.D. Cal. 2021) .................................................................................. 7

*Dickey v. Advanced Micro Devices, Inc.*,
2019 WL 4918366 (N.D. Cal. Oct. 4, 2019) .............................................................. 15

*DZ Reserve v. Meta Platforms*,
2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ............................................................. 11

*Farar v. Bayer AG*,
Case No. 14-cv-4601 (N.D. Cal.) ............................................................................... 10

*Gaudin v. Saxon Mortg. Servs., Inc.*,
2015 WL 4463650 (N.D. Cal. July 21, 2015) ............................................................ 12

*Hadley v. Kellogg Sales Co.*,
2021 WL 5706967 (N.D. Cal. Nov. 23, 2021) .................................................... 5, 7, 13

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........................................................................ 7

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................ 8

*Hanson v. Welch Foods Inc.*,
2022 WL 1133028 (N.D. Cal. Apr. 15, 2022) ..................................................... 5

*Heim v. Heim*,
2014 WL 1340063 (N.D. Cal. Apr. 2, 2014) ..................................................... 13

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ............................................................................. 5

*Huntsman v. Sw. Airlines, Co.*,
2018 WL 11371114 (N.D. Cal. Dec. 5, 2018) ................................................... 8

*In re Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) ............................................................................. 8

*In re Capacitors Antitrust Litig.*,
2020 WL 870927 (N.D. Cal. Feb. 21, 2020) ................................................... 11

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
424 F. Supp. 3d 456 (E.D. La. 2020) ................................................................. 9

*In re Facebook Biometric Info. Privacy Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) ............................................................. 11

*In re Hyundai & Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) ............................................................................. 7

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) ......................................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................................................... 15

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................. 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ................................................... 5

*In re Yahoo Mail Litig.*,
2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ................................................. 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ................................................. 8, 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................................................5

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) .........................................................................10, 11

*Krommenhock v. Post Foods, LLC*,
  2021 WL 2910205 (N.D. Cal. June 25, 2021) ...................................................................5, 7

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) .......................................................................................7

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014) ...........................................................10, 11, 12

*McCabe v. Six Continents Hotels, Inc.*,
  2015 WL 3990915 (N.D. Cal. June 30, 2015) .....................................................................13

*Milan v. Clif Bar & Co.*,
  2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) ......................................................................1

*Milan v. Clif Bar & Co.*,
  340 F.R.D. 591 (N.D. Cal. 2021) .....................................................................................2, 7

*Milan v. Clif Bar & Co.*,
  489 F. Supp. 3d 1004 (N.D. Cal. 2020) ..............................................................................2

*Myles v. AlliedBarton Sec. Servs., LLC*,
  2014 WL 6065602 (N.D. Cal. Nov. 12, 2014) ....................................................................15

*Norcia v. Samsung Telecommunications Am., LLC*,
  2021 WL 3053018 (N.D. Cal. July 20, 2021) .....................................................................14

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ..........................................................................................11

*Racies v. Quincy Bioscience, LLC*,
  No. 15-cv-292 (N.D. Cal.) ...............................................................................................10

*Relente v. Viator, Inc.*,
  2015 WL 2089178 (N.D. Cal. May 4, 2015) .......................................................................5

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ....................................................................................9, 11, 14

*Schneider v. Chipotle Mexican Grill, Inc.*,
  2020 WL 511953 (N.D. Cal. Jan. 31, 2020) .........................................................................7

*Stanton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................................9

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...............................................................................9

*Vasquez v. USM Inc.*,
    2016 WL 612906 (N.D. Cal. Feb. 16, 2016) ......................................................................14

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ......................................................................14

*Walsh v. CorePower Yoga LLC*,
    2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ........................................................................8

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................................15

Fed. R. Civ. P. 23(h) ...................................................................................................................14

**Regulations**

87 Fed. Reg. 5063, 5064 (Jan. 31, 2022) ...................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT, on July 28, 2022, at 10:00 a.m., Plaintiffs will move the Court for preliminary approval of a proposed nationwide class action settlement. The Motion is based on the below Memorandum; the concurrently-filed Declarations of Jack Fitzgerald ("Fitzgerald Decl.") and Brandon Schwartz ("Schwartz Decl."), and all exhibits thereto, including the parties' June 21, 2022 Settlement Agreement (Fitzgerald Decl. Ex. 1, "SA"); all prior pleadings and proceedings; and any additional evidence or argument submitted in support of the Motion. Plaintiffs seek an Order certifying the nationwide Settlement Class, granting preliminary approval to the proposed Settlement; approving the proposed Notice Plan and directing Class Notice be made; and setting schedules and procedures for effecting Class Notice, making claims, opting out, objecting, and conducting a Final Approval Hearing.

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.    INTRODUCTION

After more than four years of contentious litigation, Plaintiffs have reached with Defendant Clif Bar & Company ("Clif") a proposed nationwide class settlement in which Clif will establish a $10,500,000 non-reversionary common fund and make significant changes to the labeling and packaging of its original Clif Bars and Kid ZBars. This is now the fifth nationwide class settlement Plaintiffs' counsel have obtained based on the theory that health and wellness claims are misleading when used to advertise high-sugar foods, and its relief falls squarely within the range of the other four settlements, all of which received final approval, including by three other courts in this district. Moreover, settling ensures Class Members receive some compensation now, while avoiding the risk of an unfavorable decision on liability or damages at trial, or the possibility of significant appeal delay after trial, even with a favorable verdict. As discussed below, the Court should find the settlement falls within the range of reasonableness and grant preliminary approval.

## II.    BACKGROUND

### A.    Procedural History

Plaintiffs filed this action in April 2018 on behalf of California and New York consumers, alleging Clif labeled certain bars with health and wellness claims that were misleading in light of their high added sugar content. *See generally* Dkt. No. 1, Compl. After the Court denied Clif's motions to dismiss and strike class allegations, *Milan v. Clif Bar & Co.*, 2019 WL 3934918, at *4 (N.D. Cal. Aug. 20, 2019) (Donato, J.),

on September 30, 2019, Clif filed its Answer. Dkt. No. 41. Discovery began and was extensive. *See* Fitzgerald Decl. ¶¶ 3-8. There was also a significant amount of law and motion practice. *See id.* ¶¶ 4, 9.

In September 2020, the Court denied motions by Clif seeking both a stay and judgment on the pleadings. *See Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1008 (N.D. Cal. 2020) (Donato, J.). Shortly before that, Plaintiffs filed a motion for class certification. Dkt. No. 76. Clif opposed the motion, Dkt. No. 110, concurrently moving for summary judgment and the exclusion of Plaintiffs' damages experts, Dkt. Nos. 106, 117-18. During a February 18, 2021 hearing, and in a subsequent Minute Order, the Court denied Clif's summary judgment motion, denied Plaintiffs' class certification motion without prejudice, and denied Clif's *Daubert* motions without prejudice as moot. *See* Dkt. No. 149.

On February 25, 2021, Plaintiffs filed a renewed motion for class certification. Dkt. No. 152. As part of its opposition, Clif again moved to exclude Plaintiffs' damages experts. *See* Dkt. Nos. 161, 193. Before the motion was heard and after discovery ended, Plaintiffs filed motions to exclude some testimony of certain Clif experts, Dkt. Nos. 187, 189, as well as a motion for partial summary judgment, Dkt. No. 186.

At the time, trial was scheduled to begin October 1, 2021, and so the parties were well into trial preparations, and had even had their pretrial meet-and-confer conference, when the Court, on August 2, 2021, vacated the date pending the outcome of the certification motion. *See* Dkt. No. 201; Fitzgerald Decl. ¶ 11.

On September 1, 2021, the Court granted in part and denied in part Plaintiffs' motion for partial summary judgment. *See* Dkt. No. 202. The next day, it held a hearing on the remaining motions, *see* Dkt. No. 203, and in late September, granted the renewed class certification motion, while denying Clif's motion to exclude one of Plaintiffs' experts, Steven Gaskin. *See Milan v. Clif Bar & Co.*, 340 F.R.D. 591 (N.D. Cal. 2021) (Donato, J.) ["*Milan III*"]. The Court also left certain *Daubert* motions pending, ordered notice be made to the certified California and New York classes, and referred the parties to Chief Magistrate Judge Joseph C. Spero for a settlement conference. *See id.* at 602.

### B.      Settlement Negotiations

Settlement negotiations in this case were sparse for most of the litigation. The parties did not first discuss settlement until, with Plaintiffs' renewed motion for class certification pending, they scheduled a May 2021 mediation with Ms. Jill Sperber, of Judicate West. Fitzgerald Decl. ¶ 10. That session was largely unproductive, as were Ms. Sperber's efforts during follow-up calls over the next few weeks. *Id.*

The parties did not discuss settlement again while the motion was pending. After classes were certified, however, at the Court's direction, on January 13, 2022, the parties met with Judge Spero for a few hours, and while there was some movement, the case did not settle. *See id.* ¶ 12.

In early May 2022, Judge Spero contacted Plaintiffs with an increased offer from Clif, and Plaintiffs shortly thereafter communicated through Judge Spero a decreased demand. *Id.* ¶ 13. Clif requested Plaintiffs go back to Ms. Sperber for another private mediation, and they agreed. *Id.*

On May 18, 2022, the parties mediated with Ms. Sperber, and after several hours finally reached agreement on the key material terms of the Settlement. *Id.* ¶ 14. Over the next week, the parties negotiated additional, and more concrete material terms in the form of a short, Confidential Term Sheet. *Id.* Once that was signed on May 27, the parties notified the Court of the Settlement, and began drafting the full Settlement Agreement now being presented for preliminary approval. *Id.*; *see also* Dkt. No. 225.

## III.    THE SETTLEMENT

### A.    The Settlement Class

The Settlement Class is comprised of all persons who, between April 19, 2014 and June 23, 2022 (the "Class Period"), purchased in the United States, for household use and not for resale or distribution, one of the Class Products, namely either (i) original Clif Bars in packaging bearing the phrase "Nutrition for Sustained Energy," or (ii) Clif Kid ZBars in packaging bearing a Challenged Claim. SA ¶¶ 2.12, 2.13.

### B.    Benefits of the Settlement

#### 1.    Clif Will Establish a $10,500,000 Non-Reversionary Settlement Fund

As consideration for Class Members' release, Clif will establish a $10.5 million non-reversionary common fund (the "Settlement Fund") to pay Class Notice and Claims Administration; Court-approved attorneys' fees, expenses, and service awards; and Class Member claims. *Id.* ¶ 4.2.

#### a.    Class Member Claims

Class Members who make valid, timely claims will be entitled to Cash Awards. *See id.* ¶ 5.1. Based on their purchase history, claimants will be divided into one of five quintiles, and each quintile will be provided a standardized refund, based on the claimants' calculated "base damages," subject to *pro rata* increases or decreases based on the number of claims made. *See id.* ¶¶ 5.1(a)-(c), (e). This is the same claims process employed for *Krommenhock*, *Hadley*, and *McMorrow*, and for good reason: The settlements in all

four cases involve several varieties of low-price, low-salience packaged foods that Class Members have purchased for nearly a decade, and this claims process presents a fair way of differentiating degrees of Class Members usage (and thus alleged harm). *See* Fitzgerald Decl. ¶¶ 28-34.

Any amounts remaining uncleared after 180 days will either be provided to Class Member claimants in a supplemental distribution (if economically feasible), or donated *cy pres* in equal shares to the Resnick Center for Food Law and Policy at the University of California, Los Angeles School of Law; and the Tufts University Friedman School of Nutrition Science & Policy, if accepted by the Court. *See* SA ¶ 5.8.

### b.    Notice and Other Administrative Costs

The Settlement Fund will be used to pay the actual costs of class notice and other administrative costs. *Id.* ¶ 4.2. After soliciting bids from several administrators, the parties have agreed, with the Court's approval, to retain Postlethwaite & Netterville, APAC ("P&N") as the Class Administrator. Fitzgerald Decl. ¶¶ 24-27 (detailing process of selecting Class Administrator). P&N has been administering class action notice and claims since 1999 and is experienced in state and federal courts. Schwartz Decl. ¶¶ 3-5 & Exs. A-B. P&N is also the Class Administrator for similar settlements reached in *Hadley*, *Krommenhock*, and *McMorrow*. *See* Fitzgerald Decl. ¶ 34. P&N estimates the cost of Notice and Other Administrative Costs will be $461,199, based on an estimated 3.38% claims rate (or 526,000 claims compared to the estimated Class of 15.563 million households), and has agreed to cap these expenses at certain claims rates. *Id.* ¶ 41.

The Settlement provides that Class Notice will be effectuated through a Notice Plan designed by the Class Administrator to comply with the requirements of Rule 23 and approved by the Parties and Court. SA ¶ 6.1. P&N has offered a Notice Plan that meets these requirements. *See* Schwartz Decl. ¶¶ 18-40; *see also infra* Point V(C). On behalf of Clif, P&N will also serve CAFA notice upon the appropriate officials within 10 days after the filing of this motion, as required by 28 U.S.C. § 1715(b). *See* SA ¶ 6.7.

### c.    Attorneys' Fees, Costs, and Class Representative Service Awards

At least 35 days before the Objection Deadline, Plaintiffs and Class Counsel will request that the Court award attorneys' fees and costs, and service awards, from the Settlement Fund. *See id.* ¶ 8.1. Clif has the right to oppose the motion. *Id.* The "Settlement is not dependent or conditioned upon the Court's

approving . . . the particular amounts sought by Class Counsel and Class Representatives." *Id.* ¶ 8.4.[1]

### 2.   Clif Will Make Significant Labeling Changes

As part of the Settlement, Clif has agreed that it "will revise the packaging and labels of the original Clif Bars and Clif Kid ZBars, including both the outer box packaging and individual bar wrapper" and maintain those changes "for a period of at least 24 months," "so long as 10% or more of [a bar's] calories come from added sugars." *Id.* ¶ 4.9. Specifically, Clif "will refrain from using the word 'Nutrition' (including 'Nutritious')" on original Clif Bars, and "will refrain from using the word 'Nutritious,' and the phrase "Nourishing Kids in Motion" on Clif Kid ZBars. *See id.* ¶ 4.9.1.

### C.   The Release

Settlement Class Members who have not opted out will be deemed to release claims "arising out of, or in connection with the allegations of the Complaint, and specifically, the marketing, advertising, or labeling of the Class Products . . . consistent with *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010), and applicable law." SA ¶ 2.30. It thus is appropriately limited to releasing claims that "depend[] on the same set of facts" pleaded in the Complaint. *See Hesse*, 598 F.3d at 590; *compare Relente v. Viator, Inc.*, 2015 WL 2089178, at *1 (N.D. Cal. May 4, 2015) (Donato, J.) (granting final approval to class action settlement releasing "any and all liabilities, claims, cross-claims, causes of action, rights, actions suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, that were or could have been alleged against any of the Released Persons in the Action, ***that relate to the advertising of tours***" (emphasis added)).

---

[1] The Settlement Agreement includes a "quick pay" provision relating to the Fee Award. *Id.* ¶ 8.2. These provisions help deter meritless objections and are routinely approved in this District. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *40 (N.D. Cal. July 22, 2020) ["*Yahoo*"] ("[Q]uick-pay provisions have long been accepted in the appropriate circumstances." (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("With respect [to] the 'quick pay' provisions, Federal courts, including this Court and others in this District, routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions." (collecting cases)))); *see also Krommenhock v. Post Foods, LLC*, 2021 WL 2910205, at *2 (N.D. Cal. June 25, 2021) (approving quick pay of attorneys' fees and costs); *Hadley v. Kellogg Sales Co.*, 2021 WL 5706967, at *2 (N.D. Cal. Nov. 23, 2021) (same); *Hanson v. Welch Foods Inc.*, 2022 WL 1133028, at *2 (N.D. Cal. Apr. 15, 2022) (same).

### D.    Opting Out

Class Members who wish to be excluded must submit a Request for Exclusion (or "Opt-Out Form") to the Class Administrator, postmarked no later than the Opt-Out Deadline. "Mass" or "class" opt-outs are not permitted. All Class Members who submit a timely, valid Request for Exclusion will not be bound by the terms of the Agreement, whereas all Class Members who do not submit a timely, valid Request for Exclusion will be bound by the Agreement and any Judgment. SA ¶ 6.8.

### E.    Objecting

Settlement Class Members wishing to object must, by the Objection Deadline, file their written objections with the Court or mail them to the Class Administrator.[2] *Id.* ¶ 6.10.1; *see also* N.D. Cal. Settlement Guidelines, Preliminary Approval ¶ 5. An objection must contain, *inter alia*, a caption, contact information, sufficient information to establish standing as a Settlement Class Member, a statement of the objection and any supporting facts and law, a declaration or statement by the objector that the factual information provided is true and accurate to the best of the objector's understanding, and the signature of any former or current counsel for the Class Member who contends he or she may be entitled to compensation for any reason related to the objection. SA ¶ 6.10.2; *see also id.* ¶ 6.10.5 (objectors may appear at Final Approval Hearing). Any objection must also identify any other objections submitted by the Settlement Class Member, or his or her counsel, to any class action submitted in any court in the previous five years. *Id.* ¶ 6.10.2. If the Settlement Class Member or their counsel has not objected to any other settlement in the previous five years, the objector must affirmatively so state in the written materials provided with the objection to the Agreement. *Id.* Class Members represented by counsel must personally sign either the Objection itself or execute a separate declaration stating that the Class Member authorizes the filing of the Objection. *Id.* ¶ 6.10.3. Class Members who both object and opt out will be deemed to have opted out, and thus be ineligible to object. *Id.* ¶ 6.10.4. The parties have the right, but not the obligation to respond to any objections. *See id.* ¶ 6.10.7.

## IV.    TIMELINE

| Event | Day | Approx. Weeks After Preliminary Approval | Example Assuming PA Granted 7/28 |
|---|---|---|---|
| Date Court grants preliminary approval | 0 | - | July 28, 2022 |

---

[2] Class Counsel will file any objections received by the Class Administrator. SA ¶ 6.10.1.

| Deadline to commence 60-day notice period | 21 | 3 weeks | August 18, 2022 |
| Deadline for Plaintiffs to file Motion for Attorneys' Fees, Costs, and Service Awards | 49 | 7 weeks | September 15, 2022 |
| Notice completion date, and deadline to make a claim, opt out, and object | 60 | 8 weeks | September 26, 2022 |
| Deadline for Plaintiffs to file Motion for Final Approval | 74 | 10 weeks | October 6, 2022 |
| Final Approval hearing | 98 | 14 weeks | November 3, 2022 |

## V.   ARGUMENT

### A.   The Court Should Certify the Nationwide Settlement Class

The Court previously found the Rule 23(a) and 23(b)(3) elements met on behalf of Classes of California and New York consumers of Clif Original and Kid ZBars. *See Milan III*, 340 F.R.D. at 597-602. The Settlement Class differs from the certified litigation Classes only in that it is a single, nationwide class, rather than a set of California- and New York-only Classes. But the Ninth Circuit has made clear that, in the Settlement context, predominance is satisfied because California law may be applied to the claims of a nationwide settlement class. *See In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 561-66 (9th Cir. 2019) (en banc); *see also Cottle v. Plaid Inc.*, 340 F.R.D. 356, 378-80 (N.D. Cal. 2021); *Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *2, *5-6 & n.5 (N.D. Cal. Jan. 31, 2020) (after having certified California, Maryland, and New York classes for litigation, making "inquiry i[nto] whether the Settlement Class, now a nationwide class, still satisfies the predominance requirement"; concluding predominance was satisfied "because the Settlement Class Members were exposed to uniform representations concerning Chipotle's non-GMO claims and suffered the same injuries"; and noting that, under *Hyundai*, "the Court at this stage need not analyze whether any differences in state laws prevent provisional class certification"); *Krommenhock*, 2021 WL 2910205 (approving nationwide settlement class after certifying only California classes[3]); *Hadley*, 2021 WL 5706967 (same[4]); *Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) (same[5]).

---

[3] *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 567 (N.D. Cal. 2020).

[4] *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1121 (N.D. Cal. 2018).

[5] *See Broomfield v. Craft Brew Alliance, Inc.*, 2018 WL 4952519, at *21 (N.D. Cal. Sept. 25, 2018).

**B.      The Court Should Approve the Proposed Settlement**

Preliminary approval of a settlement and notice to the class is appropriate if "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval."

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation (Second) § 30.44)). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *6 (N.D. Cal. Feb. 14, 2017) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

**1.      The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations**

The Settlement was reached after discovery closed, the Court issued class certification and summary judgment orders, and a few months before trial. It took the parties two private mediations and a settlement conference with Judge Spero to reach the accord. Moreover, this is the fifth settlement Class Counsel has reached with food manufacturers based on similar claims, such that counsel has a deep understanding of the value and risks of the claims. Thus, the Court should find the Settlement is the product of serious, informed, non-collusive negotiations. *See*, *e.g.*, *Huntsman v. Sw. Airlines, Co.*, 2018 WL 11371114, at *2 (N.D. Cal. Dec. 5, 2018) (Donato, J.) ("The assistance of an experienced mediator in the settlement process supports the finding that the Settlement is non-collusive."); *cf. Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121-22 (9th Cir. 2020) ("case does not implicate the 'higher standard of fairness' that applies when parties settle a case before the district court has formally certified a litigation class," because the settlement was "'negotiated by a court-designated class representative'" (quotation omitted)).

There are also none of the "subtle signs" of collusion that the Ninth Circuit identified in *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Nothing purports to entitle counsel to "a disproportionate distribution of the settlement" (and Class Members are to "receive[] [a] monetary distribution"); nothing returns unawarded fees to Clif; and the Settlement Agreement includes no "clear sailing" agreement, instead providing only that counsel will apply to the Court for fees, imposing no conditions on Clif's response, and making the fee determination independent of the Settlement's other

8

provisions. *See* SA ¶¶ 8.1, 8.4. "[T]he prospect of fraud or collusion is substantially lessened where, as here, the settlement agreement leaves the determination and allocation of attorney fees to the sole discretion of the trial court." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020). Here, "[b]ecause the parties have not agreed to an amount of attorney fees and instead [will] merely petition[] the Court for an award they believe is appropriate, there is no threat of the issue tainting the fairness of the settlement negotiations." *See id.*[6]

### 2.    The Settlement Does Not Grant Preferential Treatment Improperly

The Settlement does not treat the Class Representatives or any Class Members preferentially, since every Class Member who makes a claim, including the Class Representatives, will be subject to the same claims process that provides the same remedy based on the claimant's purchase history. That Plaintiffs will move for service awards does not change this. *See Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) ("[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009))).

### 3.    The Settlement Falls Within the Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Id.* (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation omitted)).

> Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Id.* (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted)).

---

[6] Similarly, no other agreements have been made in connection with the proposal, Fitzgerald Decl. ¶ 2, so there is no possibility such an agreement "may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment).

1

### a.   The *Churchill Village* Factors Favor Preliminary Approval

2   An analysis of the *Churchill Village* factors favors preliminary approval.

3   ***The Strength of Plaintiffs' Case*** and ***the Risk, Expense, Complexity, and Duration of Further***

4   ***Litigation.*** Plaintiffs and their counsel believe this case was strong on the merits, and the Settlement reflects

5   that. But the case was by no means perfect or without risk. Clif vigorously disputed every aspect of Plaintiffs'

6   claims and supported its position with expert and other evidence. Fitzgerald Decl. ¶ 19. This included issues

7   like interpretation, materiality, healthfulness of the bars, and damages. *Id.* If the jury found any of these

8   arguments compelling, it could break the chain of causality Plaintiffs needed to establish to prove Clif's false

9   advertising liability. *Id.* Moreover, in preparing for trial, we observed in focus groups a certain amount of

10   attitudinal resistance to Plaintiffs' claims, which sometimes manifest as a reluctance to award any substantial

11   amount of damages, *see id.* ¶ 20. This means, of course, there was a risk the Class could lose at trial and

12   recover nothing—as has happened in several seemingly meritorious consumer fraud class actions that have

13   recently gone to trial in California, with judgments returned for defendants. *See Farar v. Bayer AG*, No. 14-

14   cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.); *cf. Racies v. Quincy*

15   *Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class). Even if Plaintiffs

16   were successful at trial, numerous appeal issues remained, presenting both inherent risk and substantial delay.

17   Fitzgerald Decl. ¶ 21. These factors thus weigh in favor of preliminary approval. *See Knapp v. Art.com, Inc.*,

18   283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (Approving settlement where "[c]ase law suggests that plaintiff

19   would have faced challenges in continuing to litigate" and "'[i]n most situations, unless the settlement is

20   clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

21   uncertain results.'" (quotation omitted)); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal.

22   July 11, 2014) (factor favored approval where "plaintiffs have established that there are significant risks in

23   entering a protracted litigation," such as an "anticipated appeal," because "[a]voiding such unnecessary and

24   unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial

25   resources" (citations omitted)).

26   ***The Risk of Maintaining Class Action Status Through Trial.*** "An order that grants or denies class

27   certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). As the Court

28   recently noted, this means that "'if future decisions or circumstances' warrant, the 'district court can decertify

the class.'" *In re Capacitors Antitrust Litig.*, 2020 WL 870927, at *3 (N.D. Cal. Feb. 21, 2020) (Donato, J.) (quoting *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019)); *see also DZ Reserve v. Meta Platforms*, 2022 WL 912890, at *8-9 (N.D. Cal. Mar. 29, 2022) (Donato, J.) (Admitting testimony of damages expert who performed conjoint analysis but noting that "[i]f evidence emerges at trial that substantially impeaches Dr. Allenby's methods and conclusions, the door may be opened to consideration of decertification."). Because the risk of decertification due to changed law or circumstances is ever-present, this factor favors approval of the Settlement. *See In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 628 (N.D. Cal. 2021) (Donato, J.) ["*In re Facebook*"] (finding factor supported final approval).

**The Settlement Amount.** The $10.5 million Settlement Fund is substantial, and fair when compared to other settlements in similar cases challenging health and wellness claims on high-sugar foods. *See* Fitzgerald Decl. ¶ 22. As discussed below, the amount is also reasonable in relation to the Settlement Class's potential recovery. *See id.* ¶¶ 15-17; *infra* Point V(B)(3)(b).

**The Extent of Discovery Completed and Procedural Posture.** The investigation and discovery here permit the parties and Court to make an informed analysis, especially given the earlier prosecution of cases based on the same theory and similar evidence, like *Hadley*, *Krommenhock*, *McMorrow*, and *Hanson*. *See* Fitzgerald Decl. ¶ 23. "The case was on the cusp of trial and so was fully developed, and counsel on both sides had a mature understanding of the issues and risks on both sides." *See In re Facebook*, 522 F. Supp. at 628. In addition to reviewing, cataloguing, and categorizing over 60,000 pages of documents in preparing its trial exhibits, Class Counsel commissioned several focus groups and mock trials to help identify potential pitfalls and frame the issues for trial. Fitzgerald Decl. ¶ 19. Given that trial was scheduled to begin August 1, Class Counsel was almost ready to try the case when it settled.

**The Experience and Views of Counsel.** "The Ninth Circuit recognizes that 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Knapp*, 283 F. Supp. 3d at 833 (quoting *Rodriguez*, 563 F.3d at 967). Accordingly, in determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen*, 2014 WL 3404531, at *5. Here, Class Counsel has considerable experience prosecuting consumer class actions, particularly those involving the false advertising of foods. Since 2016,

Class Counsel has been prosecuting a series of similar cases involving high-sugar cereals, bars, and beverages, and thus has been exposed to a wide variety of information about the claims and defenses, so that counsel has an especially good appreciation of the value and risks of the case. Fitzgerald Decl. ¶ 23. Counsel strongly endorses the Settlement. *Id.* Accordingly, this factor favors preliminary approval. *See Larsen*, 2014 WL 3404531, at *5 (factor favored settlement where "Plaintiffs' counsel has successfully represented consumers both as litigation class and settlement class counsel numerous times, including cases involving food mislabeling," and "believes approval is in the best interests of the putative settlement class").

**Governmental Participation.** There is no governmental participant, so this factor is inapplicable. *See*, *e.g.*, *In re Yahoo Mail Litig.*, 2016 WL 4474612, at *7 (N.D. Cal. Aug. 25, 2016).

**Class Member Reaction.** Because the class has not yet been notified of the Settlement, "[t]he Court must wait until the final approval hearing to assess class members' reactions to the settlement." *See Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 WL 4463650, at *6 (N.D. Cal. July 21, 2015).

### b.    The Monetary Relief is Fair in Relation to Potential Damages

Here, Plaintiffs and Class Counsel secured for the Settlement Class direct monetary benefits of $10.5 million, which is reasonable in relation to both potential trial damages (for the certified Classes), and the nationwide Settlement Class's hypothetical potential damages. Plaintiffs had damages models relating to both challenged labeling claims, *i.e.*, affirmative misrepresentations, and omissions (information that Plaintiffs allege should have been disclosed). For the affirmative misrepresentation claims, Plaintiffs' maximum trial damages is $27.04 million. The Settlement Fund is thus about 38.8% of trial damages based on Clif's affirmative misrepresentations. With respect to the alleged omissions, Plaintiffs tested two separate, but similar statements. Assuming the jury would award damages based on one, the maximum trial damages for omissions is $111.8 million, in which case the Settlement Fund would represent about 9.4% of trial damages. Adding both types of claims together, maximum trial damages is $138.8 million, with the Settlement Fund representing 7.6%. Fitzgerald Decl. ¶ 16.

California and New York together represent about 18% of the U.S. population. Assuming sales are proportional, this means hypothetical damages for a nationwide class would be about $150.2 million based on affirmative misrepresentations, and $621.1 million based on omissions, with the Settlement Fund representing a recovery of between 1.7% and 7.0% of the nationwide class's hypothetical damages. *Id.* ¶ 17.

In reality, however, even complete success at trial would leave Settlement Class Members outside of California and New York uncompensated. For even the possibility of obtaining the nationwide relief conferred by the Settlement, Class Counsel or other attorneys would have to file and prosecute actions in all other states since, given the existing legal precedents, it is virtually impossible that the claims of the nationwide Settlement Class could ever be adjudicated in a single forum and trial. Such litigation would cost the respective state classes millions of dollars to prosecute, be inherently risky, and continue for years, not including any appeals. *See id.*

This confirms the "reasonableness of the Settlement," since "[d]istrict courts have approved settlements as being in good faith for payment of 3% of an alleged tortfeasor's potential liability." *Heim v. Heim*, 2014 WL 1340063, at *5, *6 (N.D. Cal. Apr. 2, 2014) (citing *Chevron Envt'l. Mgmt. Co. v. BKK Corp.*, 2013 WL 5587363, at *3 n.2 (E.D. Cal. Oct. 10, 2013) (approving settlement representing less than 3% of total clean-up costs)); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("'It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" (quotation omitted)); *see also McCabe v. Six Continents Hotels, Inc.*, 2015 WL 3990915, at *10 (N.D. Cal. June 30, 2015) (approving settlement representing between 0.3% and 2% of potential recovery). Moreover, compared to the settlements approved in the similar class actions, these amounts are reasonable based on either sales or damages. Fitzgerald Decl. ¶ 22.

### c.    The Settlement's Injunctive Relief is Appropriate and Meaningful

Plaintiffs and Class Counsel also obtained substantial injunctive relief, which appropriately addresses the allegation that Clif misleadingly labeled its Original Clif Bars and Kid ZBars to suggest they are nutritious. "[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes. *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). This benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products." *Id*. Moreover, in *Hadley*, the Honorable Lucy H. Koh found that similar "injunctive relief"—the cessation or revision of health and wellness claims on sugary cereals—"provides health benefits to all purchasers of Defendant's products." *Hadley*, 2021 WL 5706967, at *2. Similarly, the FDA recently concluded that limiting manufacturers' use of "healthy" claims on sugary foods would result in healthcare

savings of up to $700 million over 20 years. *See* 87 Fed. Reg. 5063, 5064 (Jan. 31, 2022) ("Updating the definition of 'healthy' to align with current dietary recommendations can help consumers build more healthful diets to help reduce their risk of diet-related chronic diseases. Discounted at seven percent over 20 years, the mean present value of benefits of the proposed rule is $260 million, with a lower bound estimate of $17 million and an upper bound estimate of $700 million.").

### d.      The Court will be Empowered to Determine Reasonable Fees, Costs, and Service Awards

"[C]lass counsel should include information about the fees they intend to request and their lodestar calculation in the motion for preliminary approval." Settlement Guidelines, Preliminary Approval ¶ 6. Here, Class Counsel anticipates petitioning the Court for a fee award of up to one-third of the common fund, or $3.5 million. Class Counsel has expended over 10,300 hours on the litigation for a total lodestar of about $6.89 million. Fitzgerald Decl. ¶¶ 46-58. A one-third fee, if awarded, would thus represent a negative multiplier of 0.51 to counsel's lodestar, demonstrating its reasonableness. Moreover, in support of the fee application, counsel will argue and evidence, *inter alia*, that the following factors support the request: the excellent benefits obtained for the class; the quality of representation; the complexity and novelty of the issues presented; and the contingent nature of the representation and risk of nonpayment.

In addition, "[a]ttorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (citations omitted); *see also* Fed. R. Civ. P. 23(h). Here, Class Counsel anticipates seeking reimbursement for expenses of up to $891,386.09. *See* Fitzgerald Decl. ¶ 59.

Finally, Plaintiffs and Class Representatives Ralph Milan and Elizabeth Arnold will petition the Court for service awards of $5,000 each. *See Norcia v. Samsung Telecommunications Am., LLC*, 2021 WL 3053018, at *5 (N.D. Cal. July 20, 2021) (Donato, J.) ("Incentive awards are fairly typical in class action cases" (quoting *Rodriguez*, 563 F.3d at 958)). In support of their application, Plaintiffs will evidence "the amount of time and effort that [they] have expended in pursuing the litigation," *see Vasquez v. USM Inc.*, 2016 WL 612906, at *4 (N.D. Cal. Feb. 16, 2016) (Donato, J.).

### 4.      The Settlement has No Obvious Deficiencies

In light of the monetary and injunctive benefits the Settlement offers, Plaintiffs submit there are no

obvious deficiencies. *See Dickey v. Advanced Micro Devices, Inc.*, 2019 WL 4918366, at \*5 (N.D. Cal. Oct. 4, 2019); *contra. Myles v. AlliedBarton Sec. Servs., LLC*, 2014 WL 6065602 (N.D. Cal. Nov. 12, 2014) (Donato, J.) (finding deficiencies in all aspects of the settlement).

### C. The Court Should Approve the Class Notice and Notice Plan

"Due process requires adequate notice before the claims of absent class members are released." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at \*5 (N.D. Cal. Jan. 30, 2019) (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)). "Rule 23 requires only the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017) (emphasis omitted) (quoting Fed. R. Civ. P. 23(c)(2)(B)). P&N's proposed Notice Plan is reasonable under the circumstances, as it is designed to reach a minimum of 70% of Class Members, at least thrice each. *See* Schwartz Decl. ¶ 19; *see also Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at \*4 (N.D. Cal. June 26, 2017) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.").

The proposed Notice itself is also appropriate, since it contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out . . . ." *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). The Notice sufficiently informs Class Members of (1) the nature of the litigation, the Settlement Class, and the identity of Class Counsel, (2) the essential terms of the Settlement, including the gross settlement award and net settlement payments Class Members can expect to receive, (3) how notice and administration costs, court-approved attorneys' fees, costs, and service awards will be paid from the Settlement Fund, (4) how to make a claim, opt out, or object, (5) procedures and schedules relating to final approval, and (6) how to obtain further information. *See* SA Ex. 1, Long Form Notice. The Notice also satisfies the Settlement Guidelines' requirements to advise Class Members of the Settlement Website, and instructions on how to access the case docket. *See id.*

## VI.   CONCLUSION

The Court should grant the motion.

Dated: June 23, 2022                                 Respectfully Submitted,

/s/ Jack Fitzgerald

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

***Class Counsel***

*Milan et al. v. Clif Bar & Co.*, No. 18-cv-02354-JD
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT