1  **FITZGERALD MONROE FLYNN PC**
2  JACK FITZGERALD (SBN 257370)
   *jfitzgerald@fmfpc.com*
3  MELANIE PERSINGER (SBN 275423)
   *mmonroe@fmfpc.com*
4  TREVOR M. FLYNN (SBN 253362)
   *tflynn@fmfpc.com*
5  PETER GRAZUL (SBN 342735)
   *pgrauzl@fmfpc.com*
6  2341 Jefferson Street, Suite 200
   San Diego, CA 92110
7  Phone: (619) 215-1741

8  *Class Counsel*

9

10                 **UNITED STATES DISTRICT COURT**
11                 **NORTHERN DISTRICT OF CALIFORNIA**

12

13  RALPH MILAN and ELIZABETH ARNOLD on          Case No: 18-cv-02354-JD
    behalf of themselves, those similarly situated and
    the general public,                          **PLAINTIFFS' NOTICE OF MOTION AND**
14                                                **MOTION FOR ATTORNEYS' FEES, COSTS,**
             Plaintiffs,                          **AND SERVICE AWARDS**
15
          v.
16                                                Judge:          Hon. James Donato
    CLIF BAR & COMPANY,                           Hearing Date:   November 14, 2024, 10:00 a.m.
17                                                Location:       Courtroom 11, 19th Floor
             Defendant.
18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

NOTICE OF MOTION .............................................................................................................1

ISSUES TO BE DECIDED ......................................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES.................................................................1

    I.     INTRODUCTION ........................................................................................1

    II.    ARGUMENT .................................................................................................3

          A.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES .................................................................................................................3

                i.    Class Counsel's Fee Request is Reasonable Under the Percent-of-Fund Method ................................................................................4

                        a.    The Result Achieved ............................................................4

                        b.    The Complexity of the Case and Risk and Expense to Counsel ................................................................................7

                        c.    The Skill Required and Quality of Class Counsel's Work .................8

                        d.    Awards in Similar Cases .......................................................9

                ii.    A Lodestar Crosscheck Shows Class Counsel's Fee Request is Reasonable ...............................................................................10

                        a.    Class Counsel's Hours are Reasonable............................................11

                        b.    Class Counsel's Rates are Reasonable............................................11

                        c.    The Resulting Lodestar Multiplier is Reasonable............................12

           B.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES ........................................................14

          C.    THE COURT SHOULD GRANT SERVICE AWARDS .......................................14

    III.    CONCLUSION...........................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. ConAgra Foods Inc.*,
  2020 WL 4673914 (N.D. Cal. Aug. 12, 2020)......................................................................8

*Allen v. Hyland's, Inc.*,
  2021 WL 718295 (C.D. Cal. Feb. 23, 2021).........................................................................8

*Andrade-Heymsfield v. NextFoods, Inc.*,
  2024 WL 3871634 (S.D. Cal. Apr. 8, 2014)......................................................................3, 5

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (C.D. Cal. 2013)..........................................................................................9

*Bates v. Abbott Labs.*,
  --- F. Supp. 3d. ----, 2024 WL 1345342 (N.D.N.Y. Mar. 29, 2024)....................................2

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015)...............................................................................7, 8, 14

*Blum v. Stenson*,
  465 U.S. 886 (1984).............................................................................................................11

*Brazil v. Dell Inc.*,
  2012 WL 1144303 (N.D. Cal. Apr. 4, 2012).........................................................................5

*Brazil v. Dole Packaged Foods, LLC*,
  2014 WL 5794873 (N.D. Cal. Nov. 6, 2014)........................................................................8

*Bruno v. Quten Research Inst., LLC*,
  2013 WL 990495 (C.D. Cal. Mar. 13, 2013).........................................................................5

*Burnthorne-Martinez v. Sephora USA, Inc.*,
  2018 WL 5310833 (N.D. Cal. May 16, 2018)........................................................................6

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019).................................................................................14

*Chambers v. Whirlpool Corp.*,
  980 F.3d 645 (9th Cir. 2020).................................................................................................7

*Clark v. Perfect Bar, LLC*,
  2018 WL 7048788 (N.D. Cal. Dec. 21, 2018).......................................................................2

ii

*de Mira v. Heartland Employment Serv., LLC*,
  2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ................................................................ 7

*Farrell v. Bank of Am. Corp., N.A.*,
  827 Fed. App'x 628 (9th Cir. 2020) ............................................................................. 10

*Fowler v. Wells Fargo Bank, N.A.*,
  2019 WL 330910 (N.D. Cal. Jan. 25, 2019) ................................................................ 15

*Gergetz v. Telenav, Inc.*,
  2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ............................................................. 13

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*,
  2016 WL 6156076 (C.D. Cal. Aug. 16, 2016) ............................................................... 7

*Hadley v. Kellogg Sales Co.*,
  2021 WL 5706967 (N.D. Cal. Nov. 23, 2021) ............................................................... 6

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) .................................................................. 5

*Hopson v. Hanesbrands Inc.*,
  2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .................................................................. 14

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................... 3, 4, 10, 12

*In re Capacitors Antitrust Litig.*,
  2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .......................................................... 4, 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  2013 WL 12387371 (N.D. Cal. Nov. 5, 2013) ............................................................... 3

*In re Dynamic Random Access Memory Antitrust Litig.*,
  2014 WL 12879521 (N.D. Cal. June 27, 2014) ............................................................. 3

*In re Ferrero Litig.*,
  583 F. App'x 665 (9th Cir. 2014) ............................................................................... 7, 9

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................... 7

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...................................................................................... 15

*In re Resistors Antitrust Litig.*,
  2020 WL 2791940 (N.D. Cal. Mar. 24, 2020) ............................................................ 11

iii

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.,*
  895 F.3d 597 (9th Cir. 2018) ..................................................................................... 5

*James v. AT&T W. Disability Benefits Program,*
  2014 WL 7272983 (N.D. Cal. Dec. 22, 2014) ......................................................... 11

*Johnson v. Quantum Learning Network, Inc.,*
  2017 WL 747462 (N.D. Cal. Feb. 27, 2017) ...................................................... 11, 13

*Kim v. Allison,*
  8 F.4th 1170 (9th Cir. 2021) ...................................................................................... 7

*Lee v. Nature's Path Food, Inc.,*
  2023 WL 7434963 (S.D. Cal. Nov. 9, 2023) ............................................................. 2

*Luna v. Marvell Tech. Group,*
  2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ........................................................ 13

*Lusby v. GameStop Inc.,*
  2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) .......................................................... 9

*McMorrow v. Mondelez Int'l, Inc.,*
  2022 WL 1056098 (S.D. Cal. Apr. 8, 2022) ....................................................passim

*Milan v. Clif Bar & Co.,*
  2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) ........................................................ 12

*Morales v. Kraft Foods Group, Inc.,*
  2017 WL 2598556 (C.D. Cal. June 9, 2017) ............................................................. 8

*Morizur v. SeaWorld Parks & Entm't, Inc.,*
  2020 WL 6044043 (N.D. Cal. Oct. 13, 2020) ........................................................... 8

*Myles v. AlliedBarton Sec. Servs., LLC,*
  2014 WL 6065602 (N.D. Cal. Nov. 12, 2014) ........................................................... 4

*Norcia v. Samsung Telecomms. Am., LLC,*
  2021 WL 3053018 (N.D. Cal. July 20, 2021) ......................................................... 14

*O'Connor v. Uber Techs., Inc.,*
  2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ........................................................ 14

*Ontiveros v. Zamora,*
  303 F.R.D. 356 (E.D. Cal. 2014) ............................................................................. 14

*Palila (Loxioides bailleui) v. Hawaii Dep't of Land & Nat. Res.,*
  118 F.R.D. 125 (D. Haw. 1987) .............................................................................. 13

*Perez v. Rash Curtis & Assocs.*,
  2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ............................................................... 10

*Racies v. Quincy Bioscience, LLC*,
  2020 WL 2113852 (N.D. Cal. May 4, 2020) ................................................................. 8

*Relente v. Viator, Inc.*,
  2015 WL 3613713 (N.D. Cal. June 9, 2015) ................................................................. 5

*Ries v. Ariz. Beverages USA LLC*,
  2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ............................................................. 8

*Rodriguez v. W. Pub'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................. 4, 14

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) .................................................................................... 5

*Sanchez v. Nurture, Inc.*,
  2023 WL 6391487 (N.D. Cal. Sept. 29, 2023) ............................................................. 2

*Schenider v. Chipotle Mexican Grill, Inc.*,
  2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ................................................................. 7

*Spears v. First Am. Eappraiseit*,
  2015 WL 1906126 (N.D. Cal. Apr. 27, 2015) ............................................................. 8

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................................. 5, 15

*Tait v. BSH Home Appliances Corp.*,
  2015 WL 4537463 (C.D. Cal. July 27, 2015) ............................................................. 3

*Thomas v. MagnaChip Semiconductor Corp.*,
  2018 WL 2234598 (N.D. Cal. May 15, 2018) ........................................................... 11

*Viceral v. Mistras Group, Inc.*,
  2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ............................................................... 4

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................................... 14

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ............................................................. 8

*Wilson v. TE Connectivity Networks, Inc.*,
  2019 WL 4242939 (N.D. Cal. Sept. 6, 2019) ........................................................... 13

*Zakaria v. Gerber Prods. Co.*,
    2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) ................................................................. 8

*Zakaria v. Gerber Prods. Co.*,
    755 Fed. App'x 623 (9th Cir. 2018) ............................................................................. 8

**Statutes**

Cal. Civ. Code § 1780(e) ................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................................. 3, 14

**Other Authorities**

87 Fed. Reg. 5063 (Jan. 31, 2022) ..................................................................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on November 14, at 10:00 a.m., or as soon thereafter as may be heard, Plaintiffs will move the Court, the Honorable James Donato presiding, for an Order awarding attorneys' fees and costs and Class Representative service awards. The Motion is based on the below Memorandum; the concurrently-filed Declaration of Jack Fitzgerald ("Fitzgerald Decl.") and all exhibits thereto; all prior pleadings and proceedings, including the Settlement Agreement (Dkt. No. 252-1, "SA") attached to the Declaration of Jack Fitzgerald in Support of Motion for Preliminary Approval (Dkt. No. 252, "PA Fitzgerald Decl."); the concurrently-filed Declarations of Ralph Milan ("Milan Decl.") and Elizabeth Arnold ("Arnold Decl."); Plaintiffs' October 31, 2023 Motion for Preliminary Approval (Dkt. No. 251, "PA Mot."); the June 23, 2022 Declaration of Jack Fitzgerald in Support of Motion for Preliminary Approval (Dkt. No. 226-1, the "2022 Fitzgerald Decl."); the Court's July 12, 2024 Order Re Preliminary Approval of Class Settlement (Dkt. No. 261, "PA Order"), and any additional evidence and argument submitted in support of the Motion.

**ISSUES TO BE DECIDED**

Whether, and in what amounts, to award attorneys' fees and costs and Class Representative service awards pursuant to a proposed nationwide class Settlement that the Court preliminarily approved on July 12, 2024, *see* PA Order.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    INTRODUCTION**

The Settlement Agreement's $12 million non-reversionary common fund is an excellent result for the Class, representing a substantial portion of available trial damages. *See* PA Fitzgerald Decl. ¶¶ 14-43; PA Mot. at 13. Class Counsel also secured meaningful injunctive relief for the Class. SA ¶ 4.6. To obtain these benefits, counsel dedicated more than 9,500 hours and advanced substantial out-of-pocket expenses to prosecute a theory of liability that was unproven at the time of filing. At times during its more than six-year pendency, especially when preparing for trial, virtually all of the firm's resources were dedicated to this case. Fitzgerald Decl. ¶ 11; *see generally* 2022 Fitzgerald Decl. ¶¶ 3-14 (detailing extensive fact and expert discovery, law and motion practice, and settlement negotiations). It was only through tenacity in prosecuting an opponent deeply entrenched in its litigation position that Class Counsel was able to obtain

such a favorable settlement for the Class and public. Along the way, success was far from certain. The Court initially almost dismissed the case, and to this day, some courts continue to find the theory implausible.[1] And it was not until years into this litigation that other cases espousing this theory first settled, starting to create a track record of success.

Now, six years later, Class Counsel has obtained a number of settlements from some of the largest food companies in the world on this theory, each with non-reversionary common funds and commitments to make labeling changes addressing the problem. The courts evaluating these settlements have consistently praised them as excellent results and promotive of public health. As a byproduct of having reached these settlements, Western Alliance Bank recently identified Class Counsel—as modest a firm as it is—as the fifth-most prolific plaintiff-side law firm in providing digital payments to class action claimants between 2019 to 2023, listed among behemoths like Milberg Coleman Bryson Phillips Grossman, PLLC (#1) and Lief Cabraser Heimann & Bernstein LLP (#7). Fitzerald Decl. ¶ 12 & Ex. 3.

Because of Class Counsel's hard work and success, each of these courts has awarded fees of at least 30% when requested, and up to 40% of the common fund. Because of Class Counsel's hard work on *this* case, an award of 30% of the common fund would represent less than 60% of counsel's reasonable, indeed quite conservative, lodestar. Given the excellent result and large negative lodestar multiplier, the Court should find such an award, amounting to $3.6 million in fees, warranted.

The Court should also grant Class Counsel's request for recoverable costs of $861,337, and approve service awards of $5,000 for each Class Representative, which are reasonable considering their contributions to the case, especially in relation to the size of the Settlement.

---

[1] *See, e.g., Bates v. Abbott Labs.*, --- F. Supp. 3d. ----, 2024 WL 1345342, at *8 (N.D.N.Y. Mar. 29, 2024) ("Despite the studies Plaintiff cites in her complaint, the Court finds that Plaintiff's position about the health effects of added sugar is an opinion about the merits of the product. A consumer who agrees that any added sugar in a nutrition drink undermines its health benefits can obtain that information from the label."); *Lee v. Nature's Path Food, Inc.*, 2023 WL 7434963, at *3 & n.2 (S.D. Cal. Nov. 9, 2023) (while "acknowledge[ing] that several other district courts have reached the opposite conclusion," finding "the reasoning and analysis" in *Clark v. Perfect Bar, LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018), and its progeny "more persuasive and more in line with the Ninth Circuit's recent decisions regarding the reasonable consumer standard," and concluding "Plaintiff's theory of fraud is implausible and defective."); *Sanchez v. Nurture, Inc.*, 2023 WL 6391487, at *7 (N.D. Cal. Sept. 29, 2023) ("[M]any courts in this district have rejected theories of fraud where plaintiffs alleged the presence of added sugars rendered a general health-related claim fraudulent." (citations omitted)).

## II.  ARGUMENT

### A.  THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, Plaintiffs are authorized to seek fees by agreement, *see* SA ¶ 9, and by law, *see* Cal. Civ. Code § 1780(e).

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method," so long as "their discretion [is] exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ["*Bluetooth*"] (citations omitted). "[O]rdinarily, when application of the lodestar cross check produces a 'negative multiplier' . . . it [is] appropriate to consider whether under all of the circumstances of the litigation a fee greater than the 25% benchmark should be awarded." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12387371, at *9 (N.D. Cal. Nov. 5, 2013) (footnote omitted), *report and recommendation adopted*, 2014 WL 12879521 (N.D. Cal. June 27, 2014). Recently, another court found in the context of a similar nationwide class settlement that Class Counsel's efforts in securing "an excellent recovery for the class" would not reasonably be compensated applying the percent-of-fund method. *See Andrade-Heymsfield v. NextFoods, Inc.*, 2024 WL 3871634, at *4, *6 (S.D. Cal. Apr. 8, 2014). There, Class Counsel had expended over $500,000 in lodestar, whereas awarding the benchmark 25% would yield just $312,000 in fees, about 62% of counsel's lodestar. *Id.*, at *6. "Given the risks involved, the results obtained, and counsel's hours and successful recovery," the court found "that amount insufficient," and awarded counsel its lodestar, representing over 40% of the common fund. *See id.*

Here, the situation is even more unbalanced. Class Counsel has incurred over $6.3 million in lodestar, whereas the 25% benchmark would result in $3 million in fees, less than 48% of counsel's lodestar. Although counsel might reasonably request, under *Bluetooth's* reasonability standard, that the Court determine fees based on the lodestar method, counsel is proceeding with a percent-of-fund request here to best "align[] the lawyers' interests with achieving the highest award for the class members, and reduc[e] the burden on the [C]ourt[] that a complex lodestar calculation requires.'" *See In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) (quoting *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015)). Moreover, although the Class

Notice advised Class Members that Class Counsel may seek up to one-third, counsel is requesting just 30%, to align with the awards in *Hadley* and *Krommenhock*, the two best comparators to this case. That amount is supported by a lodestar-multiplier crosscheck, as it represents a negative 0.57 multiplier to counsel's $6,306,044 reasonably-expended (and conservatively-estimated) lodestar. Fitzgerald Decl. ¶¶ 7-9.

### i. Class Counsel's Fee Request is Reasonable Under the Percent-of-Fund Method

"[W]hen calculating attorneys' fees as a percentage of a common settlement fund, 25% of the fund is the presumptively reasonable 'benchmark.'" *Viceral v. Mistras Group, Inc.*, 2017 WL 661352, at *3 (N.D. Cal. Feb. 17, 2017) (citing *Bluetooth*, 654 F.3d at 942). But while "[t]he 25% benchmark is a 'starting point for analysis,' . . . it is by no means a binding figure." *McMorrow v. Mondelez Int'l, Inc.*, 2022 WL 1056098, at *5 (S.D. Cal. Apr. 8, 2022); *see also Myles v. AlliedBarton Sec. Servs., LLC*, 2014 WL 6065602, at *5 (N.D. Cal. Nov. 12, 2014) (Donato, J.) (25% is a "non-binding 'benchmark' guideline"). "Selection of the benchmark or any other rate . . . must be supported by findings that take into account all of the circumstances of the case." *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *3 (N.D. Cal. Sept. 21, 2018) (Donato, J.) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)). It is thus:

> subject to adjustment—upward or downward—based on the Court's analysis of the factors the Ninth Circuit considered in *Vizcaino*: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases.

*Id.* (citation omitted). Here, the *Vizcaino* factors support Class Counsel's request for 30% of the fund.

### a. The Result Achieved

"First, the Court considers the overall result and benefit to the Class. This factor has been called 'the most critical factor in granting a fee award.'" *In re Anthem, Inc. Data Breach Litig.,* 2018 WL 3960068, at *9 (N.D. Cal. Aug. 17, 2018) ["*Anthem*"] (quoting *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)). Considering its monetary and injunctive relief, the Settlement is an excellent result achieved by Class Counsel for the Class, supporting its requested fee.

First, the Settlement's monetary relief is an all-cash, non-reversionary common fund, the gold standard for class action settlements because it provides the most transparent and concrete value to class members while minimizing the chances and impact of collusion. *See Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("cash . . . is a good indicator of a beneficial settlement"); *cf. In re Volkswagen*

*"Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("A reversion can benefit both defendants and class counsel, and thus raise the specter of their collusion . . . ."). Moreover, with "the realistic risk to Clif at trial for the Certified Classes . . . in the range of $27 million," PA Fitzgerald Decl. ¶ 34, the Settlement's $12 million common fund represents 44.4% of potential damages. This is a substantial, even excellent recovery. *See Andrade-Heymsfield*, 2024 WL 3871634, at *6 ("[T]he $1,250,000 fund is an excellent recovery for the class. That amount is '42% of the hypothetical damages of the Nationwide Settlement Class.'" (record citation omitted)). The more than $30 claimants are likely to receive on average, *see* Fitzgerald Decl. ¶ 16, also represents a significant recovery on an individual Class Member basis compared to the modest per-unit damages. *See McMorrow*, 2022 WL 1056098, at *8 ("Class Members will receive an average refund of $20.96 . . . which is considered an 'excellent result' in the context of low-cost consumer goods false advertising cases." (record citation omitted; quoting *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020))).

Second, the Settlement's injunctive relief is significant and meaningful. "[A]s a general matter, injunctive relief in a consumer case alleging misleading advertising is almost always likely to be an important remedy." *Relente v. Viator, Inc.*, 2015 WL 3613713, at *3 (N.D. Cal. June 9, 2015) (Donato, J.) (citations omitted); *see also Brazil v. Dell Inc.*, 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012) (The "elimination of allegedly false representations . . . confer[s] a benefit on both the class members and the public at large" (citation omitted)); *Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) ("[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes, which benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products."). "[T]hat counsel obtained injunctive relief in addition to monetary relief for their clients is . . . a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055-56 (9th Cir. 2019) (alteration and emphasis in original omitted) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 946 (9th Cir. 2003)).

Here, Clif has agreed, so long as 10% or more of a Class Product's calories come from added sugar, to refrain from using "nutrition" (or the similar word "nutritious") and "Nourishing Kids in Motion" on Class Product labels for at least two years. *See* SA ¶ 4.6. Where manufacturers of sugary foods agree, like Clif, to remove health and wellness labeling claims, that "provides health benefits to all purchasers of

Defendant's products." *See Hadley v. Kellogg Sales Co.*, 2021 WL 5706967, at *2 (N.D. Cal. Nov. 23, 2021); *see also Guttmann v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *3 (N.D. Cal. Aug. 1, 2016) (settlement requiring labeling changes "provides substantial health benefits to all purchasers . . . in light of the evidence offered by Plaintiff about the health effects of" artificial trans fat in the foods at issue (record citation omitted)); *McMorrow*, 2022 WL 1056098, at *6 ("An injunction precluding Defendant from using the term 'nutritious' and other synonyms on Class Products' labels for three years following final approval is undoubtedly beneficial to class consumers, the marketplace, and even competitors who do not mislabel their products." (citation omitted)). Consistent with these courts' findings, the FDA recently concluded that limiting manufacturers' use of "health" claims on sugary foods would result in healthcare savings of up to $700 million over 20 years. *See* PA Fitzgerald Decl. ¶ 12 (citing 87 Fed. Reg. 5063, 5064 (Jan. 31, 2022)).

The injunctive relief Class Counsel obtained also "lends credence to the legal theory that a product's added sugars render health-and-wellness claims printed on the product label misleading under consumer-protection laws." *See* Fitzgerald Decl. ¶ 14, Ex. 4 at 6. Moreover, "the process of changing product labeling and associated marketing campaigns requires an enormous amount of time and financial resources." *Id.* (citation omitted). The Settlement thus disincentivizes other manufacturers to toe the line. *Cf.* PA Fitzgerald Decl. ¶ 10 ("to date, Clif has spent at least **$474,000** related to the Settlement's injunctive relief").

Finally, the Settlement offers benefits to those who would not otherwise see them because the Settlement Class is comprised of purchasers nationwide, rather than only in California and New York. While it is theoretically possible that, absent settlement, some Settlement Class Members could see relief through additional lawsuits brought in other states, others would be left without remedies, since some states preclude class actions and others require individual proof of reliance for consumer fraud claims, making them impossible to adjudicate on a classwide basis. "[T]hat some states preclude class actions and others require individual proof of reliance for consumer fraud claims makes them impossible to adjudicate on a class-wide basis, and weighs in favor of granting Plaintiffs' fee request here." *See McMorrow*, 2022 WL 1056098, at *6 (citing *Burnthorne-Martinez v. Sephora USA, Inc.*, 2018 WL 5310833, at *3 (N.D. Cal. May 16, 2018) (That "Class Counsel successfully negotiated direct payments for a class of individuals that in all likelihood may have never received any compensation or redress for the conduct complain[]ed of" weighed in favor of granting Class Counsel's fee request.)).

Although "[i]njunctive relief is inherently difficult to monetize," and "a district court must exercise caution when using the value of injunctive relief to determine proportional attorneys' fees," *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021) (citation omitted), the Court should still "determine the significance of th[e] benefit, and employ it as a qualitative factor in deciding whether a[n upward departure from the benchmark] is warranted," *see Chambers v. Whirlpool Corp.*, 980 F.3d 645, 664 (9th Cir. 2020).

That is the case here. In similar circumstances, for example, the Ninth Circuit held that an "attorneys' fee award . . . stands up when evaluated using the factors set forth in *Vizcaino*," and that "counsel's procurement of monetary and injunctive relief appears to have been an exceptional result," where the injunctive relief was "meaningful and consistent with the relief requested in plaintiffs' complaint," *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014); *cf. Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, 2016 WL 6156076, at *4 (C.D. Cal. Aug. 16, 2016) (Where "the settlement has substantial monetary and nonmonetary components," "[t]his factor weighs heavily in favor of an upward departure from the benchmark."). Here, it was "a mark of success that the class was able to secure the type of injunctive relief sought in its Complaint, and while the injunctive relief is difficult to value monetarily, it" should "support[] this Court's conclusion that the settlement is an exceptional result for the class." *See McMorrow*, 2022 WL 1056098, at *6 (internal record citation omitted); *see also de Mira v. Heartland Emp. Serv., LLC*, 2014 WL 1026282, at *3 (N.D. Cal. Mar. 13, 2014) (The "non-monetary results achieved by Class Counsel . . . warrant an upward departure from the 25% benchmark.").

### b. The Complexity of the Case and Risk and Expense to Counsel

This case was complex, risky, and expensive, justifying Class Counsel's fee request.

Class Counsel here "assume[d] substantial risk in litigating this action on a contingency fee basis, and incurr[ed] costs without the guarantee of payment for its litigation efforts." *See Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *9 (N.D. Cal. Jan. 31, 2020); *see also* Fitzgerald Decl. ¶ 10. "[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)). "[C]ourts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to

7

pay hourly fees." *Id.* (citation omitted); *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *4 (contingent case involving millions of dollars in time and expenses represented a "significant risk").

Besides the inherent risk in all contingency fee litigation, "food labeling claims are difficult to maintain" where plaintiffs "need to prove that Defendant's labels . . . were misleading entirely by virtue of the product containing a[n allegedly harmful nutrient]." *Guttmann*, 2016 WL 9107426, at *3 (record citation omitted). Evincing the difficulty in establishing liability on these claims, numerous California courts have initially certified food labeling cases, then later decertified or granted defendants summary judgment. *See*, *e.g.*, *Allen v. ConAgra Foods, Inc.*, 2020 WL 4673914 (N.D. Cal. Aug. 12, 2020) (granting defendant's motion for summary judgment after having previously decertified several state subclasses); *Ries v. Ariz. Beverages USA LLC*, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) (granting defendant's motion for summary judgment and decertifying class); *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) (decertifying damages class); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) (same); *Morales v. Kraft Foods Group, Inc.*, 2017 WL 2598556 (C.D. Cal. June 9, 2017) (decertifying class and granting defendant partial summary judgment); *Zakaria v. Gerber Prods. Co.*, 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) (decertifying class and granting defendant summary judgment), *aff'd* 755 F. App'x 623 (9th Cir. 2018). There are also numerous recent examples of consumer fraud trials ending in defense verdicts. *See*, *e.g.*, *Allen v. Hyland's, Inc.*, 2021 WL 718295 (C.D. Cal. Feb. 23, 2021) (finding in favor of defendant following jury and bench trial on claims that homeopathic remedies were falsely advertised as effective); *Morizur v. SeaWorld Parks & Entm't, Inc.*, 2020 WL 6044043 (N.D. Cal. Oct. 13, 2020) (defense verdict after bench trial on false advertising claims concerning treatment of orcas by SeaWorld); *cf. Racies v. Quincy Bioscience, LLC*, 2020 WL 2113852 (N.D. Cal. May 4, 2020) (decertifying after trial a false advertising class action alleging misleading advertising of memory supplement and noting "the Court found Plaintiff's case at trial underwhelming").

### c.     The Skill Required and Quality of Class Counsel's Work

Some courts "have recognized that litigating complicated matters, especially unprecedented issues, is a circumstance that points in favor of a larger percentage." *Anthem*, 2018 WL 3960068, at *13 (citing *Spears v. First Am. Eappraiseit*, 2015 WL 1906126, at *2 (N.D. Cal. Apr. 27, 2015) (awarding 35% of $7,557,096 net settlement fund where class counsel "faced at least three significant novel issues of law")).

In *Lusby v. GameStop Inc.*, for example, the court awarded one-third of the common fund based in part on counsel having "litigated a large number of [similar] class actions," "achiev[ing] class certification in many different scenarios," and "develop[ing] an extensive factual record to obtain the evidence needed to convince Defendant of the risks of continued litigation," 2015 WL 1501095, at *4, *9 (N.D. Cal. Mar. 31, 2015). The court also noted class counsel's "history of successful prosecution of similar cases" made "credible its commitment to pursue this action through trial and beyond." *Id.*, at *4. The circumstances here are similar.

Likewise, great skill was required by Class Counsel here to prosecute this case successfully because the subject matter was highly technical, requiring the understanding of scientific evidence. Class Counsel also needed to be skilled because Clif "is well financed and had facially valid defenses," *see In re Ferrero Litig.*, 583 F. App'x at 668-69. The five or more Sheppard Mullin attorneys representing Clif were tenacious and skilled. Clif's lead counsel, Mr. Van Gundy, has "extensive experience in litigation, including jury trials, involving food companies and other FDA and USDA regulated companies," "regularly asked to speak at leading food law conferences," and "frequently writes on important food and dietary supplement law developments. *See* https://www.sheppardmullin.com/cvangundy. "The quality of opposing counsel is important in evaluating the quality of Class Counsel's work." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (C.D. Cal. 2013). Given these considerations, the Court should find this factor supports Class Counsel's fee request. *See McMorrow*, 2022 WL 1056098, at *7 (

> Plaintiffs argue that "great skill was required by Class Counsel here, given the challenging theory, procedural hurdles, technical subject matter requiring expert testimony, and expertise of Mondelez's attorneys . . . ." This Court tends to agree. Counsel navigated substantial offensive, defensive, and expert discovery; briefed class certification multiple times and ultimately prevailed; and engaged in a successful mediation to resolve the case. (internal record citations omitted))

### d.   Awards in Similar Cases

Class Counsel have settled five other sugary-foods cases with non-reversionary common funds and labeling changes. In each case, the court awarded fees representing at least 30% of the common fund, except in *Hanson v. Welch*, where Class Counsel only requested 25% given how quickly the case settled. Moreover, in all of these cases, unlike here, the award represented a positive multiplier to Class Counsel's lodestar, except in *Andrade-Heymsfield v. NextFoods, Inc.*, where counsel requested and the court awarded fees based on the lodestar, rather than percent-of-fund method. These awards are summarized below.

| Case | Settlement | Fee Award | Multiplier |
|------|-----------|-----------|------------|
| *Krommenhock v. Post Foods LLC*, No. 16-cv-4958-WHO (N.D. Cal.) (Dkt. No. 303) | $15 million common fund & injunctive relief | 30% ($4.5 million) & $967,606 in costs | 1.60 ($2,809,364 lodestar) |
| *Hadley v. Kellogg Sales Co.*, No. 16-cv-4955-LHK (N.D. Cal.) (Dkt. No. 407) | $13 million common fund & injunctive relief | 30% ($3.9 million) & $1,157,501 in costs | 1.40 ($2,795,633 lodestar) |
| *McMorrow v. Mondelez Int'l Inc.*, No. 17-cv-2327-BAS (S.D. Cal.) (Dkt. No. 212) | $8 million common fund & injunctive relief | 33.3% ($2,666,667) & $288,178 in costs | 1.54 ($1,732,355 lodestar) |
| *Hanson v. Welch Foods Inc.*, No. 20-cv-2011-JCS (N.D. Cal.) (Dkt. No. 68) | $1.5 million common fund & injunctive relief | 25% ($375,000) & $24,196 in costs | 1.88 ($199,534 lodestar) |
| *Andrade-Heymsfield v. NextFoods, Inc.*, No. 21-cv-1446-BTM (S.D. Cal.) (Dkt. No. 63) | $1.25 million common fund & injunctive relief | 40% ($501,016) & $47,189 in costs | 1.0 ($501,016 lodestar) |

*Krommenhock* and *Hadley* are particularly good comparators because those cases settled in a similar procedural posture and monetary range, and the settlements and fees were approved by courts in this district.

### ii.   A Lodestar Crosscheck Shows Class Counsel's Fee Request is Reasonable

Where a court determines fees using the percent-of-fund method, the Ninth Circuit "has consistently refused to adopt a [lodestar] crosscheck requirement," *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (collecting cases). Nevertheless, "[c]ourts in the Ninth Circuit sometimes examine the lodestar calculation as a crosscheck on the percentage fee award to ensure the reasonableness of the percentage award." *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020) (citing *Vizcaino*, 290 F.3d at 1050). "The lodestar figure is calculated by multiplying the number of hours reasonably spent by a reasonable hourly rate," after which "[c]ourts may 'adjust [the lodestar figure] upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) ["*Lidoderm*"] (citing and quoting *Bluetooth*, 654 F.3d at 941-42 (citation omitted)). These "factors largely mirror the considerations" pertaining to a percent-of-fund analysis, *see id.*, at *3, and include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues present, and the risk of nonpayment," *id.*, at *2 (quoting *Bluetooth*, 654 F.3d at 942).

Here, Class Counsel's $3.6 million fee request represents approximately 57% of its reasonable

lodestar of $6,306,044, *see* Fitzgerald Decl. ¶ 7. That negative, 0.57 multiplier demonstrates Class Counsel's request is reasonable. *See In re Resistors Antitrust Litig.*, 2020 WL 2791940, at *1 (N.D. Cal. Mar. 24, 2020) (Donato, J.) ("Counsel['s] . . . requested fee award represents less than 73% of their reasonable lodestar, a negative multiplier. This further supports the reasonableness of Class Counsel['s] attorney fee request" based on the percent-of-fund method); *cf. McMorrow*, 2022 WL 1056098, at *8 ("[T]he quality of Class Counsel's representation and benefit obtained by the class, among other factors, support the modest 1.54 multiplier to Plaintiffs' lodestar and justify the fee award of 33.3%." (citations omitted)).

### a.    Class Counsel's Hours are Reasonable

Between the filing of the Complaint on April 19, 2018 and October 12, 2023, the most recent date of hours included in counsel's lodestar—2,002 days in total, or about 65 months—counsel expended 9,593.4 hours litigating this action, equal to about 1,610 hours per year, or 134.2 hours per month, or 4.8 hours per day. *See* Fitzgerald Decl. ¶¶ 5-7.[2] This time was spent investigating the case and drafting the Complaint, taking fact and expert discovery, participating in law and motion practice, negotiating the settlement and, most significantly, preparing for trial. *See id.* ¶¶ 7-8 & Ex.1. The Court should find these hours reasonable and necessary to the litigation, particularly in light of the result obtained for the Class. *See In re Resistors Antitrust Litig.*, 2020 WL 2787724, at *1 (Finding the "21,273.7 hours worked by Class Counsel between December 21, 2015 and May 31, 2019," about 16.9 hours per day, "reasonable and necessary.").

### b.    Class Counsel's Rates are Reasonable

"A reasonable hourly rate is one that is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *James v. AT&T W. Disability Benefits Program*, 2014 WL 7272983, at *2 (N.D. Cal. Dec. 22, 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). That "courts within this Circuit have approved in other cases Class Counsel's reported hourly rates," demonstrates reasonableness. *See Johnson v. Quantum Learning Network, Inc.*, 2017 WL 747462, at *6 (N.D. Cal. Feb. 27, 2017). Here, the rates Class Counsel seeks are as follows:

---

[2] While a "table[] summarizing the amount of work each timekeeper performed at different stages of this litigation" is "sufficient for purposes of performing a lodestar cross-check, particularly when the resulting multiplier is so low" *see Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018), Class Counsel have provided detailed billing records, should the Court wish to review them. *See* Fitzgerald Decl. ¶ 8 Ex. 1.

| Timekeeper | Position | Rate |
|---|---|---|
| Jack Fitzgerald | Principal | $870 |
| Paul Joseph | Principal | $700 |
| Melanie Persinger | Partner | $680 |
| Trevor Flynn | Partner | $670 |
| Caroline Emhardt | Associate | $500 |
| Richelle Kemler | Associate | $580 |
| Christina Mendez | Paralegal | $235 |
| Julie Hinton | Paralegal | $235 |

These rates are below those recently approved in a less expensive market (San Diego) for Class Counsel. *See* Fitzgerald Decl. ¶ 3. They are also consistent with rates previously approved for these timekeepers. *See* PA Fitzgerald Decl. ¶¶ 83-86. And they are below prevailing rates in this district for class action litigation. *See id.* ¶¶ 88-90; Fitzgerald Decl. ¶ 4.

### c.    The Resulting Lodestar Multiplier is Reasonable

Here, "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," *Bluetooth*, 654 F.3d at 942 (quotation omitted), all support no more of a negative lodestar multiplier than the 0.57 multiplier represented by Class Counsel's $3.6 million fee request.

***The Quality of Representation.*** As discussed above, "Class counsel provided their clients with diligent and skilled representation in this matter," including "litigat[ing] numerous complex issues[,] and their efforts produced substantial benefits for the . . . Class." *See Lidoderm*, 2018 WL 4620695, at *3.

***The Benefit Obtained for the Class.*** The Settlement provides Class Members with significant monetary and injunctive relief, this comparing favorably both with other settlements in similar cases, and to the Class's likely recovery at trial, particularly in light of the risks involved in continuing litigation. *See* PA Mot. at 11-14; PA Fitzgerald Decl. ¶¶ 10-43.

***The Complexity and Novelty of the Issues Present.*** The scientific evidence supporting Plaintiffs' case theory was complex, requiring review of numerous scientific studies to explain the science regarding added sugar consumption. Dkt. No. 1, Compl. ¶¶ 14-109; *see also Milan v. Clif Bar & Co.*, 2019 WL 3934918, at *2 (N.D. Cal. Aug. 20, 2019) ("Plaintiffs have laid out in painstaking and voluminous detail how this substantial percentage of added sugars in Clif's products can contribute to excessive sugar consumption, which in turn has been linked to many diseases and detrimental health conditions." (record

12

citation omitted)). Accordingly, this factor weighs in favor of the requested fee award. *Cf. Palila (Loxioides bailleui) v. Hawaii Dep't of Land & Natural Res.*, 118 F.R.D. 125, 128 (D. Haw. 1987) ("The issues presented in the case were novel and complex, involving . . . scientific knowledge," which "support[s] an award based on a premium hourly rate.").

***The Risk of Nonpayment.*** "[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *see also id.* at 1302 (district court abused discretion by not applying multiplier when case was "fraught with risk and recovery was far from certain" (quotation omitted)). Class Counsel took this case on a contingency basis and faced a real risk of non-payment. "Because counsel worked on a contingent-fee basis despite risks of litigation, this weighs in favor of awarding more than the lodestar." *See Luna v. Marvell Tech. Group*, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (applying 2.0 multiplier); *see also Lidoderm*, 2018 WL 4620695, at *3 (positive multiplier justified where "Class Counsel litigated this action without pay for several years, even though recovery was uncertain" (quotation omitted)); *see also Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *11 (N.D. Cal. Nov. 9, 2020) (1.95 multiplier "entirely appropriate" where counsel "faced a significant risk of nonpayment given the contingent nature of the representation"). Here, of course, Class Counsel's fee request represents a negative lodestar multiplier, demonstrating the reasonableness of the request.

*     *     *

The Court should find that a lodestar crosscheck shows Class Counsel's fee request, representing a negative, 0.57 multiplier, is reasonable. *See Johnson*, 2017 WL 747462, at *6 ("In seeking 33.33% of the common fund . . . Class Counsel is not requesting their full lodestar amount. This supports granting Class Counsels' request of 33.33% of the common fund."); *cf. Wilson v. TE Connectivity Networks, Inc.*, 2019 WL 4242939, at *8 (N.D. Cal. Sept. 6, 2019) (Since in "most multipliers range between 1.0 and 4.0. . . . a multiplier of 2.38 . . . suggests that approving the award [of 34% of the common fund] is reasonable under the lodestar method, as well." (citing *Vizcaino*, 290 F.3d at 1053-54)); *Gergetz v. Telenav, Inc.*, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (Awarding 30% of the common fund and finding it "appropriate to apply a multiplier of 2.625 in light of the facts that Class Counsel accepted this case on a contingency basis, had to forego other work to litigate this case, and achieved a truly excellent result for the class.").

**B.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Bellinghausen*, 306 F.R.D. at 265 (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014)); *see also Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *5 (N.D. Cal. Jan. 18, 2017) ("Class counsel is entitled to reimbursement of reasonable expenses." (quoting Fed. R. Civ. P. 23(h))). Here, Class Counsel seeks reimbursement of $861,337, the majority of which relates to expert witnesses testimony and deposition costs. *See* Fitzgerald Decl. ¶ 10. Because "[t]he categories of expenses for which plaintiffs' [sic] seek reimbursement are the type of expenses routinely charged to hourly clients . . . the full amount should be reimbursed," *see Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *10 (N.D. Cal. July 11, 2014) (citation omitted).

**C.    THE COURT SHOULD GRANT SERVICE AWARDS**

"In the Ninth Circuit, '[i]ncentive awards are fairly typical in class action cases,'" and "'are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Alvarez*, 2017 WL 2214585, at *1 (quoting *Rodriguez*, 563 F.3d at 958-59); *accord Norcia v. Samsung Telecomms. Am., LLC*, 2021 WL 3053018, at *5 (N.D. Cal. July 20, 2021) (Donato, J.) ("Incentive awards are fairly typical in class action cases." (quoting *Rodriguez*, 563 F.3d at 958)). "An incentive award of $5,000 is considered 'presumptively reasonable' in this District," *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019) (citing *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012)). In addition, "some courts have considered the ratio between the service award and class members' average recovery [in] determin[ing] the propriety of any amount awarded." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1025 (E.D. Cal. 2019) (citing *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)).

The $5,000 service awards Plaintiffs request are reasonable and justified by the record of their active participation in the litigation, including reviewing pleadings and other relevant documents; keeping in frequent contact with Class Counsel to stay informed about the progress of the case through more than six years of litigation; responding to extensive discovery requests, including 55 document requests; sitting for

full-day depositions; and discussing in detail settlement negotiations and the proposed settlement with counsel. Milan Decl. ¶¶ 2-10; Arnold Decl. ¶¶ 2-10. As a result, Class Representatives Ralph Milan and Elizabeth Arnold estimate they dedicated approximately 34.5 and 55.5 hours, respectively, to the case. Their service should be rewarded. *See Fowler v. Wells Fargo Bank, N.A.*, 2019 WL 330910, at *8 (N.D. Cal. Jan. 25, 2019) (granting $7,500 award to plaintiff who "spent 40 to 50 hours on the case" "assisting counsel in obtaining loan documents," "reviewing the complaint as well as relevant motions," "responding to discovery," "attend[ing] the mediation," and participating in "follow-up calls and emails with counsel" (record citations omitted)); *Brown v. Hain Celestial Group, Inc.*, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) (granting $7,500 service awards to plaintiffs who "described sufficiently the[ir] efforts consulting with counsel, attending mediations, being deposed, and otherwise participating in the litigation." (record citation omitted)).

Moreover, the $10,000 total requested is just 0.083% of the Settlement Fund and thus "significantly less"—over 100 times less—"than the approximately 1% of the total settlement awarded by some courts." *See Fowler*, 2019 WL 330910, at *8 (citation omitted); *see also Alvarez*, 2017 WL 2214585, at *1 (awarding $10,000 awards to each of nine plaintiffs, totaling $90,000, "constitut[ing] 1.8% of the total settlement value"). "While it is true that a $5,000 incentive award is [many] times larger than the [likely] individual award," the Ninth Circuit has "focused less on that fact . . . and more on the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) ["*Online DVD Rental*"] (citing *Staton*, 327 F.3d at 977). "Here, [the requested] incentive awards are $5,000, an amount [the Ninth Circuit] said was reasonable in *Staton*." *See id*. (citation omitted). In approving service awards in *Online DVD-Rental*, the Ninth Circuit stressed the that "the $45,000 in incentive awards makes up a mere .17% of the total settlement fund of $27,250,000, which is far less than the 6% of the settlement fund in *Staton* that went to incentive awards." *Id*. at 948 (citation omitted). The service awards requested here are about half, as a percent of the common fund, of what the Ninth Circuit approved in *Online DVD-Rental*.

## III.    CONCLUSION

The Court should grant Class Counsel's request for an award of $3.6 million in fees and $861,337 in costs, and grant the Class Representatives service awards of $5,000 each.

Dated: September 6, 2024

Respectfully Submitted,

/s/ Jack Fitzgerald
**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
PETER GRAZUL
*pgrzul@fmfpc.com*
2341 Jefferson St., Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

***Class Counsel***